## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

AMAZON WEB SERVICES, INC.,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,
by and through the U.S. Department of Defense,

        Defendant,

    and

MICROSOFT CORPORATION,

        Defendant-Intervenor.

Case No. 19-cv-01796

Judge Campbell-Smith

**FINAL REDACTED VERSION**

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF AMAZON WEB SERVICES, INC.'S ▓▓▓ MOTION TO COMPLETE THE ADMINISTRATIVE RECORD

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

QUESTION PRESENTED ..................................................................................................... 2

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT ........................................................................................................................... 9

    A.   Materials Related to the Involvement of the Office of the Secretary of Defense
        in the JEDI Procurement Process ................................................................................... 9

    B.   Materials Related to the JEDI RFP Proposals and the Evaluations Thereof ................ 12

CONCLUSION ...................................................................................................................... 18

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ARKRAY USA, Inc. v. United States,*
   No. 14-233, 2014 WL 2905127 (Fed. Cl. Apr. 28, 2014) ..........................................................1

*Dyncorp Int'l LLC v. United States,*
   113 Fed. Cl. 298 (2013) ...........................................................................................................8

*Joint Venture of Comint Sys. Corp. v. United States,*
   100 Fed. Cl. 159 (2011) ....................................................................................................1, 7, 9

*Kerr Contractors, Inc. v. United States,*
   89 Fed. Cl. 312 (2009) ..............................................................................................................7

*Linc Gov't Servs., LLC v. United States,*
   95 Fed. Cl. 155 (2010) ..............................................................................................................1

*Mike Hooks, Inc. v. United States,*
   39 Fed. Cl. 147 (1997) ..............................................................................................................7

*In re Sealed Case,*
   121 F.3d 729 (D.C. Cir. 1997) ................................................................................................17

*Tauri Grp., LLC v. United States,*
   99 Fed. Cl. 475 (2011) .......................................................................................................8, 16

*Texaco P.R., Inc. v. Dep't of Consumer Affairs,*
   60 F.3d 867 (1st Cir. 1995) .....................................................................................................17

**Rule**

Rules of the United States Court of Federal Claims, Appendix C.............................................8, 15

## INTRODUCTION

Plaintiff Amazon Web Services, Inc. ("AWS") respectfully moves this Court to direct Defendant, the United States of America, acting by and through the Department of Defense ("DoD"), to complete the administrative record ("AR") that was submitted in connection with AWS's protest of the award of the Joint Enterprise Defense Infrastructure ("JEDI") Contract, Solicitation No. HQ0034-18-R-0077, to Microsoft Corporation ("Microsoft").[1]

After being granted a three-week extension by the Court, the Government on January 3, 2020, submitted a compendium of documents that it represented to be the AR in this matter. AWS's review of that compendium has revealed that it is inexplicably missing entire categories of critical information that DoD generated and considered during the course of its procurement decision. These missing materials are routinely included in post-award bid protest records. Moreover, this Court expressly *ordered* many of these absent documents to be included in the AR. (*See* Dkt. 15 at 2; Dkt. 55 at 2.)

These missing materials include communications on platforms, such as Slack and Google Groups, that evaluators used to discuss the procurement (and that the Government was *ordered* by

---

[1] On January 17, 2020, AWS filed a Motion to Supplement the Administrative Record seeking to supplement the AR with materials relevant to AWS's claims of bias and bad faith, the omission of which would preclude effective judicial review of those claims. *See Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011). By contrast, this Motion to Complete the Administrative Record seeks to add materials that were generated or considered by the relevant decision-makers during the procurement and review process, but that the Government omitted from its production of the AR. *See Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 158 (2010) ("A procuring agency's initial submission to the court may omit information that is properly part of the administrative record because it served as a basis for the agency's award decision."). In these circumstances, "subsequent admission of the omitted information is appropriate not to supplement the record, but to complete it." *Id.*; *see also ARKRAY USA, Inc. v. United States*, No. 14-233, 2014 WL 2905127, at *4 (Fed. Cl. Apr. 28, 2014).

this Court to produce), as well as workpapers and other materials that evaluators created and relied upon when assessing the AWS and Microsoft proposals. In addition, the AR is missing documents reflecting the involvement of the Office of the Secretary of Defense in the acquisition, despite the inclusion of a few documents that appear to show that the Secretary *was* in fact very involved in the procurement. Unless the AR is completed with these important documents, AWS will be unable to assess the record underlying DoD's evaluations and award determination, and the Court will be unable to conduct a full and effective review of the propriety of DoD's award decision and AWS's claims in this case.[2] The Court therefore should direct DoD to complete the AR by filing the missing documents identified below no later than Tuesday, January 28, 2020.

