FINAL REDACTED VERSION

# APPENDIX

*Amazon Web Services, Inc. v. United States*

Case No. 19-cv-01796

Judge Campbell-Smith

█████████████

# EXHIBIT 1

**SUBJECT: JEDI Activities During Pendency of Proposed Protest**





# EXHIBIT 2

**Nandivada, Sandeep N.**

| | |
|---|---|
| From: | Schiavetti, Anthony F. (CIV) <Anthony.F.Schiavetti@usdoj.gov> |
| Sent: | Saturday, January 11, 2020 4:27 PM |
| To: | Mullen, Kevin P.; Robert S. Metzger (RMetzger@rjo.com) |
| Cc: | Nandivada, Sandeep N.; Jeffery M. Chiow (JChiow@rjo.com); Neil O'Donnell; Bezak, Reta E. (CIV) |
| Subject: | AWS v. US - Proposed Revised Schedule |

- External Email -

Kevin and Bob,

Pursuant to our conversation yesterday, below I provide some additional information to flesh out what we see as the best way forward for this litigation. As we discussed, we see a need to decouple briefing on any preliminary injunctive relief from briefing of issues related to any supplementation of the administrative record and our motion to dismiss. We propose a schedule that should prove workable for the parties and the Court, wherein we would move up briefing on any preliminary injunction and, after permitting some time for the Government to correct the administrative record, resume briefing on the other issues. In the event that AWS agrees to this schedule - including an agreement not to seek a TRO, which, as we have expressed, AWS has proposed to do on what we see as an unreasonably and unjustifiably expedited timetable – the Government will agree to a limited, temporary stay of most activities under the JEDI contract until the end of February to allow the Court time to decide whether to grant preliminary injunctive relief with the benefit of briefing on the issue. Our proposed schedule follows, as well as the additional information you requested regarding the outlines of the proposed partial, temporary stay:

| | |
|---|---|
| **January 24, 2020** | Defendant shall **CORRECT** the administrative record |
| **January 29, 2020** | Plaintiff shall **FILE** its **motion** for a preliminary injunction |
| **January 31, 2020** | Plaintiff shall **FILE** its **motion** to supplement the administrative record and/or request discovery |
| **February 7, 2020** | Defendant and defendant-intervenor shall **FILE** their partial **motions** to dismiss |
| **February 12, 2020** | Defendant and defendant-intervenor shall **FILE** their **responses** to the motion for preliminary injunction |
| **February 14, 2020** | Defendant and defendant-intervenor shall **FILE** their **responses** to plaintiff's motion to supplement the administrative record and/or request discovery |
| **February 19, 2020** | Plaintiff shall **FILE** its **reply** in support of its motion for a preliminary injunction |
| **February 21, 2020** | Plaintiff shall **FILE** its **reply** in support of its motion to supplement the administrative record and/or request discovery |
| **February 28, 2020** | Plaintiff shall **FILE** its **response** to defendant and defendant-intervenor's partial motions to dismiss |

**March 6, 2020**          Defendant and defendant-intervenor shall **FILE** their **replies** in support of their partial motions to dismiss

Two notes on the schedule. First, in the JSR, we'd ask the Court to decide on AWS's motion for a preliminary injunction by February 28, 2020, after which, in the absence of an injunction, full JEDI activities would resume. Second, as we discussed on the call yesterday, in agreeing to the proposed schedule both the Government and Microsoft would expressly reserve their rights to object to the timeliness of AWS's proposed motion for a preliminary injunction.

Regarding performance under the JEDI contract during February, we can provide the following information. In the absence of any stay or injunction, the Government will be in a position to move forward broadly with performance of the contract, onboarding dozens of organizations in short order and performing a wide range of supporting and other activities. This is consistent with the urgency of the JEDI requirement in support of national security, which AWS repeatedly asserted in prior litigation, despite its incongruous denials thereof in this case. As we have stated, however, we think it serves the interests of all parties, the Court, and the public to permit briefing of the issues at stake before asking the Court to make a highly consequential decision on injunctive relief, however temporary. As such, the Government is willing to stay much of its planned performance under the JEDI contract for the limited period of February 11, 2020, to February 28, 2020, to permit the Court adequate time to decide whether to grant preliminary injunctive relief.

During this time period, however, certain JEDI activities must continue, to avoid unacceptable harm to national security interests by compounding delays that will set the Government back by a period longer than the number of days lost might suggest. These activities broadly fall into two categories – 1) further preparatory activities in the nature of training and support engagement, and 2) onboarding of a limited set of organizations, called "pilot users," for the purpose of validating and optimizing the process for onboarding organizations onto the JEDI cloud.

As to the first category, the preparatory activities discussed would be of a piece with activities currently ongoing, in that they would all include activities that would have to be entirely repeated with AWS in the event that any recompete results in award to AWS and, thus, no harm to AWS would result. The Government anticipates that activities would be pursuant to a limited number – perhaps 15-20 – of task orders issued pursuant to CLIN 3 of the JEDI contract. Activities would include training, support, advisory services, and similar services.

