# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

AMAZON WEB SERVICES, INC.,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,
by and through the U.S. Department of
Defense,

        Defendant,

   and

MICROSOFT CORPORATION,

        Defendant-Intervenor.

Case No. 19-cv-01796

Judge Campbell-Smith

---

**BRIEF OF PROTECT DEMOCRACY AS *AMICUS CURIAE* SUPPORTING
PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

KRISTY PARKER
*Counsel of Record for* Amicus Curiae
The Protect Democracy Project, Inc.
2020 Pennsylvania Avenue, NW, #163
Washington, D.C. 20006
Telephone: (202) 579-4582
kristy.parker@protectdemocracy.org

BENJAMIN L. BERWICK
The Protect Democracy Project, Inc.
15 Main St., Suite 312
Watertown, MA 02472
ben.berwick@protectdemocracy.org

JOHN T. LANGFORD
The Protect Democracy Project, Inc.
555 W. 5th St.
Los Angeles, CA 90013
john.langford@protectdemocracy.org

STEVEN A. HIRSCH
Consulting Attorney
The Protect Democracy Project, Inc.
2120 University Avenue
Berkeley, CA 94704
steve.hirsch@protectdemocracy.org

**Table of Contents**

TABLE OF AUTHORITIES ...................................................... III

STATEMENT OF INTEREST .................................................. 1

INTRODUCTION AND SUMMARY ......................................... 2

QUESTION PRESENTED ...................................................... 7

ARGUMENT ..................................................................... 7

I.    Under the governing discovery standard, the President's pattern of violating his Article II duties and abusing his Article II powers by retaliating against Amazon and others constitutes well-founded allegations of bad faith and bias. ........................................................................... 7

II.    President Trump's pattern of bad-faith interventions in federal agency decisions to advance his personal interests, in violation of the Constitution's Faithful Execution Clause, strengthens the case for discovery here. .................................................................................................. 8

    A.    Amazon has alleged a compelling pattern of self-interested interference by President Trump in the functions of federal agencies. ............................................................. 8

    B.    President Trump's interference in federal agencies violates his Article II duty to take care that the laws are faithfully executed and thus constitutes "bad faith." ................................... 11

        1.    Article II does not grant the president unlimited authority over federal agencies. ........ 11

        2.    The president's Article II authority over federal agencies is limited by other provisions of the Constitution, including the Bill of Rights, and by laws passed by Congress. ............. 12

III.    President Trump's pattern of retaliating against his perceived media critics and opponents is an abuse of his Article II powers and strengthens the case for discovery here. ........................ 14

    A.    President Trump has engaged in an ongoing pattern of threats and retaliation against his critics to punish the content of their speech. ............................................................. 15

    B.    President Trump's threats and actual use of the machinery of government to retaliate against his critics are abuses of power that violate his Article II duty to uphold the First Amendment. ................................................................................................. 15

CONCLUSION .................................................................. 18

# Table of Authorities

## CASES

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)............................................. 16

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)................................................ 17

*Connick v. Myers*, 461 U.S. 138 (1983)........................................................... 16, 17

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) ............................................ 7

*Dorsett v. Cty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ......................................... 16, 17

*Garrison v. State of La.*, 379 U.S. 64 (1964) ..................................................... 18

*Grosjean v. Am. Press Co.*, 297 U.S. 233 (1936) .................................................... 5

*Hartman v. Moore*, 547 U.S. 250 (2006) .......................................................... 15

*Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412 (2016) ..................................... 15

*L-3 Commc'ns Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347 (2010)...................... 7

*Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945 (2018) ................................... 16

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)................................................. 8

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)................................................ 5, 16

*Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003)................................................. 16

*Perry v. Sindermann*, 408 U.S. 593 (1972)........................................................ 16

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000).............................................. 13

*Wilburn v. Robinson*, 480 F.3d 1140 (D.C. Cir. 2007) ............................................ 17

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ......................................................... 13

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) .................................... 13

*Zherka v. Amicone*, 634 F.3d 642 (2d Cir. 2011) ................................................. 17

## STATUTES

41 U.S.C. § 3301, *et seq*......................................................................... 13

48 C.F.R. §§ 1.000, *et seq.* ..................................................................................... 14

**OTHER AUTHORITIES**

Am. Compl. for Declaratory Injunctive Relief, PEN Am. Ctr., Inc. v. Trump, No. 18-cv-9433
(S.D.N.Y. Feb. 6, 2019) ................................................................................ 1, 5, 15

Andrew Kent et al., *Faithful Execution and Article II*, 132 Harv. L. Rev. 2111 (2019) ............. 12

Br. of Former Dep't of Justice Officials as *Amici Curiae* in Supp. of Neither Party, United States
v. AT&T Inc., No. 17-cv-2511 (D.D.C. Mar. 8, 2018) ............................................... 1

