**Redacted Version**

No. 19-1796C
(Judge Patricia E. Campbell-Smith)

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

AMAZON WEB SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Defendant-Intervenor.

**DEFENDANT'S REPLY IN SUPPORT OF OBJECTIONS TO CERTAIN MATERIAL DESIGNATED AS PROTECTED AND MOTION TO STRIKE AND SUBSTITUTE**

OF COUNSEL:

MICHAEL G. ANDERSON
BENJAMIN M. DILIBERTO
Assistant General Counsel
Washington Headquarters Service &
Pentagon Force Protection Agency
Office of General Counsel
Department of Defense

TYLER J. MULLEN
CCPO Legal Advisor
Assistant General Counsel
Defense Information Systems Agency
Office of the General Counsel

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

PATRICIA M. MCCARTHY
Assistant Director

ANTHONY F. SCHIAVETTI
RETA E. BEZAK
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7572
Fax: (202) 305-1571
anthony.f.schiavetti@usdoj.gov

January 2, 2020

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

DISCUSSION .................................................................................................................................. 3

    I.      AWS Misapprehends The Applicable Law ............................................................... 3

    II.     AWS Has Failed To Justify The Specific Redactions It Proposes ......................... 8

          A.     The Redactions To Which We Object Would Not Reveal AWS's Proposed Price ........................................................................................... 8

          B.     The Redactions To Which We Object Would Not Reveal AWS's Proposed Technical Solution ..................................................................... 9

          C.     The Redactions Of Technical Ratings Or Comparisons Are Not Warranted ................................................................................................. 12

CONCLUSION ............................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Akal Sec., Inc. v. United States,*
  87 Fed. Cl. 311 (2009) ................................................................................................ 5, 12

*Allied Technology Group, Inc. v. United States,*
  94 Fed. Cl. 16 (2010), *aff'd,* 649 F.3d 1320 (Fed. Cir. 2011) ........................................ 4, 7, 8, 12

*AM Gen., LLC v. United States,*
  115 Fed. Cl. 653 (2014) ............................................................................................... 6, 8, 12

*Anham FZCO v. United States,*
  144 Fed. Cl. 697 (2019) ............................................................................................... 7, 8

*Def. Tech. Inc. v. United States,*
  99 Fed. Cl. 103 (2011) ................................................................................................. 3

*Dell Fed. Sys., L.P. v. United States,*
  906 F.3d 982 (Fed. Cir. 2018) ..................................................................................... 5

*Linc v. Gov't Servs., LLC v. United States,*
  96 Fed. Cl. 672 (2010) ................................................................................................. 5, 10, 12

*Precision Asset Mgmt. Corp. v. United States,*
  135 Fed. Cl. 342 (2017) ............................................................................................... 8

*SupplyCore Inc. v. United States,*
  132 Fed. Cl. 480 (2017) ............................................................................................... 12

*Tech Sys., Inc. v. United States,*
  98 Fed. Cl. 228 (2011) ................................................................................................. 12

*Torres Advanced Enter. Sols., LLC v. United States,*
  135 Fed. Cl. 1 (2017) ................................................................................................... 3, 7

**Statutes**

41 U.S.C. § 2102(a)(1) ..................................................................................................... 4

**Regulations**

FAR 15.207(b) .................................................................................................................. 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| AMAZON WEB SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | ▇▇▇▇▇▇▇▇▇▇ |
| ) | |
| v. ) | No. 19-1796C |
| ) | (Judge Patricia E. Campbell-Smith) |
| THE UNITED STATES, ) | |
| ) | |
| Defendant, ) | ▇▇▇▇▇▇▇▇▇▇ |
| and | |
| MICROSOFT CORPORATION, ) | |
| Defendant-Intervenor. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF OBJECTIONS TO CERTAIN MATERIAL DESIGNATED AS PROTECTED AND MOTION TO STRIKE AND SUBSTITUTE**

