**Redacted Version**

No. 19-1796C
(Judge Patricia E. Campbell-Smith)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

AMAZON WEB SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Intervenor-Defendant.

## DEFENDANT'S MOTION TO DISMISS, IN PART, PLAINTIFF'S COMPLAINT

OF COUNSEL:

MICHAEL G. ANDERSON
BENJAMIN M. DILIBERTO
Assistant General Counsel
Washington Headquarters Service &
Pentagon Force Protection Agency
Office of General Counsel
Department of Defense

TYLER J. MULLEN
CCPO Legal Advisor
Assistant General Counsel
Defense Information Systems Agency
Office of the General Counsel

January 24, 2020

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

PATRICIA M. McCARTHY
Assistant Director

ANTHONY F. SCHIAVETTI
RETA BEZAK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... ii

DEFENDANT'S MOTION TO DISMISS, IN PART, PLAINTIFF'S COMPLAINT .................. 1

QUESTION PRESENTED ........................................................................................................ 3

STATEMENT OF THE CASE .................................................................................................. 3

    I.      Nature Of The Case ........................................................................................... 3

    II.     Statement Of Allegations In The Complaint ...................................................... 4

ARGUMENT ........................................................................................................................... 5

    I.      The *Blue & Gold Fleet* Waiver Rule ................................................................. 5

    II.     Counts Three, Five, Six, And Seven Of AWS's Complaint Are Waived ............ 12

        A.     Count Three ........................................................................................... 13

        B.     Count Five .............................................................................................. 14

        C.     Count Six ................................................................................................ 17

        D.     Count Seven ........................................................................................... 18

CONCLUSION ....................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Argencord Mach. & Equip., Inc. v. United States*,
    68 Fed. Cl. 167 (2005) ............................................................................................... 6, 16

*ATSC Aviation, LLC v. United States*,
    141 Fed. Cl. 670 (2019) ................................................................................................... 9

*Blue & Gold Fleet, L.P. v. United States*,
    492 F.3d 1308 (Fed. Cir. 2007) .............................................................................. passim

*COMINT Sys. Corp. v. United States*,
    700 F.3d 1377 (Fed. Cir. 2012) .............................................................................. passim

*Commun. Constr. Servs. v. United States*,
    116 Fed. Cl. 233 (2014) .................................................................................................. 10

*Concourse Group, LLC v. United States*,
    131 Fed. Cl. 26 (2017) .................................................................................................... 10

*CRAssociates, Inc. v. United States*,
    102 Fed. Cl. 698 (2011), *aff'd*, 475 F. App'x 341 (Fed. Cir. 2012) ........................... 10

*iAccess Techs., Inc. v. United States*,
    143 Fed. Cl. 521 (2019) .................................................................................................. 11

*Jacobs Tech., Inc. v. United States*,
    100 Fed. Cl. 179 (2011) ................................................................................................... 9

*Jacobs Technology Inc. v. United States*,
    131 Fed. Cl. 430 (2017) ............................................................................................... 8, 9

*Per Aarsleff A/S v. United States*,
    829 F.3d 1303 (Fed. Cir. 2016) ...................................................................................... 6

*Peraton Inc. v. United States*,
    No. 19-932C, 2019 WL 6871790 (Fed. Cl. Dec. 17, 2019) ........................................ 8

*Res Rei Dev., Inc. v. United States*,
    126 Fed. Cl. 535 (2016) .................................................................................................. 18

*Synergy Solutions, Inc. v. United States*,
    133 Fed. Cl. 716 (2017) ................................................................................................... 9

## STATUTES

28 U.S.C. § 1491(b)(1) ................................................................................................. 18

28 U.S.C. § 1491(b)(3) ................................................................................................... 6

## REGULATIONS

4 C.F.R. § 21.1(a)......................................................................................................... 7

## RULES

RCFC 12(b)(6) ............................................................................................................... 1

## ADMINISTRATIVE DETERMINATIONS

*Adams & Associates, Inc.*,
  B-417120, B-417125, 2019 CPD ¶ 21 *(Comp. Gen. Jan. 16, 2019)* .................................. 11, 12

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | | |
|---|---|---|
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | ██████████████ |
| | ) | |
| v. | ) | No. 19-1796C |
| | ) | (Judge Patricia E. Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | ████████████████████ |
| and | | ████████████████████ |
| MICROSOFT CORPORATION, | ) | ████████████████████ |
| | | ████████████████████ |
| Intervenor-defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS, IN PART, PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, respectfully requests that this Court dismiss Counts Three,

Five, Six, and Seven of the complaint filed by plaintiff, Amazon Web Services, Inc. (AWS),

because AWS has waived the allegations contained therein.  In support of this motion, the United

States relies upon AWS's complaint and the following brief.

