**Redacted Version**

No. 19-1796C
(Judge Patricia E. Campbell-Smith)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

AMAZON WEB SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Intervenor-Defendant.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND FOR DISCOVERY

OF COUNSEL:

MICHAEL G. ANDERSON
BENJAMIN M. DILIBERTO
Assistant General Counsel
Washington Headquarters Service &
Pentagon Force Protection Agency
Office of General Counsel
Department of Defense

TYLER J. MULLEN
CCPO Legal Advisor
Assistant General Counsel
Defense Information Systems Agency
Office of the General Counsel

January 31, 2020

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

PATRICIA M. McCARTHY
Assistant Director

ANTHONY F. SCHIAVETTI
RETA BEZAK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendant

# TABLE OF CONTENTS

QUESTIONS PRESENTED................................................................................................. 2

STATEMENT OF THE CASE............................................................................................. 3

    I.    Nature Of The Case ................................................................................................ 3

    II.    Statement Of Relevant Facts And Proceedings ..................................................... 3

ARGUMENT ...................................................................................................................... 5

    I.    AWS Is Not Entitled To Supplement The Administrative Record Or To
        Discovery ............................................................................................................... 5

        A.    Legal Standard For Supplementing the Administrative Record ................. 6

        B.    Standard For Discovery In Bid Protests Based On Allegations Of Bias Or
              Bad Faith .................................................................................................... 7

        C.    AWS Has Waived Its Claims Of Bias Or Bad Faith .................................. 8

        D.    Even Assuming That AWS Has Not Waived These Claims, It Has Failed
              To Make A Threshold Showing Of Bias Or Bad Faith ............................. 9

              1.    AWS Fails To Show A Motive For Bad Faith By Source Selection
                    Officials........................................................................................ 9

              2.    AWS Has Failed To Demonstrate That The Award Decision
                    Cannot Be Explained Absent Bad Faith ...................................... 17

    II.    AWS's Proposed Supplementary Materials Would Not Aid This Court's
        Review ................................................................................................................. 19

        A.    The President's Statements About Amazon, Mr. Bezos, And The
              Washington Post ....................................................................................... 19

         B.    Statements From "Affiliates".................................................................... 20

        C.    Materials Viewed By The President, His Affiliates, And DoD
              Officials.................................................................................................... 20

        D.    Materials Purportedly Showing The President's Influence
              Within DoD................................................................................................ 21

E.  Materials Purportedly Showing The President's Influence Throughout The Government ..................................................................................... 21

III.  The Court Should Not Permit AWS's Proposed Discovery ................................. 22

A.  AWS Should Not Be Permitted To Depose The President, Secretary Esper, Former Secretary Mattis, Or DoD Chief Information Officer Dana Deasy .......................................................................................................... 23

1.  The President Of The United States ............................................... 26

2.  Secretary Esper ............................................................................. 27

3.  Secretary Mattis ........................................................................... 28

4.  DoD CIO Dana Deasy ................................................................. 29

B.  Any Depositions Of Procurement Officials Should Be Severely Curtailed ......................................................................................................... 30

C.  AWS Has Failed To Prove That It Is Entitled To The Interrogatories It Seeks ........................................................................................................ 33

D.  AWS Has Failed To Prove That It Is Entitled To The Documents It Seeks ........................................................................................................ 37

CONCLUSION ........................................................................................................................ 40

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*AgustaWestland N. Am., Inc. v. United States,*
   880 F.3d 1326 (Fed. Cir. 2018) ................................................................. 7

*Axiom Res. Mgmt., Inc. v. United States,*
   564 F.3d 1374 (Fed. Cir. 2009) ............................................................. 6, 7

*Bacon v. HUD,*
   757 F.2d 26  (Fed. Cir. 1985) ................................................................. 25

*Beta Analytics International, Inc. v. United States,*
   61 Fed. Cl. 223 (2004) ................................................................. passim

*Blue & Gold Fleet, L.P. v. United States,*
   492 F.3d 1308 (Fed. Cir. 2007) ................................................................. 9

*Bogan v. City of Boston,*
   489 F.3d 417 (1st Cir. 2007) ................................................................. 26

*Camp v. Pitts,*
   411 U.S. 138 (1973) ................................................................. 7

*Cheney v. United States Dist. Court for the Dist. of Columbia,*
   542 U.S. 367 (2004) ................................................................. 25

*DataMill, Inc. v. United States,*
   91 Fed. Cl. 722 (2010) ................................................................. 6

*F.D.I.C. v. Galan-Alvarez,*
   2015 WL 5602342 (D.D.C. Sept. 4, 2015) ................................................................. 28

*Four Points by Sheraton v. United States,*
   63 Fed. Cl. 341 (2005) ................................................................. 18

*Gulf Grp. Inc. v. United States,*
   61 Fed. Cl. 338 (2004) ................................................................. 37

*Impresa Construzioni Geom Domenico Garufi v. United States,*
   238 F.3d 1324 (Fed. Cir. 2001) ................................................. 6, 28, 35, 36

*In re Cheney,*
   544 F.3d 311 (D.C. Cir. 2008) ................................................................. 26

*In re F.D.I.C.*,
   58 F.3d 1055 (5th Cir. 1995) ........................................................................ 24

*In re Sealed Case*,
   121 F.3d 729 (D.C. Dir. 1997) ............................................................... passim

*In re United States(Bernanke)*,
   542 F. App'x 944 (Fed. Cir. 2013) .......................................................... 24, 28

*In re United States(Kessler)*,
   985 F.2d 510 (11th Cir. 1993) ................................................................ 25, 26

*In re United States (Reno)*,
   197 F.3d 310 (8th Cir. 1999) ......................................................................... 25

*Info. Tech. & Application Corp. v. United States*,
   316 F.3d 1312 (Fed. Cir. 2003) .................................................................... 17

*Inforeliance Corp. v. United States*,
   118 Fed. Cl. 744 (2014) .......................................................................... 15, 18

*Int'l Res. Recovery, Inc. v. United States*,
   61 Fed. Cl. 38 (2004) .................................................................. 8, 10, 13, 18

*Jarrott v. Scrivener*,
   225 F. Supp. 827 (D.D.C. 1964) .................................................................. 14

*L-3 Commc'ns EOTech, Inc. v. United States*,
   87 Fed. Cl. 656 (2009) .................................................................................... 7

*L-3 Commc'ns Integrated Sys., L.P. v. United States*,
   91 Fed. Cl. 347 (2010) .................................................................................. 17

*Lederman v. N.Y.C. Dep't of Park & Rec.*,
   731 F.3d 199 (2d Cir. 2013) ......................................................................... 28

*Madison Servs., Inc. v. United States*,
   92 Fed. Cl. 120 (2010) .............................................................................. 8, 19

*Oracle Am., Inc. v. United States*,
   144 Fed. Cl. 88 (2019) ............................................................................... 4, 11

*Orion Intl. Tech., Inc. v. United States*,
   60 Fed. Cl. 338 (2004) ........................................................................ passim

*Pitney Bowes Gov't Solutions, Inc. v. United States,*
　93 Fed. Cl. 327 (2010) ................................................................................. 23

*Rd. & Highway Builders, LLC v. United States,*
　702 F.3d 1365 (Fed. Cir. 2012) .................................................................... 13

*Sanders v. U.S. Postal Serv.,*
　801 F.2d 1328 (Fed. Cir. 1986) ............................................................ 7, 19, 24, 40

*Simplex Time Recorder Co. v. Sec'y of Labor,*
　766 F.2d 575 (D.C. Cir. 1985) ..................................................................... 24

*Spezzaferro v. Fed. Aviation Admin.,*
　807 F.2d 169 (Fed Cir. 1986) ........................................................................ 7

*Starry Assocs., Inc. v. United States,*
　125 Fed. Cl. 613 (2015) .......................................................................... 13, 17

*Tech Sys., Inc. v. United States,*
　97 Fed. Cl. 262 (2011) ................................................................................. 15

*United States v. Morgan,*
　313 U.S. 409 (1941) ...................................................................................... 25

**Statutes**

5 U.S.C. § 706 ................................................................................................. 6

5 U.S.C. § 702 ................................................................................................. 6

28 U.S.C. § 1491(b)(4) ................................................................................... 6

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

AMAZON WEB SERVICES, INC.,          )
                                    )
            Plaintiff,              )
                                    )
    v.                              )          No. 19-1796C
                                    )   (Judge Patricia E. Campbell-Smith)
THE UNITED STATES,                  )
                                    )
            Defendant,              )
                                    )
and                                 )
                                    )
MICROSOFT CORPORATION,              )
                                    )
            Intervenor-defendant.   )

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND FOR DISCOVERY

Pursuant to the Court's January 15, 2020, scheduling order (ECF No. 115), defendant, the

United States, respectfully responds to the motion of plaintiff, Amazon Web Services, Inc.

(AWS), to supplement the administrative record and for leave to conduct discovery.  AWS's

motion should be denied because AWS has not presented hard facts demonstrating bias or bad

faith by the source selection officials and, as demonstrated in our partial motion to dismiss (ECF

No. 132), AWS has waived these allegations.  Even assuming that supplementation and/or

discovery were warranted, AWS's proposed discovery should be rejected because it would not

lead to sufficient evidence demonstrating bias or bad faith by the actual decision-makers.

