# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| AMAZON WEB SERVICES, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br>by and through the U.S. Department of Defense,<br><br>        Defendant,<br><br>  and<br><br>MICROSOFT CORPORATION,<br><br>        Defendant-Intervenor. | Case No. 19-cv-01796<br><br>Judge Campbell-Smith<br><br>▆▆▆▆▆▆▆▆▆▆▆▆▆<br><br>**FINAL REDACTED VERSION** |

**PLAINTIFF'S** ▆▆▆ **REPLY IN SUPPORT OF ITS**
**MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION .............................................................................................................. 1

LEGAL STANDARDS ...................................................................................................... 2

    A.    The AR Must Contain "All Material that Was Developed and Considered by" DoD .................................................................................................................... 2

    B.    The Presumption of Regularity in Designating the AR Should Not Apply Because the Government Conceded It Erroneously Omitted Documents that Should Have Been Included ...................................................................................... 3

    C.    "Deliberative" Documents Should Be Included in the AR If they Are Developed and Considered by the Agency in Making Its Decision .............................. 4

ARGUMENT ...................................................................................................................... 7

    A.    "Read Ahead" Memoranda, Agendas, Notes, Transcripts, and Other Materials Relating to Informational Meetings with Secretary Esper and/or the Office of the Secretary of Defense ...................................................................................... 7

    B.    Materials Concerning the Role of Stacy Cummings—the Principal Deputy Assistant Secretary of Defense, Acquisition Enablers—Relating to the JEDI Contract .............................................................................................................. 10

    C.    Materials Relating to the Recusals of Secretary Esper and Ms. Cummings ................. 12

    D.    Materials Relating to Meetings and a Presentation to DoD Leadership that Occurred After September 27, 2019 .................................................................... 13

    E.    Notes, Transcripts, and/or Records of DoD's Meetings with AWS and/or Microsoft ........................................................................................................... 14

    F.    Materials on Any Platform (e.g., Email, Slack, Google Drive, Google Docs, Google Groups, Google Hangouts) Related to the JEDI Source Selection or Proposal Evaluations, as Pertaining to AWS and/or Microsoft ................................... 16

    G.    Drafts and Workpapers Relating to the Demonstration Evaluations, Factor Consensus Evaluations, Price Evaluations, SSEB Report, PEB Report, SSAC Report, and/or SSDD ........................................................................................... 18

    H.    Unedited Video and Audio of the Factor 8 Demonstrations .......................................... 19

I.   Requested Materials the Government Has Agreed to Add to the AR ........................... 20

**CONCLUSION** ....................................................................................................................... **20**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ARKRAY USA, Inc. v. United States,*
  No. 14-233, 2014 WL 2905127 (Fed. Cl. June 26, 2014) .................................4, 6, 7, 9, 10, 16

*Cubic Applications, Inc. v. United States,*
  37 Fed. Cl. 339 (1997) .................................................................................................3, 8

*Eden Isle Marina, Inc. v. United States,*
  89 Fed. Cl. 480 (2009) ........................................................................................................9

*Fort Carson Support Servs. v. United States,*
  71 Fed. Cl. 571 (2006) ........................................................................................................2

*Gallup, Inc. v. United States,*
  131 Fed. Cl. 544 (2017) ......................................................................................................1

*Gulf Grp. Inc. v. United States,*
  61 Fed. Cl. 338 (2004) .....................................................................................................3, 8

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
  238 F.3d 1324 (Fed. Cir. 2001)..........................................................................................12

*InfoReliance Corp. v. United States,*
  118 Fed. Cl. 744 (2014) ......................................................................................................6

*Inst. for Fisheries Res. v. Burwell,*
  No. 16-1574, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017)................................................4, 16

*Joint Venture of Comint Sys. Corp. v. United States,*
  100 Fed. Cl. 159 (2011) .........................................................................1, 2, 3, 6, 8, 11, 13, 18

*Kansas City Power & Light Co. v. United States,*
  139 Fed. Cl. 546 (2018) ......................................................................................................8

*Lyon Shipyard, Inc. v. United States,*
  113 Fed. Cl. 347 (2013) ...........................................................................................5, 9, 16, 17

*Marriott Int'l Resorts, L.P. v. United States,*
  437 F.3d 1302 (Fed. Cir. 2006)...........................................................................................6

*Poplar Point RBBR, LLC v. United States,*
  145 Fed. Cl. 489 (2019) .............................................................................................6, 10, 18

*Safari Club Int'l v. Jewell,*
    No. 16-94, 2016 WL 7785452 (D. Ariz. Jul. 7, 2016)..............................................................17

*Alpha I, L.P. ex rel. Sands v. United States.,*
    83 Fed. Cl. 279 (2008) ...............................................................................................................5

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997)............................................................................................5, 6, 17

*Sikorsky Aircraft Corp. v. United States,*
    106 Fed. Cl. 571 (2012) ......................................................................................................5, 6, 8

*Smith v. United States,*
    114 Fed. Cl. 691 (2014) ...............................................................................................................3

*Sonoran Tech. & Prof. Servs., LLC v. United States,*
    132 Fed. Cl. 644 (2017) ...............................................................................................................6

