## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

AMAZON WEB SERVICES, INC.,

               Plaintiff,

    v.

UNITED STATES OF AMERICA,
by and through the U.S. Department of Defense,

               Defendant.

    and

MICROSOFT CORPORATION,

               Defendant-Intervenor.

**REDACTED VERSION**

Case No. 19-cv-01796

Judge Campbell-Smith

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## PLAINTIFF'S ▮▮▮▮ RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTIONS TO DISMISS

**TABLE OF CONTENTS**

Page

INTRODUCTION..................................................................................................... 1

QUESTION PRESENTED ....................................................................................... 3

FACTUAL BACKGROUND ..................................................................................... 3

LEGAL STANDARD ................................................................................................ 5

ARGUMENT............................................................................................................. 6

A.    The *Blue & Gold* Waiver Rule Does Not Bar AWS's Claims Because
They Are Challenges to the Evaluation .................................................... 6

    1.    *AWS's Claims Arise from DoD's Improper Evaluations and Award
Decision, Not the Terms of the Solicitation.* ................................... 7

    2.    *Defendants Misconstrue the Scope of* Blue & Gold. ...................... 10

    3.    *Cases Applying* Blue & Gold *Cited by Defendants Do Not Apply to
AWS's Evaluation Challenges.* ...................................................... 11

    4.    *GAO Precedent Cited by Defendants Does Not Apply to AWS's
Evaluation Challenges.* .................................................................. 15

B.    *Blue & Gold* Should Not Be Extended to Apply to AWS's Claims of Bias ........ 16

    1.    *AWS's Challenges Were Not Ripe Until DoD Awarded the JEDI
Contract.* ......................................................................................... 17

    2.    *Extending* Blue & Gold *to AWS's Claims Would Frustrate Judicial
Review and Result in A Cascade of Protective and Defensive
Protests.* ......................................................................................... 20

C.    Even If *Blue & Gold* Did Apply, AWS Did Not Waive Counts 3, 5, 6, and
7 Because They Are Not Challenges to a "Patent Error" And AWS Has
Good Cause .............................................................................................. 21

D.    The Court Need Not Decide the Motions for Partial Dismissal Prior to
Ruling on AWS's Motion to Supplement the Administrative Record ................. 24

CONCLUSION ...................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967)..................................................................................................17

*Adams & Associates, Inc.,*
  Nos. B-417120, B-417125, 2019 WL 245909 (Comp. Gen. Jan. 16, 2019) ...........................15

*Analytical & Research Tech., Inc. v. United States,*
  39 Fed. Cl. 34 (1997)................................................................................................21

*Anham FZCO v. United States,*
  144 Fed. Cl. 697 (2019).............................................................................................12

*AshBritt, Inc. v. United States,*
  87 Fed. Cl. 344 (2009)..............................................................................................8, 9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................................5

*ATSC Aviation, LLC v. United States,*
  141 Fed. Cl. 670 (2019)...........................................................8, 10, 11, 12, 14

*Bannum, Inc. v. United States,*
  779 F.3d 1376 (Fed. Cir. 2015)................................................................................1, 24

*Bennett v. Spear,*
  520 U.S. 154 (1997)..................................................................................................18

*Blue & Gold Fleet, L.P. v. United States,*
  492 F.3d 1308 (Fed. Cir. 2007).........................................................1, 6, 8, 11, 17, 21

*Brocade Commc'ns Sys., Inc. v. United States,*
  120 Fed. Cl. 73 (2015) ..........................................................................................18, 19

*Caddell Constr. Co. v. United States,*
  111 Fed. Cl. 49 (2013) ..............................................................................................15

*Caddell Constr. Co. v. United States,*
  125 Fed. Cl. 264 (2016) ...........................................................................................6, 11

*Cambridge v. United States,*
  558 F.3d 1331 (Fed. Cir. 2009)....................................................................................5

*COMINT Sys. Corp. v. United States*,
   100 Fed. Cl. 159 (2011) ..................................................................................24

*COMINT Sys. Corp. v. United States*,
   700 F.3d 1377 (Fed. Cir. 2012).................................................................6, 10, 23

*Commc'n Constr. Servs., Inc. v. United States*,
   116 Fed. Cl. 233 (2014) ..................................................................................12

*Concourse Grp., LLC v. United States*,
   131 Fed. Cl. 26 (2017) ....................................................................................12

*CRAssocs. Inc. v. United States*,
   102 Fed. Cl. 698 (2011) ..................................................................................12

*CW Gov't Travel, Inc. v. United States*,
   110 Fed. Cl. 462 (2013) ..................................................................................22

*Distributed Sols., Inc. v. United States*,
   106 Fed. Cl. 1 (2012) ......................................................................................23

*Draken Int'l, Inc. v. United States*,
   120 Fed. Cl. 383 (2015) ..................................................................................10

*Duffy v. United States*,
   120 Fed. Cl. 55 (2015) ......................................................................................5

*E.L. Hamm & Assocs., Inc. v. England*,
   379 F.3d 1334 (Fed. Cir. 2004).................................................................21, 23

*Ernst & Young, LLP v. United States*,
   136 Fed. Cl. 475 (2018) ..................................................................................23

*FirstLine Transp. Sec., Inc. v. United States*,
   107 Fed. Cl. 189 (2012) ..................................................................................23

*Gadsden v. United States*,
   111 Ct. Cl. 487 (1948) ......................................................................................2

*Harris Patriot Healthcare Sols., LLC v. United States*,
   95 Fed. Cl. 585 (2010) ....................................................................................18

*i3 Cable & Harness LLC v. United States*,
   132 Fed. Cl. 495 (2017) ..................................................................................16

*iAccess Techs., Inc. v. United States*,
   143 Fed. Cl. 521 (2019) .............................................................................14, 21

*Jacobs Tech., Inc. v. United States,*
   131 Fed. Cl. 430 (2017) .................................................................................................13, 18

*Linc Gov't Servs., LLC v. United States,*
   96 Fed. Cl. 672 (2010) ..........................................................................................................17

*Net-Star 1 Gov't Consulting Inc. v. United States,*
   101 Fed. Cl. 511 (2011) .........................................................................................................22

*Norton v. S. Utah Wilderness All.,*
   542 U.S. 55 (2004) .................................................................................................................18

*Open Spirit, LLC v. United States,*
   131 Fed. Cl. 756 (2017) .........................................................................................................16

*Optimization Consulting, Inc. v. United States,*
   115 Fed. Cl. 78 (2013) ...........................................................................................................16

*Palantir USG, Inc. v. United States,*
   129 Fed. Cl. 218 (2016) .........................................................................................................18

*Per Aarsleff A/S v. United States,*
   829 F.3d 1303 (Fed. Cir. 2016) ...............................................................................6, 21, 23

