## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| AMAZON WEB SERVICES, INC., | |
| Plaintiff, | |
| v. | Case No. 19-cv-01796 |
| UNITED STATES OF AMERICA, by and through the U.S. Department of Defense, | Judge Campbell-Smith |
| Defendant, | |
| and | |
| MICROSOFT CORPORATION, | |
| Defendant-Intervenor. | |

### PLAINTIFF'S OPPOSITION TO
### DEFENDANT'S MOTION FOR VOLUNTARY REMAND

Amazon Web Services, Inc. ("AWS") submits this Opposition to the Motion for Voluntary Remand ("Motion") filed by Defendant, the United States. Defendant's Motion asks the Court to remand this case to the Department of Defense ("DoD") for 120 days to reconsider certain aspects of its Joint Enterprise Defense Infrastructure ("JEDI") award decision. Def. Mot. Vol. Remand, ECF No. 177 ("Mot."). Defendant explains DoD intends to take corrective action in response to the Court's February 13, 2020 decision granting AWS's Motion for Preliminary Injunction that held, among other things, DoD likely erred in evaluating Microsoft's deficient proposal under Price Scenario 6. *Id.* at 2.

The corrective action DoD proposes fails the tests of rationality and fairness, violates the broad discretion afforded an agency for addressing a procurement impropriety, and suggests that DoD seeks to take whatever corrective action is necessary to reaffirm its prior award to Microsoft despite the material defects the Court identified and DoD has now acknowledged. This Court's decision granting AWS's Motion for Preliminary Injunction makes clear that Microsoft is likely ineligible for the JEDI award. Contrary to the letter and spirit of that decision, DoD's proposed corrective action – *i.e.*, amending the RFP's Price Scenario 6 requirements, permitting only limited proposal revisions in response to the amended requirements, and re-evaluating the revised proposals – would enable Microsoft to resurrect its eligibility while depriving AWS of a reasonable opportunity to revise its proposal in response to changed requirements. Moreover, despite a passing nod in the right direction, DoD does not meaningfully commit to reconsider the other evaluation errors identified in the protest that produced the flawed award to Microsoft.

The Government should not be permitted to gerrymander the corrective action to preserve the illusion that Microsoft offered the lowest price while simultaneously perpetuating competitive impediments for AWS, the only offeror that submitted a compliant proposal eligible for award. Accordingly, AWS requests the Court deny Defendant's Motion and require DoD to revise its corrective action to reasonably and fairly reconsider the JEDI award decision by (1) removing the constraint on the offerors' ability to revise their pricing, and (2) re-evaluating proposals with respect to all of the errors identified by the protest.

## DISCUSSION

Defendant's Motion states that DoD intends to (1) issue an RFP amendment, (2) solicit "limited proposal revisions addressing the offerors' technical approach" to Price Scenario 6, and (3) reconsider DoD's evaluation of Price Scenario 6 under Factor 5 and Factor 9. *Id.* at 2.

Defendant acknowledges that DoD's specific intent is to "constrain" proposal revisions on remand "by [maintaining] the storage solutions and unit prices contained in offerors' final proposal revisions (*i.e.* offerors would not be permitted to add storage solutions not contained in their final proposal revisions, but may be permitted to adjust which previously-proposed solutions would be utilized to address Price Scenario 6)." *Id.* DoD's proposed corrective action appears specifically designed to preserve the status quo by allowing Microsoft to remedy the error this Court identified as defective, and would not ensure a rational and fair reconsideration of proposals for the JEDI award.

Corrective action regarding a government contract award "requires a rational basis for its implementation." *Dell Federal Sys., v. United States*, 906 F.3d 982, 991-92 (2018). The rational basis test considers "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id*. at 992 (quoting *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). In evaluating proposed corrective action, a court must be satisfied that the corrective action is "reasonable under the circumstances," *DGS Contract Serv., Inc. v. United States*, 43 Fed. Cl. 227, 238 (1999), and "appropriate to remedy the impropriety," *Mantech Telcoms. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 65 (2001). "In order to make these assessments, the court, per force, must review the improprieties – whether alleged or actual – that gave rise to the proposed corrective action under review." *Mantech*, 49 Fed. Cl. at 65. Corrective action is not reasonable if it does not meaningfully address the flaws identified in the evaluation, or if it is designed merely to conform the solicitation to the awardee's proposal. *See Centerra Group, LLC v. United States*, 138 Fed. Cl. 407, 416-17 (2018); *Professional Service Industries, Inc. v. United States*, 129 Fed. Cl. 190, 206 (2016). As explained below, DoD's proposed corrective action fails the rationality test for at least two reasons.