Defendant, the United States, and Defendant-Intervenor, Microsoft Corporation, oppose this motion, and have stated they will file their responses in accordance with the Court's rules.

## QUESTION PRESENTED

Whether the Court should require Defendant to complete the AR with materials that were generated and considered by DoD in connection with the JEDI Contract award decision, that are necessary for effective judicial review of AWS's claims, and that nevertheless were omitted from the Government's AR.

## STATEMENT OF FACTS

AWS filed its bid protest Complaint on November 22, 2019, to challenge DoD's decision to award the JEDI Contract to Microsoft. (*See* Dkt. 1.) Following a November 26, 2019, status conference, the Court ordered the Government to file the AR by December 13, 2019, pursuant to

---

[2] AWS submits this Motion based upon its good faith efforts to promptly identify documents missing from the AR, but does so without prejudice to its ability to request further completion of the record should it identify additional missing documents.

the Government's representation that it was "comfortable with that date." (Dkt. 15 at 2; Dkt. 25 at 12:9.) In that order, the Court "direct[ed] the parties to review ... the court's rules that address the content of the record," and ordered that the AR "must include all materials developed and considered by the government in making its award decision," including the "core documents identified in Appendix C" of the Rules of the United States Court of Federal Claims, as well as "informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." (Dkt. 15 at 2.)

However, following the Government's assertions that file size and the size of the record necessitated an extension (*see* Dkt. 54 at 2–3), the Court amended the schedule to give the Government more time to prepare the record (*see* Dkt. 55). In the order granting the extension, the Court again "remind[ed] the parties to review ... the court's rules that address the content of the record," and reiterated that the AR "must include all materials developed and considered by the government in making its award decision," including "informal documents reflecting factors considered in the agency's decision-making process," such as electronic communications through email, Slack, and other platforms. (*Id.* at 2.) The Government produced the AR on January 3, 2020 (*see* Dkt. 107), and made available a small set of classified documents on January 14, 2020 (*see* Dkt. 114).[3]

---

[3] Although the Government has claimed that the AR is "over 200,000 pages" (Dkt. 92 at 1), this brute metric does not actually reflect the scope or completeness of the existing AR (which actually consists of 185,095 pages of unclassified material). Approximately 127,000 pages— about *70%* of the pages in the AR—are exact copies of AWS's proposals throughout the various stages of the procurement process. *See* AR Tabs 194, 279–80, 309–15, 344–86. By contrast, the Microsoft proposal materials included in the AR account for less than 10,000 pages. *See* AR Tabs 196, 283–84, 316–22, 387–417, 419–438. An additional 23,982 pages of the existing AR were compiled for and submitted to this Court, or generated in connection

As documented in the AR, the Source Selection Authority ("SSA") executed the Source Selection Decision Document ("SSDD") on October 17, 2019, in which the SSA selected Microsoft for award of the JEDI Contract. *See* AR Tab 459 at 176409. In making this best value determination, the SSA explicitly relied upon and incorporated by reference, either directly or indirectly, the various evaluations and reports of the Source Selection Team ("SST"), including the Source Selection Advisory Council ("SSAC"), the Source Selection Evaluation Board ("SSEB"), the Technical Evaluation Board ("TEB") chairpersons, and the Price Evaluation Board ("PEB"). *See id.* at 176409–10.

AWS's review of these documents confirms that the Government failed to produce a substantial volume of material that should be in the AR. The gaps in the AR are significant and widespread. As explained herein, without completing the AR to include this missing information, the Court and the parties cannot fully understand the record and meaningfully evaluate AWS's allegations and the propriety of DoD's award decision.