As to the second category, it is the Government's current intent to onboard a large number of pilot users in February, in support of an aggressive timeline for rolling out the JEDI cloud throughout the DOD. Pursuant to the proposed limited, temporary stay, however, the Government is willing to significantly reduce the number of pilot users onboarded to the JEDI cloud in February. The Government anticipates that this effort would entail pilot users placing orders in the provisioning tool, being provisioned an account in JEDI, and beginning to use, on a limited basis, JEDI cloud services. The Government expects that the pilot users' experience may be "clunky" as bugs are ironed out. Critically, as with the preparatory activities discussed above, even if AWS were to secure award in the future pursuant to a recompete, DOD would have to repeat all of these pilot user trial-and-error and validation activities with AWS, rendering questionable any harm to AWS resulting from these activities proceeding.

It is critical that some pilot users are onboarded in February, to permit lessons learned in support of validating and optimizing the onboarding process. Six proposed pilot users specifically stand out as critical to move forward on an expedited timetable: █████████████████████████████████████████████████████████████
████████████████████████████ Additional information provided by DOD on the specific needs of each listed user follows.

As we discussed yesterday, please discuss with your clients and let us know your positions no later than Monday morning.

████████████████████████████████████
████████████████████

Tony







Anthony F. Schiavetti
Trial Attorney
U.S. Department of Justice
Civil Division - Commercial Litigation Branch

P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7572
Fax : (202) 307-0972
anthony.f.schiavetti@usdoj.gov

For overnight mail, please use:
1100 L Street, N.W., Room 10012
Washington, D.C., 20005

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| AMAZON WEB SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. <br><br> and <br><br> MICROSOFT CORPORATION, <br><br> Defendant-Intervenor. | Case No. 19-cv-01796 <br><br> Judge Campbell-Smith |

**DECLARATION OF JENNIFER CHRONIS**

I, Jennifer Chronis, declare as follows:

1. I am the General Manager for U.S. Department of Defense ("DoD") at Amazon Web Services ("AWS"). I have been employed in this capacity since April 2016. As General Manager, my job responsibilities include, but are not limited to, all facets of the AWS business with DoD, to include overall strategy, sales, business capture, technical support, marketing, and customer engagement. I am also a retired U.S. Army Lieutenant Colonel, with over 20 years of service between Active Duty and the Army Reserve.

2. Due to my role and responsibilities at AWS, I am acutely aware of, and involved in, AWS's delivery of cloud services to Government customers. I am deeply familiar with AWS's current contract vehicles with DoD, its Government customers, and the Joint Enterprise Defense

Infrastructure ("JEDI") procurement for which AWS competed but did not win. I also am familiar with the general Government cloud market, including ongoing cloud contracts not held by AWS.

**Continued Performance of the JEDI Contract
Will Result in Immediate and Irreparable Harm to AWS**

3. AWS would suffer irreparable harm if DoD and Microsoft continue performance of the JEDI Contract during the pendency of AWS's bid protest, because AWS could lose the opportunity to perform the JEDI Contract, earn the revenue and profits resulting from contract performance, ensure its technology is widely used by DoD, and gain additional experience working with the Government.

4. The JEDI Contract is a 10-year program that will transform DoD's cloud architecture and define enterprise cloud for years to come. The winner of this contract will obtain not only an influx of work across DoD as components migrate their data to the JEDI Cloud, but also a competitive advantage for future cloud contracts across the federal government based on the technology developed and lessons learned.

5. Moreover, Microsoft's continued performance of the JEDI Contract would provide Microsoft with an unfair competitive advantage in any recompetition of the JEDI Contract resulting from AWS's protest. Any additional contract performance would give Microsoft access to further non-public information that would allow Microsoft (but not AWS) to better tailor any revised proposal submitted in a JEDI recompetition.

6. AWS has already begun to feel the impact of the JEDI award, ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓. AWS currently has ▓▓▓▓▓▓▓ services pending DISA accreditation at DoD Cloud Computing Security Requirements Guide Impact Levels 4, 5, and 6. Delays in the approval

of these requests prevents AWS from making new services available to DoD customers and prevents AWS from obtaining revenues related to the services, as well as potentially creates an incorrect perception that AWS's security is less than Microsoft's. Additionally, the Army Chief Information Officer/G6 recently directed its Command, Control, Computers, Communications, Cyber, Intelligence, Surveillance and Reconnaissance (C5ISR) team to reprioritize its Cyber Security Service Provider (CSSP) efforts from AWS to Microsoft for Secret workloads. This action has delayed the ability of Army customers to migrate workloads to AWS's existing and accredited Secret region—the only cloud environment currently available to DoD customers for secret level workloads—further impacting AWS's potential revenues.

7. The potential for harm only grows greater if DoD were to begin transitioning workloads ███████████████ to the JEDI Cloud. ███████████████

███████████████ All of these organizations—

3



8. ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### DoD Would Not Suffer Harm From the Imposition of an Injunction

9.  Unlike AWS, DoD would not suffer harm if DoD's and Microsoft's continued performance of the JEDI Contract were enjoined.