Br. of Protect Democracy Project, Inc. as *Amicus Curiae* in Supp. of Neither Party, United States
v. Saipov, No. 17-cr-722 (S.D.N.Y. Sept. 24, 2018) ................................................. 1

Cong. Research Serv., R45080, *Government Contract Bid Protests: Analysis of Legal Processes
and Recent Developments* (Nov. 28, 2018) .............................................................. 14

The Federalist No. 62 (James Madison) ....................................................................... 12

Gillian E. Metzger, *The Constitutional Duty to Supervise*, 124 Yale L.J. 1836 (2015) .............. 11

Josh Blackman, *The Constitutionality of DAPA Part II: Faithfully Executing the Law*, 19 Tex.
Rev. L. & Pol. 215 (2015) ..................................................................................... 12

Protect Democracy, *No "Absolute Right" to Control DOJ: Constitutional Limits on White House
Interference with Law Enforcement Matters* (Mar. 2018) ............................................ 1, 11, 13

1 Samuel Johnson, A Dictionary of the English Language (1755) .............................................. 12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II ..................................................................................................... 4

## Statement of Interest

*Amicus* Protect Democracy is a nonpartisan nonprofit organization whose mission is to prevent our democracy from declining into a more authoritarian form of government. Protect Democracy has two interests directly relevant to this case: (1) protecting the independence of federal agencies from personal interference and manipulation by the president, which is ensured by the president's duty to "take care" that the laws be "faithfully" executed, and (2) protecting the fundamental democratic right to dissent, which is buttressed by the freedoms of speech and press guaranteed in the First Amendment. Protect Democracy has litigated and advocated extensively to safeguard these key components of a functioning democracy.[1]

Amazon Web Services' ("Amazon") bid protest implicates these issues because of well-founded concerns that the President of the United States — the most powerful person in our government — is using the award of a lucrative cloud computing contract critical to our national security for the purpose of punishing a perceived political enemy and quashing critical news coverage of his administration by a major media company. Protect Democracy takes no position on whether the contract should be awarded to Amazon and sides with neither party to this action,

---

[1] *See, e.g.,* Br. of Former Dep't of Justice Officials as *Amici Curiae* in Supp. of Neither Party, United States v. AT&T Inc., No. 17-cv-2511 (D.D.C. Mar. 8, 2018), *available at* https://protectdemocracy.org/resource-library/document/amicus-political-interference-law-enforcement/; Br. of Protect Democracy Project, Inc. as *Amicus Curiae* in Supp. of Neither Party, United States v. Saipov, No. 17-cr-722 (S.D.N.Y. Sept. 24, 2018), *available at* https://protectdemocracy.org/update/amicus-brief-on-potential-improper-white-house-interference-in-a-death-penalty-charging-decision/; Am. Compl. for Declaratory Injunctive Relief, PEN Am. Ctr., Inc. v. Trump, No. 18-cv-9433 (S.D.N.Y. Feb. 6, 2019), *available at* https://protectdemocracy.org/resource-library/document/pen-america-v-trump-amended-complaint/; Protect Democracy, *No "Absolute Right" to Control DOJ: Constitutional Limits on White House Interference with Law Enforcement Matters* (Mar. 2018), at 17, *available at* https://protectdemocracy.org/resource-library/document/no-absolute-right-control-doj/.

but submits this brief to underscore the constitutionally significant dangers that arise if a federal contract is awarded based on the president's personal preferences.

Specifically, Protect Democracy supports Amazon's motion to supplement the administrative record by taking targeted discovery related to possible interference with the Department of Defense's ("DOD") decision-making process by President Trump and others in the White House. Under the applicable standard, such discovery is appropriate where there are well-founded allegations of bad faith or bias. A president who has abused his power and engaged in unconstitutional conduct has undoubtedly acted in bad faith and with bias — and thus, the unconstitutional nature of his conduct is highly germane to the discovery question now before this Court.

## Introduction and Summary

Amazon is challenging DOD's decision to deny it a multi-billion-dollar cloud computing contract known as JEDI. Amazon's challenge is based in large part on well-founded allegations that DOD's decision to award the contract to Microsoft instead of Amazon was driven by President Trump's animus toward Amazon's owner, Jeff Bezos, and *The Washington Post*, which Mr. Bezos also owns, and that this constitutes both "bad faith" and "arbitrary and capricious" conduct by the government. Compl. ¶¶ 9, 33, 125, 166, 198, 214, 223. The complaint details numerous threats by President Trump to use the machinery of government to harm Amazon by denying the contract at issue here. The complaint likewise recounts numerous statements by President Trump, both before and during his presidency, detailing his dislike of the

*Post*'s coverage of him and his administration, and his view that Mr. Bezos, the *Post*, and Amazon are one and the same, i.e., the "*Amazon Washington Post*."[2]

President Trump's animus and retaliation against Amazon is part of an extensive pattern of conduct in which President Trump has effectively used the levers of government power he oversees to punish his perceived enemies and reward his friends. This pattern of conduct both highlights the significance of Amazon's complaint allegations and lends them even greater credibility.