Defendant, the United States, respectfully replies to the response of plaintiff, Amazon Web Services, Inc. (AWS), (ECF Nos. 87, 88), to our motion objecting to certain material AWS designated as protected and requesting that the Court strike the redacted version of AWS's complaint that it filed on the public docket (ECF No. 26). As we explained in our opening brief, AWS's public complaint contains overbroad redactions not warranted by law or this Court's protective order. Although AWS now in response agrees that ECF No. 26 should be stricken and proposes to remove some of the improper redactions from its complaint, it nevertheless proposes to continue to redact a significant quantity of material that plainly does not qualify as protected material, as we demonstrated in our opening brief. *See* ECF No. 53. The United States, therefore, renews its request that the Court strike the redacted complaint at ECF No. 26 and substitute in its place the proposed redacted complaint we attached to our opening brief at ECF No. 53-2.

As an initial matter, the United States disputes AWS's assertion that the protective order "allows for Court resolution of disputed redactions before filing of the Redacted Complaint, but does not provide the right to seek resolution after filing of the redacted pleading." Pl. Memo in Support of Resp. to Mot. To Strike (Pl. Resp.), ECF No. 88, at 3. On the contrary, the protective order, now amended in ways not pertinent to the instant dispute, states unequivocally that "[a]ny party *at any time* may object to another party's designation of certain information as protected." Amended Protective Order, ECF No. 69, at 4 (¶ 12(d)) (emphasis added). Although the protective order does not spell out the precise method contemplated in the event that the parties are unable to reach agreement regarding redactions, it provides that "the objecting party may submit the matter to the court for resolution." Amended Protective Order, ECF No. 69, at 4 (¶ 12(d)). This language, read in combination with the "at any time" language quoted above from the previous sentence in the order, plainly permits the filing of objections after a public version of a filing has been docketed. As we explained in our opening brief, we followed this paradigm in this case in the interest of facilitating prompt public access to material that no party alleges is protected, in light of what appeared likely, and has proven, to be a protracted disagreement about the propriety of AWS's insistence on withholding additional information from the public record.[1]

---

[1] We also dispute AWS's characterization suggesting that the United States was unwilling to discuss the issue of redactions. On the contrary, we spent considerable time and resources discussing the issue with AWS and Microsoft on multiple occasions. Only when it became clear - from AWS's refusal to remove more than a few, largely non-substantive redactions from its initial proposal - that the parties had reached an impasse did we decline to expend further resources discussing an issue on which it had become clear the parties would not agree.

DISCUSSION

I.   AWS Misapprehends The Applicable Law

AWS adheres to a common misreading of the protective order, a misreading that this Court had repeatedly rejected.  Pl. Resp., ECF No. 88, at 5.  The protective order defines "protected information" as "information that must be protected to safeguard the competitive process, including source selection information, proprietary information, and confidential information."  Amended Protective Order, ECF No. 69, at 1 (¶ 1).  The Court has consistently made clear that the phrase "must be protected to safeguard the competitive process" is indispensable in this definition.  That is, not *all* source selection, proprietary, or confidential information is automatically worthy of protection, but only that subset of such types of information that must be protected to safeguard the competitive process.  *See, e.g.*, *Torres Advanced Enter. Sols., LLC v. United States*, 135 Fed. Cl. 1, 8 (2017).  AWS relies on the Federal Acquisition Regulation's definition of source selection information, but this definition would include a great quantity of information that this Court routinely publishes and that AWS itself has made public in its complaint.  Instead, for source selection or any other information to warrant protection, the party proposing that this information be withheld from the public record, in contravention of the presumption of public access to judicial records, must demonstrate that such withholding is necessary to safeguard the competitive process.  *Def. Tech. Inc. v. United States*, 99 Fed. Cl. 103, 106 n.* (2011).  AWS has failed to make such a demonstration with regard to the information at issue here.