The theme of AWS's complaint is its allegation that President Trump's public dislike of

Amazon's Chief Executive, Jeff Bezos, tainted the Department of Defense's (DoD) Joint

Enterprise Defense Infrastructure (JEDI) procurement.  AWS's allegation is that, because the

President has been so public with his alleged animus toward Amazon and Mr. Bezos, DoD

evaluators, despite no allegation of direct contact with the President, could not help but be biased

against AWS, an Amazon subsidiary, in the competition.  AWS, however, was aware of all of

the facts (along with the copious speculation, opinion, and conspiracy theorizing) on which it

bases its allegations by early August, 2019, well before the contract was awarded to intervenor-

defendant, Microsoft Corporation (Microsoft), and even before final proposals were due.  In *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), the Court of Appeals for the Federal Circuit established a waiver rule that prevents a party with the opportunity to object to the terms of competition on which a procurement is conducted to instead wait to see if it is selected for award and, only if is it not selected, then pursue costly, after-the-fact litigation, perhaps armed with additional information about its successful competitor.  That is precisely the prohibited strategic gambit that AWS is attempting with regard to its allegations of bias, bad faith, and other defects described below.  As a consequence, these allegations are waived and must be dismissed.

Because AWS now seeks extraordinary extra-record discovery and supplementation of the administrative record in support of these allegations, including depositions of the President of the United States and other high-ranking officials, the Court should dismiss these allegations now, prior to merits briefing, to narrow the issues in this case and to avoid costly, time consuming, and ultimately futile discovery in support of waived allegations that the Court may not consider.  AWS's challenges to DoD's evaluations of the proposals by AWS and Microsoft and to DOD's best value award decision will remain – although we strongly dispute these allegations, they appear to be timely raised.  Moreover, as we will make clear in our response to AWS's motion to supplement the administrative record and for discovery, these evaluation challenges can be resolved by the Court based on the administrative record in existence.  In its various filings, AWS has made clear that it views its evaluations challenges as an independent and sufficient challenge to the award – indeed, in its recent request for preliminary injunctive relief, in which AWS bears the burden to establish likelihood of success on the merits, AWS

focused its showing entirely on evaluation challenges, relegating its bias allegations to a single footnote.  Dismissing the bias allegations at this time will focus this litigation on the evaluation challenges that AWS now acknowledges are the heart of its suit, rather than consuming enormous time and resources litigating superfluous, waived, and insubstantial allegations.

Finally, AWS's complaint contains a count collecting challenges to plain, long-established terms of both the original solicitation and an amendment to the solicitation issued months before award and before the date for receipt of final proposals.  These allegations too are plainly waived, and it serves the interests of judicial economy to dismiss them now, rather than consume the time of the parties and the Court briefing issues that the Court may not consider.

## QUESTION PRESENTED

Are the allegations contained in Counts Three, Five, Six, and Seven of AWS's complaint barred by the waiver rule established by the Federal Circuit in *Blue & Gold Fleet*, when AWS was aware of the basis of its objections to the terms of the solicitation and to the procurement process that it now advances well before award, and even before the close of the bidding process; had ample opportunity to bring its objections at that time; and yet failed to do so?

## STATEMENT OF THE CASE

I.    Nature Of The Case

AWS protests DoD's decision to award its JEDI contract to Microsoft.  JEDI is a contract for cloud computing resources, including commercial infrastructure as a service (IaaS) and platform as a service (PaaS) offerings to support DoD operations.  AR Tab 459 at 176,410.  The JEDI contract is a firm fixed price, indefinite delivery, indefinite quantity (IDIQ) contract, with a base period of performance of two years, with options permitting up to 10 years of performance.