AWS asks this Court to greatly expand an already massive administrative record, but fails

to make any showing that the source selection officials in this procurement exhibited bias or bad

faith.  In fact, AWS largely ignores these technically experienced officials, who provided well-

informed, well-reasoned evaluation judgments, and instead focuses its argument on the President

of the United States, who it alleges has exhibited public animosity towards Amazon and its affiliates. Yet, AWS does not allege any direct contact or communication between the President and the source selection officials, or provide any evidence that the President or anyone else influenced their evaluation of the procurement. AWS's patent inability to connect the dots between the President's alleged bias and the decisions of the source selection officials highlights why AWS has failed to meet the high burden for seeking to supplement the record or to obtain discovery. The logical gap in AWS's current argument also stands in stark contrast to the standard it asserted in connection with the protest filed by a prior bidder, where AWS correctly insisted that any claim of bias had to focus on the evaluations of the specific decision-makers.

While AWS has failed to justify any of the discovery it seeks in this case, its demand for depositions of the President of the United States and cabinet-level officials is particularly audacious. As courts have repeatedly made clear, nothing short of extraordinary circumstances can justify such testimony. AWS does not even acknowledge its obligation to meet such a high bar, much less come close to doing so in this case. Because AWS's motion fails to adhere to the high standards governing its requests for record supplementation and discovery in this bid protest case, the motion should be denied.

## QUESTIONS PRESENTED

1.      Whether AWS has provided hard facts sufficient to demonstrate that Department of Defense (DoD) source selection officials had a motive to engage in bad faith or bias, when AWS fails to link allegations of bias against it by the President to any of the officials who made the source selection decision that AWS challenges.

2.      Whether AWS has provided hard facts sufficient to demonstrate conduct that is hard to explain absent bad faith.

3.     Whether, even assuming that AWS could meet the threshold showing of bias, the supplementation of the record and discovery that AWS proposes would lead to evidence sufficient to overcome the strong presumption of regularity and good faith, when AWS has raised no direct evidence or even allegations of bias by any of the source selection officials.

## STATEMENT OF THE CASE

### I.     Nature Of The Case

AWS protests DoD's decision to award its Joint Enterprise Defense Infrastructure (JEDI) contract to Microsoft.  The contract is for cloud computing resources, including commercial infrastructure as a service (IaaS) and platform as a service (PaaS) offerings to support DoD operations.  AR Tab 459 at 176,410.  The JEDI contract is a firm fixed price, indefinite delivery, indefinite quantity (IDIQ) contract, with a base period of two years, with options permitting up to 10 years of performance.  *Id.*  The minimum guarantee under the contract is $1 million; the maximum contract value is $10 billion.  *Id.*; AR Tab 485 at 178,612.

### II.     Statement Of Relevant Facts And Proceedings

In its complaint, AWS alleges errors in DoD's evaluation of its and Microsoft's proposals, and in DoD's best value award decision.  AWS also challenges the terms of the solicitation, including an amendment issued nearly five months before the award decision. But AWS also alleges that bias and bad faith, exhibited over the course of several years by the President of the United States, tainted the evaluation process, created conflicts of interest, violated procurement laws and regulations, and "induced DoD to conduct the procurement in a manner that breached the implied contract of good faith and fair dealing between the Government and AWS."  Compl. ¶ 232; Compl. ¶¶ 219-34.  AWS further alleges that, irrespective of steps taken to do so, "it was impossible to shield DoD from the bias exhibited and

undue influence exerted by President Trump and others." Compl. ¶ 33.  AWS posits that the President's bias culminated in his direct intervention "in the very final phases of the two-year [JEDI procurement process]," with the President allegedly "direct[ing] his newly appointed Secretary of Defense, Mark Esper . . .  to conduct an 'independent' examination."  Compl. ¶ 21. In support of its bias and bad faith allegations, AWS relies on highly publicized comments of which it concedes it was aware long before the award decision was made.  Compl. ¶ 94.

Conspicuously absent from AWS's allegations of bias is any acknowledgement that this same JEDI procurement that AWS claims was influenced by the President's alleged bias against Amazon is still embroiled in a separate protest claiming that the entire procurement was biased *in favor of AWS*. *See Oracle Am., Inc. v. United States*, 144 Fed. Cl. 88, 102-11 (2019), *appeal docketed*, Fed. Cir. No. 19-2326 (Aug. 28, 2019).  AWS intervened in the previous protest in support of the Government, defending the fairness of the procurement.  *Id.* at 88.

In light of its claims of bias and bad faith, AWS seeks supplementation of the administrative record in this case with 507 pages of additional documents and five video files, as well as discovery purportedly designed to obtain additional evidence of the alleged bias.  Mem. of Points and Authorities (Pl. Mot.) (ECF No. 124-1); *see also* App. to Pl. Mot.; Pl. Mot., Exhs. A, B, C.  AWS's requests are far from modest; in fact, not only does AWS seek expansive interrogatories and documents spanning topics from the inception of the JEDI procurement through post-award conduct, but with barely a nod to the extraordinary nature of the request, it seeks depositions of the sitting President, the Secretary of Defense, and other high-level and former high-level Government officials.  *See* Pl. Mot., Exh. A.  As we demonstrate below, AWS falls far short of meeting its high burden to warrant supplementation, or the even steeper burden it faces for the extraordinary depositions it seeks.

**ARGUMENT**

AWS paints itself as the victim of a campaign by the President to snatch away a critical and lucrative DoD cloud computing contract that AWS believes it alone was entitled to receive. However, despite pages and pages detailing the President's commentary over the past several years, AWS fundamentally fails to establish a nexus between the President's remarks and the source selection decision in the JEDI procurement. AWS instead relies on innuendo and supposition to make its case for an extraordinary level of discovery, to include the depositions of the sitting President of the United States and Secretary of Defense. In reality, it plainly has not met the stringent thresholds this Court requires to justify *any* discovery in a bid protest, particularly in light of the fact that AWS possessed contemporaneous knowledge of all of the facts upon which it bases its bias claims, and its failure to timely raise such claims results in their waiver.

Moreover, even if AWS's insinuations were sufficient to warrant supplementation of the record or discovery into its allegations of bias, AWS has utterly failed to establish that the supplementation and discovery proposed would lead to evidence that would satisfy this Circuit's justifiably high burden of proof for claims of bias or bad faith. Not only do its discovery requests far exceed the scope of any bias inquiry, but AWS also seeks to depose high-ranking officials despite failing to address the disproportionate nature of such requests in light of the tenuous connections AWS attempts to draw between these officials and the actual source selection decisions. AWS's motion should be denied.

**I.      AWS Is Not Entitled To Supplement The Administrative Record Or To Discovery**

AWS seeks to supplement the administrative record related to its allegations that DoD has engaged in bad faith or bias against AWS. But AWS provides no hard facts demonstrating

bias and its requests should be rejected.  AWS's allegations of bias are rooted in tweets and other

public statements made by the President – some made before he was even elected – disparaging

AWS, its parent company, Amazon, and Amazon's CEO, Jeff Bezos.  However, as we

demonstrate below, the President's alleged bias is not sufficient to establish that the actual

decision-makers in this procurement exhibited bias or bad faith.

### A.      Legal Standard For Supplementing the Administrative Record

AWS's motion to supplement the administrative record and for discovery is subject to

stringent, controlling standards.  *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374,

1379-81 (Fed. Cir. 2009).  To prevail, AWS must show that "the omission of extra-record

evidence precludes effective judicial review."  *Id.* at 1380 (citation and internal quotations

omitted).  In other words, the plaintiff must offer "concrete and specific reasons – rather than

nebulous assertions – as to why the discovery sought . . . is necessary."  *DataMill, Inc. v. United

States*, 91 Fed. Cl. 722, 732 (2010).

Requests to supplement the administrative record in bid protests are considered in light of

the statute granting this Court jurisdiction over bid protests, which directs the Court to "review

the agency's decision pursuant to the standards set forth in section 706 of Title 5," the

Administrative Procedure Act (APA).  28 U.S.C. § 1491(b)(4).  APA review is not a *de novo*

investigation of the agency action at issue; rather, it is an examination to determine whether the

challenged action was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. §§ 702, 706(2)(A); *see also Impresa Construzioni Geom.

Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Under the deferential

standard of review for bid protests, the evidence the Court should consider is appropriately

limited to the agency's administrative record already in existence, "not some new record made

initially by the reviewing court." *Axiom*, 564 F.3d at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 671-72 (2009) (stating that bid protest plaintiffs do not have an "unfettered right to submit [documents] giving [their] commentary on every aspect of the … process, and to have those declarations included in the administrative record").   "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (quoting *Axiom*, 564 F.3d at 1379).

Prior to supplementing the administrative record, the Court is "required to explain why the evidence omitted from the record frustrated judicial review as to the ultimate question of whether" the agency action was arbitrary and capricious. *Id*. at 1332.  Otherwise, "it [is] an abuse of discretion to supplement the administrative record" or to "rely[] on the supplemental evidence to reach [a] decision." *Id.* at 1328, 1332, 1335; *accord Axiom*, 564 F.3d at 1380 ("[T]he trial court abused its discretion in this case" by failing "to make the required threshold determination of whether additional evidence was necessary.").