*Tafas v. Dudas,*
    530 F. Supp. 2d 786 (E.D. Va. 2008) ..................................................................................5, 17

*Tauri Grp., LLC v. United States,*
    99 Fed. Cl. 475 (2011) .......................................................................................4, 5, 16, 19

*Univ. Camera Corp. v. NLRB,*
    340 U.S. 474 (1951)...................................................................................................................12

*Walsky Constr. Co. v. United States,*
    20 Cl. Ct. 317 (1990) ...................................................................................................................5

**Statutes**

18 U.S.C. § 208.................................................................................................................................11

## INTRODUCTION

"The integrity of the administrative record … is foundational to a fair and equitable procurement process." *Gallup, Inc. v. United States*, 131 Fed. Cl. 544, 548 (2017). The Government, therefore, has an obligation to produce a complete administrative record ("AR"), which "is the predicate to meaningful and effective judicial review." *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168 (2011). The Government's production of a cherry-picked record fails to meet this standard.

The Government has fumbled its handling of the AR from the very beginning of this case. During the parties' initial case-management conference on November 26, 2019, the Government represented it was "comfortable" that it could file the AR by December 13. *See* ECF No. 25 at 12:9. On the eve of that deadline, the Government requested a three-week extension, claiming that it needed "[m]ore time … to ensure all documents that are properly part of the record are collected [and] organized." ECF No. 54 at 2. The Government finally produced a set of materials that it claimed to comprise the AR on January 3, 2020, with the Contracting Officer certifying that those materials "include[d] the existing documents developed and considered in the decision to award the contract to Microsoft Corporation." Certification of AR (Jan. 3, 2020).

This certification was false. As detailed in Amazon Web Services, Inc. ("AWS")'s Motion to Complete (ECF No. 127-1 ("Pl. Mot.")), upon an expeditious review of the AR, AWS identified numerous categories of documents that were missing and promptly notified the Government of those deficiencies on January 9. The Government did not provide a specific response to AWS's informal requests until AWS circulated a ready-to-file motion to complete the AR on January 17, at which point the Government finally conceded that some of the requested materials should be included in the AR. Since the filing of this Motion, the Government yet again conceded that some additional requested materials were improperly excluded from the AR, as initially presented. As

a result of these concessions, the Government amended the record with 1,119 pages of new materials just last week—materials that should have been part of the AR from the outset.

Yet despite the Government's delay and acknowledgment of error, it continues to obstruct the adjudication of this protest upon a complete record because the AR is still missing materials that DoD generated and considered in reaching its award decision. Most notably, the Government's refusal to complete the AR extends to materials that this Court *twice* expressly ordered be included—namely, that "the record should include any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." ECF No. 15 at 2; ECF No. 55 at 2. The Government hardly attempts to excuse its noncompliance, claiming that it need not produce materials that the Court ordered the Government "should" produce. Def.'s Resp. Opp'n Pl.'s Mot. Complete at 18, ECF No. 143 ("Gov. Op.") (attempting to distinguish between "directory" and "mandatory" instructions by the Court). The Government's disregard for this Court's orders and dilatory attitude toward the completeness of the AR are transparent attempts to "undermine[]" the "court's review function … [by] insulat[ing] portions of its decision from scrutiny." *Comint*, 100 Fed. Cl. at 168. This should not be tolerated. AWS respectfully asks the Court to order the Government to complete the AR with the missing documents identified below.

## LEGAL STANDARDS

**A.    The AR Must Contain "All Material that Was Developed and Considered by" DoD**

The Government's refusal to provide a complete AR in this case is troubling and impedes the Court's ability to conduct the "substantial inquiry and thorough, probing, in-depth review" that it must perform. *Comint*, 100 Fed. Cl. at 166 (internal quotation marks omitted); *see also Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 592 (2006) (judicial review "entails identifying the judgments made by the relevant officials and verifying that the relevant information

was considered, the relevant factors were employed, and a satisfactory explanation was articulated"). As the Government acknowledges, the AR must include "all the material that was developed and considered by the agency in making its decision." *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997); *see also Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 347 (2004) (AR "is supposed to contain all of the materials relied upon by the agency in making its decision as well as an articulation of this decision"). This includes materials that were both "directly or indirectly considered by agency decision-makers," and "an agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed." *Comint*, 100 Fed. Cl. at 168–69 (internal quotation marks omitted). That is because "[t]he court's review function is undermined when an agency assembles a record that consists solely of materials that insulate portions of its decision from scrutiny or that it deems relevant to specific allegations raised by a protester." *Id.* at 168.

**B.** **The Presumption of Regularity in Designating the AR Should Not Apply Because the Government Conceded It Erroneously Omitted Documents that Should Have Been Included**

Although the Government claims that it "is entitled to a 'strong presumption of regularity in designating its administrative record,'" Gov. Op. at 10, "that presumption of a complete record" should not apply where the Government has already "acknowledged … that it had inadvertently excluded documents from the administrative record," *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014) (Campbell-Smith, C.J.). Thus, because the Government has already conceded that the AR, as originally presented, omitted many documents that should have been included, the presumption of a properly designated and complete AR does not apply in this case. *See generally* ECF No. 136 (identifying multiple documents that were "inadvertently omitted" from the AR and moving to amend the AR to correct these errors).