*Peraton Inc. v. United States,*
   146 Fed. Cl. 94 (2019) ...........................................................................................................12

*Price Gordon Servs. v. United States,*
   139 Fed. Cl. 27 (2018) ...........................................................................................................16

*Sotera Defense Sols., Inc. v. United States,*
   118 Fed. Cl. 237 (2014) .................................................................................................11, 16

*Square One Armoring Serv., Inc. v. United States,*
   123 Fed. Cl. 309 (2015) .........................................................................................................19

*Synergy Sols., Inc. v. United States,*
   133 Fed. Cl. 716 (2017) .................................................................................................13, 14, 17

*Sys. Application & Tech., Inc. v. United States,*
   691 F.3d 1374 (Fed. Cir. 2012) ...............................................................................17, 18, 19

*Tenica & Assocs., LLC v. United States,*
   123 Fed. Cl. 166 (2015) .........................................................................................................19

*Turping v. United States,*
   913 F.3d 1060 (Fed. Cir. 2019) ...............................................................................................5

*Vanguard Recovery Assistance v. United States,*
     99 Fed. Cl. 81 (2011) ........................................................................................................20

**Statutes**

10 U.S.C. § 2305.................................................................................................................3

28 U.S.C. § 1491 ...............................................................................................................6

**Regulations**

48 C.F.R. § 3.101-1............................................................................................................8

48 C.F.R. § 15.305.............................................................................................................8

48 C.F.R. § 15.506.............................................................................................................3

## INTRODUCTION

Plaintiff Amazon Web Services, Inc. ("AWS") requests that the Court deny the Partial Motions to Dismiss filed by Defendant United States, acting by and through the Department of Defense ("DoD"), and Defendant-Intervenor Microsoft Corporation ("Microsoft") (collectively, "Defendants"), to dismiss Counts 3, 5, 6, and 7 of AWS's complaint on the basis of waiver.

AWS protests a fundamentally flawed procurement process where the evaluations and award decision were infected by bias, which ultimately steered the JEDI contract to Microsoft. By miscasting AWS's protest as a challenge to the "the terms of competition" and citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), Defendants contend AWS has "waived" its right to protest because it did not file its protest prior to award—that is, *before* AWS learned of DoD's evaluations and saw evidence of actual bias. Def.'s Mot. to Dismiss ("Gov. Mot.") at 5–6, ECF No. 132; Intervenor Def.'s Mot. to Dismiss ("MS Mot.") at 9, ECF No. 133. In fact, Defendants go even further, arguing that AWS should have filed its protest before final proposals were *even evaluated*. Gov. Mot. at 5–6; MS Mot. at 9.

Defendants' arguments are specious. AWS does not challenge the terms of the JEDI solicitation or even the "terms of competition." AWS challenges the *evaluation* of offerors' bids. As the Federal Circuit has aptly stated: "[A] bidder cannot be expected to challenge an agency's evaluation of bids, in contrast to the terms of solicitation, *until* the evaluation occurs." *Bannum, Inc. v. United States*, 779 F.3d 1376, 1381 (Fed. Cir. 2015) (emphasis added). That straightforward principle compels denial of Defendants' motions.

Defendants' arguments also conflict with common sense and practicality. AWS could not have forecasted that President Trump's bias would infect the evaluation process and cause DoD source selection officials to award the JEDI contract to Microsoft erroneously. Defendants

effectively suggest that AWS was immediately required to file a protest after every presidential tweet (some of which—as the Government and Microsoft emphasize—occurred before the President was even elected). That position conflates AWS's knowledge of the President's personal animus against Jeff Bezos, Amazon, and the *Washington Post* with knowledge that the *actual evaluation process for the JEDI procurement* had succumbed to improper influence and was "so grossly erroneous as to imply bad faith." *Gadsden v. United States*, 111 Ct. Cl. 487, 490 (1948).

Defendants' position also creates a ripeness dilemma and raises serious timing uncertainty for protestors. Any pre-award protest of a presidential tweet would not be concrete injury, let alone final agency action or action redressable by a court order. Indeed, had AWS filed serial protests each time President Trump expressed his anti-Amazon bias, the Court would have dismissed those protests as unripe at the Government's urging, and told AWS to refile once DoD had awarded the contract and articulated its basis for the award. Defendants' sweeping take on "waiver," if adopted, would prompt a flood of premature and defensive filings dwarfing the unnecessary "expensive" litigation that *Blue & Gold*'s equitable doctrine was designed to screen out.

A presumption of good faith and regularity applies to government officials, but that presumption has its limits. *Cf.* MS Mot. at 19. DoD's thin and tortured analysis of the evaluation factors that accompanied its notice of award (including ignoring objective evaluation criteria, misstating the substance of the offerors' proposals, and creating false equivalence between offerors), and DoD's post-award refusals to respond to AWS's post-debriefing questions, made it clear that the evaluations and resulting award decision were incurably tainted. It was only then that AWS's complaints of bias became ripe and subject to the rules for a timely protest filing. Precedent and prudential considerations require denial of Defendants' motions.

### QUESTION PRESENTED

Are Counts 3, 5, 6, and 7 of AWS's complaint timely asserted where AWS did not know

that bias tainted the evaluations by DoD personnel before learning of DoD's evaluation or award?

### FACTUAL BACKGROUND

On October 25, 2019, DoD announced it had awarded the $10 billion, ten-year JEDI

contract to Microsoft. Compl. ¶¶ 31, 188.[1]  DoD foreclosed any opportunity for AWS to request

or obtain an in-person debriefing; instead, on the same day as the announcement of the award,

DoD provided AWS a written debriefing regarding the evaluation results. *See id.* ¶ 189.  DoD's

post-award debriefing materials revealed blatant and inexplicable errors by DoD decision-makers

to justify their award to Microsoft.  These substantial and pervasive errors affected nearly every

evaluation factor, and included egregious missteps like ignoring critical aspects of AWS's

technical proposal and overlooking key shortcomings in Microsoft's proposal, all of which created

false parity between the offerors. *See, e.g., id.* ¶¶ 2–9; *see generally id.* ¶¶ 110–73.

As authorized by law, AWS submitted detailed debriefing questions, including several

relating to the integrity of the source selection process and concerns that the President's anti-

Amazon rhetoric had resulted in evaluations and an award decision tainted by bias and bad faith.

*See id.* ¶ 190; 10 U.S.C. § 2305(b)(5)(B)(vii), (C).  But despite its legal obligations, *see* 10 U.S.C.

§ 2305(b)(5); 48 C.F.R. § 15.506(d), DoD refused to respond substantively.  DoD's refusal to

answer questions regarding evaluations and potential bias, coupled with the fact that the limited

answers it did provide showed numerous inexplicable errors, Compl. ¶¶ 190–91, gave AWS reason

to believe that bias had corrupted the source selection process.