First, DoD's corrective action, and particularly its limitation on price revisions in response to amendment of Price Scenario 6, is irrational because it ignores the impact of the RFP's Price Scenario requirements on an offeror's proposed unit prices and discounts.  Mot. at 2.  DoD has provided no details on the proposed amendment to address Factor 5 (Price Scenario 6) other than to say that DoD intends to prohibit offerors from revising the unit prices for services identified in their final proposals.  *Id.*  AWS understands that DoD also plans to prohibit offerors from revising their proposed discounts for the various services.  Those restrictions are unreasonable both within Price Scenario 6 and – because they have effects throughout – across all of the Price Scenarios.

On remand, offerors would be able to change only the services they proposed for Price Scenario 6, and would not be allowed to adjust the unit prices and discounts for those services regardless of any increase or decrease in the volume of the service provided.  For example, if the RFP amendment were to permit nearline storage for Price Scenario 6, AWS likely would propose an exclusively nearline storage solution, but would be unable to adjust its unit or discount pricing to account for the changes in DoD's projected needs regarding nearline and online storage.[1]  AR Tab 342 at 151478 ("[The] scenarios included in Section L are based on the Government's projected needs…").

This limitation is unreasonable because it would hold static the offerors' unit and discount pricing for Price Scenario 6 while amending the requirements upon which that pricing depends.  It also would directly and unreasonably benefit Microsoft, allowing it to retain the discounts specifically designed for its currently deficient approach, while preventing AWS from offering

---

[1] On the other hand, if the RFP amendment were merely to confirm the already unambiguous and clear requirement for online storage in Price Scenario 6, the amendment would have no purpose other than to allow Microsoft to cure its deficient storage solution, while preventing AWS from improving its competitive standing.

pricing and discounts based upon the changes to the Government's projected needs.   Such a revision would violate the fundamental FAR requirement to treat offerors fairly and equally.  *See Centerra Group*, 138 Fed. Cl. at 416-17 (agency's corrective action, which only permitted original awardee the opportunity to "revise and improve the competitiveness of its proposal," was "patently unfair" and "violated the fundamental fairness requirements of the FAR").   Similar to *Centerra Group*, DoD's proposed corrective action would be "a mockery of fundamental fairness and competitive principles" because it would permit only Microsoft to improve the competitiveness of its proposal.  *Id.*

In addition, if DoD changes the requirements of even one Price Scenario, those changes would necessarily upset the foundation of an offeror's unified pricing strategy.   Indeed, DoD's proposed limitation runs directly counter to the RFP's requirement that an offeror propose uniform unit prices and discounts across <u>all</u> of the Price Scenarios.   AR Tab 342 at 151498 ("Offerors are prohibited from proposing unique discount, premium, and fee methodologies that are only applicable to a particular price scenario.");  *see also id.* at 151500 ("All proposed pricing and methodologies for a price scenario shall be consistent with the proposed pricing for the ID/IQ, including discount, premium, and fee methodologies.   Any inconsistencies between the proposed pricing for a price scenario that deviates from the proposed pricing for the ID/IQ may render the proposal unacceptable.").   By prohibiting scenario-specific unit prices and discounts, the RFP required offerors to analyze the requirements of <u>all</u> of the Price Scenarios and then, based on that holistic analysis, determine a single pricing strategy for each service that could be applied across the board.   That is precisely what AWS did in determining the pricing and discounts in its JEDI proposal.   *See* AR Tab 375 at 154072, AWS Proposal, Vol. VI, A.1 (Customized Discount Strategy:  "Our pricing discounts are based upon a comprehensive understanding of the current

and future state of DoD requirements, best in class technical solutions that optimize requirements, and a discount strategy that focuses on delivering value to DoD.").  It is irrational for DoD to revise the requirements for Price Scenario 6 without allowing offerors to adjust their unit prices and discounts for the various services across <u>all</u> of the Price Scenarios.