Before filing this Motion, AWS conferred with counsel for the Government, and on January 9, 2020, provided the Government with a list of the materials that are missing from the AR that AWS seeks to have added. The list contained multiple discrete requests for missing documents, a reference to the specific documents within the AR that prompted each request, and an explanation of the basis for each request. During a January 10 conference call among the parties, the Government represented that it would not object to providing a very limited portion of

---

with, the pre-award protest of the JEDI procurement in *Oracle America v. United States*, No. 18-1880 (Fed. Cl.). *See* AR Tabs 1–187. Overall, DoD's own internal documentation specifically compiled for this protest appears to amount to approximately 14,000 pages—just 8% of the AR—and as described *infra*, is wholly deficient as to materials "reflecting factors considered in the agency's decision-making process." (Dkt. 55 at 2).

the documents requested by AWS to complete the record, including, *inter alia*, the requested native Excel versions of PDF documents filed within the existing record. But on January 11, in connection with the parties' ongoing discussions leading up to the submission of the Joint Status Report on January 13 (*see* Dkt. 111), the Government proposed to give itself two weeks to "correct" the AR (until January 24), despite failing to offer any reason why these unproduced documents—which the Government should have produced initially—required two weeks for production. On January 13, AWS informed the Government that it believed the Government's proposal for two weeks to complete the record was unduly protracted. Because the parties did not reach agreement on this issue, the Joint Status Report submitted to the Court on January 13 (Dkt. 111) did not reflect a proposed deadline for the Government to complete the AR.

On January 15, AWS requested via email that the Government explain when it intended to produce those documents requested by AWS to complete the record to which the Government did not object, and informed the Government that AWS was preparing a Motion to Complete the Record. AWS also requested that the Government and Microsoft inform AWS whether either party intended to oppose the Motion. The Government responded by email on January 16, claiming that the process to "identify, collect, and process additional documents that may properly be part of the administrative record" was "time consuming," and that the Government would "work as expeditiously on this matter as is practicable," but did not commit to a date by which it would complete the record; did not identify those requests for completion to which it intended to respond; and did not explain why it had not included these documents in the AR in the first instance.

On January 16, AWS informed the Government that it intended to file its Motion to Complete the Record the following day if there were requested documents that the Government would refuse to produce as part of the AR, and asked that the Government identify which

documents it did not intend to produce. Only when AWS provided the Government and Microsoft a copy of its ready-to-file Motion to Complete the Record on January 17 to determine whether the parties would oppose the motion did the Government respond and finally "provide some information on items [the Government does] intend to file as properly part of the administrative record." Specifically, the Government stated that it intended to produce the following documents requested by AWS in its January 9 request and draft motion:

- Additional peer review documents that were excluded from the AR;

- A memorandum for record ("MFR") relating to Government Furnished Property that was excluded from the AR;

- The documents listed in the "References" section of the Cyber Security Plan at AR Tab 2, including one classified document;

- A corrected version of AR Tab 418;

- Email attachments related to Evaluation Notices that were excluded from the AR;

- Attachments to the Initial Proposal Review ("IPR") Price Evaluation Board ("PEB") memorandum at AR Tab 337 that were excluded from the AR;

- "Some additional documents related to meetings with the Secretary of Defense that were inadvertently excluded from the AR;"

- "Some emails from DOD to AWS that were inadvertently excluded from the AR;"

- Native Excel versions of spreadsheets included in the AR in PDF format; and

- An MFR regarding "Justification for Factor 8," dated October 16, 2018, which was excluded from the AR.

The Government also confirmed that some documents requested by AWS did not exist, and represented that two documents referenced in the existing AR materials were identified in error in the existing AR because there were typos in the dates.

Despite having had weeks to compile the AR (even months, given the likelihood of a bid protest regardless of the award outcome in this procurement), the Government did not commit to

a date certain by which it planned to produce these "inadvertently" omitted materials, stating instead that it "intend[s] to collect and process all of these documents and file them with the Court together, with copies to the parties." Furthermore, the Government did not explain why it delayed in identifying the requested documents it planned to produce until the eve of AWS's filing of a Motion to Complete the Record, or why it was unable to produce them promptly in response to AWS's requests. As of this filing, the Government has not produced *any* of the requested materials to complete the AR.