10. DoD is currently operating in a multi-cloud environment in which it leverages cloud solutions provided by various government contractors across numerous cloud contracting vehicles. These contracts, collectively and, in some cases, individually, are sufficient to meet DoD's cloud needs. In fact, DoD components are acquiring all of these cloud computing requirements today, and can continue to satisfy all of their cloud needs for the immediate future, from their existing contracts. These contracts include (but are not limited to) the following:

   a. Air Force Cloud Hosted Enterprise Services: This contract is available to the Air Force and provides access to Microsoft O365 cloud services in sensitive, but unclassified environments.

   b. Air Force Cloud One: This contract is available to the Air Force and Army and provides cloud broker services that allow access to cloud services hosted by Microsoft and AWS.

   c. Air Force Network-Centric Solutions-2: This contract is available to the Air Force and provides access to a wide-variety of IT services and solutions, including cloud services.

    d. <u>Air Force A1 Virtual Data Center Initiative</u>: This contract is available to the Air Force and provides cloud hosting managed services, including refactoring, systems support, infrastructure services, and cloud hosting for controlled unclassified data.

    e. <u>Army & Air Force Exchange Services ("AAFES") Discovery, Design, Development & Implementation</u>: This contract is available to AAFES and provides access to discovery, design, and implementation services focused on the assessment and migration of existing systems and applications to the cloud.

    f. <u>Army Cloud Computing Enterprise Transformation ("ACCENT")</u>: These Basic Ordering Agreements are available DoD-wide and provide access to cloud hosting and cloud transition support. AWS and Microsoft both hold ACCENT basic ordering agreements.

    g. <u>Army Information Technology Enterprise Solutions - 3 Services</u>: This contract is available DoD-wide and provides access to a full range of IT services and solutions, including cloud hosting services, IT education and training, cyber security services, and network systems operations and maintenance.

    h. <u>ARL SUNet Infrastructure</u>: This contract is available DoD-wide and provides access to a variety of IT and enterprise services, including cloud services.

    i. <u>C2S</u>: This contract is available to all DoD intelligence agencies and provides access to classified and unclassified cloud services and training.

    j. <u>DISA ENCORE III</u>: This contract is available DoD-wide and provides access to global IT solutions, services, and support, including cloud services and cloud support.

    k. <u>Defense Logistics Agency J6 Enterprise Technology Services</u>: This contract is available DoD-wide and provides access to a full range of IT services, including cloud services and cloud support.

6

l.  <u>DISA Systems Engineering, Technology, and Innovation Contract</u>: This contract is available DoD-wide and provides access to critical engineering expertise to research, design, develop, integrate, and optimize DoD IT capabilities, systems, and solutions, including through the use of cloud services.

m.  <u>DoD Enterprise Software Initiative</u>: This contract is available DoD-wide and provides access to enterprise services to assist with transitioning to the Microsoft cloud.

n.  <u>GSA IT Schedule 70, Special Item Number 132-40</u>: This contract is available DoD-wide and provides access to centralized, streamlined cloud computing services, including cloud services for Secret information through AWS's GSA Schedule IT-70 contract, and cloud support services.

o.  <u>milCloud 2.0</u>: milCloud 2.0 is available DoD-wide and provides access to on-premises cloud services that feature an integrated suite of capabilities designed to drive agility into the development, deployment, and maintenance of secure DoD applications.

p.  <u>NASA SEWP</u>: This contract is available DoD-wide and provides access to IT hardware, software, and communications products, including cloud services.

q.  <u>NIH CIO-SP3</u>: This contract is available DoD-wide and provides access to a full range of IT services, including cloud services and cloud support services.

r.  <u>NIH Information Technology Acquisition and Assessment Center CIO-CS</u>: This contract is available DoD-wide and provides access to IT commodity products and commodity-enabling solutions, including cloud services and cloud support services.

s.  <u>NCCS</u>: This contract is available to the Navy and provides cloud broker services that allow access to cloud services and cloud support services.

t.  <u>Navy SeaPort – Enhanced</u>: This contract is available to the Navy and provides access to support services in 22 functional areas including Information System Development, Information Assurance, and IT support.

u.  <u>Navy Space and Naval Warfare Systems Command Business and Force Support Pillar</u>: This contract is available to the Navy and provides access to an entire spectrum of services and solutions associated with the full system lifecycle support, including research, development, test, evaluation, production, and fielding of sustainable, secure, survivable, and interoperable Command, Control, Communications, Computers, Combat Systems, Intelligence, Surveillance, Reconnaissance ("C5ISR"), Information Operations, Enterprise Information Services ("EIS"), and Space capabilities.

*   *   *

Under penalty of perjury under the laws of the United States, the foregoing is true and accurate to the best of my knowledge.

Dated:   January 22, 2020        Respectfully submitted,

By: *Jennifer C. Chronis*
Jennifer Chronis