Amazon is seeking extra-record discovery that would shed light on President Trump's role in DOD's decision-making process to prove that President Trump's threats and animus motivated the award to Microsoft. *Amicus* Protect Democracy submits this brief to support Amazon's discovery motion and to underscore the danger to our constitutional democracy posed by the conduct alleged in the complaint. The conduct alleged by Amazon amounts to well-founded allegations of bad faith and bias — and thus entitles Amazon to discovery — in part because it involves blatant violations of the president's oath office and the Constitution.

If Amazon's allegations are true — and they are at least highly plausible — the President of the United States has interfered in the award of a government contract for the purpose of retaliating against protected speech, quashing critical media coverage, and advancing his personal interests at the expense of the public he serves. In short, these allegations portray a president acting like a king, not the chief executive officer in a democracy. As our Founders knew well, this is a path to tyranny that our Constitution was designed to prevent through, *inter*

---

[2] *See* Jonathan Chait, *Trump's Retribution Against the Washington Post Owner Is His Gravest Abuse of Power*, New York Magazine (Nov. 18, 2019), http://nymag.com/intelligencer/2019/11/trump-amazon-bezos-defense-cloud-washington-post-pentagon-scandal.html; Donald J. Trump (@realDonaldTrump), Twitter (Jan. 20, 2020, 1:48 PM), https://twitter.com/realDonaldTrump/status/1219330940461309952.

*alia*, Article II, which delineates the executive powers of the presidency and imposes on the president the duty to ensure faithful execution of the laws, and through the First Amendment, which protects freedom of speech and the press.[3]

The importance of these two provisions cannot be overstated. Article II imposes on the president a duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. This so-called "Take Care" or "Faithful Execution" Clause is consistent with the president's oath of office, which requires him to "faithfully execute the Office of the President" and includes the duty to "preserve, protect and defend the Constitution" to the best of his ability. *Id.* § 1. Taken together, these provisions command the president to act in good faith as a fiduciary of the government and its agencies, to enforce the laws duly passed by Congress, and to ensure that federal agencies act according to the law rather than the president's own interests and desires. This command necessarily prohibits the president from interfering in the workings of a federal agency for the purpose of rewarding his friends and punishing his perceived enemies — especially if doing so would violate federal law or other constitutional provisions.[4]

One of those constitutional provisions that the president is sworn to uphold is, of course, the First Amendment, which protects the right to dissent. Benjamin Franklin identified freedom

---

[3] *See, e.g.*, The Federalist No. 47 (James Madison) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, selfappointed [sic], or elective, may justly be pronounced the very definition of tyranny."); Ruth Ben-Ghiat, *Trump Is Following the Authoritarian Playbook*, CNN (Jan. 17, 2017), https://www.cnn.com/2017/01/16/opinions/trump-following-authoritarian-playbook-ben-ghiat/index.html; David Frum, *How to Build an Autocracy*, The Atlantic (Mar. 2017), https://www.theatlantic.com/magazine/archive/2017/03/how-to-build-an-autocracy/513872/.

[4] *See* Protect Democracy, *No "Absolute Right" to Control DOJ: Constitutional Limits on White House Interference with Law Enforcement Matters* (Mar. 2018), *available at* https://protectdemocracy.org/resource-library/document/no-absolute-right-control-doj/.

of speech as the "principal pillar"[5] of a free society and the primary bulwark against tyranny. A leader with the "power to punish for words," he wrote, "would be armed with a weapon the most destructive and terrible."[6]

The point of the First Amendment is to protect the public's right to criticize the government — to reflect "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Equally important is the First Amendment's press clause, which protects the freedom of the press in order to allow the public to hold the government to account. Accordingly, our courts have taken a dim view of any government conduct that seeks to restrain criticism of the government or elected officials, or to inhibit the press, which enables criticism to flourish. As the Supreme Court has explained, "[t]he newspapers, magazines, and other journals of the country, it is safe to say, have shed and continue to shed, more light on the public and business affairs of the nation than any other instrumentality of publicity; and since informed public opinion is the most potent of all restraints upon misgovernment, the suppression or abridgement of the publicity afforded by a free press cannot be regarded otherwise than with grave concern." *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936).