Moreover, the statutes and regulations AWS cites regarding the safeguarding of source selection information specifically limit their restrictions to the time period "before the award of a

Federal agency procurement contract," 41 U.S.C. § 2102(a)(1), or "throughout the source selection process," FAR 15.207(b). But the source selection in this case is complete – the Department of Defense (DOD) has selected Microsoft and awarded it the contract. Although AWS seeks relief from this Court that could ultimately lead to some form of renewed competition, this is not a pre-award protest, where some extra precautions may be required to safeguard a competition that remains ongoing. Although the Court has recognized that renewed competition may follow in the wake of a successful bid protest, it has still required a demonstration that the particular information that a party seeks to protect must be hidden from public view to safeguard such a future competition. For example, in *Allied Technology Group, Inc. v. United States*, 94 Fed. Cl. 16, 23 n.1 (2010), *aff'd,* 649 F.3d 1320 (Fed. Cir. 2011), the Court observed that, were the plaintiff ultimately afforded an opportunity to revise its proposal in a reopened competition, it would undoubtedly change its proposal in several respects. Similarly here, in the event that revised proposals were permitted in the event of a renewed competition in the future, both parties could be expected to revise their proposals, rendering moot DOD's evaluation judgments of proposals that would be in that instance superseded by revisions. Likewise, if renewed evaluations were made based on existing proposals, no party would be in a position to gain any competitive advantage.

As we explained in our opening brief, the purpose of the protective order is to safeguard the competitive process – that is, to sacrifice transparency in a limited way to maintain a level playing field for all offerors. Given that Microsoft's evaluation ratings are now public, the competitive process is served, not harmed, by the release of AWS's evaluation ratings. Indeed, the Court of Appeals for the Federal Circuit has upheld corrective action by an agency that

elected to disclose the prices of each offeror to level the playing field in a renewed competition. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 997 (Fed. Cir. 2018).  Moreover, as we previously explained, this Court has found that stale evaluation judgments from an earlier competition provide little if any potential for harm if released.  *Linc v. Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 723 (2010); *Akal Sec., Inc. v. United States,* 87 Fed. Cl. 311, 314 n.l (2009).

Additionally, it is unclear how public disclosure of this information could harm AWS in any renewed competition.  Notably, Microsoft was provided a debriefing in this procurement, pursuant to FAR 15.506.  *See* FAR 15.506(b) ("Debriefings of ***successful and unsuccessful*** offerors may be done orally, in writing, or by any other method acceptable to the contracting officer.") (emphasis added).  That debriefing, like AWS's, provided extensive information about the evaluation, including redacted versions of the Final Price Evaluation Board Report, the Source Selection Evaluation Board Report, the Source Selection Advisory Council Report, and the Source Selection Decision Document.  Although the agency was careful to redact AWS's proprietary information, these documents appropriately revealed to Microsoft the adjectival ratings assigned to both offerors under every evaluation factor, as well the fact that Microsoft submitted a lower price than AWS - though AWS's total evaluated price was not revealed.  The agency properly provided this information to Microsoft to inform it of the "the basis for the selection decision and contract award."  FAR 15.506(a)(1).

Separately, contrary to AWS's allegation, the fact that we declined to object to improper redactions five years ago in two companion cases unrelated to the present case does not in any way limit our ability to do so now, nor should the Court find itself bound by such isolated past

practice. All things being equal, the United States has a strong interest in transparency. As is apparent from the paucity of published decisions on this issue and from the Court's experience, given the expedited nature of bid protest litigation, the parties to such cases frequently decline to bring disputes over redactions to the Court for resolution. The litigation decisions made in one case, however, does not bind the United States to the same choices in all future cases. The significant demonstrated public interest in this case demands that the parties and the Court take great pains to meticulously review material withheld from the public domain to ensure it meets the proper standard for such withholding. The information at issue that AWS seeks to withhold does not meet this standard, and past practice in other cases does nothing to alter that conclusion. Nor is the disparity in any way "unfair" to AWS, which is entitled to the protection afforded by the protective order, but not entitled to improperly withhold information from the public domain merely because it would embarrass AWS, or because AWS would prefer that such information remain hidden from public view.