*Id*.  The minimum guarantee under the contract is $1 million; the maximum contract value is $10 billion.  *Id*.; AR Tab 485 at 178,612.  A full recounting of the factual background of the procurement is beyond the scope of this motion, but will be presented in future briefing.  A recounting of the factual background relevant to this motion follows below.

II.     Statement Of Allegations In The Complaint

In its complaint, AWS advances a variety of allegations in support of its post-award protest.  As is typical in a post-award protest, in Counts One, Two, and Four, AWS alleges errors in DoD's evaluation of its and Microsoft's proposals, and in DoD's best value award decision. Although we strongly disagree with these allegations, these disagreements will be the subject of future briefing, as these allegations, though incorrect, appear to be timely raised.

AWS, however, goes on to allege, in Count Three, that long-established solicitation terms, including a solicitation amendment issued nearly five months before the award decision and prior to multiple additional rounds of discussions and proposal revision, wrongfully deprived it of a competitive advantage.  Compl. ¶¶ 210-14.  Moreover, in Counts Five, Six, and Seven, AWS alleges that bias and bad faith, exhibited over the course of several years by the President of the United States, tainted the evaluation process, created conflicts of interest, violated procurement laws and regulations, and "induced DoD to conduct the procurement in a manner that breached the implied contract of good faith and fair dealing between the Government and AWS."  Compl. ¶ 232; Compl. ¶¶ 219-34.  AWS has alleged that, irrespective of identifiable steps taken to do so, "it was impossible to shield DoD from the bias exhibited and undue influence exerted by President Trump and others."  Compl. ¶ 33.

The basis, insufficient though it may be, of the allegations of pervasive bias that AWS advances was well known to AWS and, as AWS itself repeatedly alleges, to the public at large, well before DoD made its decision to award the JEDI contract to Microsoft, and before the bidding process was complete.  Compl. ¶¶ 20, 21, 94.  AWS's allegations of bias by President Trump against AWS and Amazon Chief Executive Jeff Bezos date to even before the President was elected, beginning in February 2016.  Compl. ¶¶ 15-16.  This date is also well before the JEDI procurement process had begun.  AWS alleges that the President continued to display bias against it over the next several years.  Compl. ¶¶ 15-21.  AWS alleges that the President's bias culminated in his direct intervention "in the very final phases of the two-year [JEDI] procurement process," with the President allegedly "direct[ing] his newly appointed Secretary of Defense, Mark Esper . . . to conduct an 'independent' examination."  Compl. ¶ 21.  But this allegation is based on public comments made by President Trump on July 18, 2019, and by Secretary Esper on August 1, 2019.  Compl. ¶¶ 95, 176.  Final proposal revisions (FPRs) were not due from offerors until September 5, 2019, and the Source Selection Authority (SSA) did not decide to award the JEDI contract to Microsoft until October 17, 2019.  AR Tab 339 at 151,401; AR Tab 340 at 151,405; AR Tab 459 at 176,417.  AWS filed its complaint on November 22, 2019, nearly three months after submitting its final proposal revisions and nearly a month after the award decision was publicly announced.  Compl., ECF No. 1.

## ARGUMENT

I.    The *Blue & Gold Fleet* Waiver Rule

In the seminal *Blue & Gold Fleet* case, the Federal Circuit for the first time expressly recognized a waiver rule in bid protest actions in the Court of Federal Claims, holding that "a

party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." 492 F.3d at 1313. When waiver is found, dismissal is mandatory, not discretionary. *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1317 (Fed. Cir. 2016) (Reyna, J., concurring).