**B.      Standard For Discovery In Bid Protests Based On Allegations Of Bias Or Bad Faith**

Agency decisions are "entitled to . . . presumptions of regularity." *Id.* at 1338.  Further, "Government officials are presumed to carry out their duties in good faith." *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed Cir. 1986).  Therefore, it takes "well-nigh irrefragable proof" of bias or bad faith to overcome the strong presumption in the law that administrative actions are correct and taken in good faith. *Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986) (citation and internal quotation marks omitted).  It thus follows that "allegations of bad faith must be based on hard facts in order to justify . . . supplementation of the

administrative record." *Int'l Res. Recovery, Inc. v. United States*, 61 Fed. Cl. 38, 43 (2004).

"This is especially true where the procuring agency has provided for its decision a reasonable

explanation, borne out by an administrative record that otherwise appears complete." *Madison*

*Servs., Inc. v. United States*, 92 Fed. Cl. 120, 130 (2010).  Where the agency has provided a

complete record, "the proffered extra-record material must indicate some personal animus or

bias on the part of agency officials, reveal a latent inconsistency in the existing record, or

otherwise give some indication that the agency's explanation is pretextual." *Id.*

In *Beta Analytics International, Inc. v. United States*, this Court established a two-part

test for a plaintiff seeking discovery based on allegations of bad faith: (1) the plaintiff "must first

make a threshold showing of either a motivation for the government employee in question to

have acted in bad faith or conduct that is hard to explain absent bad faith," and (2) "the plaintiff

must persuade the Court that discovery could lead to evidence which would provide the level of

proof required to overcome the presumption of regularity and good faith." 61 Fed. Cl. 223, 226

(2004).  Mere "[i]nnuendo or suspicion is not enough to demonstrate bad faith and thus to justify

discovery." *Id.* (citing *Orion Intl. Tech., Inc. v. United States*, 60 Fed. Cl. 338, 344 (2004)).

**C.     <u>AWS Has Waived Its Claims Of Bias Or Bad Faith</u>**

AWS's current motion not only should be denied, but also highlights why its allegations

of bias and bad faith should be dismissed.  As we explain in detail in our partial motion to

dismiss, by failing to raise its bias and bad faith allegations prior to award despite its

contemporaneous awareness of all of the facts on which it bases these claims, AWS has waived

all of the allegations on which it seeks to supplement the administrative record and take

discovery.  *See generally* Def. Partial Mot. to Dismiss (ECF. No. 132).  The waiver rule

established by the Court of Appeals for the Federal Circuit in *Blue & Gold Fleet, L.P. v. United*

*States*, 492 F.3d 1308 (Fed. Cir. 2007), prohibits a party who had an opportunity to object to the terms of competition on which a procurement is conducted to instead wait to see if it is selected for award and, only if is it not selected, then pursue costly, after-the-fact litigation, perhaps armed with additional information about its successful competitor.  Because that is precisely the prohibited strategic gambit that AWS is attempting with regard to its allegations of bias and bad faith, these allegations are waived and must be dismissed.  Because AWS now seeks extraordinary extra-record discovery and supplementation of the administrative record in support of these allegations, including depositions of the President of the United States and other high-ranking officials, the Court should dismiss these allegations now, prior to merits briefing, to narrow the issues and to avoid having to address needlessly the costly, time consuming, and ultimately futile discovery in support of waived allegations that the Court may not consider.

> **D.**    **Even Assuming That AWS Has Not Waived These Claims, It Has Failed To Make A Threshold Showing Of Bias Or Bad Faith**

AWS's allegations exemplify precisely the type of "[i]nnuendo or suspicion" that this Court has deemed insufficient to justify supplementation of the record or discovery.  *Beta Analytics*, 61 Fed. Cl. at 226.  AWS fails to present hard facts demonstrating that *any* of the source selection officials had a motive to act in bad faith, or that *any* conduct exists that is hard to explain absent bad faith.

> 1.    <u>AWS Fails To Show A Motive For Bad Faith By Source Selection Officials</u>

AWS spends pages and pages detailing the President's alleged bias exhibited against Amazon.  Yet the relevant question in this protest is not whether the President dislikes Amazon, but rather whether the source selection officials – the Government personnel who actually evaluated AWS's and Microsoft's proposals and decided which offeror would receive the JEDI contract – exhibited bias against AWS *in this procurement*.  Conspicuously absent from AWS's

litany of alleged abuses by the President and others are any "hard facts" demonstrating that the

source selection officials had a motive to judge AWS's proposal unfairly.  *See Int'l Res.*

*Recovery*, 61 Fed. Cl. at 43.  Indeed, paradoxically, program officials were falsely accused of

harboring a *pro-Amazon* bias in the *Oracle* litigation, which is currently pending appeal.  AWS

omits almost all mention of this litigation from its account of alleged bias, perhaps in part

because AWS's position with respect to supplementation of the record in that protest is

inconsistent with the arguments it presents here.  *See, e.g.*, AWS Resp. to Oracle's Mot to

Complete and Suppl. Admin. Rec. at 4, Jan. 18, 2019, ECF No. 46 (Fed. Cl. No. 18-1880)

("Absent allegations of bias *on the part of the specific Agency decision-makers* . . . there is no

basis to expand the record beyond the official determinations at issue.") (emphasis in original);

*id.* at 24 n.19 ("Oracle wastes the Court's and the parties' time requesting miscellaneous

documents about individuals who were not the relevant decision-makers in this procurement.").

AWS sets the stage by recounting instances in which it alleges that the President has

interfered with other Government procurements and other Government operations.  Pl. Mot. at 3-

5.  Not only are these insinuations based primarily on accusations leveled in the media, they have

absolutely nothing to do with this procurement or the deciding officials here.  The Court should

not credit AWS's blatant attempt to cast this dispute as a piece of a much larger political puzzle –

including AWS's inflammatory suggestion that this procurement dispute be viewed "against the

background of impeachment."  Pl. Mot. at 6.  Stripping away AWS's rhetoric reveals the absence

of any hard facts that suggest bad faith or bias by the actual Government officials charged with

conducting this procurement.

Beyond those unrelated insinuations, AWS primarily points to tweets by the President

and his family (1) critical of Amazon, and Amazon's CEO, Jeff Bezos, and (2) announcing the

President's intent to look into the JEDI procurement in light of complaints about the process.  Pl. Mot. at 7-9.  In addition, AWS alleges that the appointment of Secretary Esper, who also stated that he would be looking into the procurement, further inserted the President's bias into the process.  *Id.* at 9-10.  None of these comments demonstrate bias on the part of the procurement officials, and AWS's suspicion that the President's alleged bias somehow impacted the decisions of the procurement officials "is not enough to demonstrate bad faith and thus to justify discovery."  *Beta Analytics*, 61 Fed. Cl. at 226.

As an initial matter, the fact that either the President or Secretary Esper called for a close review of the procurement in light of complaints about the propriety and impartiality of the process does not demonstrate bias or bad faith; to the contrary, it is entirely innocuous and appropriate that high-level officials would investigate such allegations made by other offerors and members of Congress.  In this case, the allegations arose primarily as a result of a previous protest of this procurement by Oracle America, Inc., who argued, among other things, that conflicts of interest between DoD employees and AWS affected the procurement and gave AWS an unfair advantage.  *Oracle Am.*, 144 Fed. Cl. at 91.  The United States and AWS vigorously opposed Oracle's allegations, and this Court ultimately held that the contracting officer's determinations – that individuals alleged to have conflicts of interest did not taint the procurement process and that AWS did not have an organizational conflict of interest – were rational.  *Id.* at 120-25.  In its briefing in this case, AWS omits almost all reference to the significant efforts undertaken by the Government to defend the procurement from allegations that it was tilted in AWS's favor, as that fact does not fit AWS's manufactured narrative.  That the Secretary of Defense sought to ensure that the integrity of the process remained unblemished in no way suggests bias or bad faith; rather, it suggests the contrary.

Further, Secretary Esper's "look" into the procurement is documented in the administrative record.  The record contains briefing materials provided to Secretary Esper during several meetings regarding the JEDI procurement in which he reviewed various options going forward.  AR Tabs 335, 439, 440, 453, 548-550, 555, 558.  The record also contains a decision memorandum documenting the results of the review, including the fact that Secretary Esper ultimately recused himself from the procurement, and recounting the Deputy Secretary's direction "to finalize the JEDI source selection and award in accordance with the current Request for Proposals."  AR Tab 462 at 176,426.  In other words, the result of Secretary Esper's review was that the procurement was to proceed as intended, with AWS as one of the eligible offerors – a fact AWS conspicuously omits.  Finally, the record also demonstrates that the Secretary's review focused on options for high-level modifications to the procurement; "[a]t no point during any portion of the review or options discussion was source selection sensitive material discussed."  *Id.*  The review did not discuss the source selection – that is, whether to award to AWS or Microsoft – but instead examined whether the entire procurement might be placed in a different posture.  *Id.*  The decision to proceed as previously planned, of course, can in no way be interpreted as evidence of bias or bad faith.  The record, therefore, contains sufficient information for the Court to consider the review of the JEDI procurement undertaken by Secretary Esper and, following his recusal, by the Deputy Secretary, to the extent this review is relevant to this protest.  AWS has failed to demonstrate that the record in this respect is insufficient to allow meaningful judicial review.