**C.** **"Deliberative" Documents Should Be Included in the AR If they Are Developed and Considered by the Agency in Making Its Decision**

The Government repeatedly asserts that certain documents like "drafts, other internal deliberations, and informal notes" are "typically" excluded from the AR because they may reflect the "deliberative decision-making process of agencies." Gov. Op. at 8–9. The Government contends that requiring inclusion of these materials in the AR would harm "proper agency functioning" by encroaching upon the "mental process[es]" of procurement officials. *See id.* at 9 (quoting cases). But the Government's position distorts applicable legal precedent, the facts of this protest, and this Court's orders.

Although the AR "need not consist of every single document related in any way to the procurement in question," it must, at a minimum, include "materials relevant to the specific decisions being challenged." *Tauri Grp., LLC v. United States*, 99 Fed. Cl. 475, 481 (2011). An agency cannot skirt this requirement by "distill[ing] its proposal evaluations to a single, summary report of conclusions" and claim that the summary report "constitute[s] the only information considered and thus the 'full' record of a decision." *Id.*

Because the hallmark of a complete AR is that it contains all materials "developed and considered" by the agency, there is no categorical exemption for drafts, informal notes, or other so-called "deliberative" materials, as the Government contends. *See, e.g.*, *Inst. for Fisheries Res. v. Burwell*, No. 16-1574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) ("It is obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision."). It is therefore not uncommon to require that the AR include informal documents that were "generated or considered" by the agency, particularly where these documents "are relevant to the key issue[s] in th[e] case." *ARKRAY USA, Inc. v. United States*, No. 14-233, 2014 WL 2905127, at *5 (Fed. Cl. June 26, 2014) (adding emails

and handwritten notes); *see also, e.g.*, *Lyon Shipyard, Inc. v. United States*, 113 Fed. Cl. 347, 353 n.4 (2013) (adding "emails and correspondences between the [agency] contracting officials"); *Tauri Grp.*, 99 Fed. Cl. at 482 (adding emails). Indeed, that is what the Court ordered here, when it mandated that the AR "should include any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." ECF No. 15 at 2; ECF No. 55 at 2.

To the extent the Government relies on the deliberative process privilege as a basis for withholding materials that are otherwise properly included in the AR,[1] the Government bears the burden of establishing that the strict substantive and procedural requirements for the privilege—which is construed narrowly—have been met. *See, e.g.*, *Alpha I, L.P. ex rel. Sands v. United States.*, 83 Fed. Cl. 279, 288 (2008); *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990). A document is "deliberative" and potentially exempt from disclosure under the deliberative process privilege if "it addresses a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 576 (2012) (internal quotation marks omitted).

However, the deliberative process privilege "can be overcome by an adequate showing of need." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). For example, where the documents "may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in

---

[1] Although the Government claims that it is "not asserting the 'deliberative process privilege' … at this time," *see* Gov. Op. at 21, the key case that the Government cites—*Tafas v. Dudas*, 530 F. Supp. 2d 786 (E.D. Va. 2008)—suggests that establishing the privilege is necessary to show that a document should not be included in the AR. *See* Gov. Op. at 9 ("'A complete administrative record … does not include privileged materials, such as documents that fall within the deliberative process privilege.'" (quoting *Tafas*, 530 F. Supp. 2d at 794)).

honest, effective government." *Id.* at 738 (internal quotation marks omitted). Similarly, where a deliberative document is "relevant to plaintiff's claim of bad faith, … such a document cannot be sheltered under a claim of deliberative process privilege." *InfoReliance Corp. v. United States*, 118 Fed. Cl. 744, 749 n.10 (2014); *see also Comint*, 100 Fed. Cl. at 169 ("[The] deliberative process privilege does not apply where a showing of bad faith has been made." (internal quotation marks omitted)).

In addition to the substantive requirements, this Court has outlined procedural requirements that the Government must follow to invoke the deliberative process privilege. In particular, the privilege "can only be invoked by an agency head or his or her subordinate after careful, personal review," and "that head or designee must identify the specific information that is subject to the privilege and provide reasons for maintaining the confidentiality of the pertinent record." *Sikorsky Aircraft*, 106 Fed. Cl. at 576 (citing *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1306–07 (Fed. Cir. 2006)); *see also ARKRAY*, 2014 WL 2905127, at \*6 n.15 (rejecting assertion of privilege where "the government has not satisfied any of the procedural requirements for properly invoking" the privilege).

Finally, whenever the Government asserts that a document is "deliberative" or otherwise subject to a privilege, the Court should require the Government to produce a log and provide the documents in question for *in camera* review so that the Court may determine whether the documents are necessary to complete the AR. *See, e.g.*, *Marriott*, 437 F.3d at 1307 ("[A] trial court may conduct in-camera review of documents under [the qualified deliberative process privilege]."); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 493 (2019) (requiring Government to file privilege log and produce "deliberative" documents for *in camera* review); *Sonoran Tech. & Prof. Servs., LLC v. United States*, 132 Fed. Cl. 644, 648–49 (2017) (ordering

privilege log and submissions of communications, emails, and documents for *in camera* review);
*ARKRAY*, 2014 WL 2905127, at *2, *5 (ordering Government "to provide the court with a copy
of all documents requested in plaintiff's motion … to allow for *in camera* review").