---

[1]  DoD made the award decision at least as early as October 17, 2019, but it did not reveal that it
had done so until the public announcement on October 25, 2019.  Compl. ¶ 186.

That belief was further bolstered when, after award, news reports revealed that President Trump had directly interfered with DoD's JEDI procurement by *instructing* his then-Secretary of Defense James Mattis to "screw Amazon" out of the JEDI Contract. *Id.* ¶¶ 19, 32, 91. This fact became public and known to AWS through a book released on October 29, 2019. *See id.* ¶ 91 n.35. It was also during this immediate post-award period that AWS became aware of the unusual timing and circumstances surrounding Secretary Esper's recusal from the JEDI process, which DoD announced on October 22—days after the award decision had been made within DoD, but still before the public award announcement. *Id.* ¶ 30. The reason DoD cited for the recusal—Secretary Esper's adult son's employment at IBM—is mystifying, given that his son had already been employed at IBM for nearly eight months, and that DoD had already eliminated IBM as a contender from the JEDI Contract more than six months earlier. *Id.* The timing of the recusal also calls into question whether it was pretextual because it occurred long *after* Secretary Esper had inserted and involved himself into the JEDI review process in August 2019, and *after* the Source Selection Authority had executed the Source Selection Decision Document awarding the JEDI Contract to Microsoft on October 17, 2019. *Id.* ¶¶ 29–30. Moreover, DoD's October 22 statement that the "[t]he JEDI procurement will continue to move to selection through the normal acquisition process run by career acquisition professionals," *id.* ¶ 187 n.58, was misleading because, post-award, AWS learned that the Source Selection Authority had actually made her award decision *five days before* that public announcement, *id.* ¶ 186. AWS was not aware of any of these factual developments until after the award decision.

After becoming aware of these facts, AWS promptly filed its bid protest complaint, asserting seven claims, four of which—Counts 3, 5, 6, and 7—are at issue in Defendants' motions. All four challenge the proposal evaluation process; none challenges the solicitation terms or any

other analogous scenario to which the waiver doctrine has been found to apply. Count 3 raises a claim for wrongful deprivation of competitive advantage, alleging that "[t]hroughout the JEDI procurement process, DoD—without any technical justification—took affirmative steps to deprive AWS of its competitive advantage over Microsoft ... so that DoD could justify its award to a technically inferior competitor." *Id.* ¶ 211. Count 5 asserts a claim of bias and bad faith, alleging that the "DoD officials responsible for the JEDI solicitation ... engaged in arbitrary, capricious, and unlawful conduct through [their] biased, bad-faith decision making in [their] proposal evaluations and award decision." *Id.* ¶ 220. Count 6 alleges that "DoD's evaluation of AWS's proposal and award decision violated numerous procurement statutes and regulations." *Id.* ¶ 225. And Count 7 alleges that, as a result of the bias and bad faith, DoD breached the implied contract of good faith and fair dealing when it failed to "consider all bids fairly and honestly" and conducted the procurement in "an arbitrary, capricious, and irrational manner." *Id.* ¶¶ 232–33.

## LEGAL STANDARD

The Court must deny a motion to dismiss if the plaintiff has alleged facts sufficient "to 'state a claim to relief that is plausible on its face.'" *Duffy v. United States*, 120 Fed. Cl. 55, 61 (2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating a motion to dismiss, the court "accept[s] all facts pleaded in the complaint as true," *Turping v. United States*, 913 F.3d 1060, 1064 (Fed. Cir. 2019), and "construe[s] them in a light most favorable to the plaintiff," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).

## ARGUMENT

Defendants' motions hinge entirely on their invocation of *Blue & Gold*'s waiver doctrine. Generally, a protestor generally may challenge a solicitation, award, or any alleged violation of a procurement statute "before or *after* the contract is awarded," 28 U.S.C. § 1491(b)(1) (emphasis added). *Blue & Gold* created a narrow exception to this general rule, permitting a finding of waiver where an offeror fails to challenge patent defects in a solicitation prior to the close of bidding. 492 F.3d at 1315. The Federal Circuit designed this narrow doctrine to prevent bidders from "roll[ing] the dice" to see if they will win an award despite a patent error in the solicitation, *id.* at 1314, and to avoid "after-the-fact litigation" of issues related to the solicitation that "could have been raised prior to the close of bidding," *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1313 (Fed. Cir. 2016).

This Court has *never* applied *Blue & Gold*'s waiver doctrine to a bid protest challenging the *evaluation* of bid proposals, as AWS challenges here. Indeed, this Court has squarely held the opposite—that *Blue & Gold*'s waiver doctrine does not apply to a "challenge to [the agency's] evaluation." *Caddell Constr. Co. v. United States*, 125 Fed. Cl. 264, 272 (2016). Defendants' motions thus fail as a matter of black-letter law.

A.   **The *Blue & Gold* Waiver Rule Does Not Bar AWS's Claims Because They Are Challenges to the Evaluation**

*Blue & Gold* permits a finding of waiver where a party is on notice of patent errors in the *terms of a solicitation* prior to award, but fails to protest. *Blue & Gold*, 492 F.3d at 1313 (emphasis added); *see COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012) (extending waiver doctrine to solicitation amendments). Counts 3, 5, 6, and 7 plainly challenge DoD's JEDI *evaluation* and award decision—not the terms of the JEDI solicitation—and therefore, they are beyond the scope of *Blue & Gold* and its progeny.

1.   *AWS's Claims Arise from DoD's Improper Evaluations and Award Decision, Not the Terms of the Solicitation.*

AWS based its protest on errors that surfaced in DoD's proposal evaluations and award decision; AWS does not challenge the terms of JEDI solicitation itself.