More fundamentally, allowing offerors to revise their unit and discount pricing in response to the RFP amendment would benefit DoD and the American taxpayer by providing less expensive cloud services under the JEDI Contract.  On the other hand, DoD's proposed pricing constraint would irrationally benefit only Microsoft by preserving its position as the allegedly lowest-priced offeror – after this Court specifically exposed that position as false in its preliminary injunction decision based on Microsoft's noncompliant solution to Price Scenario 6.  The Court should not allow DoD to unfairly constrain the recompetition in this way.  *See Professional Service Industries*, 129 Fed. Cl. at 206 (agency's decision to amend solicitation to conform to awardee's proposal was arbitrary and capricious, and agency failed to engage in reasoned decision-making).  It would be more reasonable and more fair, for example, for DoD simply to omit Price Scenario 6 from the re-evaluation altogether, rather than to proceed in the irrational manner proposed.

<u>Second</u>, while DoD's proposed corrective action would provide Microsoft an opportunity to remedy the fatal proposal deficiency the Court already confirmed, DoD provides no meaningful commitment to evaluate the other serious errors identified by AWS's protest.  DoD instead simply waves its hand, suggesting anemically that "DoD wishes to reconsider its award decision in response to the other technical challenges presented by AWS." Mot. at 2.  But as recently as March 23, 2020, DoD admitted that it intends to limit its correction action to "ensur[ing] that the Court of Federal Claims' noted concerns are addressed."  *Pentagon Will Not Split JEDI Award EXCLUSIVE*, Breaking Defense (Mar. 23, 2020), https://breakingdefense.com/2020/03/pentagon-

will-not-split-jedi-award-exclusive/?utm_campaign=Breaking%20News&utm_source=hs_email

&utm_medium=email&utm_content=85122332&_hsenc=p2ANqtz-_wXvmv_ADBap-NblFhnG

57LGZ2NtZvE8s3a8MxBfJWX2Mx_J-Y7UQG_a8Uz_Aj12WdK3qZHJq0WITsK8wsNuJ3Aiv

SHg&_hsmi=85122332 (last accessed Mar. 23, 2020).  DoD's statement reveals that DoD's intent

is to reconsider only the single issue that this Court has had the opportunity to review and hardly

suggests a fair reconsideration of all of protest grounds raised by AWS.

Even if taken at face value, DoD's proposed corrective action fails to address in any

meaningful way how it would resolve the technical issues AWS has raised, or which specific

technical challenges it intends to address.  Such proposed corrective action, without an explanation

that gives AWS and the Court comfort that it will be implemented fairly and objectively, should

not be accepted by the Court.  *See Tikigaq Constr., LLC v. United States*, 2016 WL 6080803, *7

(Fed. Cl. Oct. 6, 2016) (notice of corrective action did not explain how the agency would address

key protest allegations, so it was unclear how the proposed corrective action would resolve those

procurement improprieties).  In light of the numerous and compounding errors already identified

by AWS, and the Court's recognition that AWS was likely to succeed on the merits of the only

argument considered to date, the Court should require the Government to identify corrective action

that would reasonably and impartially address all errors – mistakes that implicate virtually every

factor of the proposal evaluation:

- Factor 2:  Logical Isolation and Secure Data Transfer;

- Factor 3:  Tactical Edge;

- Factor 4:  Information Security and Access Controls;

- Factor 5:  Application and Data Hosting and Portability;

- Factor 6:  Management and Task Order 001; and

- Factor 8:  Demonstration.

AWS of course recognizes a general presumption of good faith afforded to Government officials in exercising corrective action.  *See Square One Armoring Serv., Inc. v. United States,* 123 Fed. Cl. 309, 329 (2015).  DoD's corrective action, as proposed in the Motion, however, has not been formulated evenhandedly.  As the Court held in *Centerra Group*, "there is no fairness or equity in punishing a protestor by allowing its competitor to redress every flaw in its proposal, as pointed out by the protestor, so that the agency's award decision may withstand review.  This is not corrective action, but a mockery of fundamental fairness and competitive principles."  138 Fed. Cl. at 416.