But what is more noteworthy than the Government's avoidance of AWS's requests to complete the record are the categories of documents that the Government indicated it does *not* plan to include in the AR.[4] These documents, which lie at the core of the materials considered and relied upon by the Department of Defense in its evaluation and award determination, compel AWS to avail itself of the Court's intervention.

## LEGAL STANDARD

"A complete administrative record is the predicate to meaningful and effective judicial review." *Comint*, 100 Fed. Cl. at 168. A complete record is one that "contains the information relied upon by the agency as it made its decision, as well as documentation of the agency's decision-making process." *Kerr Contractors, Inc. v. United States*, 89 Fed. Cl. 312, 335 (2009), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010).

Although an agency may "exercise some judgment in furnishing the court with the relevant documents," an agency may not omit from the AR materials that would "preclude the substantial

---

[4] Whether calculated or careless, the Government's failure to produce a complete administrative record and subsequent delay in completing the record when that failure was brought to its attention will require AWS to brief, and the Court to decide, the upcoming motions reflected in the Court's order dated January 15, 2020 (Dkt. 115) upon an incomplete record.

inquiry and thorough, probing, in-depth review the court must perform in bid protests." *Comint*, 100 Fed. Cl. at 166 (citing *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997)) (internal quotation marks omitted). Thus, "[a]n agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed." *Id.* at 168.

This Court's rules include a list of "core documents" that presumptively qualify for inclusion in the AR. *See* Appendix C ¶ 22, Rules of the United States Court of Federal Claims; *see also Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 303 (2013). But as the Court stated in its orders on November 26 and December 13, 2019, the list of documents at Appendix C "is not exhaustive," and "[t]he administrative record *must* include all materials developed and considered by the government in making its award decision. . . . the record *should include* any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and made through Slack channels and the like." (Dkt. 15 at 2 (emphasis added); Dkt. 55 at 2 (emphasis added).)

Additionally, "[i]nclusion of documents supporting the decisions of subordinate evaluators is particularly important when the SSA bases the procurement award" on the assessments of those evaluators, "rather than the SSA's own review of the proposals." *Tauri Grp., LLC v. United States*, 99 Fed. Cl. 475, 481 (2011). In this case, the SSA "consider[ed] ... the [SSEB]'s evaluation of technical proposals, the [PEB]'s evaluation of price proposals, and the [SSAC]'s Comparative Analysis Report and Recommendation," and was "thoroughly briefed by the Procuring Contract Officer (PCO), SSEB, PEB, and SSAC." AR Tab 459 at 176409. In turn, the SSEB and SSAC relied upon the evaluation ratings and supporting rationale of the TEB. *See* AR Tab 456 at 176366; AR Tab 457 at 176396. Therefore, the AR should include all of these materials.

## ARGUMENT

As cherry-picked by the Government, the AR is incomplete and lacks critical information that was available to and considered by DoD during the procurement process. The absence of these materials is evident upon a facial review of the existing AR. As described below and detailed in AWS's January 9 request to the Government, the AR is missing broad categories of materials, including documents relating to the role of the Office of the Secretary of Defense in the procurement process, DoD's planning for the JEDI procurement, and materials relating to the JEDI Cloud proposals and their evaluations. These materials—many of which are *specifically referenced* in documents the Government agrees are properly in the AR—should already have been included in the record to ensure that it fully reflects the bases for the DoD's award decision and the scope of the decision-making processes, as a complete AR is essential to "meaningful and effective judicial review." *Comint*, 100 Fed. Cl. at 168.