This action proceeds against a backdrop in which President Trump has flouted these core principles of democratic government. While the President is free to criticize the press, he is not free to exercise his powers to punish or threaten them. Yet he has repeatedly done just that to

---

[5] Benjamin Franklin, *On Freedom of Speech and the Press*, Pennsylvania Gazette (Nov. 17, 1737).

[6] *Id*. (emphasis omitted).

other journalists, and to media companies and their owners besides Mr. Bezos.[7] At the same time, he has proclaimed that — far from constraining his actions — Article II gives him the power "do whatever I want" with government agencies.[8]

The President is wrong and if he has acted in accordance with his words, as alleged in this case, it is a dangerous abuse of his power. Amazon has plausibly alleged that President Trump interfered in the DOD procurement process to advance his own interests, which would violate his Article II duties under the Faithful Execution Clause. And Amazon has plausibly alleged that President Trump has engaged in a pattern of retaliating against Amazon and *The Washington Post*, which could violate the First Amendment. The President's violations of core constitutional principles threaten the credibility and proper functioning of our democratic government, are unfaithful to his oath of office, and meet the very essence of any legal definition of bad faith. Indeed, such conduct is bad faith of the highest order.

*Amicus* has tremendous respect for civil servants and their dedication to upholding their own oaths of office. But the President's conduct toward Amazon and countless others, and his authoritarian behavior toward government agencies and the press, which mimics the behavior of authoritarian leaders around the world,[9] have raised legitimate questions about whether the contract was awarded based on improper considerations. At the very least, the President has

---

[7] *See, e.g.,* Am. Compl. for Declaratory Injunctive Relief, PEN Am. Ctr., Inc. v. Trump, No. 18-cv-9433 (S.D.N.Y. Feb. 6, 2019), *available at* https://protectdemocracy.org/resource-library/document/pen-america-v-trump-amended-complaint/.

[8] Christina Zhao, *'Article 2' Trends After Trump Falsely Claims It Grants Him Unlimited Powers as President: I Can 'Do Whatever I Want'*, Newsweek (July 23, 2019), https://www.newsweek.com/article-2-trends-after-trump-falsely-claims-it-grants-him-unlimited-powers-president-i-can-do-1450798.

[9] *See* Michelle Goldberg, *The Autocrats' Playbook*, N.Y. Times (Apr. 2, 2018), https://www.nytimes.com/2018/04/02/opinion/trump-autocrat-playbook.html.

created an appearance of bias in the process that must be addressed for the sake of DOD's integrity and public confidence in our democracy.

## Question Presented

In light of Amazon's well-founded allegations of bad faith and bias — allegations that, if proven, would rise to the level of presidential abuse of power under Article II and the First Amendment of our Constitution — should the Court permit targeted supplementation of the administrative record?

## Argument

I.   Under the governing discovery standard, the President's pattern of violating his Article II duties and abusing his Article II powers by retaliating against Amazon and others constitutes well-founded allegations of bad faith and bias.

Discovery is warranted in this case. This is so under the law applicable to a bid protest, which allows supplementing the administrative record where there are "well[-]grounded allegations of bad faith and bias." *See, e.g.*, *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347, 354 (2010); *see also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573–74 (2019).

In determining whether the government has acted in bad faith, the Court can and should take account of the President's ongoing pattern of conduct. The Court should also take account of the fact, as discussed below, that the allegations in Amazon's complaint constitute clear violations of the Constitution. While the question before the Court in this bid protest rests on statutory grounds, constitutional interests are nonetheless pertinent to whether or not the government has acted in bad faith or with bias. As demonstrated, *infra*, if the government denied Amazon a contract because the President interfered in the agency's award process to advance his personal interests, or because of Mr. Bezos's protected speech, it has violated both the Article II

requirement that the president *faithfully* execute the laws, and the First Amendment. And acting in a manner that is *unfaithful* to the president's oath of office is the very essence of "bad faith."

Amazon's request reverberates beyond the decision on which company should win the JEDI contract. Failure to allow discovery in a case where the need is so compelling and the issues at stake are so crucial to the functions of democratic government would be a step toward allowing presidents to abuse their power with impunity. As John Marshall warned, "[t]he government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803).

II.   President Trump's pattern of bad-faith interventions in federal agency decisions to advance his personal interests, in violation of the Constitution's Faithful Execution Clause, strengthens the case for discovery here.

President Trump has engaged in a pattern of unconstitutional conduct that meets the discovery standard in two ways: (1) by demonstrating that the allegations of President Trump's specific actions toward Amazon are well-founded; and (2) by underscoring that his actions constitute the most egregious form of bad faith.

A.   Amazon has alleged a compelling pattern of self-interested interference by President Trump in the functions of federal agencies.