Oddly, AWS dismisses the cases we cited for the strong and well-established presumption of public access to judicial records as not arising in the bid protest context. Pl. Resp., ECF No. 88, at 6. But AWS appears to agree that this presumption applies even in the bid protest context, and even states that it "readily acknowledges and supports" the rule. *Id*. at 4. Although bid protests regularly involve information that properly warrants protection as an exception to the general rule, such exceptions must be justified, and balanced against the background presumption of public access. *See AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 660 n.1 (2014). AWS articulates no principled distinction for its belief that transparency is less important in bid protests.

Although AWS is correct that none of the opinions we cite involved a dispute about redactions prior to the conclusion of the litigation – such opinions are rare, and rarely published when issued – the Court routinely publishes information akin to the information AWS seeks to withhold from the public record here, despite enjoining the agency procurement decision, presumably setting up a renewed competition.  *See, e.g.*, *Anham FZCO v. United States*, 144 Fed. Cl. 697, 705-06 (2019); *FCN, Inc. v. United States*, 115 Fed. Cl. 335, 350 (2014).  Moreover, even when denying injunctive relief, the Court has recognized that the competition may be renewed in some fashion, either because the unsuccessful protester has appealed the decision or for other reasons.  *See, e.g.*, *Allied Tech. Grp.*, 94 Fed. Cl. at 23 n.1.  The Court has nevertheless held the proponent of redactions to the standard we have expressed, requiring a demonstration that protection of the information is necessary to safeguard the competitive process.  *Id.*  Moreover, in none of the cases we cited or of which we are aware has the Court expressed that a different standard should apply to information published in judicial decisions as opposed to in the public versions of filings made during the pendency of the litigation.  The purpose of and standard dictated by the protective order remains the same in each circumstance, and the Court should, therefore, employ the same analysis.

Finally, AWS's reliance on *Torres Advanced Enter. Sols., LLC v. United States* is misleading.  135 Fed. Cl. at 9; Pl. Resp., ECF No. 88, at 7.  As we note above, the Court in *Torres* made clear that even information that may qualify as source selection information is only properly withheld from the public record if necessary to safeguard the competitive process.  *Torres*, 135 Fed. Cl. at 8.  Moreover, although the Court agreed to redact pricing and proprietary information, it declined to redact other information the protester sought to keep out of the public

record – likely because it found the information embarrassing – regarding poor past performance, the agency's responsibility determination, and other information that the protester failed to demonstrate would cause it competitive harm if released.  *Id*. at 10.  Similarly here, AWS has failed to demonstrate that, more that serving its own purposes, the redactions it seeks are required to safeguard the competitive process.  The Court should decline to redact information from the public record absent such a showing.

II.     AWS Has Failed To Justify The Specific Redactions It Proposes

   A.     The Redactions To Which We Object Would Not Reveal AWS's Proposed Price

Although it is debatable whether even the total evaluated price (TEP) the agency calculated based on AWS's proposal is properly redacted, given that the TEP itself a product of the agency's evaluation judgments and not solely determined by AWS's discretion, we did not object to AWS's redaction of its TEP or a figure expressing the percentage by which it differs from Microsoft's now-public TEP.  AWS, however, proposes to also redact any language revealing that Microsoft's TEP was lower than AWS's.  Pl. Resp., ECF No. 88, at 8.  This is plainly inconsistent with the practice of this Court, which routinely publishes this information.  See, e.g., *Allied Tech. Grp.*, 94 Fed. Cl. at 24 & n.1 (publishing language revealing which offeror had higher price); *AM Gen.*, 115 Fed. Cl. at 697-98 (same); *Precision Asset Mgmt. Corp. v. United States*, 135 Fed. Cl. 342, 356 (2017) (same, in a case enjoining award decision); *Anham FZCO*, 144 Fed. Cl. at 706 (same).  Thus, the fact that Microsoft proposed a lower price is not in itself worthy of protection.  The redactions to which we objected in paragraphs 188 and 218 do not reveal AWS's price or any other information that would compromise a renewed competition.