In announcing the waiver rule, the Federal Circuit relied on the requirement in this Court's jurisdictional statute that the Court "shall give due regard to the interests of national defense and national security and *the need for expeditious resolution of the action*." *Blue & Gold Fleet* at 1313 (quoting 28 U.S.C. § 1491(b)(3)) (emphasis added by the Federal Circuit). Additionally, the Court of Appeals relied on the rationale underlying the doctrine of patent ambiguity, as applied in the bid protest context. The Court reasoned that a waiver rule was needed to prevent a contractor from "taking advantage of the government and other bidders" by strategically waiting to raise solicitation defects until after award, when, if it did not prevail, it would be able to restart the process, armed with increased knowledge of its competitors. *Id*. at 1314. In other words, "[v]endors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award and then, if unsuccessful, claim the solicitation was infirm." *Id*. (quoting *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 175 n.14 (2005)). Moreover, a waiver rule prevents the government from having to expend time and resources to conduct a potentially needless procurement decision and then to engage in "costly after-the-fact litigation" that could have been avoided by the contractor timely raising any complaints about the competition during the bidding process. *Id*.

6

The Federal Circuit also found support for the waiver rule in the regulation that governs bid protests before the Government Accountability Office (GAO).  *Id.*  As the Court explained, a GAO regulation "requires that '[p]rotests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals.'"  *Id.* (quoting 4 C.F.R. § 21.1(a)).  In light of these strong legal underpinnings and fundamental fairness concerns, the Court of Appeals recognized the waiver rule that has since drawn its name from the *Blue & Gold Fleet* case.

Although the waiver rule as stated in *Blue & Gold Fleet* required that a challenge be brought before the close of the bidding process, the Federal Circuit later made clear that the rule extends beyond that date, and encompasses "all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so."  *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012).  In *COMINT*, the Court held that the plaintiff had waived its challenge to a solicitation amendment that, although issued after the close of the bidding process, was issued two and a half months before contract award, providing "more than an adequate opportunity to object."  *Id.* at 1383.  The Court held that the plaintiff, having chosen to wait and see whether it would be awarded the contract rather than promptly raise its objections, could not then "'come forward with [its objections] to restart the bidding process,' and get a second bite at the apple."  *Id.* (quoting *Blue & Gold Fleet*, 492 F.3d at 1314). The Court, therefore, found "[t]he same policy underlying *Blue & Gold* supports its extension to all pre-award situations."  *Id.* at 1382.

Although the waived arguments in both *Blue & Gold Fleet* and *COMINT* involved challenges to solicitation terms, this Court has made clear that, when an interested party is aware of the basis of a challenge to the terms of a competition – even if not, strictly speaking, terms of the solicitation – and has the opportunity to raise it before award or the close of bidding, it must do so or waive its challenge.  In *Peraton Inc. v. United States*, No. 19-932C, 2019 WL 6871790, at *6-*8 (Fed. Cl. Dec. 17, 2019) this Court applied the precedential guidance of *Blue & Gold Fleet* to find that allegations of bad faith conduct by an agency, as well as a challenge to the proposed terms of corrective action, were waived.  The plaintiff in that case sought to "have its cake and eat it too," by attempting to graft a challenge to newly-proposed corrective action onto a moot challenge to a previous corrective action, while also moving to stay proceedings until after corrective action was complete.  *Id*.  The Court recounted the rationale underlying the *Blue & Gold Fleet* decision, finding that a challenge to the terms of the competition, whether to the nature of the agency's corrective action or to alleged bad faith by the agency inherent in the process, must be brought before the award decision, not stayed until after that decision is made and pursued only if the plaintiff remains aggrieved.  *Id*.

Similarly, in *Jacobs Technology Inc. v. United States*, 131 Fed. Cl. 430 (2017), the Court made clear that bias allegations must be raised before, rather than after, an award decision is made.  *Id*. at 447.  In that case, two different contractors challenged the agency's decision to take corrective action, and the scope of the corrective action to be taken.  *Id*. at 435-36.  One of the protesters, the incumbent and unsuccessful offeror, alleged that the agency was biased against it in favor of the other offeror.  *Id*.  The Government argued that the allegations from both protesters were not ripe for review, as the award decision pursuant to the corrective action had

8

not yet been made. *Id*. at 446. But the Court found that, if the unsuccessful party waited until after the award decision had been made to raise allegations that the terms of competition envisioned by the corrective action, including any alleged bias, were unfair or improper, it would have waived such allegations under *Blue & Gold Fleet*. *Id*. at 447-48. The Court found that potential waiver of the claim at issue presented sufficient hardship to warrant judicial review of the allegations prior to the award decision. *Id*. at 447. The allegations, therefore, were ripe for review and properly considered prior to award; had they been raised for the first time after award, they would have been waived. *Id*.