Moreover, AWS has failed to identify "hard facts" showing that any alleged bias against AWS by the President created a motive for the source selection officials to engage in bad faith conduct.  *See Int'l Res. Recovery*, 61 Fed. Cl. at 43.  AWS argues that the "actual evaluators and

decision-makers . . . could not have missed the unmistakable public instructions from their Commander in Chief to not award the JEDI Contract to AWS."  Pl. Mot. at 23.  The source selection officials are entitled to a presumption that they acted in good faith and according to law.  *See Rd. & Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012). AWS attempts to impute the President's alleged bias onto the source selection officials simply because they fall within in the hierarchy of the Government with the President at its top.  The Court should reject this attempt to bypass the presumption.

The cases AWS cites in support of this argument illustrate how attenuated AWS's position truly is.  In *Starry Assocs., Inc. v. United States*, the Court granted limited discovery where a Government official "stepped in to cancel a solicitation after the agency was unsuccessful in multiple efforts to award the contract to his former employer." 125 Fed. Cl. 613, 623 (2015).  Although AWS claims that this case involved "motivation to act in bad faith [] where a superior exerts influence to guide the award, such as by making known a preference for one offeror," Pl. Mot.at 19 (internal quotation marks and alterations omitted), the "superior" AWS references was, in fact, the decision-maker.  *Starry Assocs.*, 125 Fed. Cl. at 623.

AWS also cites a 1964 district court case from another circuit, *Jarrott v. Scrivener*, in which the court determined that bias infected the decision of a zoning board relating to a Soviet embassy.  Pl. Mot. at 16 (citing *Jarrott v. Scrivener*, 225 F. Supp. 827, 834 (D.D.C. 1964)).  In *Jarrott*, the members of the zoning board received letters and oral communications from the officials who appointed them, as well as senior Government officials interested in the outcome of the petition before the board.  The facts presented in *Jarrott*, however, differ dramatically from AWS's allegations.  First, the court analyzed the context of the board's position as a *quasi-judicial body* that performs adjudicatory functions similar to those of a court of law, and thus

13

was expected to adhere to the same standards. 225 F. Supp. at 833. Second, the statements made to the board members in *Jarrott* were not only *ex parte* but secret – the board members consciously omitted them from the record. Here, the comments on which AWS relies were public, and no facts suggest the source selection officials considered them. Third, the decision-makers in *Jarrott* received direct contacts from, among others, the commissioners who appointed the board members to their posts. *Id.* Here, to the contrary, AWS does not allege – much less demonstrate – any direct contact or communication between the President and any source selection official. Nor does AWS allege any communication between Secretary Esper or any other Administration official and any source selection official regarding any particular bidder or how the contract should be awarded.

Rather, AWS insinuates that the deciding officials must have been influenced by the President's public statements simply by virtue of the fact that he is "their Commander in Chief." Pl. Mot. at 16. AWS's bare assertions that the decision-makers must have acted upon the perceived bias of higher-level officials do not rise to the level of evidence that this Court has relied on when granting motions to supplement the administrative record. *See, e.g.*, *Tech Sys., Inc. v. United States*, 97 Fed. Cl. 262, 263 (2011) (granting motion to supplement where plaintiff filed six declarations identifying role former facility manager played in the procurement conduct); *see also Inforeliance Corp. v. United States*, 118 Fed. Cl. 744, 746-49 (2014) (granting motion to supplement where plaintiff alleged bias by a member of the evaluation panel).

AWS does allege that one member of the source selection team, the chair and sole member of the Source Selection Evaluation Board (SSEB), was involved in meetings with Secretary Esper related to the Secretary's review of the procurement. *See, e.g.*, Pl. Mot. at 11-12. Once again failing to provide any hard facts demonstrating a motive for bias, AWS piles layer

14

upon layer of insinuations in an attempt to cast the SSEB chair's participation in these meetings in a questionable light.  As demonstrated above, Secretary Esper reviewed the JEDI procurement at a very high level, considering whether the current solicitation best met DoD's cloud services needs.  *See, e.g.*, AR Tabs 335, 439, 440, 453, 548-550, 555, 558.  The review did not include any discussion of source selection information.  *Id.*; *see also* AR Tab 462 at 176,426.  AWS's narrative is apparently based on its suspicion that Secretary Esper's review of the JEDI procurement was in fact a pretext to insert the President's alleged bias into the process, as well as the insinuation – despite record documentation to the contrary and no supporting evidence – that the Secretary's meetings were not in fact a review of DoD's procurement needs, but rather opportunities for the Secretary to instruct one of the source selection officials regarding the preferred outcome of the source selection process.  AWS ignores the SSEB chair's other DoD "hat"; he is ███████████████████████████████████████████████████████████ ███████████████████████████████████ prepared the briefings for Secretary Esper in support of his review of the JEDI procurement.  *See, e.g.*, AR Tab 439 at 176,304.  In other words, it is entirely consistent with Secretary Esper's general review of whether to proceed with the procurement for him to have met with the ██████, and these meetings do not suggest that Secretary Esper injected any bias into the actual award decision.

Moreover, although AWS attempts to tie the timing of these meetings to the SSEB chair's summary of the technical evaluations, and in particular to the Factor 2 report, Pl. Mot. at 12, AWS's own allegations demonstrate that the SSEB chair harbored no bias against AWS.  To the contrary, ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████ *Id.* at 25.  It was the SSAC, according to AWS, who

███████████████████████████████████████████████

███████████████████████████████████   *Id.*  Thus, in order for the SSEB chair to be the source of the

transferred bias, he would have had to concoct a plan to commend AWS, over and above the

technical team's initial praise, while surreptitiously instructing the SSAC to ignore his report and

downplay AWS's strengths.  Such an extravagant plot is simply not borne out by any facts AWS

can identify.  As AWS recognizes, *id.* at 11, "[t]he purpose of the SSEB is not to reevaluate

proposals . . . but rather to summarize the findings of the [evaluators] in an Executive

Summary[.]"  AR Tab 305 at 64,345.  Nowhere in AWS's discussion of the alleged procurement

errors does it contend that the SSEB chair acted in some inexplicable way by, for example,

failing to faithfully summarize an evaluation team's findings or leaving out AWS's strengths.

*See* Pl. Mot. at 25-28.  The only mention of the SSEB's evaluation in AWS's motion notes its

██████████████████████████████████.  *Id.* at 25.[1]  The facts simply do not support

AWS's suspicion that Secretary Esper, much less the President, biased the SSEB chair's

participation in the award decision.

Finally, AWS alleges that Secretary Esper "reverse[d] course" to delay the award of the

JEDI contract, purportedly evincing the impact of the President's bias on the Secretary.  Pl. Mot.

at 21.  This "reversal" was no reversal at all.  Unlike in the cases AWS cites, DoD did not

unexpectedly change evaluation ratings, *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 91

Fed. Cl. 347, 356 (2010), or cancel the procurement, *see Starry Assocs., Inc. v. United States*,

125 Fed. Cl. 613, 623 (2015).  AWS ignores the fact that the result of the Secretary's review was

---

[1]  AWS generally criticizes the SSEB in its complaint for failing to recognize certain
alleged strengths.  *See* Compl. ¶¶ 137, 166.  However, it does not present these alleged failures
as bases for supplementation of the record.

to continue with the procurement evaluations and make award consistent with the existing request for proposals.  AR Tab 462 at 176,426.  At most, AWS alleges that the procurement was delayed while Secretary Esper reviewed it.[2]  That does not constitute evidence of bad faith.

> ### 2.   AWS Has Failed To Demonstrate That The Award Decision Cannot Be Explained Absent Bad Faith

AWS argues that certain "significant and obvious" errors in the procurement process are evidence that the bias it alleges on the part of high-level officials impacted the procurement process.  Pl. Mot. at 17.  However, AWS's arguments concerning evaluation errors make it abundantly clear that these challenges are reviewable based on the administrative record currently before the Court; supplementation and discovery are unnecessary.

Moreover, alleging evaluation errors is not sufficient to establish a showing of bad faith sufficient to warrant discovery.  *See Info. Tech. & Application Corp. v. United States*, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) ("In this case, ITAC has pointed to no record evidence of bias. Instead it has merely reiterated its contentions that the Air Force erred in evaluating the proposals.  This is not evidence of bias, and it is insufficient to overcome the presumption that the contracting officer acted in good faith."); *Four Points by Sheraton v. United States*, 63 Fed. Cl. 341, 344-45 (2005) ("Four Points alleges that the evaluators and the contracting officer were biased against Four Points, but the sole basis for this contention is its disagreement with their evaluation of Four Points and Command. . . . [The] judgmental conclusions of the CO or the evaluators [] are part and parcel of the evaluation itself and capable of challenge in a bid protest in and of themselves."); *Beta Analytics*, 61 Fed. Cl. at 226 ("A plaintiff challenging a

---

[2]  Secretary Esper's review did not delay contract award.  Although DoD initially expected to make an award decision in August 2019, discussions lasted through late August.  *See* AR Tab 343 at 151,517.  Final proposal revisions were due on September 5, 2019.  *See* AR Tab 339 at 151,401; AR Tab 340 at 151,405.

procurement decision must do more than merely argue that an agency's evaluation of its bid was erroneous to entitle it to discovery.").