**ARGUMENT**

Despite the Government's concessions that the AR was not complete as initially presented,
and its subsequent amendment of the AR with new materials, the AR is still incomplete and lacks
critically important materials that DoD generated and considered during the JEDI procurement,
and which directly relate to key issues raised in this bid protest. The Court should order the
Government to complete the record with the materials described below.

**A.**     **"Read Ahead" Memoranda, Agendas, Notes, Transcripts, and Other Materials Relating to Informational Meetings with Secretary Esper and/or the Office of the Secretary of Defense**

Despite the Government's belated addition to the AR of additional read-ahead memoranda
and attachments for the multiple JEDI-related meetings held with Secretary Esper and Deputy
Secretary Norquist, Gov. Op. at 11–12, there remain two categories of documents that the
Government refuses to provide, and which should be added to complete the AR.

*First*, the Government has singled out two documents that—unlike similar attachments to
the other read-ahead memoranda (which the Government agreed to include in the AR)—it refuses
to produce: a paper entitled "JEDI Option Space" that was presented to Secretary of Defense Mark
Esper on July 29, 2019, and a "four-page power point [*sic*] briefing that analyzed various options
for the JEDI procurement" and that was presented to Deputy Secretary Norquist on October 7,
2019. *Id.* at 11–12. The Government asserts both documents should not be included in the AR
because they are "deliberative" in nature, *id.* at 11, and makes a conclusory claim of "attorney-
client privilege and work-product protection," *id.* at 12.

The Government has no proper basis to exclude these documents from the AR. The

Government does not actually dispute that these materials were "developed and considered" in the course of DoD's procurement process. *Cubic Applications*, 37 Fed. Cl. at 342.

Nor has the Government explained why the documents are deliberative at all—that is, how they formed a "direct part of the deliberative process in that [they] make[] recommendations or express[] opinions on legal or policy matters," *Sikorsky Aircraft*, 106 Fed. Cl. at 576—or why their production would impermissibly encroach upon "the mental thought processes of the decisionmakers," *Gulf Grp.*, 61 Fed. Cl. at 347. The fact that these documents were presented to senior DoD officials like Secretary Esper and Deputy Secretary Norquist *undercuts* the Government's claim that they were "deliberative" in nature, for Secretary Esper and Deputy Secretary Norquist are not part of the Source Selection Team and had no legitimate reason to participate in the "deliberative process" regarding the JEDI source selection.[2] Furthermore, the Government's unsupported assertion that these documents are "deliberative" is belied by its own agreement to produce *all* the other attachments to the *same* read-ahead memoranda that were associated with the "JEDI Option Space" paper and PowerPoint presentation—strongly suggesting that the Government has cherry-picked these two documents for exclusion from the AR in order to "insulate portions of its decision from scrutiny." *Comint*, 100 Fed. Cl. at 168.

The Government has also failed to meet its burden to show how the PowerPoint presentation is "subject to the attorney-client privilege and work-product protection." Gov. Op. at 12; *see Kansas City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 561 (2018) ("The

---

[2] If, on the other hand, the documents that were presented to Secretary Esper and Deputy Secretary Norquist were truly deliberative in nature (*e.g.*, if they reflect their "mak[ing] recommendations or express[ing] opinions on legal or policy matters" regarding the source selection, *see Sikorsky Aircraft*, 106 Fed. Cl. at 576), then the documents would be highly relevant to AWS's bias and bad faith claims, and accordingly would constitute materials that should be supplemented into the AR.

8

party asserting the privilege bears the burden of demonstrating the applicability of the privilege, and that burden is not discharged by mere conclusory or *ipse dixit* assertions." (internal quotation marks omitted)). For example, the Government has not identified any of the bases necessary to assert privilege, such as the names of the attorney(s) involved in preparing the communication or explaining how it reflects legal advice or was prepared at the direction of counsel. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 498 (2009) (privilege log must "be sufficiently detailed to allow the court to determine whether the elements of the claimed privilege have been established" (internal quotation marks omitted)).

*Second*, the Government has no basis for withholding "informal notes" from these meetings with senior DoD officials regarding JEDI. Gov. Op. at 12.[3] Although the Government suggests there is a bright-line rule allowing it to withhold "informal notes," Gov. Op. at 12, that is incorrect. This Court has required completion of the AR with informal notes if they are "generated or considered by the agency during the procurement and decisionmaking process." *ARKRAY*, 2014 WL 2905127, at *5.