*Counts 5 and 7.* AWS based both Counts 5 and 7 on allegations that DoD's bias and bad faith against AWS resulted in erroneous proposal evaluations and influenced the ultimate award decision. Specifically, Count 5 alleges DoD evaluators' bias and bad faith "resulted in an unreasonable *evaluation*." Compl. ¶ 220 (emphasis added). In particular, it alleges "President Trump[] … improperly influenced DoD officials responsible for the JEDI solicitation" to become biased and act in bad faith to reach an "unreasonable evaluation [that] unfairly deprived AWS of the JEDI award." *Id.* Similarly, Count 7 alleges DoD's execution of the procurement in bad faith and in a biased manner breached the implied contract of good faith and fair dealing. *Id.* ¶¶ 230–34. Neither count alleges any error in the JEDI solicitation. Rather, both Counts 5 and 7 allege DoD's bias and bad faith compromised its proposal evaluations and award decision. AWS necessarily could not have brought such claims prior to DoD's post-award debriefing following award to Microsoft. Accordingly, both claims are beyond the scope of the waiver doctrine articulated in *Blue & Gold.*

*Count 6.* Count 6 alleges "DoD's *evaluation* of AWS's proposal and *award decision* violated numerous procurement statutes and regulations." Compl. ¶ 225 (emphasis added). It also encompasses challenges based on DoD's violations of other applicable procurement laws and regulations, including but not limited to "regulatory requirements to treat offerors impartially" and "to evaluate proposals exclusively against stated evaluation criteria." *Id.* In particular, the alleged violation of conflict of interest provisions—that DoD political appointees and procurement personnel understood their continued employment depended on making evaluations consistent

7

with President Trump's directive that AWS not be awarded the JEDI Contract—is a challenge to the evaluation process, not a challenge based on a patent error in the solicitation. *Id.* ¶¶ 225–27. AWS therefore has not waived this challenge. *Blue & Gold*, 492 F.3d at 1313; *see also supra*, p. 6.[2]

**Count 3**.   Count 3 is a challenge to the biased conduct that steered the contract toward Microsoft, which AWS could not have known until after contract award. *See AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 369 (2009) (barring government personnel from "engag[ing] in conduct that favors one offeror over another").   After proposals had been submitted and after meeting with both offerors, DoD changed its interpretation of the RFP's classified infrastructure requirements to prohibit offerors from relying on existing classified data architecture, and required offerors to price certain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "to streamline operations and lower costs under the Price Scenarios." Compl. ¶¶ 24, 212; MS Mot. at 20–21 (noting Amendment 0005 "amended the pricing scenarios to 'further clarify' their requirements … address[ing] a discrepancy between the offerors' initial proposals").   As a result of those new interpretations, AWS adjusted its proposal, which increased AWS's total evaluated price by nearly ▮▮▮▮▮▮ .

---

[2] Defendants do not seriously contend Count 6's claims for violations of other provisions of the Federal Acquisition Regulation are untimely.   For example, AWS's claim also alleges DoD violated the FAR's requirements to treat offerors impartially and to evaluate proposals exclusively against stated evaluation criteria.   *See* Compl. ¶¶ 227–28 (citing 48 C.F.R. §§ 3.101-1, 15.305).   These violations occurred during the evaluation process, and thus AWS could not have brought these challenges before the award decision.   Defendants do not argue that AWS's claims based on errors in the evaluation process—*i.e.*, Counts 1, 2, or 4—were untimely, and there is accordingly no basis for the Court to deem those same claims untimely under Count 6.   *See ATSC Aviation, LLC v. United States*, 141 Fed. Cl. 670, 693–94 (2019) (holding that protest alleging agency deviated from solicitation was not untimely because the deviation "did not become apparent until after the … award decision").

The underlying basis for Amendment 0005—bias favoring Microsoft—was not known, and could not have been known, until AWS received its debriefing. DoD's debriefing showed that DoD's award of the JEDI Contract to Microsoft was based on strained evaluations of Microsoft's technically noncompliant proposal. The debriefing made clear that Amendment 0005—which occurred after DoD had commenced discussions with the offerors—was intended to deprive AWS of its competitive advantages over Microsoft that became evident during DoD's evaluation. *See* AR Tab 338 at 151400 ("Sub-section 5 was revised to clarify what classified infrastructure includes … The subsection was clear and unambiguous as previously written. However, during Oral Discussions with both Offerors it was determined that Sub-section 5 would benefit from further clarification of what is and is not prohibited under this clause to avoid any contract execution issues."). Although AWS submitted questions to DoD to understand the intent behind the changes in Amendment 0005, AR Tab 488 at 180001–02, 180049 (questions regarding changes to classified infrastructure provisions), 180048 (questions regarding changes pertaining to ▓▓▓▓▓▓▓), DoD rebuffed AWS's inquiries. DoD's failure to provide any basis for the changes made clear that DoD did not have a technical justification for the Amendment, and that DoD's primary motivation and effect was to deprive AWS of some of its key comparative advantages. This claim is not a challenge to the revised RFP terms themselves, but rather a challenge to DoD "engag[ing] in conduct that favors one offeror over another." *AshBritt, Inc.*, 87 Fed. Cl. at 369.

In sum, because all of the foregoing challenges protest the Government's proposal evaluations, not the JEDI solicitation, *Blue & Gold*'s waiver doctrine simply has no application here.

2.      *Defendants Misconstrue the Scope of* **Blue & Gold.**

Both the Federal Circuit and this Court have had ample opportunities to interpret and apply *Blue & Gold* in the thirteen years since it was decided. Defendants seize on dicta in *COMINT Systems Corp. v. United States* that the reasoning of *Blue & Gold* "applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so." 700 F.3d at 1382. Based on that dicta, Defendants proclaim that "*Blue & Gold*'s waiver rule applies to *any* defects in the *procurement*." MS Mot. at 30 (emphases added); *see also* Gov. Mot. at 12 (*Blue & Gold*'s waiver rule applies "when an interested party is aware of the basis of a challenge to the *terms of a competition*." (emphasis added)). But the Defendants' extension of *COMINT* goes much too far.

*COMINT* addressed only whether patent errors in a solicitation had to be challenged before award, even if the error became apparent only after bidding closed. *See* 700 F.3d at 1382; *see also ATSC*, 141 Fed. Cl. at 694 ("The Federal Circuit [in *COMINT*] extended [*Blue & Gold*'s] waiver rule to post-award challenges of a solicitation when the error arose in the interval between the close of bidding and the award of the contract."). *COMINT* did not expand *Blue & Gold*'s waiver rule to include challenges to evaluations. Rather, *COMINT* concerned a challenge to a patent defect in a solicitation amendment—underscoring that the Federal Circuit's decision in *Blue & Gold* was limited to challenges over a solicitation's terms.

This Court has also repeatedly confirmed that *COMINT* did not alter or establish a new standard for the type of challenge that may be waived. In particular, a "protest[] alleg[ing] pre-award deficiencies in the *procurement process*" cannot be waived under *Blue & Gold* because the waiver rule only "prevents [p]laintiff[s] from challenging solicitation *terms*." *Draken Int'l, Inc. v. United States*, 120 Fed. Cl. 383, 393 (2015) (emphases added) (holding a delay in the procurement

that made the process anti-competitive was not a term of the solicitation and thus not waived under *Blue & Gold*); *see also Caddell*, 125 Fed. Cl. at 272 (holding *Blue & Gold*'s waiver rule does not apply to a "challenge[] to the agency's *evaluation* ... and its *application* of the prequalification criteria and source selection criteria"); *cf. Sotera Defense Sols., Inc. v. United States*, 118 Fed. Cl. 237, 253–54 (2014) (explaining *COMINT* only extended the *Blue & Gold* waiver rule "so that protests of the terms of an *amendment* to a solicitation are waived if not raised before award"). Moreover, "[t]he Federal Circuit has *never* addressed the applicability of the waiver rule outside the context of a protest to a solicitation." *ATSC*, 141 Fed. Cl. at 695 (emphasis added).  At most, then, *COMINT* stands for the proposition that challenges to solicitation amendments must be brought before the award is made—which has no application to this case.