Indeed, DoD's public statements during the protest litigation, which reaffirmed the Government's commitment to ensuring that Microsoft gets the JEDI contract, cast further serious doubt about the rationality and fairness of the corrective action proposed.  *See, e.g.*, DoD Statement on Preliminary Injunction, Feb. 13, 2020, *available at* https://www.cnbc.com/2020/02/13/amazon-gets-restraining-order-to-block-microsoft-work-on-pentagon-jedi.html (". . . we are confident in our award of the JEDI cloud contract to Microsoft and remain focused on getting this critical capability into the hands of our warfighters as quickly and efficiently as possible"); Dana Deasy: Pentagon, Microsoft to Move Forward With JEDI Cloud Rollout Plan, Dec. 11, 2019, *available at* https://www.govconwire.com/2019/12/dana-deasy-pentagon-microsoft-to-move-forward-with-jedi-cloud-rollout-plan/ ("'I've told the team, "Let's just not sit and wait.  Let's start to get the environment ready so when we come out of the protest, we haven't lost any momentum,"' Deasy said.").  As presently proposed, the corrective action would render DoD's expressed commitment to Microsoft a *fait accompli.  Cf. Centerra Group*, 138 Fed. Cl. at 416-17; *Professional Service Industries,* 129 Fed. Cl. at 190.

Microsoft's most recent public statements applauding the unreasonably narrow focus of the corrective action further bolster real and well-grounded suspicion that DoD plans to ensure the eventual award of the contract to Microsoft.  *See* Pentagon Asks to Reconsider Part of JEDI Cloud Decision After Amazon Protest, Mar. 12, 2020, *available at* https://www.washingtonpost.com/ business/2020/03/12/pentagon-asks-reconsider-part-jedi-cloud-decision-after-amazon-protest/ (". . . we support [DoD's] decision to reconsider a small number of factors as it is likely the fastest way to resolve all issues and quickly provide the needed modern technology to people across our armed forces.").  As the Court has recognized, "this procurement is complex and conducting it correctly is necessarily time-consuming."  ECF No. 173 at 14.  Although the Government and Microsoft might view the proposed corrective action as "the fastest way to resolve all issues," it is important, as the Court has underscored, that the corrective action "ensure the procurement [is] properly conducted," ECF No. 173 at 14.

In plain terms, DoD's proposed corrective action focuses on allowing Microsoft to fix its fatally deficient proposal, while paralyzing AWS's proposed pricing in the face of planned changes to the RFP's requirements.  And it does not promise to address the other procurement flaws in any meaningful way.  DoD's failure to propose a fair and rational corrective action is consistent with its past efforts to improperly steer (and now preserve) the award to Microsoft, from the numerous unexplainable flaws in its original source selection to its refusal to provide substantive answers to any of AWS's debriefing questions following the award.[2]  The Court should consider the proposed corrective action in light of this context.

---

[2] DoD's efforts to achieve this end are made even more apparent by its refusal to even consent to AWS's request to release its bond obligation in conjunction with the preliminary injunction, despite DoD's implicit acknowledgement that it had erred in its evaluation.

## **CONCLUSION**

For the foregoing reasons, DoD's proposed corrective action, as detailed in Defendant's Motion for Voluntary Remand, is not rational because it is neither "reasonable under the circumstances," *DGS*, 43 Fed. Cl. at 238, nor "appropriate to remedy the impropriety," *Mantech*, 49 Fed. Cl. at 65.  AWS requests the Court deny Defendant's Motion, and require DoD to revise its corrective action to reasonably and fairly reconsider the JEDI award decision by (1) permitting offerors to revise their unit prices and discounts across all Price Scenarios; and (2) re-evaluating proposals with respect to all the errors identified by the protest.

Dated:  March 24, 2020

Respectfully submitted,

By:  Kevin P. Mullen
     Morrison & Foerster LLP
     2000 Pennsylvania Ave., NW
     Washington, DC  20006-1888
     Telephone: 202.887.1500
     Facsimile: 202.887.0763

     *Attorney of Record for Plaintiff*
     *Amazon Web Services, Inc.*

*Of Counsel:*

J. Alex Ward
Daniel E. Chudd
Sandeep N. Nandivada
Caitlin A. Crujido
Alissandra D. Young
Morrison & Foerster LLP
2000 Pennsylvania Ave., NW
Washington, DC  20006-1888

Andrew S. Tulumello
Daniel P. Chung
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

Theodore J. Boutrous, Jr.
Richard J. Doren
Eric D. Vandevelde
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197