**A.    Materials Related to the Involvement of the Office of the Secretary of Defense in the JEDI Procurement Process**

    *1.    "Read Ahead" Memoranda, Agendas, Notes, Transcripts, and Other Materials Relating to Informational Meetings with Secretary Esper and/or the Office of the Secretary of Defense.*

The AR indicates that members of the Source Selection Team and representatives from the office of the DoD Chief Information Officer met with Secretary of Defense Mark T. Esper on multiple occasions during the procurement process, including on July 29, August 23 and 29, and September 10, 16, and 26, 2019. *See* AR Tab 462 at 176426. In addition, the Deputy Secretary of Defense met with the DoD Chief Information Officer on October 7, 2019, to discuss the JEDI Procurement. *Id.* Although the AR includes "Read Ahead" memoranda and/or presentations for the meetings on July 29 and September 10, 16, and 26 (*see* AR Tabs 335, 439, 440, 453), the AR does *not* include any such materials for the critically important August 23 and 29, or October 7

meetings. Additionally, several of the attachments from the "Read Ahead" memoranda were not produced in the AR. *See, e.g.*, AR Tab 335 (missing Attachments B and C); AR Tab 439 (missing Attachments A and B); AR Tab 453 (missing Attachment E).

Although the Government has finally committed to provide, at some undetermined date, "[s]ome additional documents related to meetings with the Secretary of Defense that were inadvertently excluded from the AR," AWS requests that the Court order the Government to include *all* such memoranda, agendas, notes, transcripts, and other documents relating to these meetings between the Source Selection Team, the DoD Chief Information Officer, the Deputy Secretary of Defense, and/or Secretary Esper. These materials will facilitate effective judicial review by ensuring the AR captures the nature of involvement of the Office of the Secretary of Defense and their impact on DoD's decision-making process.

### 2. *Materials Concerning the Role of Stacy Cummings, the Principal Deputy Assistant Secretary of Defense, Acquisition Enablers, Relating to the JEDI Contract.*

The AR is also missing documents regarding the role of Ms. Stacy Cummings, Principal Deputy Assistant Secretary of Defense, Acquisition Enablers, in the JEDI Contract procurement process prior to her recusal on September 27, 2019. *See* AR Tab 454.

In particular, the AR does not contain any emails or other communications reflecting Ms. Cummings's role in the procurement. The Contracting Officer's "No Impact" assessment memorandum indicates that the Contracting Officer reviewed communications between Ms. Cummings and the Source Selection Team relating to the JEDI Cloud procurement. *See, e.g.*, AR Tab 460 at 176420–23. Many of these communications—such as a September 13, 2019, email from the SSEB chairperson to Ms. Cummings "concerning the potential options to be presented to Secretary Esper," an "Acquisition Strategy" meeting held on September 18, and meetings held on September 23 and 26, 2019 with multiple members of the Source Selection Team "to discuss the

options to be presented to Secretary Esper"—took place during the course of the procurement, reflect DoD's decision-making process, and were relied upon by the Contracting Officer in her memorandum, yet were not included in the AR. *See id.* at 176421.

The Government did not indicate its intent to provide any additional documentation related to Ms. Cummings' involvement in the JEDI procurement, despite its clear consideration by the Contracting Officer. *See* AR Tabs 454, 460. Accordingly, AWS requests that the Court order that these communications involving Ms. Cummings, including any documents reflecting these communications (such as agendas, "Read Ahead" memoranda, notes, transcripts, meeting minutes, and presentations), be added to the AR to ensure a complete record that reflects the participation of Ms. Cummings and the bases for the Contracting Officer's "No Impact" assessment.

### 3. *Materials Relating to the Recusals of Secretary Esper and Ms. Cummings.*

While the AR contains the recusal letters from Secretary Esper and Ms. Cummings (*see* AR Tabs 454, 458), it does *not* reflect any other documents concerning the transmittal or receipt of those memoranda. By including these recusal letters in the AR, the Government acknowledges that the recusal of these individuals is relevant to DoD's considerations and decision-making for JEDI Contract. However, absent a full record regarding the circumstances leading to and following these recusals, the AR will not fully capture circumstances surrounding the recusals and their effects on DoD's decision-making. And despite the acknowledgement that these recusals constituted part of DoD's decision making process by virtue of their inclusion in the initial, deficient AR, the Government did not state that it would produce any of these requested documents. AWS therefore requests that the Court order the Government add all materials concerning these individuals' recusals to the AR.