Amazon's complaint alleges that President Trump personally intervened in the JEDI contracting decision to punish Amazon, a perceived political enemy, pointing to voluminous direct evidence of President Trump's animus toward Amazon, Jeff Bezos, and *The Washington Post*. These allegations are sufficiently well-founded standing alone to warrant discovery in this case. But they are buttressed by the fact that President Trump's actions toward Amazon are part of a pattern of conduct.

In addition to the allegations in the complaint, President Trump intervened in other contracting processes to enrich his supporters, such as by ensuring that Fisher Sand and Gravel, whose leadership is aligned with other Trump political allies, would get a lucrative contract to perform work on the President's border wall.[10] President Trump has also repeatedly interfered in the workings of the Department of Justice ("DOJ"), just as he is alleged to have done with DOD. He has proclaimed "an absolute right to do what I want to do with the Justice Department"[11] and the absolute power to fire federal officials, even to protect himself from an ongoing criminal investigation, as he did with then-FBI Director James Comey,[12] and as he attempted to do with Special Counsel Robert Mueller.[13] He publicly rebuked then-Attorney General Jeff Sessions for recusing himself from the Russia investigation and ultimately fired him.[14] President Trump has publicly directed the FBI and DOJ to investigate and prosecute others President Trump views as

---

[10] *See* Nick Miroff & Josh Dawsey, *North Dakota Company That Trump Touted Gets $400 Million Border Wall Contract*, Wash. Post (Dec. 2, 2019), https://www.washingtonpost.com/immigration/north-dakota-company-that-trump-touted-gets-400-million-border-wall-contract/2019/12/02/9c661132-1568-11ea-bf81-ebe89f477d1e_story.html.

[11] *Excerpts from Trump's Interview with The Times*, N.Y. Times (Dec. 28, 2017), https://www.nytimes.com/2017/12/28/us/politics/trump-interview-excerpts.html.

[12] Steve Vladeck, *Trump Tweeted That He Can Fire Anyone (Including Robert Mueller). Here's What the Law Actually Says*, NBC News (May 3, 2018), https://www.nbcnews.com/think/opinion/trump-tweeted-he-can-fire-anyone-including-robert-mueller-here-ncna871166; Charlie Savage, *Trump and His Lawyers Embrace a Vision of Vast Executive Power*, N.Y. Times (Jun. 4, 2018), https://www.nytimes.com/2018/06/04/us/politics/trump-executive-power-russia-investigation.html.

[13] Michael S. Schmidt & Maggie Haberman, *Trump Ordered Mueller Fired, but Backed Off When White House Counsel Threatened to Quit*, N.Y. Times (Jan. 25, 2018), https://www.nytimes.com/2018/01/25/us/politics/trump-mueller-special-counsel-russia.html.
[14] Peter Baker et al., *Jeff Sessions Is Forced Out as Attorney General as Trump Installs Loyalist*, N.Y. Times (Nov. 7, 2018), https://www.nytimes.com/2018/11/07/us/politics/sessions-resigns.html.

adversaries, such as his 2016 opponent Hillary Clinton, former FBI Deputy Director Andrew

McCabe, and the agents and intelligence officers who investigated the Russian interference

allegations.[15] He has reportedly directed antitrust enforcement against the parent company of

CNN,[16] whose coverage he has repeatedly called "fake news."[17] And he has induced a foreign

government to investigate political rival Joe Biden[18] and proclaimed that it would be appropriate

to direct the DOJ to investigate him.[19]

　　　The President's overall pattern of misconduct buttresses the allegations of bad faith

toward Amazon in this action. To put it simply, President Trump has abused his power in the

past, making it all the more plausible that he has done so in this matter. This larger pattern of

---

[15] Michael Schmidt & Maggie Haberman, *Trump Wanted to Order Justice Dept. to Prosecute Comey and Clinton*, N.Y. Times (Nov. 20, 2018), https://www.nytimes.com/2018/11/20/us/politics/president-trump-justice-department.html; Benjamin Wittes, *Thoughts on the Impending Prosecution of Andrew McCabe*, Lawfare (Aug. 27, 2019), https://www.lawfareblog.com/thoughts-impending-prosecution-andrew-mccabe; Katie Benner & Adam Goldman, *Justice Department Is Said to Open Criminal Inquiry Into Its Own Russia Investigation,* Wash. Post (Oct. 24, 2019), https://www.nytimes.com/2019/10/24/us/politics/john-durham-criminal-investigation.html.

[16] *See* Jonathan Chait, *Trump Covering Up Scheme to Use Justice Department to Punish CNN*, New York Magazine (Jan. 2, 2020), https://nymag.com/intelligencer/2020/01/trump-cnn-merger-time-warner-at-and-t-media-scandal-impeachment.html.