The remaining proposed redactions in paragraphs 188 and 218 have nothing to do with price, but discuss the agency's relative evaluation of the two proposals on other factors. As we demonstrate below and in our opening brief, such redactions are not warranted.

### B. The Redactions To Which We Object Would Not Reveal AWS's Proposed Technical Solution

The redactions to which we object in paragraphs 26 and 119 of the complaint do not reveal anything about AWS's proposed technical solution. Rather, they merely describe the evaluation judgments and factual statements of source selection officials regarding █████████ ███████████████████████████████████████. Nothing in this discussion even mentions AWS's proposed solution, with the sole exception of one reference in paragraph 119i, on page 58, to AWS's Nitro architecture. But elsewhere in the complaint, including in this same paragraph, AWS reveals in the public version of its complaint that its proposal features its Nitro architecture, and it touts its capabilities. There is, therefore, no cause to redact another reference to the same product feature, merely because it is featured in a less favorable light from AWS's perspective.

Moreover, the competitive process, which has been completed for this procurement, will not be harmed by revealing how these particular source selection officials viewed █████ ███████████████████████████████████████. Even in the event of a renewed competition, it is difficult to imagine how this information could negatively impact the competitive process. As with other information, in the event of a new evaluation of existing proposals, neither party would have an opportunity to take advantage of any new information. Even if the parties were presented with the opportunity to revise parts or all of their proposals, AWS has failed to show any likelihood that Microsoft could leverage information about how

evaluation official weighed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ so as to give it a competitive advantage, especially given the accelerated timetable on which this procurement has proceeded. *See Linc Gov't Servs.*, 96 Fed. Cl. at 723 (qualitative evaluations have no bearing on the competitive process).

The redactions to which we object in paragraphs 122, 126, and the heading preceding paragraph 125 likewise do not reveal AWS's proposed technical solution. These redactions cover AWS's characterization of evaluation judgments made by source selection officials, and AWS's disagreement with those judgments. Demonstrating its desire to use the protective order as both a shield and a sword, AWS declined to redact allegations touting the capabilities of its proposed Snowball Edge devices, declining even to protect the identity of these products. AWS also felt no need to protect its subjective allegation that its tactical edge offering was superior to Microsoft's. But AWS demonstrates its true intent when it insists on redacting the contrary reasoned judgment of source selection officials. This selective approach is perhaps most clearly demonstrated in paragraph 125b on page 62, where AWS declined to redact an arguably favorable judgment of the Technical Evaluation Board (TEB), but continues to defend the redaction of similar judgments that AWS deems less favorable.

Moreover, it is clear from the context that AWS declined to redact that this section discusses the agency's assessment of AWS's proposed tactical edge devices, and that AWS is dissatisfied with those assessments. Removal of this information from the public record will not serve the interest of protecting the competitive process, even in the event of some form of renewed competition.

In paragraph 129a, AWS seeks to redact quotations from the publicly advertised Request for Proposal (RFP), and AWS's interpretation thereof.  Obviously, there can be no proper basis to protect this information, which was intentionally provided to all offerors and the public and which remains in the public domain.  Redactions to which we objected in paragraph 129b do not reveal any proprietary information or information otherwise warranting protection.