Indeed, the Court has in many cases found the *Blue & Gold Fleet* waiver rule applicable to allegations challenging terms of the competition or evaluation that are not, strictly speaking, solicitation terms. *Synergy Solutions, Inc. v. United States*, 133 Fed. Cl. 716, 740 (2017) ("[T]he language in *COMINT Systems* expresses a clear, practical intent to expand the reach of the *Blue & Gold Fleet* waiver rule to include any defects that could potentially be raised and resolved prior to the contract award."); *Jacobs Tech., Inc. v. United States*, 100 Fed. Cl. 179, 182 n.4 (2011) ("Although [*Blue & Gold Fleet*] deals with a protester's objections to terms of the solicitation, this Court suggests that it raises legitimate concerns for prudent protesters challenging the solicitation process or the evaluation of offerors' proposals."); *but see, e.g.*, *ATSC Aviation, LLC v. United States*, 141 Fed. Cl. 670, 696 (2019) (in challenge to exclusion from the competitive range, the basis of which was not fully apparent until after award, which was challenged in the GAO before award, and which would not require reopening the bidding process or stopping work on the contract to fashion relief, the Court found that "[t]he waiver

doctrine explicated in *COMINT* and *Blue & Gold* does not bar ATSC's protest given the somewhat unusual setting of this case.").

Closely analogous to AWS's bias and bad faith allegations are allegations that an organizational conflict of interest (OCI) taints the procurement.  The Court has applied the *Blue & Gold Fleet* waiver rule to OCI allegations – which, of course, are not strictly speaking terms of the solicitation – finding that "the rationale of *Blue and Gold* leads to the conclusion that a contractor should not be allowed to protest an agency's failure to identify and mitigate an OCI when the contractor knew about the alleged OCI from the start, but failed to assert it, via protest, prior to the award."  *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 712 (2011), *aff'd* 475 F. App'x. 341 (Fed. Cir. 2012).  The Court in *CRAssociates* explained that "[a] number of cases hold that arguments that should have been raised prior to an award are waived, even if they do not relate to ambiguities or errors in the solicitation."  *Id.* at 712 n.12 (collecting cases).

Since *CRAssociates*, the Court in other cases has also found OCI allegations to be waived, when those allegations were known during the competition but were not raised until after award.  *Concourse Group, LLC v. United States*, 131 Fed. Cl. 26, 29-30 (2017) ("Logically, the waiver rule also applies where a protester fails to raise OCI claims before the close of the bidding process."); *Commun. Constr. Servs. v. United States*, 116 Fed. Cl. 233, 263-64 (2014) (finding OCI allegations waived when protester was on notice of the basis of the allegations prior to award).

Finally, both this Court and the Federal Circuit have looked to the GAO's interpretation of its regulation on the timeliness of protests challenging issues that arise pre-award in applying the *Blue & Gold Fleet* waiver rule.  *Blue & Gold Fleet*, 492 F.3d at 1314; *COMINT*, 700 F.3d at

10

1383; *iAccess Techs., Inc. v. United States*, 143 Fed. Cl. 521, 531 (2019) ("[T]he *Blue & Gold Fleet* waiver rule is analogous to timeliness restrictions on bid protests brought before the Government Accountability Office (GAO)."). The GAO has interpreted its timeliness restrictions to bar allegations of bias by procurement officials when the protester was aware of the underlying facts giving rise to its bias allegations prior to the closing date for receipt of proposals, but failed to protest the issue until after award. *Adams and Associations, Inc.*, B-417120; B-417125, 2019 CPD ¶ 21 (Comp. Gen. Jan. 16, 2019). Those bias allegations, the GAO found, were "essentially untimely challenges to the fundamental ground rules for the procurements." *Id.* at *1. In allegations that mirror AWS's, the protester in *Adams and Associations* alleged that personnel from the procuring agency headquarters were biased against it, and asked the GAO to order a re-evaluation without any input or interference by these officials. *Id.* at *2. Although the protester argued that it could not have brought the challenge prior to the award decision because it could not establish competitive prejudice absent award to a competitor, the GAO disagreed. *Id.* It found that "the factual predicates for [the protester's] bias and retaliation allegations were reasonably known to the protester prior to the closing times for proposals." *Id.* Moreover, the GAO found that "challenges which go to the heart of the underlying ground rules by which a competition is conducted should be resolved as early as practicable during the solicitation process, but certainly in advance of an award decision if possible, not afterwards." *Id.* (citation omitted). Citing *Blue & Gold Fleet*, the GAO found that:

> Such a rule promotes fundamental fairness in the competitive process by preventing an offeror from taking advantage of the government as well as other offerors, by waiting silently only to spring forward with an alleged defect in an effort to restart the

> procurement process, potentially armed with increased knowledge
> of its competitors' position or information.

*Id*.  The GAO also explained that the rule "promotes efficiency by ensuring that concerns regarding a solicitation are raised before contractor and government resources are expended in pursuing and awarding the contract, thus avoiding costly and unproductive litigation after the fact."  *Id*.

Like AWS's allegations here, the GAO found that "the protester's allegations are premised on the notion that the procurement processes in place were so flawed, or corrupted, that they could not yield fair and proper results."  *Id*. at *3.  The GAO found, however, that its rules do not permit a protester "to wait to raise a fundamental flaw with the procurement process until after an award decision has been made," and dismissed the claims as untimely.  *Id*.

## II.   Counts Three, Five, Six, And Seven Of AWS's Complaint Are Waived

The precedential waiver rule announced in *Blue & Gold Fleet* operates to bar the allegations contained in Counts Three, Five, Six, and Seven of AWS's complaint.  Each count alleges flaws fundamental to the JEDI procurement – challenging both solicitation terms and other aspects of the competition.  AWS' own pleadings make clear that it was aware of the factual predicates of each allegation prior to the date final proposals were due, and well before the award decision was made.  Because AWS chose not to raise its allegations at that time but instead to "roll the dice" and see if it were selected for award, it has waived the right to bring these untimely allegations after the award decision has been made.  AWS's wait-and-see approach here raises the precise moral hazard that the *Blue & Gold Fleet* waiver rule was instituted to combat, and the Court should dismiss these untimely and improper allegations.

███████████████████████████████████████████████████████████

A.     <u>Count Three</u>

In Count Three, AWS alleges that DoD "took affirmative steps to deprive AWS of its competitive advantage over Microsoft and level the playing field so that DoD could justify its award to a technically inferior competitor."  Compl. ¶ 211.  Specifically, citing to Amendment 0005 of the solicitation, which was issued on May 22, 2019, AWS alleges that "[t]hese affirmative steps included not evaluating past performance, prohibiting AWS from leveraging its existing classified infrastructure for the JEDI Contract, and precluding AWS from relying on ██████████████ and ████████████████████████████████████ under the Price Scenarios."  Compl. ¶ 212.

With regard to past performance, it has been clear from the very beginning of the JEDI procurement process that past performance would not be evaluated.  Past performance did not appear among the evaluation factors for award listing in any iteration of the publicly advertised JEDI solicitation.  *E.g.*, AR Tab 1 at 89-95; AR Tab 342 at 151,503-151,509.  Moreover, in the public process through which DoD developed the JEDI solicitation, DoD was specifically asked how it would evaluate past performance, and published its unequivocal response that it would not evaluate past performance at all.  AR Tab 105 at 6,422 (see Question 784:  "Please clarify how Past Performance will be evaluated and its relative importance within the stated evaluation criteria."  A: "Past Pe[r]formance ***will not be evaluated***.") (emphasis added).  AWS has, therefore, long been on notice that DoD would not be evaluating past performance as part of the JEDI solicitation, and the time to raise a protest challenging that decision has long since passed.  *See Blue & Gold Fleet*, 492 F.3d at 1313.