Indeed, when this Court has permitted discovery where a protester has demonstrated "conduct that is hard to explain absent bad faith," *id.*, it has done so only where such conduct goes well beyond erroneous evaluations. *See, e.g.*, *Int'l Res. Recovery*, 61 Fed. Cl. at 43 (granting discovery based on facts demonstrating that the contracting officer knowingly failed to inform the source selection team that a bidder's prior termination for default had been converted to a termination for convenience); *Orion Intl.*, 60 Fed. Cl. at 344-47 (permitting limited discovery where facts demonstrate awardee misrepresented the identities of key personnel); *Inforeliance Corp.*, 118 Fed. Cl. at 746-49 (granting limited discovery where facts demonstrated that an evaluator advocated in favor of one offeror).  There are no such allegations here.

In other filings, including our response to AWS's motion for a temporary restraining order and preliminary injunction, the United States has and will further comprehensively demonstrate that AWS cannot meet its burden to show that the evaluations or source selection decision were irrational, arbitrary, capricious, or contrary to law.  The record contains comprehensive evaluations of each aspect of the offerors' proposals, as well as a well-supported final source selection decision.  *See, e.g.*, AR Tabs 323-334, 337, 441-452, 455-457, 459.  Even assuming that AWS has alleged potential errors, evaluation errors would not be sufficient to demonstrate actions that are hard to explain absent bad faith.  *See Beta Analytics*, 61 Fed. Cl. at 226 ("A plaintiff challenging a procurement decision must do more than merely argue that an agency's evaluation of its bid was erroneous to entitle it to discovery.").  These alleged errors do not justify supplementation of the administrative record or discovery.

18

## II.   **AWS's Proposed Supplementary Materials Would Not Aid This Court's Review**

Even assuming that AWS could meet the stringent standards for supplementation of the administrative record, the materials AWS seeks to put before this Court would not aid in this Court's review of the procurement decision at issue in this case; nor would they provide "well-nigh irrefragable proof" overcoming the presumption of regularity and good faith.  *See Beta Analytics*, 61 Fed. Cl. at 226; *Sanders*, 801 F.2d at 1331; *see also Madison*, 92 Fed. Cl. at 130 ("[T]he proffered extra-record material must indicate some personal animus or bias on the part of agency officials, reveal a latent inconsistency in the existing record, or otherwise give some indication that the agency's explanation is pretextual.").

AWS seeks to supplement the administrative record in this case with five categories of documents:  (1) "President Trump's Tweets and Other Statements About Amazon, Mr. Bezos, and the *Washington Post*"; (2) "Statements from Persons Affiliated with President Trump and DoD Officials Regarding the JEDI Contract"; (3) "Materials Relating to the JEDI Contract that President Trump, His Affiliates, and DoD Officials Saw"; (4) "Other Materials Illustrating the Fact and the Effect of President Trump's Bias and Influence Within DoD and on the JEDI Award Decision"; and (5) "Materials Illustrating the Fact and the Effect of President Trump's Bias and Influence Throughout the Government and Administration."  Pl. Mot. at 29-30.  These documents have no relevance to the procurement decisions at issue in this case.  None of the proposed documents would demonstrate that source selection officials acted in bad faith.

### A.   **The President's Statements About Amazon, Mr. Bezos, And The *Washington Post***

This first category of documents that AWS seeks to include contains public statements by the President – and several media reports about such statements – generally critical of Amazon, Amazon's CEO, Jeff Bezos, and the *Washington Post*.  Pl. Mot. at 29; *see also* Appendix to Pl.

Mot. at APP 001-072.  AWS claims that these statements "are critically important to understanding the bias that permeated the procurement process from the top of the chain of command."  Pl. Mot. at 29.  AWS offers no facts demonstrating that source selection officials considered these statements during the procurement evaluation.  These statements – which are not related to the JEDI procurement – would not aid the Court's review of that procurement.

### B.    Statements From "Affiliates"

AWS next seeks to supplement the record with public statements by Secretary Esper regarding his intent to look into the JEDI procurement, as well as statements from Donald Trump, Jr. insinuating trouble for Amazon.  Pl. Mot. at 29; APP 073-188.  This category also includes media reports about the JEDI procurement, APP 076, 083-092, 111-114, 186-188, and several tweets and letters from Senator Marco Rubio, APP 077-078, 080-082.  Again, although AWS argues that these documents show that the President's "personal animus towards Amazon tainted decision-makers within DoD," Pl. Mot. at 29, AWS points to no evidence suggesting that any JEDI procurement decision-maker actually viewed or received any of these documents, much less that the documents were considered in the context of any actual procurement evaluation.  Moreover, as demonstrated above, the administrative record already contains sufficient documentation surrounding Secretary Esper's review of the procurement.

### C.    Materials Viewed By The President, His Affiliates, And DoD Officials

Next, AWS seeks supplementation of the record with "materials that President Trump and others within his Administration reviewed relating to the JEDI Contract[.]"  Pl. Mot. at 29-30.  These materials include a 2017 news article about Oracle's criticisms of Government informational technology advancement efforts, APP 189-193; an image of a March 2018 advertisement in the *New York Post* addressed to the President, APP 194; several letters from

Congress to the President or Secretary Esper regarding the JEDI procurement, APP 195-199, 201-202; and, finally, a *Fox News* clip concerning the procurement, APP 200.[3]  Once again, AWS does not suggest that any of the source selection officials saw these documents.  They are simply not necessary for effective judicial review of the issues in this protest, which involve challenges to the evaluation of proposals in this procurement.

### D. **Materials Purportedly Showing The President's Influence Within DoD**

Next, AWS proposes a series of news articles about the JEDI contract, as well as announcements of meetings between Secretary Esper and the President.  APP 203-229.  The news articles suffer from the same deficiency as previous documents – no connection exists between these articles and JEDI source selection officials.  And the fact that the President of the United States met with his Secretary of Defense on several occasions over several months is simply unremarkable.  The first two meetings indicate the President's participation in Secretary Esper's swearing-in ceremony and official welcome, respectively.  APP 211-212.  None of the meeting announcements suggest any connection to the JEDI procurement.

### E. **Materials Purportedly Showing The President's Influence Throughout The Government**

Finally, AWS seeks to put before the Court materials purportedly evincing "a larger pattern of behavior demonstrating [the President's] willingness to abuse his position for personal gain."  Pl. Mot. at 30.  As demonstrated previously, this type of information has absolutely nothing to do with this procurement and is, therefore, completely inappropriate for supplementation.  AWS has not begun to show the relevance of news reports related to

---

[3]  The August 5, 2019 letter from Senators Mark Warner and Jack Reed to Secretary Esper, APP 201-202, has been added to the administrative record, as has the Secretary's response.  AR Tabs 555, 558.

impeachment, for example, or why the Court could not conduct effective judicial review of the protest allegations without such facially irrelevant evidence.

## III.  **The Court Should Not Permit AWS's Proposed Discovery**

AWS' sprawling discovery requests for depositions, interrogatories, and document requests suffer from the same flaws as its requests to supplement the record.  AWS not only seeks depositions of high-ranking Government officials – including the President of the United States, as well as the current and former Secretary of Defense – but also asks for broad interrogatory responses and documents that have no bearing on the procurement evaluations at issue in this case.  Pl. Mot., Exhs. A, B, and C.  AWS should not be permitted to embark upon its proposed fishing expedition in this record review litigation, and it certainly should not be permitted to cast the first line at the President of the United States.

Even assuming that AWS has demonstrated hard facts evidencing bias that not only would justify supplementation of the record but also discovery, AWS cannot justify the expansive scope of the discovery it seeks.  The Court "must carefully tailor discovery in bid protest cases to reduce its intrusiveness and to limit it to matters that may lead to relevant evidence."  *Orion*, 60 Fed. Cl. at 345.  In those rare cases where this Court has permitted discovery based on allegations of bias or bad faith, that discovery has been strictly tailored both in form and in scope to target only the information necessary for the protester to prove that bias impacted the procurement.  For example, in *Orion*, the Court did not permit the protester to take depositions as requested, but instead ordered the protester to prepare interrogatories for the proposed deponents, limited to very specific topics, which would be submitted for the Court's "review, approval, and possible modification."  *Id.*  The Court in *Orion* denied the protester's request that the Government produce additional documents because the protester had failed to

demonstrate that they were necessary, and the information sought could be obtained through the interrogatories.  *Id.* at 347.  Similarly, in *Pitney Bowes Gov't Solutions, Inc. v. United States*, the Court limited the protester's depositions to 90 minutes.  93 Fed. Cl. 327, 336 (2010).

As we demonstrated previously, AWS has not shown bias or bad faith such that any supplementation is warranted, and in any event AWS's bias and bad faith allegations have been waived.  But even if the Court were to determine that AWS has made the necessary showing for not just supplementation but also discovery, the vast majority of the discovery that AWS seeks is irrelevant to the narrow question of whether bias infected the procurement award decision.  To the extent that the Court finds that any discovery is appropriate, it should be narrowly tailored to address that question alone and to minimize intrusiveness.