Moreover, the informal notes AWS has requested pertain to meetings between members of the Source Selection Team and DoD leadership, unlike the interview and evaluator notes in the cases the Government cites. *See* Gov. Op. at 12. For example, in *Lyon Shipyard, Inc. v. United States*, the court did not require the filing of the notes of individual agency employees because those notes were "more akin to drafts" of individual evaluations. 113 Fed. Cl. at 353 n.4. By contrast, here, the notes from meetings between the Source Selection Team and high-level DoD officials would not be "akin to drafts" of evaluations because the DoD officials had no legitimate

---

[3] AWS accepts the Government's representation that "there are no transcripts of these meetings." Gov. Op. at 12.

role in the deliberations or drafting of JEDI proposal evaluations.  Instead, these meeting notes are more akin to the memoranda that summarize the substance of what was discussed in these meetings, which the Government has already included in the AR, and which are consistent with the types of notes this Court has ordered necessary to complete records in the past.  *See ARKRAY*, 2014 WL 2905127, at *4 (ordering record completed with handwritten notes from meetings).[4]

*        *        *        *        *

In sum, the Government has not articulated any credible basis to exclude the "JEDI Option Space" paper, PowerPoint presentation, and informal notes from meetings with DoD leadership from the AR.  The Court should therefore order the Government to include these documents in the AR; or at a minimum, require the Government to provide a privilege log and *in camera* submission to enable the Court to assess whether these documents are necessary for a complete AR.  *See, e.g.*, *Poplar Point*, 145 Fed. Cl. at 491 (ordering *in camera* submission and privilege log to enable court to adjudicate plaintiff's motion to complete).

**B.      Materials Concerning the Role of Stacy Cummings—the Principal Deputy Assistant Secretary of Defense, Acquisition Enablers—Relating to the JEDI Contract**

The AR also is incomplete without materials regarding the role of Stacy Cummings in the JEDI procurement.  *See* Pl. Mot. at 13–14.  As the Principal Deputy Assistant Secretary of Defense, Acquisition Enablers, Ms. Cummings had multiple communications with the Source Selection Team, including Source Selection Evaluation Board chairperson ██████████████ and worked

---

[4] The Government also cites a summary order from *Oracle America, Inc. v. United States*, No. 18-1880, ECF No. 76 (Fed. Cl. May 21, 2019), in which the court denied a motion to include in the AR notes or drafts relating to a contracting officer's final decision regarding a potential Procurement Integrity Act violation.  As with *Lyon*, these notes and drafts are akin to drafts that were used to prepare a final report—and not like the meeting notes that AWS requests here.

closely with DoD procurement personnel to prepare for JEDI-related meetings involving Secretary Esper and other high ranking DoD officials in August and September 2019.  *See* AR Tab 460 at 176420–21.  Ms. Cummings subsequently recused herself from the JEDI procurement on September 27, 2019, after disclosing █████████████████████████, and the Contracting Officer concluded that Ms. Cummings had "possibly violated 18 U.S.C. § 208 and its implementing regulations."  *See* AR Tab 454; AR Tab 460 at 176418, 176423.

In light of Ms. Cummings's role in the JEDI procurement—and in particular, her participation in preparing for meetings between the Source Selection Team and senior DoD officials like Secretary Esper—AWS requested that the AR be completed with the full set of materials regarding Ms. Cummings's involvement in JEDI, including the documents the Contracting Officer expressly relied upon in her "No Impact" assessment memorandum.  *See* Pl. Mot. at 13–14; *see also* AR Tab 460 at 176420 (Contracting Officer stating that she "reviewed Ms. Cummings's emails [and] briefs," including "the options decision brief presented to the Deputy Secretary of Defense on October 7, 2019").

The Government's only objection to including these materials is that "AWS is not challenging the contracting officer's no impact determination."  Gov. Op. at 13.  This objection fails.  In including Ms. Cummings' recusal letter and the Contracting Officer's no-impact assessment memorandum in the AR, the Contracting Officer certified that Ms. Cummings' recusal is a relevant issue that was "considered in the decision to award the contract to Microsoft." Certification of AR (Jan. 3, 2020); *see* AR Tabs 454, 460.  The Government cannot now pick and choose to include only those documents that "it deems relevant"—rather, it must produce the "'*whole*' administrative record," which "consists of *all* documents and materials directly or indirectly considered … includ[ing] evidence *contrary to the agency's position*.'"  *Comint*, 100

Fed. Cl. at 168–69 (citing *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 487–88 (1951)) (first two emphases added). Moreover, AWS's allegations *do* directly challenge the improper role that senior DoD officials (like Secretary Esper) played in the JEDI procurement through their interactions with the Source Selection Team (*see, e.g.*, Compl. ¶¶ 176, 178), and the AR demonstrates that Ms. Cummings was closely involved in the preparation for meetings between the Source Selection Team and Secretary Esper. *See* AR Tab 460 at 176421 (referencing Ms. Cummings's role "concerning the potential options to be presented to Secretary Esper"). Ms. Cummings's role in the procurement directly relates to the challenges AWS brings in this bid protest, and the AR should be completed so that it fully reflects the extent of her involvement.