Defendants grossly over-read the scope of *Blue & Gold* in their attempt to assert waiver here, but their position has no legitimate grounding in the law.  *Blue & Gold* and its progeny prevent a party with pre-award knowledge of a patent defect *in the solicitation's terms*, or any amendments to such terms, from bringing a post-award challenge to that patent defect.  492 F.3d at 1313.  The *Blue & Gold* waiver doctrine does not apply to post-award bid protests challenging the *evaluation* itself (*i.e.*, the *application* of the solicitation's terms).

> 3.  ***Cases Applying* Blue & Gold *Cited by Defendants Do Not Apply to AWS's Evaluation Challenges.***

None of the remaining cases Defendants offer in support of their broad reading of *Blue & Gold* actually supports expanding waiver beyond the terms of a solicitation.  *See* Gov. Mot. at 12–14; MS Mot. at 29–31, 39–41.  Beyond *COMINT*'s express extension of the waiver rule to solicitation amendments, this Court has found three narrow circumstances that also constituted challenges to the solicitation's terms, and thus were subject to *Blue & Gold*: (1) certain conflict of interest claims, (2) certain corrective action claims, and (3) certain claims that had already been

considered by the Government Accountability Office ("GAO") prior to a challenge at the Court. Defendants' characterization of these circumstances as "challenge[s] to the terms of a competition," Gov. Mot. at 12, neither expands the limited scope of the *Blue & Gold* rule nor renders them applicable to AWS's challenge to the agency's *evaluation*.

As this Court explained in *ATSC*, the conflict-of-interest claims in the cases cited by Defendants, *CRAssociates Inc. v. United States*, 102 Fed. Cl. 698 (2011) (challenging failure to amend solicitation to address potential conflicts of interest), and *Concourse Group, LLC v. United States*, 131 Fed. Cl. 26 (2017) (challenging individuals involved in the solicitation process), represented "challenge[s] to the solicitation." *ATSC*, 141 Fed. Cl. at 695.  *Communication Construction Services, Inc. v. United States*, 116 Fed. Cl. 233 (2014), relied upon by Microsoft, MS Mot. at 31, also involved a challenge to the solicitation where protestor claimed that the Government had violated a statutory prohibition by allowing a company to act as a subcontractor, and where the terms of the solicitation "clearly informed offerors that [the company] could be a subcontractor." *Commc'n Constr. Servs.*, 116 Fed. Cl. at 261.  Thus, "no extension of the waiver rule occurred" in these cases. *ATSC*, 141 Fed. Cl. at 695.

The same is true for those cases cited by Defendants as purportedly involving bias and bad faith, all of which entailed challenges to corrective actions that amended the agency's source selection approach, and thus fit easily within *Blue & Gold*'s solicitation-limited scope.  *See Peraton Inc. v. United States*, 146 Fed. Cl. 94, 100–102 (2019) (Campbell-Smith, J.) (finding protestor's bad faith claim moot and barred by *Blue & Gold* in post-award bid protest where agency revised corrective action in response to preliminary injunction preventing agency from awarding contract under proposal request that resulted from initial corrective action taken in response to GAO bid protest); *Anham FZCO v. United States*, 144 Fed. Cl. 697, 718–19 (2019) (finding

protestor's challenge to corrective action only after the agency made its second award decision barred by *Blue & Gold*).  And in *Jacobs Technology, Inc. v. United States*, the court held the agency's memorialized corrective action was a final agency decision such that a claim challenging its scope as biased was ripe before award.  131 Fed. Cl. 430, 446–47 (2017).  Quoting *Blue & Gold*—with no mention of *COMINT*—the *Jacobs* court reasoned that because "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so … waives its ability to raise the same objection" later, the bidder's challenge to the scope of a corrective action that the agency had formalized in writing would be untimely after the new award decision.  *Id.*  The *Jacobs* court emphasized that the bidder was "not challenging the Army's execution of the corrective action"—which would be analogous to the execution of the source selection evaluation process—but was instead "challenging the scope" of the final agency decision itself—analogous to the "scope" or "terms" of the solicitation.  *Id.* at 448.[3]

Finally, Defendants cite a series of cases where claims had already been raised before the GAO and rejected on waiver grounds prior to protesting at the Court, but these too are inapposite.  In *Synergy Solutions, Inc. v. United States*, the court held a plaintiff waived its claim that the agency failed to engage in meaningful discussions because it had twice already filed a protest at

---

[3] Even if the Court were to accept Defendants' suggestion that *Jacobs* and *Synergy Solutions* expanded the *Blue & Gold* waiver rule to include certain claims not related to the terms of a solicitation (and it should not), neither of those circumstances applies here.  In *Jacobs*, the court determined the protestor waived its claim by not timely bringing a pre-award bid protest after the agency took a corrective action, which was "memorialized … in a letter" and "resulted in 'irretrievable' legal consequences.'"  131 Fed. Cl. at 447.  By contrast, here, there were no formal actions DoD took prior to the award decision that would have given rise to a ripe claim for bias or bad faith.  Similarly, in *Synergy*, discussed *infra*, the court relied heavily on equitable considerations—including the fact that the protestor had previously filed two related protests before the GAO, and did not use those opportunities to raise its claim, bringing it for the first time before the Court of Federal Claims.  133 Fed. Cl. at 739.  Unlike the protestor in *Synergy Solutions*, AWS brought its challenge to DoD's award decision at the first opportunity.

the GAO before protesting the agency's corrective action before the Court, and had an opportunity to raise the claim at GAO but failed to do so—twice. 133 Fed. Cl. 716, 736–40 (2017). Those facts bear no resemblance to those here. And indeed, this Court consistently has limited *Synergy* to its facts.