4.   **Materials Relating to Meetings and a Presentation to DoD Leadership that Occurred After September 27, 2019.**

The AR indicates that "[r]epresentatives" from the DoD Chief Information Officer, the Office of the Under Secretary of Defense for Acquisition & Sustainment, the Cloud Computing Program Office, the Office of General Counsel, "and others" "continued to have meetings to discuss the options and PowerPoint to present to Department leadership after September 27, 2019." AR Tab 460 at 176422. The AR does not contain any materials relating to these meetings or the PowerPoint presentation that was presented to senior DoD leadership, even though these meetings and presentations are direct communications relating to the JEDI procurement decision involving DoD leadership. The Government's January 17 statement that it would produce "[s]ome additional documents related to meetings with the Secretary of Defense" is ambiguous at best as to whether such materials would include those related to this crucial time frame. Therefore, AWS requests that the Court require the Government to produce materials concerning these post-September 27, 2019, meetings be reflected in the AR.

**B.   Materials Related to the JEDI RFP Proposals and the Evaluations Thereof**

1.   **Notes, Transcripts, and/or Records of DoD's Meetings with AWS and/or Microsoft.**

The Government included in the AR audio recordings from one-on-one question and answer sessions that DoD held with AWS, Microsoft, IBM, and Oracle on August 13 and 15, 2018, following the release of the final JEDI RFP. *See* AR Tabs 120, 121, 122, 123. However, the AR references numerous other meetings with offerors (including with Microsoft and AWS on, for example, April 24–26, 29–30; May 2–3, 6–7, 10, 13; July 3, 5, 11–12; and August 6, 14, and 21). *See* AR Tab 343 at 151512. The meeting minutes contained in the AR do not reflect the substance of the discussions in detail (*e.g.*, noting only that "[t]he questions began with Factor 9," and not otherwise summarizing or listing the substance of the questions). The Government's January 17

correspondence did not indicate any intent to produce these materials for inclusion in the AR. Accordingly, AWS requests that the Court order the Government to include in the AR all notes, transcripts, and/or recordings from these meetings, so that the AR can properly reflect what was information was conveyed during these meetings with Microsoft and AWS.

### 2. *Evaluation Notices and Spreadsheets, Offeror Responses, and Related Correspondence.*

The AR contains email communications in which DoD transmitted evaluation notices to AWS and Microsoft. These evaluation notices constitute a critically important part of DoD decision-making and evaluation process because they are the means by which the agency communicated deficiencies identified in its evaluations. Evaluation notices are ordinarily included in the record. Although the Government's AR in this case includes a copy of email communications with the offerors regarding the evaluation notices, the Government did not actually include the evaluation notices that were attached to these email communications. *See, e.g.*, AR Tab 343 at 151547, 151559, 151565, 151566, 151594, 151597, 151601, 151602, 151604, 151615, 151619, 151625, 151627, 151635, 151637, 151660, 151666 (referencing email attachments that were not included in AR). By including the evaluation notice email communications in the record, the Government acknowledges that they are appropriately part of the AR. Yet, the Government only stated that it would produce "[e]mail attachments *related to Evaluation Notices* that were inadvertently excluded from the AR"—still declining to state whether it would produce the evaluation notices themselves, or whether it was referencing other email attachments in those communications. AWS accordingly requests that Court order the Government to produce the entire documents (including all missing attachments, in native format where applicable), and any related correspondence, so that the AR can fully reflect the content of these evaluation notices and discussions thereof.

3.    ***Responses to AWS Emails Asking Clarifying Questions to the Contracting Officer.***

The AR includes multiple emails containing clarifying questions from AWS to the Contracting Officer.  For example, the AR contains ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ AR Tab 119 at 8459.  Similarly, the AR also includes ██████████

████████████████████████████████████████████████████████████████

████████████████████████ AR Tab 343 at 151667.  There is no record of any responses from DoD to these emails in the AR.  The Government's January 17 correspondence did not address whether these communications would be included in the "emails from DOD to AWS that were inadvertently excluded from the AR" that it committed to produce.  Therefore, AWS requests that the responses be included in the AR so that the record can fully reflect the information provided to AWS relating to the JEDI RFP.