[17] *See, e.g.,* Avery Anapol, *Trump Calls CNN 'Fake News' After Reporter Asks Him Question at G-7*, The Hill (June 9, 2018), https://thehill.com/homenews/administration/391486-trump-calls-cnn-fake-news-after-cnn-reporter-asks-him-question-at-g7.

[18] *See, e.g.,* Dareh Gregorian, *Trump Impeached by the House for Abuse of Power, Obstruction of Congress*, NBC News (Dec. 18, 2019), https://www.nbcnews.com/politics/trump-impeachment-inquiry/trump-impeached-house-abuse-power-n1104196.

[19] *See* Reis Thebault, *Trump Says It Would Be 'Appropriate' for Him to Talk to Barr About Launching Investigation into Biden*, Wash. Post (May 10, 2019), https://www.washingtonpost.com/politics/trump-says-it-would-be-appropriate-for-him-to-talk-to-barr-about-launching-an-investigation-into-biden/2019/05/10/f7f1a2c0-7386-11e9-9f06-5fc2ee80027a_story.html.

behavior also provides additional evidence of bad faith by establishing that President Trump has violated his most fundamental constitutional duty.

> B. President Trump's interference in federal agencies violates his Article II duty to take care that the laws are faithfully executed and thus constitutes "bad faith."

The President's self-interested personal interference in the business of federal agencies, as described above and in Amazon's complaint, violates his constitutional duty to "take care" that the laws are "faithfully" executed. This is evidenced by both the text and structure of the Faithful Execution Clause and by court decisions delineating the scope of the president's executive powers. At bottom, the Faithful Execution Clause and the president's oath of office distinguish him from a monarch and subject his actions to the rule of law.[20]

> 1. Article II does not grant the president unlimited authority over federal agencies.

The executive power is defined by Article II. Nothing in its text explicitly authorizes or implies that the president has unlimited power to personally intervene in federal agencies for self-interested purposes. To the contrary, the Faithful Execution Clause itself is passively stated as a duty to take care that the laws *be* faithfully executed, which signifies that the president is intended to preside over the execution of the laws, not that he execute them himself. *See* Gillian E. Metzger, *The Constitutional Duty to Supervise*, 124 Yale L.J. 1836, 1875–76 (2015) (observing that "the [Take Care] Clause's use of the passive voice and the sheer practical impossibility of any other result" demonstrate that "the actual execution of the laws will be done

---

[20] *See* Protect Democracy, *No "Absolute Right" to Control DOJ: Constitutional Limits on White House Interference with Law Enforcement Matters* (Mar. 2018), at 8, *available at* https://protectdemocracy.org/resource-library/document/no-absolute-right-control-doj/ ("It is nearly impossible to imagine that the Founding Fathers would have chosen to vest the presidency with even greater powers than the English King who drove them to rebellion.").

by others" and that, "[d]espite vesting the executive power in the President, the Framers did not expect that the President would be personally implementing the laws[.]").

The president's discretion in executing the laws is also limited by the command that he do so "faithfully." Common contemporary dictionary definitions of "faithfully" speak of loyalty, adherence to duty, steadfastness, and conscientiousness.[21] That is how Samuel Johnson defined the term in his founding-era dictionary,[22] and how James Madison understood it when he expressed concern that government administrators "may forget their obligations to their constituents, and prove unfaithful to their important trust."[23]

The best understanding of "faithfully" as it appears in Article II is thus that the president is required to preside over the government as a fiduciary, not that he directs its activities in his personal interest. *See* Andrew Kent et al., *Faithful Execution and Article II*, 132 Harv. L. Rev. 2111, 2119 (2019) ("[T]he best historical understanding of the meaning of the Faithful Execution Clauses is that they impose duties that we today—and some in the eighteenth century as well—would call fiduciary."). And there is no reasonable reading of "faithfully" that would permit the president to use federal agencies for the purpose of corruptly punishing his perceived political opponents.

        2.   The president's Article II authority over federal agencies is limited by other provisions of the Constitution, including the Bill of Rights, and by laws passed by Congress.

---

[21] *See Faithful,* Merriam-Webster, https://www.merriam-webster.com/dictionary/faithful (last visited Jan. 21, 2020).

[22] 1 Samuel Johnson, A Dictionary of the English Language at 763 (1755), *available at* http://johnsonsdictionaryonline.com/page-view/?i=763; see also Josh Blackman, *The Constitutionality of DAPA Part II: Faithfully Executing the Law*, 19 Tex. Rev. L. & Pol. 215, 230–31 (2015), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2545558 (collecting dictionary definitions).

[23] The Federalist No. 62 (James Madison).