AWS's position on paragraph 150a is undermined by AWS's own previously filed redacted complaint.  AWS does not argue that ▐▐▐▐▐▐▐▐ substantively warrants redaction, but argues that redaction of ▐▐▐▐▐▐▐▐ alone would allow Microsoft to ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐.  Pl. Resp., ECF No. 88, at 9.  But even assuming that were possible given the use of a proportional font, in which character widths vary, AWS has already revealed this information in ECF No. 26.  In that filing, ▐▐▐▐▐▐▐▐ is protected with a separate redaction from ▐▐▐▐▐▐▐▐.  ECF No. 26 at 73.  Any information conveyed by the width of ▐▐▐▐▐▐▐▐ is, therefore, already public.  Likewise, ▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐▐ from AWS's proposal in paragraph 142 cannot be supported by the same rationale, as at least one of ▐▐▐▐▐▐▐▐ was protected by separate redactions that could be measured for length, for whatever that measurement is worth.

Further, the other redactions AWS proposes in paragraphs 7 and 142 do not reveal proprietary information, and those it proposes in paragraph 148 do not appear to directly relate to AWS's proposal at all.  The information AWS seeks to protect in these paragraphs is either reflected in other language that is already public in those or other paragraphs, or simply does not reveal any proprietary information about AWS's proposal or other information that requires protection to safeguard the competitive process.

C. <u>The Redactions Of Technical Ratings Or Comparisons Are Not Warranted</u>

Finally, as we have demonstrated above and in our opening brief, redaction of agency technical ratings and comparisons of ratings of AWS to Microsoft are inappropriate. The Court has repeatedly examined this issue in the past and consistently concluded that redaction of this type of material is impermissible. *See, e.g., Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 239-41 (2011); *SupplyCore Inc. v. United States*, 132 Fed. Cl. 480, 486-87 (2017); *see also AM Gen.*, 115 Fed. Cl. at 660 n.1 ("The Court is unpersuaded that the agency's evaluation of [the plaintiff], as represented in [its] past performance rating, adjectival ratings, and number of strengths and weaknesses, rises to the level of protected information."); *Allied Tech. Grp.*, 94 Fed. Cl. at 23 n.1 (redacting only certain pricing and discount information and declining to redact extensive proposal and agency evaluation information), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011); *Akal Sec., Inc.*, 87 Fed. Cl. at 314 n.1 (declining to redact adjectival ratings); *Linc Gov't Servs.*, 96 Fed. Cl. at 723 (same). AWS has not demonstrated that any unusual factor exists in the circumstances of this case that would warrant protection of this kind of information here to safeguard the competitive process. Accordingly, the Court should not permit AWS to restrict the public's access to the information it improperly proposes to protect in paragraphs 4, 10, 82, 107, 110, 119(j), 120, 121, 122, 129(a), 131, 132, 137, 139, 140, 152, 153, 158, 159, 160(a), 161, 162, 166, 167, 168, 172, 188, 194, 198, 201, 202, 203, 204, 205, 206, 217, 218, and 222.

<u>CONCLUSION</u>

For these reasons and those set forth in our opening brief, the United States respectfully requests that the Court strike AWS's redacted complaint (ECF No. 26) and substitute it with the proposed redacted complaint filed with our opening brief as Attachment B (ECF No. 53-2).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JOSEPH H. HUNT<br>Assistant Attorney General |
|  | ROBERT E. KIRSCHMAN, JR.<br>Director |
|  | s/ Patricia M. McCarthy<br>PATRICIA M. MCCARTHY |
| OF COUNSEL: | Assistant Director |
| MICHAEL G. ANDERSON<br>BENJAMIN M. DILIBERTO<br>Assistant General Counsel<br>Washington Headquarters Service &<br>Pentagon Force Protection Agency<br>Office of General Counsel<br>Department of Defense | s/ Anthony F. Schiavetti<br>ANTHONY F. SCHIAVETTI<br>RETA E. BEZAK<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>PO Box 480 |
| TYLER J. MULLEN<br>CCPO Legal Advisor<br>Assistant General Counsel<br>Defense Information Systems Agency<br>Office of the General Counsel | Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 305-7572<br>Fax: (202) 305-1571<br>anthony.f.schiavetti@usdoj.gov |
| January 2, 2020 | Attorneys for Defendant |