████████████████████████████████████████████████████████████████████

Similarly, AWS's other complaints with Amendment 0005 to the solicitation are untimely, given that they are being raised not only after several rounds of discussions and evaluations have transpired, but even after the award decision has been made.  AR Tab 301. AWS alleges that Amendment 0005 changed the requirements to "prohibit[] AWS from leveraging its existing classified infrastructure for the JEDI Contract, and preclud[e] AWS from relying on ███████████ and ██████████████████████████████ under the Price Scenarios," Compl. ¶ 212, resulting in AWS ███████ its total proposed price by roughly $███████.  Compl. ¶ 213.  But, by its own admission, AWS was aware of the requirements as expressed in Amendment 0005, and of the effect on its proposal, long before the bidding process and the award decision were complete.  *See* Compl. ¶ 102.  If Amendment 0005 had amounted to "arbitrary and capricious conduct" without which "AWS ████████████████████ ██████████████████████████████████, and would have received the JEDI Contract," Comp. ¶ 214, then AWS was required to bring a challenge to those terms prior to award.  *See COMINT*, 700 F.3d at 1383.  Having instead waited to see whether it would be selected for award, AWS may not now, after the fact, belatedly challenge the terms of the solicitation.  *See Blue & Gold Fleet*, 492 F.3d at 1313.

B.    Count Five

In Count Five, AWS alleges that "President Trump's bias against AWS improperly influenced DoD officials responsible for the JEDI solicitation, undermined the procurement process, resulted in an unreasonable evaluation, and unfairly deprived AWS of the JEDI award." Compl. ¶ 220.  As a result of this alleged bias, AWS contends in Count Five that "DoD engaged

in arbitrary, capricious, and unlawful conduct through its biased, bad-faith decision making in its proposal evaluations and award decision." Compl. ¶ 220.

But all of the factual allegations on which AWS premises these conclusions were known to AWS well before it submitted its final proposal and well before award. AWS alleges a course of conduct by the President, beginning even before he was elected, exhibiting a "personal dislike for Mr. Bezos, Amazon, and the Washington Post, [and] his express desire to harm them." Compl. ¶ 15. AWS goes on to detail a string of public comments and other alleged behavior by President Trump or others associated with him, both before the JEDI procurement had begun and as it progressed, to manifest this alleged animus. Compl. ¶¶ 16-21. In particular, AWS focuses on a press conference held on July 18, 2019, during which, with alleged reference to the JEDI procurement, the President stated that he "will be asking [DoD] to look at it very closely to see what's going on." Compl. ¶ 20. AWS links this allegation with an announcement by then newly-confirmed Secretary of Defense Mark Esper on August 1, 2019, that, "as the new guy coming in," he would take "a fresh look at it, study it, make sure I understand all the different factors." Compl. ¶ 176. But final proposal revisions were not due until September 5, 2019, and the award decision was not made until October 17, 2019, yet AWS did not raise any complaint about the potential for bias until November 22, 2019. AR Tab 339 at 151,401; AR Tab 340 at 151,405; AR Tab 459 at 176,417.

AWS characterizes the statements from the President as "making clear to DoD (and to the world) that he did not want AWS to get the JEDI Contract," Compl. ¶ 94, and cites a variety of publications opining that the statements could indicate bias against AWS, potentially harming its chances of being selected for award of the contract. Compl. ¶ 21 & n.3. Indeed, AWS has

15

alleged that, both "*before* and after *the JEDI award announcement*, countless industry observers voiced concern that the award decision was impermissibly tainted by President Trump's influence," citing articles published in July and August 2019, well before the award decision.  Pl. Memo in Support of its Mot. to Supplement the Administrative Record (Pl. MTS), ECF No. 124-1, at 28 (emphasis added).

AWS's allegations make clear that AWS, along with the rest of the world, was on notice well before the award decision of the factual basis for the allegations of bias that it now pursues in this Court.  If AWS believed that the competition was impermissibly tainted by this publicly proclaimed bias, as it now alleges, it was required to bring those allegations at the time the statements were made, rather than "sit on [its] rights to challenge" what it believed to be an unfairly tainted competition, "roll the dice and see if [it] receive[s] award and then, if unsuccessful, claim the [competition] was infirm."  *Blue & Gold Fleet*, 492 F.3d at 1314 (quoting *Argencord,* 68 Fed. Cl. at 175 n.14).  AWS learned no new information between the public statements and reporting on which it premises its allegations of bias and the filing of its complaint claiming a link between President Trump's alleged animus and the JEDI procurement – indeed, AWS still alleges no clear link between the President and the source selection officials, relying instead on pure speculation and conspiracy theorizing.  Rather, the gravamen of AWS's allegation is that the President's public comments were of such a nature as to irreparably taint *any* evaluator.  Compl. ¶ 20.  Under this theory, however, AWS had all the information it needed to raise a challenge prior to the award, but instead waited to see if it might be selected anyway. The law does not permit this strategy, and the Court should dismiss Count Five of AWS's complaint.