### A.     AWS Should Not Be Permitted To Depose The President, Secretary Esper, Former Secretary Mattis, Or DoD Chief Information Officer Dana Deasy

AWS's bias argument boils down to this:  the President's animosity towards Amazon indirectly infected the procurement such that AWS was denied an award that it otherwise would have received.  Even assuming, for the sake of argument, that AWS could meet the "threshold showing of either a motivation for the Government employee in question to have acted in bad faith or conduct that is hard to explain absent bad faith," *Beta Analytics*, 61 Fed. Cl. at 226, AWS still would have to demonstrate that any discovery it seeks could lead to evidence proving, through "well-nigh irrefragable proof," *Sanders*, 801 F.2d at 1331, that the President's alleged bias infected the source selection officials' evaluations and ultimate source selection decision. *See Beta Analytics*, 61 Fed. Cl. at 226.  As we discuss below, even assuming that some discovery were justifiable, it should be limited to the source selection officials.  AWS has provided no rational reason to seek the testimony of the President of the United States, the current and former Secretaries of Defense, or the DoD's Chief Information Officer.

Beyond the already rigorous standards AWS must overcome to demonstrate the need for discovery in a bid protest, it must overcome an even greater hurdle to obtain the depositions of some of the highest ranking officials in the Government, a barrier it cannot overcome here. "[E]xceptional circumstances must exist before the involuntary depositions of high agency officials are permitted." *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (quotation marks omitted); *see also Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify[.]"); *In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (stating that party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant").

Recognizing the important consideration of inter-branch comity implicated when a plaintiff seeks to compel the testimony or presence of high-ranking officials, the courts of appeals – including the Federal Circuit – have regularly exercised their mandamus authority to preclude such testimony. *See, e.g.*, *In re United States (Bernanke)*, 542 F. App'x at 947 (concluding that an order directing the deposition of the Chairman of the Federal Reserve warranted mandamus and noting that "[a] number of our sister circuits have recognized that mandamus may properly be used as a means of immediate appellate review of a denial of a protective order to prevent deposition of high-ranking government officials") (collecting cases); *cf. Bacon v. HUD*, 757 F.2d 26 5, 269 (Fed. Cir. 1985) (affirming order precluding the Secretary of the Department of Housing and Urban Development's deposition).  Indeed, "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (citing *United States v. Morgan*, 313 U.S. 409 (1941)).

This burden is especially robust when the official in question is the President of the United States. The Supreme Court "has held, on more than one occasion, that '[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery,' and that the Executive's 'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of litigation against it." *Cheney v. United States Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 385 (2004) (citations omitted).

The reason for this exceptionally high standard – sometimes referred to as the "apex doctrine" – is apparent. "High ranking government officials have greater duties and time constraints than other witnesses" and, given the frequency that Government policies and actions are litigated, their "time would be monopolized by preparing and testifying" if their testimony were not limited to extraordinary circumstances. *Kessler*, 985 F.2d at 512. Moreover, "the integrity of the administrative process must be [] respected." *Morgan*, 313 U.S. at 422.

To meet the "extraordinary circumstances" standard, AWS must "establish *at a minimum*, that the [officials] possess information essential to [its] case which is not obtainable from another source." *In re United States (Reno)*, 197 F.3d 310, 313-14 (8th Cir. 1999) (emphasis added and citations omitted). This information must be first-hand knowledge related to *the underlying claim being litigated*. *See Bogan v. City of Boston*, 489 F.3d 417, 423-25 (1st Cir. 2007) (high-ranking official's deposition is required only "where the official has firsthand knowledge related to the claim being litigated"). "The duties of high-ranking executive officers should not be interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). AWS has failed even to attempt to justify its proposed depositions in light of this extremely high bar.

1.   The President Of The United States

Ignoring the stringent standards set forth above, AWS argues that it is justified in seeking

the deposition of the President, even though it does not allege that the President had any direct

communication or contact with any source selection official.  Thus, AWS's remarkable request

to depose a sitting President does not even come close to establishing the exceptional level of

relevance and need required to justify its request.  Indeed, rather than justifying such a

deposition, AWS's flimsy rationale underscores the reason why "the practice of calling high

officials as witnesses should be discouraged."  *In re United States (Kessler)*, 985 F.2d at 512.

Neither of AWS's stated reasons for seeking the President's deposition remotely counsels

a different conclusion.  First, it argues that the President is the only person who can testify about

"the overall message he conveyed."  Pl. Mot. at 33-34.  But what the President believes to have

been his "overall message" about the procurement has no bearing on whether any alleged

statements were received by or influenced the source selection officials and, thus, does not

inform what, if any, impact those statements – individually or as a whole – had on the outcome

of the procurement.

Second, AWS argues that the President is the only individual who can identify any other

"previously undisclosed" conversations he may have had about the procurement and with whom.

*Id.* at 34.  Again, AWS does not contend that the President had any conversations with any

source selection officials, and any conversations he may have had with anyone else about the

JEDI procurement are irrelevant.

In addition, AWS's deposition notice identifies topics that go far beyond any issue in this

protest and would be an improper subject for any deponent.  For example, it seeks testimony

about the President's "involvement in any aspect of the JEDI program, contract, solicitation,

and/or award," Pl. Mot., Exh. A at 2, a topic that spans years of solicitation development, despite

the fact that AWS's challenge is limited to the award decision.  This request is certainly not

"targeted."  Moreover, the President's statements regarding Amazon or the JEDI procurement,

and his communications with bidders, with Secretaries Esper and Mattis, and with DoD Chief

Information Officer Dana Deasy, *id.* at 2-3, are all irrelevant to the question of whether source

selection officials were impacted by the President's alleged bias.

AWS has failed to meet its burden of showing that the President possesses any relevant

evidence sufficient to overcome the presumption of good faith enjoyed by the procurement

officials, much less that there exist the type of "extraordinary circumstances" that are required to

justify the deposition of a sitting President.

2.  Secretary Esper

AWS has similarly failed to demonstrate that extraordinary circumstances warrant the

deposition of Secretary Esper.  As demonstrated previously, the record already contains

documentation of the review of the JEDI procurement initiated by Secretary Esper in August

2019.  The record also demonstrates that this review involved a high-level look at the goals of

the JEDI program and whether the current procurement met those goals – it did not involve

source selection information.  AR Tab 462 at 176,426.  The record also contains the rationale for

Secretary Esper's recusal, AR Tab 458 at 176,408, and AWS has failed to present anything

beyond mere innuendo and suspicion that the rationale is a pretext.  *Beta Analytics*, 61 Fed. Cl. at

226.  Moreover, to the extent Secretary Esper conveyed any direction to or otherwise

communicated with the source selection officials, those individuals could speak to that

communication, to the extent it is not of a privileged nature.  AWS has failed to demonstrate that

Secretary Esper has unique information relevant to the evaluation of this procurement.

Finally, to the extent AWS seeks to delve into the deliberations leading up to the conclusion of the review (or any other decision), such topics are inappropriate.  *See Impresa*, 238 F.3d at 1339 ("In ordering the deposition of the contracting officer, we wish to make clear that we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision.  Such inquiries are inappropriate.").

       3.  <u>Secretary Mattis</u>

Once again, AWS fails to allege that "extraordinary circumstances" warrant the deposition of the former Secretary of Defense and, further, fails to show that his testimony would lend any relevant information to this Court's inquiry.[4]  AWS alleges that "President Trump ordered then-Secretary James Mattis to screw Amazon out of the JEDI Contract opportunity.  Contrary to that order, Secretary Mattis demurred, later explaining to his team that he wanted the process to be done by the book, both legally and ethically."  Compl. ¶ 91 (internal quotation marks and citations omitted).  Secretary Mattis did not, according to AWS's own allegations, provide any instruction to the source selection officials to disfavor AWS.  Moreover, he left his post as Secretary of Defense in December 2018, *see id.*, prior to the majority of the proposal evaluations and well before any award decision was made.  Thus, AWS apparently seeks his testimony for no other reason than to pile on more alleged corroboration for its theory that the President did not want AWS to receive the JEDI contract.  *See* Pl. Mot. at 34 ("Secretary Mattis has highly relevant, first-hand knowledge about President Trump's animus towards Mr. Bezos

---

[4] "The apex doctrine is no less applicable to former officials than to current officials." *F.D.I.C. v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015); *see also Lederman v. N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 203-04 (2d Cir. 2013) (applying apex doctrine to uphold protective order barring deposition of former deputy mayor). This is so because the rationale of protecting the mental processes of agency heads, *see In re United States (Bernanke)*, 542 F. App'x at 948, applies equally to current and former officials.

and Amazon, and the efforts President Trump took to pressure DoD officials – including

Secretary Mattis himself – into altering the JEDI award decision.").  As previously demonstrated,

even if that theory were true, it would be irrelevant unless the President's alleged bias impacted

source selection officials, and AWS's own allegations about Secretary Mattis demonstrate that it

did not.  AWS has failed to demonstrate the relevance of any testimony it seeks.

        4.   <u>DoD CIO Dana Deasy</u>

Finally, AWS seeks the deposition of Dana Deasy, the DoD's Chief Information Officer.

Pl. Mot. at 34.  AWS contends that Mr. Deasy has "intimate knowledge" about the JEDI

procurement process, "including the supposed measures that DoD took to insulate the decision-

makers from outside influence," and seeks testimony about those measures, "his involvement in

the JEDI procurement process," and "his interactions with President Trump, who had nominated

Mr. Deasy to his position in 2019."  Pl. Mot. at 34.