## C. Materials Relating to the Recusals of Secretary Esper and Ms. Cummings

Additionally, the Government should complete the AR with materials relating to the recusals of Secretary Esper and Ms. Cummings. *See* Pl. Mot. at 14. The Government's sole reason for omitting these from the AR is that their inclusion would enable an "'inappropriate' inquiry into the deliberative processes of agency officials." Gov. Op. at 14 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir. 2001)). But there is nothing inappropriate about this request, which does not ask for DoD personnel's thought processes. Rather, AWS asks that the Government provide a complete record of the grounds for DoD's understanding of and determinations regarding the recusals of Secretary Esper and Ms. Cummings. *See Impresa*, 238 F.3d at 1339 (permitting inquiry into contracting officer's "grounds" for responsibility determination, rather than into the officer's thought process).

A complete factual record on the bases for these recusals is especially critical in light of the well-grounded allegations AWS has made about the troubling circumstances surrounding the recusals of DoD personnel. Particularly for Secretary Esper, the timing of his recusal calls into question whether it was pretextual. For example, the stated basis for Secretary Esper's recusal was

his son's preexisting employment with IBM—even though his son had already been hired at IBM months earlier and IBM was no longer even in the running for the JEDI award. *See* ECF No. 124-2 at APP 111–13.   Moreover, the announcement of Secretary Esper's recusal came after he had already met with DoD personnel on multiple occasions to discuss JEDI, *see* AR Tab 462 at 176426, and on the same day that he *defended* the propriety of his review of the JEDI Contract to Senators Reed and Warner, *see* AR Tab 558.  DoD's official announcement of the recusal also misleadingly stated that the "JEDI procurement will continue to move to selection," ECF No. 124-2 at APP 110, even though the Source Selection Authority had executed the Source Selection Decision Document *five days earlier*, *see* AR Tab 459.  Secretary Esper's one-page conclusory recusal memorandum— with a superimposed, handwritten date—also does not offer any further explanation for the factual or legal reasons for recusing himself.  *See* AR Tab 458.

By including the recusal memoranda in the AR, the Contracting Officer has certified that they were "developed and considered in the decision to award the contract to Microsoft." Certification of AR (Jan. 3, 2020).  The Government cannot limit the AR to what it "deems relevant," for withholding the rest of the documents upon which the recusals were based would "undermine[]" this Court's "review function" by "insulat[ing] portions of its decision from scrutiny." *Comint*, 100 Fed. Cl. at 168.  The Court should require that the materials relating to the recusals of Ms. Cummings and Secretary Esper be added to complete the AR.

**D.     Materials Relating to Meetings and a Presentation to DoD Leadership that Occurred After September 27, 2019**

The Government's opaque response to AWS's request for documents relating to post-September 27, 2019 meetings involving DoD leadership is also concerning. *See* Gov. Op. at 14–15.  Even though the AR indicates that DoD "continued to have meetings to discuss the options and PowerPoint to present to Department leadership after September 27, 2019," the AR only

contains materials relating to meetings up through September 26, 2019—and nothing beyond that date.  AR Tab 460 at 176422.  It is critically important that the AR be completed to reflect the materials for these meetings and presentation to DoD leadership, as materials bear directly on DoD leadership's role in the consideration and determination of the JEDI source selection.

Putting aside the October 7, 2019 PowerPoint presentation (which is addressed above, *see supra*, pp. 7–10), the Government asserts—without explanation—that "AWS has not demonstrated that any other documentation of post-September 27, 2019 deliberative JEDI meetings involving lower-level DoD officials should be a part of the administrative record."  Gov. Op. at 15.  The Government fails to acknowledge whether these materials exist—let alone describe their nature and why they have been excluded from the AR.  Indeed, the Government has already included in the AR materials relating to *pre*-September 27, 2019 meetings involving DoD leadership, and offer no reason why the materials for *post*-September 27, 2019 meetings should be treated any differently.  The Court should require the Government to complete the AR with materials concerning these post-September 27, 2019 meetings.

**E.      Notes, Transcripts, and/or Records of DoD's Meetings with AWS and/or Microsoft**

The AR is incomplete without notes and other records relating to DoD's meetings with AWS and Microsoft.  *See* Pl. Mot. at 15–16.

By including audio recordings of meetings that DoD held with AWS, Microsoft, IBM, and Oracle on August 13 and 15, 2018, the Government already certified that DoD's meetings with offerors are relevant and were considered or relied upon in their decision-making.  *See* Certification of AR (Jan. 3, 2020); *see also* AR Tabs 120, 121, 122, 123.  Yet while the AR reflects that DoD held multiple meetings with offerors, the AR does not contain any full summaries of the discussions during the meetings.  Rather, the AR only contains DoD's meeting minutes, which do not—and do not purport to—reflect the substance of what was actually discussed with the offerors.

The meeting minutes contain only the barest of summaries that do not memorialize what was discussed. For example, the meeting minutes that the Government included in the AR summarize discussions as follows: "the questions began with Factor 2, followed by Factor 6," AR Tab 343 at 151527; "After introductions concluded, the questions began with Factor 9 (Price)," *id.* at 151529; "The conversations included discussion questions regarding Factor 4," *id.* at 151537. These minutes do not shed any light on the substance of the discussions that took place during these meetings.