For example, in *ATSC*, this Court rejected an argument under *Synergy* (and *COMINT*) nearly identical to Defendants' argument here. The plaintiff in *ATSC* argued it could not have discovered until after award that the agency "did not actually care" about non-price ratings, which should have driven the award to the plaintiff. *ATSC*, 141 Fed. Cl. at 693–94. In response, the *ATSC* defendants, like Defendants here, argued *Synergy* shows that "*COMINT* ... expanded the judicially-created waiver rule articulated in *Blue & Gold* ... to all [bid-protest] situations," and that the plaintiff had "waived its right to protest [because it] had all knowledge relevant to its [alleged errors] before the award." *Id.* at 693; *see also* MS Mot. at 30–31; Gov. Mot. at 13–14. That argument failed to convince this Court, which explained that although *COMINT*, as referenced in *Synergy*, did "state" *Blue & Gold* could apply to "pre-award situations," *Synergy* "turned in part on GAO's 10-day timeliness rule" because of the unique context of the previous GAO protests. 141 Fed. Cl. at 696. Given the "unusual setting" of the *ATSC* case, the Court therefore refused to apply *Synergy*. *Id.*

In *iAccess Technologies, Inc. v. United States*, this Court again refused to apply *Synergy* to find waiver and instead relied on *ATSC* to reject *Synergy*. 143 Fed. Cl. 521, 532 (2019). In rejecting the government's effort to use *Synergy* to expand the universe of waivable challenges, this Court found convincing that "the procurement challenge discussed in *Synergy* had already been rejected by the GAO on waiver grounds" and decided that the facts of the protest before it "aligned more closely" with *ATSC* than the GAO-infused facts of *Synergy*. *Id.*

4.    *GAO Precedent Cited by Defendants Does Not Apply to AWS's Evaluation Challenges.*

Having failed to identify any precedent in this forum to support its overreaching interpretation of *Blue & Gold*, Defendants rely on the GAO's decision in *Adams & Associates, Inc.*, Nos. B-417120, B-417125, 2019 WL 245909 (Comp. Gen. Jan. 16, 2019), which concluded that a protestor waived its claims of bias and retaliation based on federal regulations governing timeliness for GAO protests. *See* Gov. Mot. at 15–16; MS Mot. at 31. But *Adams & Associates* is readily distinguishable from this protest on the facts.  In *Adams*, the protestor argued the procurement process was "irredeemably flawed in that any agency official from [the contracting agency] or headquarters who reasonably could have been involved in this procurement is incapable of fairly evaluating the protester's proposals." 2019 WL 245909 at *2.  That clearly is not what AWS is alleging here.  Instead, AWS presumed that DoD officials were capable of carrying out their source selection obligations in accordance with the presumption of good faith afforded to them; it was not until AWS received its post-award debriefing that it became evident the procurement officials had failed to do so, they had succumbed to improper presidential pressure, and the evaluations and award decision were tainted by bias. Compl. ¶¶ 174–84.

Moreover, the GAO's decision was based on GAO timeliness regulations that do not apply to this Court, and administrative decisions like *Adams & Associates* "are not binding on this court and the absence of [Court of Federal Claims] precedent is not a reason for any court to" look to them.  *Caddell Constr. Co. v. United States*, 111 Fed. Cl. 49, 95–96 (2013).  Indeed, in *Sotera Defense Solutions v. United States*, this Court flatly rejected the Government's attempt to extend the GAO's waiver rules to bid protests in this Court, finding that the Government failed to demonstrate how GAO's formulation of waiver has "utility," given that the GAO's waiver rules "rel[y] overmuch" on an "obscure distinction" between a "proposed corrective action [that] alters

or fails to alter the ground rules for the competition (*i.e.*, aspects that apply to all offerors)," and a "proposed corrective action [that] does not alter the ground rules for the competition." 118 Fed. Cl. at 257 (internal quotations omitted). That "ground-rules" test is the exact test Defendants urge this Court to adopt from *Adams & Associates*. *See* Gov. Mot. at 15. This Court should follow *Sotera* and decline to do so.

*   *   *   *   *

The case law is therefore clear that *Blue & Gold*'s waiver rule does not reach any of AWS's claims. Indeed, this Court has regularly considered claims of bad faith and bias on the merits even though it held that claims relating to the solicitation were waived. *See, e.g.*, *Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50–54, 59–60 (2018) (holding bidder's challenge to the solicitation's terms were waived but addressing supplementation of the administrative record based on bias claims separately); *i3 Cable & Harness LLC v. United States*, 132 Fed. Cl. 495, 511–12, 516–18 (2017) (holding bidder's challenge to the solicitation's terms was waived but addressing bias and bad faith claims regarding directed award on the merits); *Open Spirit, LLC v. United States*, 131 Fed. Cl. 756, 781–82, 785–88 (2017) (finding waiver of objections to RFP terms but addressing bias and bad faith claims on the merits and granting motion for supplementation premised on bias claim); *Optimization Consulting, Inc. v. United States*, 115 Fed. Cl. 78, 89–93, 95 (2013) (granting supplementation of the administrative record with documents supporting protestor's bias claim but finding waiver of objections to solicitation terms). The law simply does not support the Defendants' arguments in favor of dismissal.

B.   ***Blue & Gold* Should Not Be Extended to Apply to AWS's Claims of Bias**

Defendants' strained analysis would require this Court to extend the *Blue & Gold* doctrine far beyond its intended purpose and, in doing so, gut the public policy rationales underlying the

waiver rule in the first place. *Blue & Gold* is "an equitable, rather than jurisdictional bar," *Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 698 (2010), based on the rationale of "fairness," *Synergy*, 133 Fed. Cl. at 738. If *Blue & Gold* were extended to claims of biased evaluations and award decisions, the claims would be non-justiciable because they would either be premature (if filed before award based on suspicion that such bias existed and *might* impact a final agency decision) or late (if protestors wait for final agency action to determine whether bias *did* impact the source selection). This "heads-I-win, tails-you-lose" approach would insulate agency bias from judicial review—which would hardly promote the Federal Circuit's goal of "fairness" in creating this equitable limitation. *See Synergy*, 133 Fed. Cl. at 738. And contrary to the purpose of promoting efficiency, *see Blue & Gold*, 492 F.3d at 1313–14, extending the waiver doctrine to claims of bias would result in a flood of litigation after every tweet or negative news cycle as protestors seek to preserve their claims (only to be told that the claims are not ripe). The Court should reject Defendants' attempts to undermine *Blue & Gold* by advocating for its overbroad application.

1.   *AWS's Challenges Were Not Ripe Until DoD Awarded the JEDI Contract.*

AWS's claims pertain to errors in DoD's proposal evaluations and were not ripe until DoD made its award decision. The ripeness doctrine prevents a plaintiff from bringing "[a] claim [that] is contingent upon future events that may or may not occur." *Sys. Application & Tech., Inc. v. United States*, 691 F.3d 1374, 1383 (Fed. Cir. 2012). By avoiding "'premature adjudication,'" the ripeness rule "'prevent[s] the courts … from entangling themselves in abstract disagreements … and … protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Thus, for a claim to be ripe, "the challenged

conduct [must] constitute[] a final agency action." *Id.* at 1384; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (APA provisions authorizing judicial intervention "all insist upon an 'agency action.'").