4.    ***Materials on Any Platform (e.g., Email, Slack, Google Drive, Google Docs, Google Groups, Google Hangouts) Related to the JEDI Source Selection or Proposal Evaluations, as Pertaining to AWS and/or Microsoft.***

The Court's orders dated November 26 and December 13, 2019, expressly state that the AR should "include any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." (Dkt. 15 at 2; Dkt. 55 at 2.)  The AR, however, does not include all these materials.  To the contrary, it appears that the Government included in the AR only internal Slack messages from September to October 2017 that were previously included in the administrative record from the pre-award bid protest of the JEDI procurement in *Oracle America, Inc. v. United States*, No. 18-1880 (Fed. Cl. July 26, 2019).  *See* AR Tab 47; Dkt. 107-1.  This extremely limited date range from the *Oracle* pre-award bid protest does not overlap with *any* of the issues raised in

14

AWS's bid protest, which challenges DoD's source selection following the issuance of the final JEDI RFP in July 2018. *See* AR Tab 1. Similarly, the Government included internal email exchanges related only to the Contracting Officer's Procurement Integrity Act/Organizational Conflict of Interest investigations into DoD employees who later sought employment with AWS. The Government produced none of the internal DoD emails related to the JEDI source selection evaluation process or award decision, and even when confronted with this glaring omission from the AR, did not agree to produce these materials to complete the AR.

By including only those Slack messages and internal email communications reflected in the Oracle pre-award protest, the Government has attempted to satisfy only its obligations pursuant to Appendix C of the Rules of the United States Court of Federal Claims. Appendix C ¶ 22(u), Rules of the United States Court of Federal Claims (including as "core documents relevant to a protest" "the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement"). However, the Government plainly ignored the Court's order that the "email communications and communications made through Slack channels and the like" that "reflect[] factors considered in the agency's decision-making process" also be included in the AR.

The existing AR is also clear that such communications exist. For example, the AR references two Slack channels related to the JEDI procurement ▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬. *See* AR Tab 47a at 2901, 2930, 2973; AR Tab 221 at 58699; AR Tab 242. However, the AR does not contain communications from these Slack channels during the relevant time period when DoD was evaluating the offerors' proposals, or indeed any time after October 2017. Similarly, the AR references a Google Group entitled ▬▬▬▬ which one would expect to contain emails, posts, and other communications among the Source Selection

Team relating to the JEDI RFP. *See* AR Tab 343. Again, the AR does not include materials from this Google Group.

The omission of these materials is particularly troubling given the ubiquity with which the Source Selection Team used these platforms for substantive communications relating to the JEDI procurement. DoD's Defense Digital Service expressly "wanted all items related to the JEDI Cloud effort to be developed and contained in a collaborative but controlled environment," such as Slack and Google Drive. AR Tab 221 at 58699. The Government cannot simply re-produce the same set of Slack and email communications that it provided in the *Oracle* litigation to satisfy its obligations in this case, which addresses entirely different issues from an entirely different time period, and the re-production of which does not comply with this Court's orders about the contents of the AR. It is troubling that so few materials from these platforms have been included in the AR, and AWS requests that the Court require the inclusion of materials on these platforms that reflect DoD's decision-making process from July 2018 to October 2019, including any indices or logs that track the contents hosted on these platforms, into the AR.

### 5. *Drafts and Workpapers Relating to the Demonstration Evaluations, Factor Consensus Evaluations, Price Evaluations, SSEB Report, PEB Report, SSAC Report, and/or SSDD.*

The AR does not include any drafts or workpapers relating to the evaluations and reports by the Source Selection Team, even though such materials reflect the factors DoD evaluators considered in their decision-making. *See Tauri Grp.*, 99 Fed. Cl. at 481–82 (holding that evaluator worksheets "constitute the analysis underlying the determinations" and "should be added to the administrative record to facilitate effective review"). The Government's January 17 correspondence indicated that it does not intend to produce these materials. These materials are especially important in this case, which involves credible and well-grounded allegations of bias and bad faith, because the drafts and workpapers will show how the views and conclusions of the

evaluators changed in response to the ongoing undue influence that was imparted on them throughout the procurement process. The evaluators' final reports will necessarily not reflect or overtly evidence the effect of the undue influence on the decision-making process. However, the drafts and workpapers that precede the final, sanitized versions of these evaluations and reports— and the changes they reflect over time—will show the actual factors that influenced their decision-making.