The president's oath of office, set forth in Article II, Section 1, requires him to swear that he "will to the best of [his] ability, preserve, protect and defend the Constitution of the United States." The oath thus places further constitutional constraints on the president's authority over federal agencies. It necessarily bars him from violating the First Amendment by using federal agencies to punish his opponents for their speech. *See* Part III, *infra*. The oath also prohibits him from singling out his political opponents or critics for unfavorable treatment in violation of the Equal Protection Clause, *see, e.g., Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886), and from personally depriving anyone of a liberty or property interest without due process of law.[24]

The president is, of course, also limited by his duty to enforce laws enacted by Congress. As the Supreme Court explained in *Youngstown Sheet & Tube Co. v. Sawyer*, in holding that the president lacked the power to nationalize the steel mills to avert a strike during the Korean War, "[t]he president's power . . . must stem either from an act of Congress or from the Constitution itself." 343 U.S. 579, 585 (1952). "In the framework of our Constitution, the President's power to see that the laws are faithfully executed *refutes* the idea that he is to be a lawmaker." *Id.* at 587 (emphasis added). And as Justice Jackson wrote in his concurrence, the president's "Take Care" authority to act is limited by constitutional requirements such an individual's right to due process of law, which signifies that "we submit ourselves to rulers only if under rules." *Id*. at 646. In another concurrence, Justice Frankfurter agreed: "[U]nenumerated powers do not mean

---

[24] *See* Protect Democracy, *No "Absolute Right" to Control DOJ: Constitutional Limits on White House Interference with Law Enforcement Matters* (Mar. 2018), at 17, *available at* https://protectdemocracy.org/resource-library/document/no-absolute-right-control-doj/ ("The Fifth Amendment's Due Process Clause requires the government to follow fair and neutral procedures before denying people important interests. Accordingly, the Clause limits the government's ability to exert political influence over enforcement actions and requires objective government decision-making processes that affect specific parties.").

undefined powers. The separation of powers built into our Constitution gives essential content to undefined provisions in the frame of our government." *Id.* at 610.

The laws applicable in this case do not permit the president to interfere in procurement decisions to advance his own personal interests. The statutory scheme that governs federal contracts mandates that they be awarded through open competition based on merit,[25] while the Federal Acquisition Regulations System ("FAR")[26] establishes uniform policies "to deliver on a timely basis the best value product or service to the [government], while maintaining the public's trust and fulfilling public policy objectives such as the promotion of competition."[27] Thus, if the president directs an agency to make procurement decisions for an impermissible reason, he is ignoring Congress's mandate and is failing to faithfully execute the law.

\*\*\*

Under these authorities, the President's Article II duties and his oath of office preclude him from directing DOD to withhold a lucrative contract from Amazon to punish its owner because the President perceives him to be a political enemy. This strong showing of bad faith warrants discovery into the government's motives in denying the JEDI contract to Amazon.

III.   President Trump's pattern of retaliating against his perceived media critics and opponents is an abuse of his Article II powers and strengthens the case for discovery here.

President Trump has engaged in a pattern of retaliating against his critics for their speech and thus making official decisions based on bias rather than in the public interest. This overall pattern bolsters the case that Amazon's specific allegations of misconduct are well-founded.

---

[25] *See, e.g.*, 41 U.S.C. § 3301, *et seq*.

[26] 48 C.F.R. §§ 1.000, *et seq*.

[27] Cong. Research Serv., R45080, *Government Contract Bid Protests: Analysis of Legal Processes and Recent Developments* (Nov. 28, 2018), https://fas.org/sgp/crs/misc/R45080.pdf (internal quotation mark and citation omitted).

Those allegations are also violations of the president's duty to support and defend the First Amendment. While Amazon is not advancing a First Amendment claim, President Trump's pattern of making official decisions in a manner that would violate the First Amendment provides further evidence that the government has acted in bad faith and with bias.

   A. President Trump has engaged in an ongoing pattern of threats and retaliation against his critics to punish the content of their speech.

Throughout his presidency, President Trump has engaged in a pattern of threats and retaliation aimed at suppressing the speech of media critics and other perceived opponents of him and his administration. In addition to his campaign of threats and retaliation against Amazon, he has:

- restricted access, threatened to revoke credentials, and revoked credentials for members of the White House press corps for asking critical questions;

- revoked and threatened to revoke security clearances from former government officials who engaged in public commentary, including on CNN and NBC, because they criticized the current administration;

- threatened to rescind NBC's broadcast license due to coverage critical of the current administration; and

- directed the Department of Justice to challenge a vertical merger between Time Warner and AT&T because of the President's antagonism toward Time Warner subsidiary CNN for its coverage of his administration.[28]

This conduct supports a finding that Amazon's allegations are true. Likewise, it shows that the President has acted in bad faith of constitutional proportions.

   B. President Trump's threats and actual use of the machinery of government to retaliate against his critics are abuses of power that violate his Article II duty to uphold the First Amendment.