C.      Count Six

Count Six is based on many of the same factual allegations as Count Five.  Count Six

alleges that that "[t]he Administration created a conflict of interest by demonstrating through

repeated conduct that Executive Branch employees who do not follow President Trump's

directives are at risk of losing their jobs," and that "decision makers knew that their continued

employment likely depended on selecting Microsoft" for award of the JEDI contract.  Compl.

¶ 226.  It further alleges that DoD "failed to give fair consideration to AWS and to treat it

impartially," and that DoD applied an unstated evaluation criterion "that, per President Trump's

directive, AWS not be awarded the JEDI Contract."  Compl. ¶ 227-28.  The alleged factual

predicate for these charges is discussed above with reference to Count Five, with the addition of

public comments and reporting regarding the departure from the administration of Former

Secretary of Defense James Mattis, which AWS links to the JEDI procurement, despite citing

various articles that all link the departure instead to a disagreement over policy in Syria.  Compl.

¶¶ 91, 226.  On December 20, 2018, 10 months before the contract was awarded to Microsoft,

Former Secretary Mattis announced his decision to resign in a widely publicized decision of

which, according to its own pleadings, AWS was well aware.

For the same reasons discussed above, the allegations in Count Six have been waived.  If

AWS believed that the Administration's actions related to Former Secretary Mattis and others,

taken in conjunction with the President's public statements, had created an inescapable conflict

of interest such that JEDI decision makers knew that "their continued employment likely

depended on selecting Microsoft," then it had a duty to promptly raise those concerns *before* the

award decision was made, rather than sit on its hands and see how events unfolded.

17

D.    <u>Count Seven</u>

Finally, Count Seven, to the extent it is not entirely duplicative of the other counts

discussed above, is also waived.  Count Seven alleges that "President Trump induced DoD to

conduct the procurement in a manner that breached the implied contract of good faith and fair

dealing between the Government and AWS."  Compl. ¶ 233.  As an initial matter, the Court has

held that an alleged breach of the implied contract to fairly and honestly consider bids "is, at

best, redundant, as any claim which could have been brought under that theory is preserved

within [the Court's] jurisdiction under 28 U.S.C. § 1491(b)(1)."  *Res Rei Dev., Inc. v. United

States*, 126 Fed. Cl. 535, 547 n.18 (2016).  Count Seven appears to be another, superfluous way

of framing the same allegations discussed above in both Count Six and, especially, Count Five.

Again, therefore, for the same reasons previously discussed, to the extent that Count Seven

survives as a separate allegation, it is also waived under the precedential waiver rule established

in *Blue & Gold Fleet*.

## **<u>CONCLUSION</u>**

For these reasons, the United States respectfully requests that the Court dismiss Counts

Three, Five, Six, and Seven of the complaint, because AWS has waived the allegations contained

therein.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:

MICHAEL G. ANDERSON                    s/ Anthony F. Schiavetti
BENJAMIN M. DILIBERTO                  ANTHONY F. SCHIAVETTI
Assistant General Counsel              RETA BEZAK
Washington Headquarters Service &      Trial Attorneys
Pentagon Force Protection Agency       U.S. Department of Justice
Office of General Counsel              Civil Division
Department of Defense                  Commercial Litigation Branch
                                       PO Box 480
TYLER J. MULLEN                        Ben Franklin Station
CCPO Legal Advisor                     Washington, D.C. 20044
Assistant General Counsel              Tel: (202) 305-7572
Defense Information Systems Agency     Fax: (202) 305-1571
Office of the General Counsel          anthony.f.schiavetti@usdoj.gov

January 24, 2020                       Attorneys for Defendant