Once again, AWS makes no effort to demonstrate that "exceptional circumstances" exist

justifying the deposition of DoD's Chief Information Officer.  Moreover, AWS has failed to

show how the topics it proposes for Mr. Deasy's deposition would lead to information that would

prove that bias infected the process.  AWS primarily seeks to engage in broad inquiries into, for

example, Mr. Deasy's "involvement in any aspect of the JEDI program, contract, solicitation,

and/or award"; "[a]ny documents or information in the administrative record" that Mr. Deasy

reviewed; "[a]ny documents or information *not* in the administrative record" that Mr. Deasy

reviewed; and his interactions with or opinion about Mr. Bezos, Amazon, AWS, and/or the

*Washington Post*.  Pl. Mot., Exh. A at 6.  None of these topics are relevant to whether bias

infected the evaluation process.  Similarly, AWS's proposed topics involving Mr. Deasy's own

interactions with or opinions about the President, *see id.*, do not shed light on that question.

Although not delineated in its proposed topics for examination, AWS states that it intends to seek information from Mr. Deasy about DoD's safeguards against bias. Pl. Mot. at 34. This topic, too, does not inform the question of bias. Either bias infected the process or it did not – whether and to what extent DoD sought to protect against such bias has no bearing on the binary question of whether or not bias affected the procurement decision. And again, to the extent AWS seeks testimony about whether source selection officials were in fact impacted by the President's alleged bias, that question is best directed to those officials themselves. Finally, the Source Selection Plan describes the measures that the source selection team took to ensure not only that the proprietary information of offerors remained protected, but also that individuals outside the team remained unaware of the team's identities. AR Tab 305 at 64,349-64,351 (prohibiting team members from, among other things, confirming participation in the evaluation or the identities of any other evaluators), 64,379-64,380 (non-disclosure agreement). Additional testimony about this topic would be unnecessary and cumulative.

**B.**     **Any Depositions Of Procurement Officials Should Be Severely Curtailed**

AWS also seeks the depositions of the Source Selection Authority (SSA), the SSAC chair, and the SSEB chair. Pl. Mot. at 35; Pl. Mot., Exh. A at 7-9. As demonstrated previously, AWS has failed to identify any "hard facts" linking the President's supposed bias to the source selection officials involved in this procurement. The only individual even mentioned is the SSEB chair and, as we explained previously, AWS's allegations regarding that individual do not support a finding of bias; they in fact support a finding to the contrary. AWS is, therefore, not entitled to testimony from these individuals. However, even assuming that AWS's allegations of bias were sufficient to permit discovery, and that AWS has further demonstrated that testimony from the source selection officials would provide evidence to overcome the presumption of

regularity, any testimony the source selection officials would be required to provide should be dramatically limited.  As demonstrated below, the Court should exclude or significantly constrain the topics AWS proposes, which are the same for each individual, and should also impose the same constraints placed on testimony in prior extraordinary situations.  *See, e.g.*, *Orion*, 60 Fed. Cl. at 347 (limiting testimony to interrogatories on narrow topics to be submitted to, and approved by, the Court).

Topic (a):  "involvement in any aspect of the JEDI program, contract, solicitation, and/or award"

Topic (a) should not be permitted in any deposition; it is overbroad and encompasses essentially any and every aspect of this procurement.  There is simply no justification for AWS to obtain such unlimited testimony in the context of a bias inquiry.

Topic (b):  "communications with President Trump, President Trump's advisors, White House officials, and/or any individuals employed by or acting on behalf of President Trump, his advisors, or White House officials"

Similarly, the Court should exclude topic (b) from any permitted testimony.  This topic is completely unlimited as to the subject and timing of any such communications.  Moreover, any such communications would likely implicate the presidential communications privilege.  *See In re Sealed Case*, 121 F.3d 729, 744 (D.C. Dir. 1997) (describing presumptive privilege protecting "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential").

Topic (c):  "awareness and consideration of any statements made by President Trump regarding AWS, Amazon, Mr. Bezos, the *Washington Post*, and/or the JEDI program, contract, solicitation, and/or award"

Topic (c) comes closest to a relevant inquiry, although its scope still far exceeds the issues in this protest.  To the extent that the deposition or other testimony of any source selection official is warranted, that testimony should be limited to whether that official was aware of the

President's public statements concerning AWS, Amazon, Mr. Bezos, or the JEDI procurement, and whether those statements impacted the official's evaluation of the bids in this procurement.

Topic (d):  "communications and interactions with Oracle, Microsoft, and/or any other offeror for the JEDI solicitation"

The Court should exclude topic (d) from any testimony.  Topic (d) does not address whether the evaluation and selection of bids in this procurement were impacted by the President's statements concerning Amazon.  Moreover, communications with the offerors are reflected in the administrative record already filed in this case, and AWS has not alleged that any undocumented communications took place, much less provided facts to support such allegations.

Topic (e):  "communications and interactions with any member of the Source Selection Team"

This topic is again overbroad and seeks information about the entirety of the procurement process, which is entirely unwarranted.  If anything, the only relevant inquiry about communications among source selection team officials would involve any communications about the President's comments about AWS, Amazon, Mr. Bezos, or the JEDI procurement.

Topic (f):  "[a]ny documents or information in the administrative record, the Appendix, or in subsequent discovery production(s) that were drafted, edited, received, reviewed, sent, signed, or otherwise authorized by" the deponent

Topic (f) yet again seeks a broad range of testimony without any ties to allegations of bias or bad faith.  The only possible use for testimony about record documents would be to probe the rationale of decision-makers.  The administrative record contains the source selection officials' justifications for the procurement decisions, and it is on that record that the Court considers the rationality of those decisions.  There is no need for additional testimony about the team's evaluations, and such testimony would be inappropriate in this record review protest.

Topic (g):  "[a]ny documents or information *not* in the administrative record that were reviewed or considered by [the deponent] or DoD in connection with the JEDI program, contract, solicitation, and/or award"

Like the previous topic, topic (g) is not limited to the relevant evaluations and award decision, but rather spans the entirety of the JEDI procurement, which is simply not relevant to proving bad faith with respect to the final evaluations and award decision.  To the extent a deposition were appropriate, AWS could inquire only into whether the source selection officials considered information outside the record related to the President's public comments about AWS when conducting evaluations or arriving at the award decision.

Topic (h):  the deponent's "interactions with, relationships with, and opinions regarding Mr. Bezos, Amazon, AWS, and/or the *Washington Post*"

AWS has not identified any facts showing that the source selection officials had any improper relationships or interactions with AWS (or any other bidder) or that any of the source selection officials independently harbored improper biases against AWS.  The sole contention is that the President's alleged bias impacted the process.  Thus, AWS has not demonstrated any need for testimony concerning the source selection officials' relationships with or opinions concerning Mr. Bezos, Amazon, AWS, or the *Washington Post*.

### C.       AWS Has Failed To Prove That It Is Entitled To The Interrogatories It Seeks

Next, AWS proposes nine interrogatories that it argues will "ensure AWS has a written explanation for some of the most troubling aspects of the JEDI procurement process, which give rise to AWS's allegations of bad faith and bias."  Pl. Mot. at 35; Pl. Mot., Exh. B.  AWS argues that interrogatories are appropriate because DoD failed to substantively respond to AWS's debriefing questions.  Pl. Mot. at 35; *see also id.* ("Requiring DoD to provide written responses now will aid the parties and the Court in narrowing the issues, ensuring the record is adequately developed with respect to the key factual issues, and thus facilitating an efficient and effective

adjudication of AWS's bias and bath faith claims.").  But AWS is not entitled to discovery to satisfy its own curiosity; nor is a lack of clarity during debriefing grounds for discovery on the basis of bad faith and bias.  Further, AWS has failed to identify areas in which the record does not permit meaningful judicial review.  The interrogatories AWS proposes largely seek explanations that are already covered by documents in the record.

Interrogatories 1, 2, and 3:  First, AWS seeks an explanation for why Secretary Esper instituted a review of the JEDI procurement, what actions were taken in response to that review, and why Secretary Esper recused himself.  Pl. Mot. at 36; Pl. Mot., Exh. B at 1-2.  But the record contains documentation describing the options considered during the review as well as the final decision.  *See, e.g.*, AR Tabs 335, 439, 440, 453, 462, 548-550, 555, 558.  It also includes a memorandum documenting the Secretary's decision to recuse himself – a decision that AWS has not directly challenged – and the basis for that recusal.  AR Tab 458 at 176,408.  As demonstrated previously, AWS has not provided any facts calling into question the rationales for the review or its conclusions that would warrant discovery beyond the record.  Moreover, the rationale for and actions taken in connection with the Secretary's review would not shed light on what, if any, instructions may have been given to source selection officials.  Finally, to the extent AWS seeks the deliberations that led to these final decisions, those deliberations are inappropriate topics for bid protest discovery, *see Impresa*, 238 F.3d at 1339, and are otherwise likely protected by the deliberative process privilege, *see In re Sealed Case*, 121 F.3d at 737 (explaining that the deliberative process privilege protects "materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" (internal quotation marks omitted)).

Interrogatory 4:  Interrogatory 4 asks for information about how the source selection officials were chosen.  Pl. Mot., Exh. B at 2.  AWS argues that, "[g]iven the amount of discretion that they wielded over the evaluations and award decision, it is critically important that AWS understand how the members of the [source selection team] were selected (and any potential ways in which their appointment was influenced by pressure from President Trump and/or senior DoD officials)."  Pl. Mot. at 36.  This is the first time that AWS insinuates – and that is all it does – that there was any impropriety with the selection of the source selection team.  AWS identifies absolutely no evidence calling into question the process by which any members of the team were chosen, and that process has no bearing on whether the team received instructions about the award decision.  Moreover, AWS alleges that earlier evaluations were more favorable towards AWS and that they changed later in the process, suggesting the alleged bias was inserted later in the process as well.  The source selection officials largely remained constant throughout the procurement, so AWS's allegations do not support inquiry into how those officials were selected.