It is neither fair nor reasonable for DoD to rely on these perfunctory meeting minutes to comply with their obligation to provide a "complete" AR that would facilitate meaningful judicial review. The Court should not be content with these bare notes when common sense and standard practice would suggest that more detailed records of these meetings likely exist—such as in the form of audio or video recordings, or notes that were taken during the meetings.[5] Ensuring that the AR completely reflects what was discussed during these meetings is especially important in this case, where the key issues relate to what DoD specifically communicated to AWS and Microsoft about the JEDI requirements during these meetings. *See, e.g.*, ECF No. 130-1 at 48–49 (explaining how DoD procurement officials gave specific oral instructions to AWS, which were not also communicated to Microsoft). Thus, the Court should require the "individual attendees' informal notes" from DoD's meetings with AWS and Microsoft, and any recordings or other materials regarding these meetings, to be included in the AR. Gov. Op. at 15.

---

[5] AWS accepts the Government's representation that "[t]here are no transcripts of these meetings." Gov. Op. at 15. However, the Government also claims it does not even know whether "individual attendees' informal notes" exist at all. *Id.* The fact that the Government has not undertaken the effort to identify, collect, and review documents calls into question how the Government was able to make the assessment that they were not necessary to be included in the AR.

F.  **Materials on Any Platform (*e.g.*, Email, Slack, Google Drive, Google Docs, Google Groups, Google Hangouts) Related to the JEDI Source Selection or Proposal Evaluations, as Pertaining to AWS and/or Microsoft**

The Government continues to refuse to include JEDI-related materials located on email, Slack, Google Hangouts, and similar platforms. Despite this Court's clear instruction that the AR "should include any informal documents … such as email communications and communications made through Slack channels and the like," ECF No. 15 at 2; ECF No. 55 at 2, the Government has included *zero* informal documents in the AR that reflect DoD's evaluation of the JEDI proposals. The Government simply asserts that, as a categorical matter, it should not produce these informal documents because they "contain … the agency's deliberations in reaching [its] decision." Gov. Op. at 16.

The Court should not credit the Government's blanket assertion. The *source* or *format* of relevant materials has no bearing on whether they should be included in the AR. Through this request, AWS is *not* requiring that the AR probe into the mental processes of procurement personnel. Instead, this request simply asks the Government to include informal materials on these platforms that "contain information considered by the [evaluation] [t]eam" or, at minimum, "place that information in context." *Tauri Grp.*, 99 Fed. Cl. at 482. These informal materials "should … be added to the administrative record to allow for effective review of the [evaluation] [t]eam's determinations." *Id.* As other courts have noted, "[i]t is obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision." *Inst. for Fisheries Res.*, 2017 WL 89003, at *1. And it is neither uncommon nor unprecedented for the AR to include similar electronic communications. *See, e.g.*, *ARKRAY*, 2014 WL 2905127, at *5 (adding emails); *Tauri Grp.*, 99 Fed. Cl. at 482 (same); *Lyon Shipyard*, 113 Fed. Cl. at 353 n.4 (adding "emails and correspondences between the [agency] contracting officials").

Such is the case here. DoD's Defense Digital Service "wanted all items related to the JEDI Cloud effort to be developed and contained in a collaborative but controlled environment," such as Slack and Google Drive. AR Tab 221 at 58699. The procurement officials obeyed, and the AR indicates that, at a minimum, DoD personnel used a Google Group named ▓▓▓▓▓ and at least two Slack channels: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id.*; AR Tab 47a at 2901, 2930, 2973; AR Tab 242. The Government cannot seriously dispute that these "controlled environment[s]" dedicated to the procurement do not contain information "indirectly considered by the agency decision-makers," even though this information "may not have literally passed before the[ir] eyes." *See* Gov. Op. at 8 (quoting *Safari Club Int'l v. Jewell*, No. 16-94, 2016 WL 7785452, at *2 (D. Ariz. Jul. 7, 2016)).

Furthermore, the Government's stated rationale for excluding these materials from the AR—that their inclusion would "chill frank discussion and reduce the quality of agency decision-making," *see* Gov. Op. at 9 (citing *Tafas*, 530 F. Supp. 2d at 794))—does not hold water in this case. "[W]here there is reason to believe the documents sought may shed light on government misconduct, … shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d at 738 (citation and internal quotation marks omitted).

Thus, in light of AWS's well-grounded allegations of bias and bad faith—which include bias and bad faith on the part of the DoD procurement officials who communicated using these platforms—it is critical to the full and fair adjudication of this bid protest that these communications be included in the AR. In particular, the materials on these platforms could very well reflect the grounds for procurement officials' understanding and determinations with respect to outside pressures and biases exerted on them from President Trump and other senior DoD

officials.

The Government's audacious refusal to include these materials in the AR—or to even search these platforms for such materials—also ignores this Court's clear instructions about the contents of the AR. The Court has *twice* directed that "the record should include any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." ECF No. 15 at 2; ECF No. 55 at 2. There should be no dispute that this Court's order means what it means: that "informal documents" like "email communications and communications made through Slack channels and the like" "should" be included in *this* AR. Yet the Government claims it is free to disregard whatever this Court tells it that it "should" do, because "should" is a "directory term[]" rather than a mandatory one. Gov. Op. at 18. This defiance must not be permitted.