A final agency action has two components:   "'First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Sys. Application*, 691 F.3d at 1383 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (internal quotation marks omitted). Absent a final agency action, the mere "anticipation of a future violation is not sufficient to make a claim ripe." *Brocade Commc'ns Sys., Inc. v. United States*, 120 Fed. Cl. 73, 79 (2015).  As the Government has previously argued, "protest grounds that merely anticipate improper agency action are speculative and premature." *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 283 (2016); *see also Harris Patriot Healthcare Sols., LLC v. United States*, 95 Fed. Cl. 585, 596 (2010) ("[S]peculation as to what the agency might do cannot give rise to a ripe controversy.").

Each of the challenged counts hinges upon DoD's proposal evaluations and award decision, which AWS necessarily could not have challenged pre-award because there was no "consummation of the agency's decision-making process" to protest. *Sys. Application*, 691 F.3d at 1383. Although Defendants devote much attention to AWS's allegations regarding President Trump's July 2019 statements about the JEDI Contract and Secretary Esper's subsequent announcement of the JEDI review in August 2019, *see, e.g.*, MS Mot. at 38–39; Gov. Mot. at 19, neither event constitutes a final agency action.  Unlike formal agency procurement actions that are "memorialized" in writing (like corrective actions accompanied by formal memoranda, *see Jacobs*, 131 Fed. Cl. at 446–47, or solicitation amendments, *see Sys. Application*, 691 F.3d at 1384), these

informal statements by President Trump and Secretary Esper in July and August 2019 were not agency actions "by which rights or obligations [were] determined, or from which legal consequences ... flow." *Id.* at 1383 (internal quotation marks omitted). Rather, it was only DoD's evaluations and award decision, which were made based on the procurement officials' adoption of that bias, that constituted agency actions AWS could protest. Accordingly, AWS's mere knowledge of President Trump's statements did not make the challenged counts ripe.

Prior to DoD's evaluation and award decision, any claim by AWS about impropriety in the evaluation and decision process based solely on the President's vitriol would have been speculative and "contingent upon future events" (*i.e.*, evaluations and an award to Microsoft influenced by bias) that might not have occurred at all. *Sys. Application*, 691 F.3d at 1383; *see also Brocade*, 120 Fed. Cl. at 79 (claim based on "future violation" is not ripe); *Tenica & Assocs., LLC v. United States*, 123 Fed. Cl. 166, 172 (2015) (dismissing as premature a plaintiff's claims "about procurement violations that it anticipate[d] the agency making"); *cf. Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 329 (2015) (dismissing bias challenge that "raise[d] purely hypothetical arguments about future events").

Nor would there have been any available redress. Although Defendants are quick to criticize AWS for failing to raise its concerns sooner, they offer no practical insight as to what actions AWS should have undertaken, and when it should have done so. Microsoft contends that AWS should have "raise[d] [its] allegations in a timely pre-award protest filed no later than the deadline set for FPRs (September 5, 2019)." MS Mot. at 39. But as noted above, the critical facts giving rise to AWS's claims did not materialize until well after September 5, 2019, and Microsoft offers no reason why those facts, or the timing of them, can or should be ignored. *See supra*, pp. 3–4. And although Defendants contend that AWS could have sought an order requiring "DoD ...

to take appropriate action, potentially including removal of any affected personnel," MS Mot. at 41, AWS could not plausibly have sought meaningful "removal" of the President or the Secretary of Defense.  Nor could AWS have asked to remove "affected" personnel precisely because it had no reason to believe that any specific personnel had succumbed to bias, bad faith, and conflicts of interest until learning of the baseless evaluation results and improper award decision. *See supra*, pp. 3–4.  Defendants' inability to articulate exactly what AWS should have done (and when) only underscores why AWS's claims would not have been ripe prior to award.  Defendants similarly have not plausibly argued that there was any specific action that DoD took in connection with the JEDI procurement that constituted a sufficiently concrete and formal agency action that would make a pre-award bid protest ripe.

      2.     ***Extending* Blue & Gold *to AWS's Claims Would Frustrate Judicial Review and Result in A Cascade of Protective and Defensive Protests.***

Finally, a finding that the challenged claims would not have been ripe until contract award also promotes effective judicial review.  Had AWS protested pre-award based on allegations of bias, bad faith, and conflicts of interest, the Government would have undoubtedly argued that those claims were not ripe.  Defendants' attempts to invoke the waiver rule would make it all but impossible for a protestor to bring a claim for bias and bad faith, either pre- or post-award.  Indeed, Defendants' argument is precisely the type of "heads-I-win, tails-you-lose" proposition that "has no merit" because it is "tantamount to denying judicial review."  *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 91–92 (2011).  Any extension of *Blue & Gold* to the instant case would frustrate judicial review and hamstring protestors from raising meritorious claims of bias.

Moreover, the uncertainty that would result from adopting Defendants' position would open the floodgates to defensive litigation as contractors seek to protect their claims.  In an age where the President tweets about companies and individuals alike on a daily basis, any contractor

that draws his public ire would be required to protest every solicitation on which it is bidding or intends to bid on mere suspicion. And when some contractors submit hundreds of proposals to the Government each year, the number of protests that would be filed at either the Court or the GAO would drain administrative and judicial resources, and necessarily increase the costs of doing business to both the Government and the taxpayer. The policy implications of Defendants' expansive interpretation of *Blue & Gold* require the Court to reject it.

**C.    Even If *Blue & Gold* Did Apply, AWS Did Not Waive Counts 3, 5, 6, and 7 Because They Are Not Challenges to a "Patent Error" And AWS Has Good Cause**

Even if this Court expanded *Blue & Gold* to reach challenges to the evaluation process, AWS's claims would nonetheless still be timely because the counts Defendants aim to dismiss involve challenges to latent—not patent—errors, and only *patent* errors are waivable under *Blue & Gold*. *See* 492 F.3d at 1313. Even *COMINT*'s broad formulation of *Blue & Gold* did not disturb its holding that the waiver rule only applies to patent errors: "A reasonable reading of *COMINT* limits its extension of the waiver rule to patent errors in a solicitation occurring after bidding has closed but before the contract has been awarded." *iAccess*, 143 Fed. Cl. at 531. AWS's claims do not concern a patent error.

An error is patent if it is "'an obvious omission, inconsistency or discrepancy *of significance*,'" *Per Aarsleff*, 829 F.3d at 1312 (emphasis added) (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004)), and could have been "'discovered by reasonable and customary care,'" *id.* (quoting *Analytical & Research Tech., Inc. v. United States*, 39 Fed. Cl. 34, 46 (1997)). By contrast, a "latent" error "is a hidden or concealed defect which is not apparent … , could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification." *Id.* Therefore, when a bidder is not—or cannot be—aware of a defect or its significance prior to award, its

subsequent protest of that defect is not waived. *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 482 (2013) (refusing to apply *Blue & Gold*'s waiver rule to a claim over Federal Acquisition Regulation ("FAR") violations in the procurement process because the bidder "could not know that [the agency] would violate FAR" until post-award).