The Government also cannot invoke the deliberative process privilege to exempt these materials from the AR. The deliberative process privilege does not apply automatically. Rather, it is a "qualified" privilege that depends on the weighing of competing interests. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Thus, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Id.* at 738 (citing *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)) (internal quotation marks omitted). Here, AWS's bid protest raises credible, well-grounded allegations regarding bias and bad faith that comprised the integrity of DoD's award decision. Because these allegations relate to government misconduct, the Government cannot use the deliberative process privilege to shield these highly relevant materials from the AR, and any interests in confidentiality to the public are amply protected by the Protective Order approved by this Court (*see* Dkt. 109).

### 6.    *Unedited Video and Audio of the Factor 8 Demonstrations.*

AR Tab 306 states that the AR's video and audio files (AR Tabs 291–98) have been edited to remove content from before the start of the demonstration session, break periods, scenario change-overs, and after the vendor representatives had vacated the demonstration space. *See* AR Tab 306 at 64382. The Government did not address whether it would produce these unedited video

and audio files in its January 17 correspondence.   AWS requests that the full, unedited demonstration video and audio files be included in the AR, as the full video and audio records are necessary to understand the context of the demonstrations and the evaluators' immediate feedback and assessment of the offerors' performance during the demonstrations.

### 7.   *Microsoft Factor 8 Demonstration Logs.*

In another example of the Government's failure to produce all required documentation in the AR in relation to the Factor 8 demonstrations, the AR does not include the logs recorded during the demonstrations.  For example, one of the tests performed during the Factor 8 demonstrations required each offeror to demonstrate their ability to log and audit certain activities.  *See* AR Tab 287 at 64178–81.  ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████   However, the logs are conspicuously absent from the produced AR, and the Government did not address whether it would produce these logs in its January 17 correspondence.  The withheld Factor 8 demonstration logs should be included in the AR because they constitute information relied upon by the agency in its proposal evaluations and are necessary to fully understand the extent to which the two offerors successfully completed the tests.

## CONCLUSION

This bid protest must be adjudicated on a level playing field.  The Government cannot comply with its duties by compiling and making available an incomplete and selective set of materials.  It must produce a complete AR.  And it must do so promptly.  AWS respectfully requests that the Court direct Defendant to complete the AR with the documents described above and those documents the Government stated it would include in its January 17 correspondence, all

18

of which are necessary for the Court to fully and fairly adjudicate this case on a complete record,

no later than Tuesday, January 28, 2020.

Dated: January 20, 2020                    Respectfully submitted,

                                           By: *Kevin P. Mullen*
                                           _____
                                               Kevin P. Mullen
                                               MORRISON & FOERSTER LLP
                                               2000 Pennsylvania Ave., NW
                                               Washington, DC  20006-1888
                                               Telephone: 202.887.1500
                                               Facsimile: 202.887.0763

                                               *Attorney of Record for Plaintiff*
                                               *Amazon Web Services, Inc.*

*Of Counsel:*

J. Alex Ward                               Andrew S. Tulumello
Daniel E. Chudd                            Daniel P. Chung
Sandeep N. Nandivada                       GIBSON, DUNN & CRUTCHER LLP
Caitlin A. Crujido                         1050 Connecticut Ave., NW
Alissandra D. Young                        Washington, D.C.  20036-5306
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW                 Theodore J. Boutrous, Jr.
Washington, DC  20006-1888                 Richard J. Doren
                                           Eric D. Vandevelde
                                           GIBSON, DUNN & CRUTCHER LLP
                                           333 South Grand Ave.
                                           Los Angeles, CA  90071-3197