---

[28] *See* Am. Compl. for Declaratory Injunctive Relief, PEN Am. Ctr., Inc. v. Trump, No. 18-cv-9433 (S.D.N.Y. Feb. 6, 2019), *available at* https://protectdemocracy.org/resource-library/document/pen-america-v-trump-amended-complaint/.

Faithful execution of the laws commands that the government cannot deploy its power to punish protected speech. *Heffernan v. City of Paterson, N.J.*, 136 S.Ct. 1412, 1418 (2016). "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit the exercise of the protected right." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998) (internal quotation omitted) (brackets in original)). The First Amendment thus "prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Id.* This is true even when the government has a facially legitimate basis for its actions, so long as the government acts because of the target's speech or viewpoint. *See Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 1955 (2018).

The prohibition against government retaliation applies when the government denies a privilege or benefit to which a person does not have a "right" — such as a tax exemption, security clearance, or government contract — when the denial is motivated by a retaliatory purpose. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Connick v. Myers*, 461 U.S. 138, 142 (1983). Threats to take retaliatory action also violate the First Amendment, even if the government declines to follow through on the threat. *See Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015).

The elements of a First Amendment retaliation claim are met when plaintiffs can show: "(1) [they] have a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the] exercise of that right; and (3) the defendant's actions caused [the plaintiffs] some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

If the facts alleged by Amazon are true, they would meet these elements and constitute an egregious abuse of the President's power. First, *The Washington Post*'s coverage of the Trump

16

administration is protected speech of the highest order. Government retaliation against the press "strikes at the very center of the constitutionally protected area of free expression." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 292 (1964). "[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982)).

Second, Amazon demonstrates a causal relationship between speech and retaliatory action when it alleges that the President induced DOD to deny Amazon the JEDI contract not on merit, but to punish *The Washington Post*'s coverage of the administration. *See Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (plaintiff's speech must be "a substantial or motivating factor" in prompting the government's action).

Third, the denial of a multi-billion-dollar contract is a severe injury to plaintiff's business, regardless of whether it actually curtails the speech of Amazon or *The Washington Post*. *See, e.g., Dorsett*, 732 F.3d at 160 ("Chilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing."); *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) (lost government contract sufficient to show harm from retaliation); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 at n.6 (1963) (actual chill not required when government action harms a tangible interest).

In sum, Amazon's allegations, standing alone, would meet the elements of a *prima facie* case of First Amendment retaliation; and the same alleged conduct constitutes bad faith and biased administration of the government by the President under Article II. Accordingly,

discovery into the government's motives for its decision in the JEDI bid process is warranted under the legal standard governing this case and to ensure that the government is using the taxpayers' money in the public interest rather than in the President's personal interest.

## Conclusion

In a democracy, nothing is more important than the rule of law. Our Republic was founded on the idea that the people consent to be governed in accordance with a written constitution that defines what the government can and cannot do. Key to that foundation is the principle that our country's president is the people's employee, not a king. The limitations that our Constitution places on the president — requiring him to perform his duties in the public interest and to refrain from punishing his critics — must be enforced, or our democracy will necessarily suffer and perhaps be destroyed. The right to dissent "is more than self-expression; it is the essence of self-government." *Garrison v. State of La.,* 379 U.S. 64, 74–75 (1964).

The plaintiffs in this case have credibly alleged that the President personally intervened in a government-contracting process to punish a critic, thereby inflicting a multi-billion-dollar injury. If true, this would be a grave abuse of power in its own right that would be broadly chilling to anyone who wishes to exercise their right to dissent against the government. Corruption on that level certainly constitutes bad faith by the government. To ensure that has not happened here — or to correct it if it has — this Court should grant Amazon's discovery request.

Dated: February 10, 2020                    Respectfully submitted,

                                            By: */s/ Kristy Parker*_____
                                            KRISTY PARKER
                                            *Counsel of Record for* Amicus Curiae
                                            The Protect Democracy Project, Inc.
                                            2020 Pennsylvania Avenue, NW, #163
                                            Washington, D.C. 20006
                                            Telephone: (202) 579-4582
                                            kristy.parker@protectdemocracy.org

                                            BENJAMIN L. BERWICK
                                            The Protect Democracy Project, Inc.
                                            15 Main St., Suite 312
                                            Watertown, MA 02472
                                            ben.berwick@protectdemocracy.org

                                            JOHN T. LANGFORD
                                            The Protect Democracy Project, Inc.
                                            555 W. 5th St.
                                            Los Angeles, CA 90013
                                            john.langford@protectdemocracy.org

                                            STEVEN A. HIRSCH
                                            Consulting Attorney
                                            The Protect Democracy Project, Inc.
                                            2120 University Avenue
                                            Berkeley, CA 94704
                                            steve.hirsch@protectdemocracy.org