Interrogatory 5:  Interrogatory 5 asks if the Source Selection Authority modified the recommendation of the SSAC or SSEB, what the modifications were, when they occurred, and why they occurred.  Pl. Mot., Exh. B at 2.  The Source Selection Decision Document contains the Source Selection Authority's analysis of the recommendations and findings of the SSAC and SSEB.  It describes the extent to which the Source Selection Authority agrees or disagrees with the SSAC and SSEB.  The Court is capable of comparing the SSEB's executive summary, the SSAC's recommendation, and the SSDD.  Additional discovery is unnecessary.  Moreover, inquiry into the mental processes that led to the final decision is impermissible and potentially privileged.  *See Impresa*, 238 F.3d at 1339; *In re Sealed Case*, 121 F.3d at 737.

Interrogatory 6:  AWS next asks for a description of all events relating to the JEDI award that occurred between the execution of the SSA's decision and the public announcement of the award.  Events taking place after the award decision have no relevance to that decision.

Interrogatory 7:  Interrogatory 7 seeks an explanation of the steps, if any, that DoD took to ensure that source selection officials were insulated from undue influence from the President and his advisors.  As explained in connection with the similar deposition topic, whether DoD took any steps to insulate these individuals, and what those steps were, would not inform the binary question of whether or not the source selection officials were in fact infected by bias or acted in bad faith, and certainly would not provide evidence sufficient for AWS to overcome the presumption of regularity.  Moreover, the Source Selection Plan describes the limitations on the team's ability to discuss the procurement with individuals outside the team.

Interrogatory 8:  Interrogatory 8 asks for descriptions of all interactions between the White House and DoD regarding "the JEDI program, contract, solicitation, and/or award."  Pl. Mot., Exh. B at 3.  This request is not tailored in any sense of the word.  It broadly seeks any and all communications between the White House (literally any employee of the White House) and DoD (again, any DoD official) during the entire life of the procurement, and AWS fails to identify a time frame or topics relevant to AWS's claims in this protest.  Absent any attempt to tie this request to evidence necessary for AWS to prove its claims of bias, AWS simply seeks to embark upon a fishing expedition.  Moreover, this request seeks information that would likely be subject to the presidential communications privilege.  *See In re Sealed Case*, 121 F.3d at 744.

Interrogatory 9:  Finally, AWS seeks information about interactions between DoD and any JEDI offeror.  Pl. Mot., Exh. B at 3.  For the first time, AWS insinuates that other bidders "leveraged President Trump's known bias against Amazon to influence the decision-making

process." Pl. Mot. at 36.  Although it alleges that Oracle sought to influence the President and members of Congress, *see* Compl. ¶¶ 88-89, 93, AWS has presented no hard facts suggesting that any of the offerors attempted to improperly influence the source selection officials.

### D.      AWS Has Failed To Prove That It Is Entitled To The Documents It Seeks

Lastly, AWS seeks to propound ten requests for production of documents.  These requests, like AWS's proposed interrogatories, are not tailored at all, but rather cover the entirety of the procurement and would require the Government to engage in a time-consuming and costly document review process.  Even assuming that discovery were warranted in this case, the Court should deny or at least drastically narrow the scope of AWS's document requests.

Drafts, memoranda, notes, revisions, working documents, etc.

The first request for production seeks "all drafts, memoranda, notes revisions, working documents, analyses, and other materials relating to the JEDI contract, solicitation, and/or award[.]" Pl. Mot., Exh. C at 2.[5]  Setting aside the fact that, once again, AWS has failed to tailor its request to any of the issues specific to its protest, this request seeks documents that would likely be subject to the deliberative process privilege.  In addition, AWS has stated that the procurement errors it alleges are obvious on the face of the decision documents.  The Court therefore does not need drafts and working documents to analyze AWS's claims.

---

[5] AWS's suggestion that these documents should have been included in the administrative record is incorrect.  *See Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 347 (2004) (finding drafts involve the mental thought processes of decision-makers, "an area into which discovery is normally not allowed in APA-style review.").

<u>Documents relating to the evaluation and analysis of demonstrations</u>

The documents evaluating AWS's and Microsoft's demonstrations are already contained in the administrative record.  The request is unclear as to what additional documents "relating to" these evaluations AWS seeks, and how those are necessary for effective judicial review.

<u>Communications by members of the team with non-members</u>

AWS's third request asks for all communications and documents relating to communications between any member of the source selection team and any non-member of the source selection team.  This request is incredibly broad – indeed, it is difficult to comprehend the enormity of the universe of communications this request could encompass – and is not tailored to any individual that AWS claims exhibited bias against it.  No basis exists for AWS to seek discovery regarding any and all communications by the source selection team.

<u>Communications regarding the President and the White House</u>

In its fourth request, AWS seeks communications among the source selection team involving the President or any other White House official.  AWS has offered no allegations or facts concerning anyone at the White House other than the President and his son.  No basis exists for documents relating to anyone else.  This request also is not limited as to scope or timeframe.

<u>Documents and communications regarding conflicts of interest</u>

Memoranda documenting alleged conflicts of interests are already contained in the administrative record.  AWS has failed to demonstrate that the documentation that exists in the record is insufficient, and therefore is not entitled to such discovery.  To the extent that AWS seeks documents describing the deliberations behind the memoranda, such information is likely protected by the deliberative process privileged.  *See In re Sealed Case*, 121 F.3d at 737.

<u>Communications between DoD and the President and his advisors</u>

Requests for production six, seven, and eight seek communications between DoD on the one hand (without limitation as to specific individuals) and anyone at or employed by the White House on the other (again without limitation) relating to: any aspect of the JEDI procurement (six); Mr. Bezos, Amazon, AWS, or the *Washington Post*, and (again) any aspect of the JEDI procurement (seven); and any other offeror or potential offeror (eight). First, these requests encompass literally thousands of individuals. Second, they broadly seek communications unrelated to the bias allegations in this protest. Third, many of these communications are likely subject to the presidential communications privilege. *See In re Sealed Case*, 121 F.3d at 744.

<u>Documents relating to the JEDI solicitation that reference the White House</u>

Request nine asks for "all documents and communications relating to the JEDI solicitation, contract, and/or award that reference President Trump, his advisors, White House officials, and/or any individuals employed by or acting on behalf of" them. Pl. Mot., Exh. C at 3. This request is vague and again potentially encompasses discovery from a huge number of people, all of whom are unidentified. It further lacks any relevance to this protest. AWS fails to demonstrate the relevance of these documents to its claims of bias.

<u>Documents referencing tweets</u>

Finally, AWS seeks documents and communications referencing certain of the President's tweets, certain phrases, and a book by Guy Snodgrass. Pl. Mot., Exh. C at 3. This request is completely untethered to specific people, times, or contexts. AWS's memorandum suggests that this request is in fact "limited" to DoD documents, *see* Pl. Mot. at 38, but even that limitation only narrows the scope to thousands of individuals. Again, AWS fails to explain how this expansive request is relevant to the specific allegations in its protest.

*      *      *

AWS claims that its evaluation challenges are the heart of this protest.  Nevertheless, it asks the Court to supplement the administrative record with unprecedented discovery designed to delve into the thought processes of not only the source selection officials who evaluated the JEDI Cloud proposals, but also officials at the highest levels of Government who did not make the decision or even have any contact with the individuals who did.  AWS has utterly failed to make a threshold showing supporting its allegations of bias or bad faith – which are, in any event, waived – in connection with the JEDI procurement.  It has presented no hard facts demonstrating that the source selection officials who evaluated its proposal had a motivation to act in bad faith.  Nor has it identified any conduct by these officials that is hard to explain absent bias.  AWS is not, therefore, entitled to supplement the administrative record in this case or to obtain discovery.  Moreover, AWS has not shown that the supplementation and discovery it seeks would produce "well-nigh irrefragable proof" of bias or bad faith.  *Sanders*, 801 F.2d at 1331.  AWS should not be permitted to draw out and sensationalize what is, at bottom, a bid protest that is readily amenable to review on the existing record.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court deny AWS's motion to supplement the administrative record and for discovery.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
OF COUNSEL:                          Assistant Director

MICHAEL G. ANDERSON                  /s/ Anthony F. Schiavetti
BENJAMIN M. DILIBERTO                ANTHONY F. SCHIAVETTI
Assistant General Counsel            RETA E. BEZAK
Washington Headquarters Service &    Trial Attorneys
Pentagon Force Protection Agency     U.S. Department of Justice
Office of General Counsel            Civil Division
Department of Defense                Commercial Litigation Branch
                                     PO Box 480
TYLER J. MULLEN                      Ben Franklin Station
CCPO Legal Advisor                   Washington, D.C. 20044
Assistant General Counsel            Tel: (202) 305-7572
Defense Information Systems Agency   Fax: (202) 305-1571
Office of the General Counsel        anthony.f.schiavetti@usdoj.gov

January 31, 2020                     Attorneys for Defendant