The AR should—and must—be completed with these materials in order to facilitate an effective review of this procurement. In the alternative—and at a minimum—the Court should require the Government to submit these informal documents to the Court for *in camera* review, so that the Court may properly assess whether these documents should be added in order to complete the AR, lest the Government "insulate portions of its decision from scrutiny." *Comint*, 100 Fed. Cl. at 168; *see also, e.g.*, *Poplar Point*, 145 Fed. Cl. at 491 (ordering *in camera* submission and privilege log of documents that Government claimed were "deliberative").

**G.    Drafts and Workpapers Relating to the Demonstration Evaluations, Factor Consensus Evaluations, Price Evaluations, SSEB Report, PEB Report, SSAC Report, and/or SSDD**

This bid protest concerns the biased and erroneous technical evaluations of AWS's and Microsoft's proposals. It therefore is crucial that all documents considered by DoD in creating these errant evaluations are included in the AR for this Court's review, as the Government itself concedes that the AR should include "material relevant to *the specific decisions being challenged*."

Gov. Op. at 13 (quoting *Tauri Grp.*, 99 Fed. Cl. at 481).  Like emails and Slack channels, these drafts and workpapers "contain information considered by the [evaluation] [t]eam" and "place that information in context."  *Tauri Grp.*, 99 Fed. Cl. at 482.  Additionally, this Court has already cautioned that an agency may not selectively "distill its proposal evaluations" into "summary report[s] of conclusions" in order to shield from the AR the rest of the information that the agency considered.  *Id.* at 481.  Without these drafts and workpapers, the record cannot be considered complete, and the Government must add them into the AR.[6]

## H.    Unedited Video and Audio of the Factor 8 Demonstrations

The AR should not be considered complete until the full, unedited demonstration video and audio files are included.  Although AWS accepts the Government's representation that the redactions that were applied to the Factor 8 demonstration video were only used to "to protect passwords, PIN codes, and other unrelated sensitive or proprietary data," Gov. Op. at 12, and does not oppose the removal of this information from the video footage at this time, the Government has nonetheless spliced the edited videos in ways that have removed substantive information relating to the demonstration sessions.  For example, the video files have been edited such that only one of two demonstration laptop screens is visible at any given point in time during the demonstration sessions—even though both laptop screens contain relevant information to understand the demonstration, and indeed, are shown at various times during the demonstrations.  *See generally* AR Tabs 291, 295.  Similarly, the audio and video files have been edited such that

---

[6] To the extent the Court believes that these materials are more appropriately added to the AR through *supplementation*, AWS has separately moved to supplement the AR with these materials through discovery.  *See* ECF No. 124-3 at Ex. C.  The Court can rely on the reasons set forth in AWS's Renewed Motion to Supplement and related filings to require their inclusion in the AR.  *See* ECF No. 124-1; ECF No. 145.

there is no record of what happened before, after, and during certain breaks—even though it is likely that there were discussions regarding the demonstrations (including, for example, the DoD evaluators' contemporaneous analyses and impressions based on the demonstrations) that are not reflected in the existing audio and video files. The Government's selective editing and splicing of the recordings is improper and the AR should be amended to reflect the full, unabridged demonstrations.

## I.      Requested Materials the Government Has Agreed to Add to the AR

The Government acknowledges that it failed to include in the AR multiple materials that AWS requested, including evaluation notices, spreadsheets, offeror responses, and related correspondence; responses to AWS emails containing clarifying questions for the Contracting Officer; and native files for the Microsoft Factor 8 demonstration logs. After AWS's repeated requests and the filing of this Motion, the Government now represents that it has amended the AR to include all (*i.e.*, "the rest") of such materials. *See* Gov. Op. at 11–12, 15, 16, 22. AWS withdraws these requests for completion without prejudice and expressly reserves its rights to move for these materials should the Government's representations prove to be inaccurate.

**CONCLUSION**

The AR is not complete. Reliance on an incomplete record will not facilitate a full and fair review, and the Government should be required to comply with its obligation to provide a complete AR. The Court should grant AWS's Motion to Complete the AR and order the Government to amend the AR to include the missing materials. In the alternative—and at a minimum—the Court should require the Government to provide the requested documents to the Court for *in camera* review, which will enable the Court to make an informed determination about whether they are properly included in the AR.

Dated: February 10, 2020

Respectfully submitted,

By: _Kevin P. Mullen_ (signature)

Kevin P. Mullen
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888
Telephone: 202.887.1500
Facsimile: 202.887.0763

*Attorney of Record for Plaintiff*
*Amazon Web Services, Inc.*

*Of Counsel:*

J. Alex Ward
Daniel E. Chudd
Sandeep N. Nandivada
Caitlin A. Crujido
Alissandra D. Young
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888

Andrew S. Tulumello
Daniel P. Chung
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, D.C. 20036-5306

Theodore J. Boutrous, Jr.
Richard J. Doren
Eric D. Vandevelde
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197