A rule that a bidder cannot waive what it does not know makes good sense: "No doctrine or case requires a potential protestor to be clairvoyant or to police an agency's general noncompliance with the [acquisition regulations] on the possibility that such misfeasance *might* become relevant in a protest." *Net-Star 1 Gov't Consulting Inc. v. United States*, 101 Fed. Cl. 511, 523 n.17 (2011) (emphasis added). But that is exactly what Defendants demand of AWS in their motions. Defendants' dismissal arguments focus almost exclusively on AWS's inclusion in its complaint of President Trump's many disparaging statements about Amazon, Mr. Bezos, and the *Washington Post*, arguing that because those statements "were made before the close of bidding in September 2019," "there is no question that AWS knew the factual basis for the claims ... well before award." MS Mot. at 38–39; *see also* Gov. Mot. at 19. Defendants' myopic focus misconstrues the substance of AWS's claims and *Blue & Gold*'s patent error requirement.

AWS does not allege that the JEDI award decision should be overturned simply because the President has been hostile toward Mr. Bezos, Amazon, and the *Washington Post*. Rather, as the Government itself observes in its response to AWS's Motion to Supplement the Administrative Record:

> [T]he relevant question in this protest is not whether the President dislikes Amazon, but rather whether the source selection officials—the Government personnel who actually evaluated AWS's and Microsoft's proposals and decided which offeror would receive the JEDI contract—exhibited bias against AWS in this procurement.

Def.'s Resp. Opp'n to Pl.'s Mot. to Supplement ("Gov. Opp'n Supplement") at 15, ECF No. 140. As troubling as the President's open hostility towards Amazon may be, it is the *effect* of the

President's bias, as demonstrated by DoD's proposal evaluations and award decision, that forms the basis for the claims—and that effect was neither apparent, much less "patent," during the solicitation. *E.L. Hamm*, 379 F.3d at 1342 (holding that waiver rules do not apply to latent errors); *see also Distributed Sols., Inc. v. United States*, 106 Fed. Cl. 1, 12 (2012) (claims that agency took actions to "steer the award" to the desired winner are not patent errors); *Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 507 (2018) (conflict of interest claim where plaintiff did not know about the conflicted bidder's involvement with the solicitation was a latent error that was not waived).[4]

For the same reasons, even if the Court were to find that *Blue & Gold*'s waiver rule applied here, AWS's claims would still be timely because AWS had good cause not to raise these protest grounds prior to award. Until AWS received its post-award debriefing, there was nothing that AWS could have "discovered by reasonable and customary care" that would have revealed the bias, bad faith, or conflicts of interest that influenced the evaluations and award decision. *See Per Aarsleff*, 829 F.3d at 1312. To the contrary, AWS was entitled to rely on the presumption that DoD procurement officials were acting in good faith and that the procurement process was being carried out consistent with the FAR. *FirstLine Transp. Sec., Inc. v. United States*, 107 Fed. Cl. 189, 207 (2012) (holding that "any challenge to [an agency's incomplete] evaluation process" is "premature" because courts "must presume that [agency] officials will act in good faith"); *see also COMINT*, 700 F.3d at 1382 ( "[W]here bringing the challenge prior to the award is not practicable,

---

[4] Defendants' argument that AWS should have brought a bias and bad faith claim upon Secretary Esper's review of the JEDI procurement process in August 2019 (*see, e.g.*, MS Mot. at 39; Gov. Mot. at 19) fails for the similar reason that there was nothing patently erroneous about his conducting a review at that time. Indeed, AWS's concerns about Secretary Esper's involvement did not fully materialize until the troubling circumstances regarding his recusal in October 2019, which were then confirmed by DoD's blatantly erroneous award decision that could only be understood as the product of bias and bad faith.

it may be brought thereafter."); *see also Bannum*, 779 F.3d at 1381 (noting bidder had "not challenged any of the procedures made available to it as unduly burdensome or impractical"). Therefore, AWS had good cause to not protest the challenged claims prior to award, and the claims are timely.

**D.     The Court Need Not Decide the Motions for Partial Dismissal Prior to Ruling on AWS's Motion to Supplement the Administrative Record**

Defendants attempt to dodge the Court's consideration of AWS's Motion to Supplement the Administrative Record by equating the timing of AWS's bias claims with the merits of its claims.  Gov. Opp'n Supplement at 14–15.  This Court need not resolve the motions for partial dismissal (which concern the timeliness of AWS's claims) before it grants AWS's request for supplementation (which concerns whether AWS's claims are well-grounded).  *See COMINT Sys. Corp. v. United States*, 100 Fed. Cl. 159, 169 (2011) ("Timeliness of plaintiffs' protests is an entirely separate and distinct matter that bears no relation to the requirement that the [agency] produce a complete agency record.").  As demonstrated above, AWS's claims are timely filed. The Government cannot evade AWS's requests to supplement the administrative record with relevant evidence of bias and bad faith and to seek discovery on its claims.

<u>CONCLUSION</u>

Defendants' dismissal motions are based on a misreading and strained interpretation of *Blue & Gold* and its progeny.  This Court should not expand *Blue & Gold* to the bad faith and bias claims here.  That result would frustrate this Court's review and encourage—if not require— litigants in other cases to reflexively file defensive and protective protests.  That result is not consistent with this Court's precedents or with any sensible and workable bid protest regime. Defendants' motions should be denied.

Dated:  February 21, 2020                    Respectfully submitted,

                              By: _____

                                   Kevin P. Mullen
                                   MORRISON & FOERSTER LLP
                                   2000 Pennsylvania Ave., NW
                                   Washington, DC 20006-1888
                                   Telephone: 202.887.1500
                                   Facsimile: 202.887.0763

                                   *Attorney of Record for Plaintiff*
                                   *Amazon Web Services, Inc.*

*Of Counsel:*

J. Alex Ward                        Andrew S. Tulumello
Daniel E. Chudd                     Daniel P. Chung
Sandeep N. Nandivada                GIBSON, DUNN & CRUTCHER LLP
Caitlin A. Crujido                  1050 Connecticut Avenue, N.W.
Alissandra D. Young                 Washington, DC 20036-5306
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW          Theodore J. Boutrous Jr.
Washington, DC 20006-1888           Richard J. Doren
                                    Eric D. Vandevelde
                                    GIBSON, DUNN & CRUTCHER LLP
                                    333 South Grand Avenue
                                    Los Angeles, CA  90071-3197