No. 19-1796C
(Judge Patricia E. Campbell-Smith)

**REDACTED VERSION**

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

AMAZON WEB SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Intervenor-Defendant.

## DEFENDANT'S RENEWED MOTION TO DISMISS,
## IN PART, PLAINTIFF'S AMENDED COMPLAINT

JEFFREY BOSSERT CLARK
Assistant Attorney General

OF COUNSEL:

ROBERT E. KIRSCHMAN, JR.
Director

MICHAEL G. ANDERSON
BENJAMIN M. DILIBERTO
Assistant General Counsel
Washington Headquarters Service &
Pentagon Force Protection Agency
Office of General Counsel
Department of Defense

PATRICIA M. McCARTHY
Assistant Director

ANTHONY F. SCHIAVETTI
Senior Trial Counsel
RETA BEZAK
Trial Attorney
Commercial Litigation Branch

TYLER J. MULLEN
CCPO Legal Advisor
Assistant General Counsel
Defense Information Systems Agency
Office of the General Counsel

Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044

November 6, 2020

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

DEFENDANT'S RENEWED MOTION TO DISMISS, IN PART, PLAINTIFF'S
AMENDED COMPLAINT ........................................................................................... 1

QUESTION PRESENTED .......................................................................................... 3

STATEMENT OF THE CASE ..................................................................................... 3

    I.     Nature Of The Case ...................................................................................... 3

    II.    Procedural Background And Statement Of Allegations In The
          Amended Complaint ..................................................................................... 4

ARGUMENT ................................................................................................................ 9

    I.     The *Blue & Gold Fleet* Waiver Rule ..................................................... 9

    II.    AWS Has Waived Count Four Of Its Amended Complaint ................................. 17

          A.    AWS Waived The Allegations Of Count Four By Failing
                To Bring Them Prior To The Original October 2019 Award .................... 18

                1.    AWS Was Aware Of The Basis Of Its Allegations
                        Prior To Award ........................................................................... 18

                2.    Count Four Challenges The Procurement Process,
                        Not Evaluations ........................................................................ 20

                3.    AWS Could Have Brought Its Bias Allegations Prior
                        To Award .................................................................................... 20

                4.    AWS's Own Allegations Demonstrate That Any Defect
                        Was Patent .................................................................................. 22

                  5.    No Flood Of Litigation Would Result From A Finding
                        Of Waiver .................................................................................... 23

B.      Even If The Remand Provided AWS Another Opportunity To
        Raise The Allegations Of Count Four, It Again Failed To Do
        So Prior To The Award Decision ............................................................. 23

CONCLUSION................................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*Anham FZCO v. United States*,
  144 Fed. Cl. 697 (2019) ......................................................................... 25

*Argencord Mach. & Equip., Inc. v. United States*,
  68 Fed. Cl. 167 (2005) ........................................................................... 10

*ATSC Aviation, LLC v. United States*,
  141 Fed. Cl. 670 (2019) ......................................................................... 14

*Adams and Associates, Inc.*,
  B-417120; B-417125, 2019 CPD ¶ 21 (Comp. Gen. Jan. 16, 2019) ........................... 15, 16, 17

*Blue & Gold Fleet, L.P. v. United States*,
  492 F.3d 1308 (Fed. Cir. 2007)............................................................. *passim*

*CBY Design Builders v. United States*,
  105 Fed. Cl. 303 (2012) ......................................................................... 21

*COMINT Sys. Corp. v. United States*,
  700 F.3d 1377 (Fed. Cir. 2012)........................................................... *passim*

*Concourse Group, LLC v. United States*,
  131 Fed. Cl. 26 (2017) ........................................................................... 15

*Communication Construction Services v. United States*,
  116 Fed. Cl. 233 (2014) ......................................................................... 15

*CRAssociates, Inc. v. United States*,
  102 Fed. Cl. 698 (2011) ......................................................................... 15

*DGR Associates v. United States*,
  94 Fed. Cl. 189 (2010) ........................................................................... 24

*Distributed Solutions, Inc. v. United States*,
  539 F.3d 1340 (Fed. Cir. 2008).............................................................. 21

*Harmonia Holdings Grp., LLC v. United States*,
  147 Fed. Cl. 749 (2020) ......................................................................... 24

*iAccess Techs., Inc. v. United States,*
    143 Fed. Cl. 521 (2019) ............................................................................. 15

*Info. Tech. & Application Corp. v. United States,*
    316 F.3d 1312 (Fed. Cir. 2003) .................................................................. 27

*Inserso Corp. v. United States,*
    961 F.3d 1343 (Fed. Cir. 2020) ................................................... 11, 12, 14

*Itility, LLC v. United States,*
    124 Fed. Cl. 452 (2015) ............................................................................. 21

*Jacobs Tech., Inc. v. United States,*
    100 Fed. Cl. 179 (2011) ............................................................................. 14

*Jacobs Technology Inc. v. United States,*
    131 Fed. Cl. 430 (2017) ....................................................................... 13, 24

*Per Aarsleff A/S v. United States,*
    829 F.3d 1303 (Fed. Cir. 2016) ................................................................... 9

*Peraton Inc. v. United States,*
    146 Fed. Cl. 94 (2019) ....................................................................... 12, 13, 24

*Synergy Solutions, Inc. v. United States,*
    133 Fed. Cl. 716 (2017) ............................................................................. 14

## STATUTES

28 U.S.C. § 1491(b)(1) ..................................................................................... 21

28 U.S.C. § 1491(b)(3) ..................................................................................... 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | ████████████ |
| | ) | |
| v. | ) | No. 19-1796C |
| | ) | (Judge Patricia E. Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | ████████████ |
| and | | |
| MICROSOFT CORPORATION, | ) | |
| Intervenor-defendant. | ) | |

## DEFENDANT'S RENEWED MOTION TO DISMISS,
## IN PART, PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that this Court dismiss Count Four of the amended complaint filed by plaintiff, Amazon Web Services, Inc. (AWS), because AWS has waived the allegations contained therein.

The central theme of AWS's amended complaint is its allegation that President Trump made public statements that tainted the Department of Defense's (DoD) award of the Joint Enterprise Defense Infrastructure (JEDI) procurement.  AWS contends that negative statements that the President expressed publicly in tweets about Amazon, AWS's parent company, and Jeff Bezos, Amazon's chief executive, caused DoD evaluators, despite the absence of any alleged contact directly between such evaluators and the President, to be biased against AWS in the competition.  AWS, however, was aware of all of the pleaded facts underlying these allegations (along with the assumptions it draws from those facts) by early August, 2019, well

before the contract was originally awarded to intervenor-defendant, Microsoft Corporation (Microsoft), and even before final proposals were due.  In *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), the Court of Appeals for the Federal Circuit established a waiver rule that prevents a party that has an opportunity to object to the terms of competition on which a procurement is conducted to instead wait and see if it is selected for award and, only if it is not selected, then pursue costly, after-the-fact litigation, perhaps armed with additional information about its successful competitor.  That is precisely the prohibited strategic gambit that AWS is attempting with regard to its allegations of bias.  As a consequence, these allegations are waived and should be dismissed.

Although the United States sought and was granted a voluntary remand to reconsider technical aspects of the procurement unrelated to AWS's bias allegations, neither this remand nor the corrective actions taken by DoD pursuant thereto cured AWS's waiver of its bias allegations.  In any event, AWS again waived any opportunity to raise such allegations by again electing not to raise them before DoD reaffirmed its award decision.  Rather than oppose the remand and the corrective actions DoD elected to take on the basis that DoD officials were biased against it or motivated by bad faith, improper influence, or conflicts of interest, AWS failed to pursue any of these allegations prior to or during the remand in this Court, before the agency, or in any other forum.  Instead, after unsuccessfully opposing the remand on other grounds, AWS participated fully in remand proceedings and corrective actions taken by DoD, submitting multiple rounds of proposal revisions.  The law did not permit AWS yet again to "roll the dice," wait and see if it was selected for award and, only if it was not selected, spring forward to assert that DOD's reevaluation was tainted by bias.  Future briefing will explain why DoD's

2

expert evaluators were well within the considerable discretion the law affords them in concluding that Microsoft proposed a superior technical solution that provided greater value to DoD.  But the Court should first dismiss AWS's waived bias allegations because AWS was aware of all the facts on which it bases these allegations well prior to both the original award and prior to DoD reaffirming the award on remand, yet in both circumstances declined to raise these allegations until after it learned that its proposal had been rejected.

## QUESTION PRESENTED

Whether the allegations contained in Count Four of AWS's amended complaint are barred by the waiver rule established by the Federal Circuit in *Blue & Gold Fleet*, when AWS was aware of the basis of its bias, bad faith, improper influence, and conflict of interest allegations well before DoD's October 2019 decision to award the JEDI contract to Microsoft, and even before the close of the bidding process; had ample opportunity to bring its objections at that time; and yet failed to do so.  In the alternative, whether AWS waived a second opportunity to raise its bias allegations, including any information it discovered subsequent to October 2019, by not raising those allegations prior to or during the remand to DoD, and before DoD reaffirmed its decision to award the JEDI contract to Microsoft.

## STATEMENT OF THE CASE

I.    Nature Of The Case

AWS protests DoD's decision to award its JEDI contract to Microsoft.  JEDI is a contract for cloud computing resources, including commercial infrastructure as a service (IaaS) and platform as a service (PaaS) offerings to support DoD operations.  AR Tab 459 at 176,410.  The

JEDI contract is a firm fixed price, indefinite delivery, indefinite quantity (IDIQ) contract, with a

base period of performance of two years, with options permitting up to 10 years of performance.

*Id.* The minimum guarantee under the contract is $1 million; the maximum contract value is $10

billion. *Id.*; AR Tab 485 at 178,612. A full recounting of the factual background of the

procurement is beyond the scope of this motion, but additional detail has been presented in

previous briefing, *see, e.g.*, ECF No. 139, and will be further described in future briefing. A

recounting of the factual background relevant to this motion follows below.

II.     Procedural Background And Statement Of Allegations In The Amended Complaint

        In its amended complaint, AWS advances a variety of allegations in support of its post-

award protest. As is typical in a post-award protest, in Counts One, Two, and Three, AWS

alleges errors in DoD's evaluation of its and Microsoft's proposals, as well as in DoD's best

value award decision. Although we strongly disagree with these allegations, these disagreements

will be the subject of future briefing, as these allegations, though incorrect, appear not to have

been waived by AWS.

        In Count Four, however, AWS goes on to allege that bias and bad faith, exhibited over

the course of several years by the President of the United States, improperly influenced DoD's

evaluation process and created conflicts of interest. Amended Compl. ¶¶ 401-12. The factual

basis for these allegations was well known to AWS and, as AWS itself repeatedly alleges, to the

public at large, well before DoD made its original October 2019 decision to award the JEDI

contract to Microsoft, and even before the proposal process was complete. Amended Compl.

¶¶ 14, 80-88. According to AWS, President Trump's alleged bias against AWS, Amazon, and

Mr. Bezos date to even before the President was elected, Amended Compl. ¶¶ 14, 80, and continued over the next several years, leading up to the months preceding DoD's original decision to award the JEDI contract to Microsoft in October 2019. Amended Compl. ¶¶ 14, 80-88, 95. But these allegations are largely based on public comments made by President Trump on July 18, 2019, and by Secretary of Defense Mark Esper on August 1, 2019. Amended Compl. ¶¶ 14, 84-85. Final proposal revisions (FPRs) were not due from offerors until September 5, 2019, and the Source Selection Authority (SSA) did not decide to award the JEDI contract to Microsoft until October 17, 2019. AR Tab 339 at 151,401; AR Tab 340 at 151,405; AR Tab 459 at 176,417. AWS filed its original complaint on November 22, 2019, nearly three months after submitting its final proposal revisions, and nearly a month after the award decision was publicly announced. Compl., ECF No. 1.

On January 24, 2020, both the United States and Microsoft filed partial motions to dismiss four counts of AWS's original complaint, three of which related to AWS's bias, bad faith, improper influence, and conflict of interest allegations. *See* ECF No. 132 (Government Motion); ECF No. 133 (Microsoft Motion). The United States and Microsoft also moved to dismiss another count, Count Three, which challenged express terms of the solicitation, including terms of Amendment 0005 to the solicitation. *Id.* The allegations raised in Count Three of the original complaint are absent from AWS's amended complaint. AWS responded in opposition to the partial motions to dismiss on February 21, 2020 (ECF No. 168), and the United States (ECF No. 174) and Microsoft (ECF No. 175) replied in support of their motions on March 6, 2020.

Before the Court resolved these motions, the United States moved for a voluntary remand to DoD, to allow the agency to reconsider certain technical aspects of its evaluations.  *See* ECF No. 177.  The United States expressly stated that "DoD, on remand, will be reconsidering the technical evaluations that AWS has challenged and will be reconsidering its award decision." ECF No. 177 at 3.  The United States stated specifically that it would issue a solicitation amendment and permit limited proposal revisions to address a technical issue regarding which the Court expressed concern in issuing a preliminary injunction temporarily halting work on the JEDI contract.  *Id.* at 2.  The United States also stated that it would "reconsider its award decision in response to the other *technical* challenges presented by AWS."  *Id.* (emphasis added). The United States expressed no intention by DoD to take any action on remand to address AWS's allegations regarding bias, bad faith, improper influence, or conflict of interest, which the United States had by then and has consistently since strenuously opposed as baseless.  ECF No. 177; *see also, e.g.*, ECF Nos. 139, 140, 143.

AWS opposed the United States' motion for voluntary remand.  ECF No. 181.  In doing so, however, AWS did not allege that remand proceedings would be tainted by bias, bad faith, improper influence, or conflict of interest stemming from President Trump's alleged animosity toward Amazon and Jeff Bezos.  *Id.*  Instead, AWS argued that DoD should be required to permit it to alter its unit pricing and discounts across the entirety of its proposal, and that DoD should be required to commit to address each of the *technical* issues that AWS raised in its protest.  *Id.*  In further briefing on the issue, the United States reiterated that "DoD intends, on remand, to reconsider its award decision in response to all of the *technical* challenges presented by AWS,

without limitation," ECF No. 185 at 10 (emphasis added), continuing to distinguish between AWS's allegations of technical evaluation error and its baseless bias and bad faith allegations.  In the briefing that followed, the United States never represented that it would be redressing these baseless bias and bad faith allegations as part of its remand proceedings.  *See* ECF Nos. 187, 199.  And AWS was explicit in its understanding of actions DoD intended to take on remand, detailing them in a list that makes no mention of any action to address its claims of bias.  ECF No. 197 at 2.  Crucially, AWS never objected to the remand on this basis – it never alleged that bias so tainted the procurement that it should not be remanded at all, never requested that any remand require DoD to replace source selection officials it alleged were biased, and never suggested that DoD should be required to address its bias allegations in any other way.  *See* ECF Nos. 181, 186, 188, 197.

On April 17, 2020, the Court granted the United States' request and remanded the case to DoD, listing the actions DoD had represented that it intended to take on remand and making no mention of any action to address AWS's bias allegations.  ECF No. 203.  The Court noted that "[p]laintiff will have an opportunity to raise [allegations concerning corrective action] should it elect to make a timely challenge to any corrective action defendant takes."  *Id*. at 4.

During the remand, DoD issued five amendments to the JEDI solicitation; conducted discussions with both offerors; and reevaluated proposals.  *See* Amended Compl. ¶¶ 103-06.  AWS and Microsoft submitted three rounds of proposal revisions to DoD for evaluation.  *Id*.  At no time during this process did AWS object, either informally or by filing a formal protest with the agency, the Government Accountability Office, or this Court, or in any other forum, to the reevaluation of proposals in the absence of action to address what AWS has alleged is a

procurement irretrievably tainted by bias, bad faith, improper interference, and conflicts of interest.  AWS was plainly aware of the means available to assert its rights, as it filed an agency-level protest alleging ambiguity in the terms of solicitation amendments issued by DoD.  AR Tab 617 at 181,719-24.  DoD determined that a clarification was appropriate, and issued a further solicitation amendment, granting AWS its requested relief.  AR Tab 644 at 193,401.  That protest did not mention AWS's bias allegations.  AR Tab 617.

The remand concluded after DoD completed its re-evaluations and reaffirmed its decision to award the JEDI contract to Microsoft.  Amended Compl. ¶ 107.  The Court denied as moot the United States' and Microsoft's motions to dismiss AWS's original complaint, ECF No. 223, and set a schedule for the filing of AWS's amended complaint and renewed motions to dismiss by the United States and Microsoft, ECF No. 232.

On October 23, 2020, AWS filed its amended complaint.  ECF No. 236.  The amended complaint, like the original complaint, again alleges that the JEDI award was "the product of bias, bad faith, improper influence, and/or conflicts of interest."  Amended Compl. ¶ 404.  As we detail above, AWS "supports" this charge chiefly by alleging the same facts that were known to AWS, and to the public at large, well before the original 2019 decision to award the JEDI contract to Microsoft.  Amended Compl. ¶¶ 14, 80-88.  AWS's amended complaint supplements these factual allegations in two ways.   First, AWS references an investigation completed by the Department of Defense Office of Inspector General (DoD IG), which was detailed in a report released to the public on April 15, 2020 – *before* the remand of this case to DoD was ordered by the Court.  *See* Amended Compl. at 35 n.5.  Despite the report's plain conclusions undercutting AWS's allegations, AWS cherry picks a few statements to paint an entirely misleading picture of

8

the report.  Amended Compl. ¶¶ 352-56.  But after the report's public release on April 15, 2020,

AWS took no action to renew its allegations of bias or to oppose any remand proceedings or

reevaluations on the basis of alleged bias.

Second, AWS lards its complaint with a recounting of a panoply of news stories critical

of the Trump administration, each of which has no relation whatsoever to the JEDI procurement

and no relevance to this litigation.  Amended Compl. ¶¶ 357-72.  With regard to these irrelevant

and unsubstantiated accusations, we note only that AWS, upon learning of each listed allegation,

took no action to renew its allegations of bias or to oppose any remand proceedings or

reevaluations on the basis of alleged bias, prior to filing its amended complaint after learning that

it was again not selected for award of the JEDI contract.

## **ARGUMENT**

I.    The *Blue & Gold Fleet* Waiver Rule

In the seminal *Blue & Gold Fleet* case, the Federal Circuit expressly recognized a waiver

rule in bid protest actions in the Court of Federal Claims, holding that "a party who has the

opportunity to object to the terms of a government solicitation containing a patent error and fails

to do so prior to the close of the bidding process waives its ability to raise the same objection

subsequently in a bid protest action in the Court of Federal Claims."  492 F.3d at 1313.  When

waiver is found, "[d]ismissal is mandatory, not discretionary."  *Per Aarsleff A/S v. United States*,

829 F.3d 1303, 1317 (Fed. Cir. 2016) (Reyna, J., concurring).

In announcing the waiver rule, the Federal Circuit relied on the requirement in this

Court's jurisdictional statute that the Court "shall give due regard to the interests of national

defense and national security and *the need for expeditious resolution of the action*." *Blue & Gold Fleet* at 1313 (quoting 28 U.S.C. § 1491(b)(3)) (emphasis added by the Federal Circuit). Additionally, the Court of Appeals relied on the rationale underlying the doctrine of patent ambiguity, as applied in the bid protest context. The Court reasoned that a waiver rule was needed to prevent a contractor from "taking advantage of the government and other bidders" by strategically waiting to raise solicitation defects until after award, when, if it did not prevail, it would be able to restart the process, armed with increased knowledge of its competitors. *Id*. at 1314. In other words, "[v]endors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award and then, if unsuccessful, claim the solicitation was infirm." *Id*. (quoting *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 175 n.14 (2005)). Moreover, a waiver rule prevents the Government from having to expend time and resources to conduct a potentially needless procurement decision and then to engage in "costly after-the-fact litigation" that could have been avoided by the contractor timely raising any complaints about the competition during the bidding process. *Id*.

The Federal Circuit also found support for the waiver rule in the regulation that governs bid protests before the Government Accountability Office (GAO). *Id*. As the Court explained, a GAO regulation "requires that '[p]rotests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals.'" *Id*. (quoting 4 C.F.R. § 21.1(a)). In light of these strong legal underpinings and fundamental fairness concerns, the Court of Appeals recognized the waiver rule that has since drawn its name from the *Blue & Gold Fleet* case.

10

Although the waiver rule as stated in *Blue & Gold Fleet* required that a challenge be brought before the close of the bidding process, the Federal Circuit later made clear that the rule extends beyond that date, and encompasses "all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so." *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012). In *COMINT*, the Court held that the plaintiff had waived its challenge to a solicitation amendment that, although issued after the close of the bidding process, was issued two and a half months before contract award, providing "more than an adequate opportunity to object." *Id.* at 1383. The Court held that the plaintiff, having chosen to wait and see whether it would be awarded the contract rather than promptly raise its objections, could not then "'come forward with [its objections] to restart the bidding process,' and get a second bite at the apple." *Id.* (quoting *Blue & Gold Fleet*, 492 F.3d at 1314). The Court found "[t]he same policy underlying *Blue & Gold* supports its extension to all pre-award situations." *Id.* at 1382.

Although the waived arguments in both *Blue & Gold Fleet* and *COMINT* involved challenges to solicitation terms, the Federal Circuit has made clear, citing favorably several decisions of this Court, that when an interested party is aware of a basis to challenge the terms of a competition – even if that basis is not, strictly speaking, the terms of the solicitation – and has the opportunity to raise the challenge before award or the close of bidding, it must do so or waive its challenge. *See Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir. 2020). In *Inserso*, the Court held that, based on public knowledge about the structure of the challenged solicitation and a parallel solicitation, the protester knew or should have known of the basis for its organizational conflict of interest (OCI) and fair and equal treatment claims well prior to

award, and that it forfeited those claims by not raising them until after the award was made.  *Id.*
at 1350-52.  The Court again emphasized its previous holding that its reasoning in *Blue & Gold
Fleet* "applies to all situations in which the protesting party had the opportunity to challenge a
solicitation before the award and failed to do so."  *Id.* (citing *COMINT Systems Corp. v. United
States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012)).  Specifically, the Court held that "[t]he Court of
Federal Claims has correctly applied [the *Blue & Gold Fleet*] rule in organizational-conflict-of-
interest cases, including cases dealing with the disclosure of pricing information during
debriefing."  *Id.* at 1349 (citation omitted).

The Court held that "[e]nforcing our forfeiture rule implements Congress's directive that
courts 'shall give due regard to ... the need for expeditious resolution' of protest claims."  *Id.* at
1352.  The Court stressed that, had Inserso raised its concerns during the competitive process, the
agency could have worked to mitigate or eliminate any issue.  *Id.*  Permitting Inserso to pursue
its forfeited claims after award would permit it to seek relief it could have gotten from the
agency earlier, before the agency invested significant resources in evaluating proposals.  *Id.*  The
Court, therefore, found that Inserso had forfeited its right to relief.

Although *Inserso* was perhaps the first time that the Federal Circuit had occasion to apply
the *Blue & Gold Fleet* rule to claims not expressly directed at solicitation terms, this Court has,
as the Federal Circuit noted approvingly in *Inserso*, consistently done so over many years.  For
example, in *Peraton Inc. v. United States*, 146 Fed. Cl. 94, 101-03 (2019), this Court applied the
precedential guidance of *Blue & Gold Fleet* to find that allegations of bad faith conduct by an
agency, as well as a challenge to other proposed terms of corrective action, were waived.  The
plaintiff in that case sought to "have its cake and eat it too," by attempting to graft a challenge to

newly-proposed corrective action onto a moot challenge to a previous corrective action, while also moving to stay proceedings until after corrective action was complete. *Id.* at 101. The Court recounted the rationale underlying the *Blue & Gold Fleet* decision, finding that a challenge to the terms of the competition, whether to the nature of the agency's corrective action or to alleged bad faith by the agency inherent in the process, must be brought before the award decision, not stayed until after that decision is made and pursued only if the plaintiff remains aggrieved. *Id.* The "primary thrust" of Peraton's allegations, like AWS's in this case, was "that the agency has acted in bad faith in th[e] procurement," and thus did not involve a challenge to solicitation terms but rather the fairness of the competition. *Id.* at 98.

Similarly, in *Jacobs Technology Inc. v. United States*, 131 Fed. Cl. 430 (2017), the Court made clear that bias allegations must be raised before, rather than after, an award decision is made. *Id.* at 447. In that case, two different contractors challenged the agency's decision to take corrective action and the scope of the corrective action to be taken. *Id.* at 435-36. One of the protesters, the incumbent and unsuccessful offeror, alleged that the agency was biased against it. *Id.* The Government argued that the allegations from both protesters were not ripe for review, as the award decision pursuant to the corrective action had not yet been made. *Id.* at 446. But the Court found that, if the unsuccessful party waited until after the award decision had been made to allege that the terms of competition envisioned by the corrective action, including any alleged bias, were unfair or improper, it would have waived such allegations under *Blue & Gold Fleet*. *Id.* at 447-48. The Court found that potential waiver of the claim at issue presented sufficient hardship to warrant judicial review of the allegations prior to the award decision. *Id.* at 447. The

allegations, therefore, were ripe for review and properly considered prior to award – and had they been raised for the first time after award, they would have been waived. *Id.*

Indeed, the Court has in many cases found the *Blue & Gold Fleet* waiver rule applicable to allegations challenging terms of the competition or evaluation process that were not, strictly speaking, solicitation terms. *Synergy Solutions, Inc. v. United States*, 133 Fed. Cl. 716, 740 (2017) ("[T]he language in *COMINT Systems* expresses a clear, practical intent to expand the reach of the *Blue & Gold Fleet* waiver rule to include any defects that could potentially be raised and resolved prior to the contract award."); *Jacobs Tech., Inc. v. United States*, 100 Fed. Cl. 179, 182 n.4 (2011) ("Although [*Blue & Gold Fleet*] deals with a protester's objections to terms of the solicitation, this Court suggests that it raises legitimate concerns for prudent protesters challenging the solicitation process or the evaluation of offerors' proposals."); *but see*, *e.g.*, *ATSC Aviation, LLC v. United States*, 141 Fed. Cl. 670, 696 (2019) (in challenge to exclusion from the competitive range, the basis of which was not fully apparent until after award, which was challenged in the GAO before award, and which would not require reopening the bidding process or stopping work on the contract to fashion relief, the Court found that "[t]he waiver doctrine explicated in *COMINT* and *Blue & Gold* does not bar ATSC's protest given the somewhat unusual setting of this case.").

Closely analogous to AWS's bias and bad faith allegations are allegations that an OCI taints the procurement. As did the Federal Circuit in *Inserso*, this Court has applied the *Blue & Gold Fleet* waiver rule to OCI allegations. The Court has found that "the rationale of *Blue and Gold* leads to the conclusion that a contractor should not be allowed to protest an agency's failure to identify and mitigate an OCI when the contractor knew about the alleged OCI from the

start, but failed to assert it, via protest, prior to the award." *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 712 (2011), *aff'd,* 475 F. App'x 341 (Fed. Cir. 2012).  The Court in *CRAssociates* explained that "[a] number of cases hold that arguments that should have been raised prior to an award are waived, even if they do not relate to ambiguities or errors in the solicitation."  *Id.* at 712 n.12 (collecting cases).  Indeed, the Court has consistently found OCI allegations to be waived when those allegations were known during the competition but were not raised until after award.  *Concourse Group, LLC v. United States*, 131 Fed. Cl. 26, 29-30 (2017) ("Logically, the waiver rule also applies where a protester fails to raise OCI claims before the close of the bidding process."); *Commc'n. Constr. Servs. v. United States*, 116 Fed. Cl. 233, 263-64 (2014) (finding OCI allegations waived when protester was on notice of the basis of the allegations prior to award).

Finally, both this Court and the Federal Circuit have looked to the GAO's interpretation of its regulation on the timeliness of protests challenging issues that arise pre-award in applying the *Blue & Gold Fleet* waiver rule.  *Blue & Gold Fleet*, 492 F.3d at 1314; *COMINT*, 700 F.3d at 1383; *iAccess Techs., Inc. v. United States*, 143 Fed. Cl. 521, 531 (2019) ("[T]he *Blue & Gold Fleet* waiver rule is analogous to timeliness restrictions on bid protests brought before the Government Accountability Office (GAO).").  The GAO has interpreted its timeliness restrictions to bar allegations of bias by procurement officials when the protester was aware of the underlying facts giving rise to its bias allegations prior to the closing date for receipt of proposals, but failed to protest the issue until after award.  *Adams and Associates, Inc*., B-417120; B-417125, 2019 CPD ¶ 21 (Comp. Gen. Jan. 16, 2019).

In allegations that mirror AWS's, the protester in *Adams and Associates* alleged that personnel from the procuring agency's headquarters were biased against it, and asked the GAO to order a re-evaluation without any input or interference by these officials.  *Id*. at *2.  Although the protester argued that it could not have brought the challenge prior to the award decision because it could not establish competitive prejudice absent award to a competitor, the GAO disagreed.  *Id*.  It found that "the factual predicates for [the protester's] bias and retaliation allegations were reasonably known to the protester prior to the closing times for proposals."  *Id*.  Moreover, the GAO reasoned that the bias allegations were "essentially untimely challenges to the fundamental ground rules for the procurements," *id*. at *1, and that "challenges which go to the heart of the underlying ground rules by which a competition is conducted should be resolved as early as practicable during the solicitation process, but certainly in advance of an award decision if possible, not afterwards."  *Id*. (citation omitted).  Citing *Blue & Gold Fleet*, the GAO found that:

> Such a rule promotes fundamental fairness in the competitive process by preventing an offeror from taking advantage of the government as well as other offerors, by waiting silently only to spring forward with an alleged defect in an effort to restart the procurement process, potentially armed with increased knowledge of its competitors' position or information.

*Id*.  The GAO also explained that the rule "promotes efficiency by ensuring that concerns regarding a solicitation are raised before contractor and government resources are expended in pursuing and awarding the contract, thus avoiding costly and unproductive litigation after the fact."  *Id*.

As in this case, the GAO in *Adams and Associates* found that "the protester's allegations are premised on the notion that the procurement processes in place were so flawed, or corrupted, that they could not yield fair and proper results."  *Id*. at *3.  The GAO concluded that its rules do not permit a protester "to wait to raise a fundamental flaw with the procurement process until after an award decision has been made," and dismissed the claims as untimely.  *Id*.

## II.   AWS Has Waived Count Four Of Its Amended Complaint

The precedential waiver rule announced in *Blue & Gold Fleet* operates to bar the allegations contained in Count Four of AWS's amended complaint, alleging bias, bad faith, improper influence, and/or conflict of interest.  AWS's own pleadings make clear that it was aware of the factual predicates of these allegations prior to the date final proposals were due, and well before the award decision was made.  Because AWS chose not to raise its allegations at that time but instead to "roll the dice" and see if it were selected for award, it has waived the right to bring these untimely allegations after the award decision has been made.  AWS's wait-and-see approach here raises the precise moral hazard that the *Blue & Gold Fleet* waiver rule was instituted to combat, and the Court should dismiss these allegations.

The agency's decision to seek a voluntary remand to address technical aspects of the procurement unrelated to AWS's bias allegations in no way operates to cure AWS's waiver of these allegations, which took effect when it failed to bring the allegation prior to submitting its original final proposal revisions or before the October 2019 award decision.  And even if the remand and corrective actions subsequently undertaken by DOD afforded AWS another opportunity to press its bias allegations before the agency or in some other forum, AWS again

elected not to do so, again waiving the right to pursue these allegations now, only after learning

that it was once again not selected for award.

A.     AWS Waived The Allegations Of Count Four By Failing To Bring Them Prior To The Original October 2019 Award

In Count Four of its amended complaint, AWS alleges that DoD's decision to award the

JEDI contract to Microsoft is "the product of pervasive and continuing undue influence, bias, and

bad faith against AWS."  Amended Compl. ¶ 339, *see also* Amended Compl. ¶¶ 401-12.  But

essentially all of the factual allegations on which AWS premises this conclusion were known to

AWS well before it submitted its original final proposal in September 2019, and well before the

original award decision in October 2019.  Because AWS failed to bring these allegations to the

agency, to GAO, or to the Court prior to that time, AWS waived its opportunity to have this

Court entertain those allegations and they should be dismissed.

1.     AWS Was Aware Of The Basis Of Its Allegations Prior To Award

AWS alleges a course of conduct by the President, beginning even before he was elected,

publicly exhibiting a "deep personal dislike for Mr. Bezos, Amazon, and the *Washington Post*,"

and an "express desire to harm them."  Amended Compl. ¶ 14.  AWS goes on to detail a string of

public comments and other alleged behavior by President Trump or others associated with him,

both before the JEDI procurement had begun and as it progressed, to manifest this alleged

animus.  Amended Compl. ¶¶ 14, 80-88.  In particular, AWS focuses on a press conference held

on July 18, 2019, during which, with alleged reference to the JEDI procurement, the President

stated that he "would personally 'ask [DoD] to look at it very closely to see what's going on.'"

Amended Compl. ¶¶ 14, 84.  AWS links this allegation with an announcement by then newly-

confirmed Secretary of Defense Mark Esper on August 1, 2019, that he was ordering a review of the JEDI procurement.  Amended Compl. ¶ 14, 85.  These comments occurred before the final proposal revisions were due on September 5, 2019, and before the award decision was made on October 17, 2019, yet AWS did not raise any complaint about the potential for bias until filing its original complaint on November 22, 2019.  AR Tab 339 at 151,401; AR Tab 340 at 151,405; AR Tab 459 at 176,417.

AWS characterizes the statements from the President as "making clear to DoD (and to the world) that he did not want AWS to get the JEDI Contract."  Amended Compl. ¶ 83.  AWS's allegations make clear that AWS, along with the rest of the world, was on notice well before the original award decision of the factual basis for the allegations of bias that AWS now pursues in this Court.  If AWS believed that the competition was impermissibly tainted by this publicly proclaimed bias, as it now alleges, it was required to bring those allegations at the time the statements were made.  Moreover, AWS still alleges no clear link between the President and the source selection officials.  Rather, the gravamen of AWS's allegation, though it has denied it and, in a transparent attempt to avoid the consequences of its waiver, removed some of the broadest allegations of its original complaint from its amended complaint, is that the President's public comments were of such a nature as to irreparably taint *any* evaluator.  *See*, *e.g*., Amended Compl. ¶ 89; Compl., ECF No. 1, at ¶ 20.  Under this theory, however, AWS had all the information it needed to raise a challenge prior to the award, but instead waited to see if it might be selected anyway.  The law does not permit this strategy, and the Court should dismiss Count Four of AWS's amended complaint.

2. <u>Count Four Challenges The Procurement Process, Not Evaluations</u>

In its response to our original motion to dismiss, AWS argued that its allegations did not challenge a biased procurement process, but rather were properly understood as challenges to DoD's evaluations of AWS's and Microsoft's proposals. *See* ECF No. 168 at 6-9. This claimed distinction is, in fact, no distinction at all. In Count Four, AWS does not challenge any particular evaluations or decisions by DOD, but rather the circumstances under which those evaluations and these decisions were made, which AWS alleges were systematically tainted by the public statements of the President and his associates. To the extent that the Court finds any particular evaluations or tradeoffs to be flawed, it can address those concerns through the counts that challenge those decisions directly. AWS's claims in Count Four are conceptually identical to the bias and OCI cases we discuss above, where the challenge is to an alleged atmosphere that resulted in an award decision tainted by bias or a conflict of interest. There, as here, any *effect* of the bias or OCI would necessarily *manifest* in evaluations and the award decision, but that does not mean that these allegations are "evaluation challenges" that can only be raised post-award. If the Court were to allow AWS to avoid the effect of the *Blue & Gold Fleet* waiver rule merely by recasting its allegations as evaluation challenges, the rule would collapse, as nearly any plaintiff could reframe its challenge as not taking issue with the terms of a solicitation or competition, but with the way the agency applied those terms in evaluating its proposal or that of its competitor.

3. <u>AWS Could Have Brought Its Bias Allegations Prior To Award</u>

In its response to our original motion to dismiss, AWS attempted to avoid the consequences of its waiver by arguing that it could not have brought its allegations of bias earlier because they were not ripe until Microsoft was awarded the contract, and because any defects

were latent, not patent, and foretold an imaginary flood of premature protests if the Court were to grant our motion.  *See* ECF No. 168 at 17-23.  These allegations do not accord with the law, with the facts, or even with AWS's own allegations.

AWS argued that it could not have brought its bias allegations prior to award, because only the award decision was a "final agency action" that could give rise to a ripe bid protest. ECF No. 168 at 17-19.  Unlike the Administrative Procedure Act, however, bid protest jurisdiction under the Tucker Act does not require "final agency action," but is premised on an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1); *Distributed Sols., Inc. v. United States,* 539 F.3d 1340, 1344 (Fed. Cir. 2008); *see also Itility, LLC v. United States*, 124 Fed. Cl. 452, 461 n.12 (2015) (recognizing that the APA's "final agency action" requirement "was not incorporated into" the bid protest statute); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 336 (2012) ("Congress has specifically placed matters within our bid protest jurisdiction that seem incompatible with an APA 'final agency action' definition that rules out the 'tentative or interlocutory.'").

Among countless other examples of protests that the Court has considered ripe challenges short of a final award decision are the OCI and bias cases discussed above, in many of which the challenge was to the *absence* of an action by the agency to identify and mitigate a conflict of interest or bias that was alleged to have impacted the fairness of the evaluation.  AWS was aware of the facts upon which it bases its claims of bias before it submitted its final proposal and well before the award decision.  That its claims are speculative is a function of their inherent

21

weakness and lack of factual substantiation, not an indication that they suddenly ripened into actionable claims in the wake of a decision to award the contract to Microsoft.

AWS also argued that no redress would have been available to it had it brought its bias claims prior to award. ECF No. 168 at 19-20. But had AWS raised its claims in a timely fashion, DoD could have investigated the allegations and evaluated the need to redress any problems created by the public commentary cited by AWS. AWS mocked this idea, arguing that it could not have plausibly sought "removal" of the President or Secretary of Defense. *Id.* But that is no less true now, and is a major flaw in AWS's entire theory of this litigation – if the President's public comments created a bias and conflict of interest that infected the ability of any executive branch employee to fairly evaluate proposals in this procurement, then how could this Court within its authority fashion relief to address such a circumstance? To the extent that AWS contends that this Court can fashion meaningful relief, however, then DoD could have considered implementing the same relief earlier had AWS timely raised its concerns with the agency. By electing not to disclose its concerns earlier, AWS denied DoD the opportunity to consider the need for any corrective measures and has waived its right now to seek such relief.

    4.    <u>AWS's Own Allegations Demonstrate That Any Defect Was Patent</u>

AWS additionally argued that any defect in the procurement process was latent, rather than patent, and thus could not have been brought pre-award. ECF No. 168 at 21-24. But this is just another attempt by AWS to recast its claims as a challenge to DoD's particular decisions rather than to the terms of the competition overall and fails for the reasons discussed above. AWS's attempt to recast its claims of bias is no different than the arguments made by countless other protesters who have sought to avoid waiver and that have been rejected by this Court under

the central logic of *Blue & Gold Fleet* – that an offeror may not identify an issue, wait to see if it is selected for award, and only if it is not selected raise the issue in a belated attempt to stop the award.  AWS's claims of bias unquestionably rely on information of which it was aware prior to award, and these allegations are therefore waived.

5.     <u>No Flood Of Litigation Would Result From A Finding Of Waiver</u>

Finally, in its opposition to our original motion to dismiss, AWS speculated that a "flood of litigation," challenging every Presidential tweet or negative news cycle, would result from a finding that it has waived its bias claims here.  ECF No. 168 at 17, 20-21.  But not every company is so rash as to presume that Government officials will be biased against it based on the President's public comments.  AWS conflates the weakness of its allegations, and their lack of connection to the actual DoD personnel who made the evaluations and award decisions in this case, with the claimed risks of finding a waiver.  If it is unreasonable to expect a company to file a bid protest alleging bias following a Presidential tweet, that is not because such a claim is premature, but because there is no basis to allege that professional Government procurement officials would violate their ethical and legal duties based on a tweet, even one from the President.

B.     Even If The Remand Provided AWS Another Opportunity To Raise The Allegations Of Count Four, It Again Failed To Do So Prior To The Award Decision

As described above, in the wake of the Court's decision to issue a preliminary injunction based on its preliminary assessment of AWS' claims about certain technical aspects of the JEDI procurement, the United States sought a voluntary remand to address those technical issues. AWS's protest, however, remained pending; DoD's voluntary remand to address technical issues

wholly unrelated to AWS's bias allegations in no way cured AWS's waiver of those allegations

by failing to raise them prior to DoD's original October 2019 decision to award the JEDI

contract to Microsoft.  In describing the scope of DoD's remand and the corrective actions it was

considering, the United States consistently emphasized that DoD intended to reevaluate AWS's

technical allegations – we never made any representation that DoD would take action to address

AWS's bias allegations, which it considered to be without merit.  As such, the remand did not

alter the facts underlying AWS's waiver of its allegations – it was aware of the basis of its

allegations prior to award, yet failed to raise the allegations until after award.

However, even if the Court were to view the remand and resulting corrective actions

taken by DoD as another opportunity for AWS to raise its bias allegations, AWS once again

elected to waive any such opportunity.  Yet again, AWS failed to raise these allegations in any

fashion with the agency, the Court, or any other forum prior to DOD's reaffirmation of its prior

award decision.

In *Jacobs Technology Inc.*, this Court found that a party's argument that proposed

corrective action was not broad enough to address its claims of bias needed to be raised before

the corrective action was completed or it would have been waived under *Blue & Gold Fleet*.  131

Fed. Cl. at 447-448.  This Court has also held that "when analyzing whether a plaintiff has

waived its pre-award protest grounds, 'the proper inquiry is to assess whether a party has timely

pursued an alleged defect in a solicitation as allowed by law, and whether the party has diligently

pressed its position without waiver at each step of the way.'" *Harmonia Holdings Grp., LLC v.*

*United States*, 147 Fed. Cl. 749, 753 (2020) (quoting *DGR Associates v. United States*, 94 Fed.

Cl. 189, 204 (2010)); *see also Peraton*, 146 Fed. Cl. at 102 (citing as evidence of waiver the fact

that "[p]laintiff did not file a protest, or the equivalent of a protest, of the [agency's] revised

corrective action when it filed its motion for leave to supplement the complaint and its motion to

stay proceedings."); *Anham FZCO v. United States*, 144 Fed. Cl. 697, 722 (2019) ("Plaintiff

impermissibly 's[a]t on its rights' by failing to object to [the agency's] prior treatment of the . . .

contract termination before the second contract award, and has now waived its right to do so.")

(citing *Blue & Gold Fleet,* 492 F.3d at 1314).

  If AWS were truly concerned that DoD evaluators and source selection officials were

biased as a consequence of President Trump's alleged public antipathy toward AWS's parent

company and its founder, one would have expected AWS to have filed a protest objecting to any

corrective action that did not include measures designed to address those concerns.  AWS,

however, did no such thing.  Although it opposed the remand, it never once suggested that its

opposition was based on continuing concerns of bias as alleged in its original complaint.  *See*

ECF Nos. 181, 186, 188, 197.  Instead, AWS opposed the remand because it wanted DoD to

engage in broader corrective action than DoD contemplated, arguing that DoD should be

specifically required to commit to address each of the *technical* issues that AWS raised in its

protest, and to permit AWS to broadly alter its unit pricing and discounts across its proposal.

The United States was consistent and clear in its representations that DoD, on remand, would

address only technical issues, and never represented that it would take measures to address

AWS's baseless bias claims.  *See* ECF Nos. 177, 187, 199.  AWS plainly understood DoD's

intent to limit any corrective action to technical issues, *see* ECF No, 197 at 2, and the Court

expressed the same understanding.  ECF No. 203.  Indeed, the Court expressly reminded AWS

that it would "have an opportunity to raise [allegations concerning corrective action] should it

elect to make a timely challenge to any corrective action defendant takes." *Id.* at 4. AWS declined this opportunity.

AWS did not raise any objection on the basis of its claims of bias either to the Government's request for a remand or during the course of DoD's corrective action on remand. Instead, AWS fully participated, without any such objection, in the re-evaluation process, submitting several rounds of proposal revisions along the way. AWS no doubt hoped that it would be selected for award, and held any concerns it might have had in abeyance until after it learned whether it would be selected. This, however, is precisely the strategic gambit that is prohibited by *Blue & Gold Fleet*.

AWS even demonstrated its willingness to assert its rights where it perceived unfairness in the process, filing an agency-level protest alleging ambiguity in the terms of solicitation amendments issued by DoD. AR Tab 617 at 181,719-24. DoD determined that a clarification was appropriate, and issued a further solicitation amendment, granting AWS its requested relief. AR Tab 644 at 193,401. This is the process the Federal Circuit intended offerors to use when it issued its opinion in *Blue & Gold Fleet*. AWS denied DoD the opportunity similarly to consider whether it could undertake any additional measures to resolve AWS's bias concerns because AWS did not raise those concerns, or identify any additional steps it believed DoD should take in light of those concerns, in its agency level protest. AR Tab 617.

To avoid the consequences of it repeated failure to press its bias allegations at any point in time when the agency could act to address them, AWS alleges that "[a]fter DoD resolved the initial improprieties in the implementation of its corrective action . . . [it], in effect, had a clean slate from which it could reevaluate proposals in accordance with the RFP and remove any

semblance of bias, bad faith, or improper influence from the evaluation process."  Amended

Compl. ¶ 403.  But, as we describe above, AWS continues to allege the same facts as the basis

for its bias allegations, the vast majority of which were known to AWS and to the public at large

well before the original 2019 decision to award the JEDI contract to Microsoft.  Amended

Compl. ¶¶ 14, 80-88.  Evaluations with which AWS disagrees, or DoD's assessment that

Microsoft proposed a superior product that offers better value to DoD, are in no way evidence

that DoD was biased against AWS or toward Microsoft.  *See Info. Tech. & Applications Corp. v.*

*United States*, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) (finding that plaintiff's "contentions that

the [agency] erred in evaluating the proposals" are "not evidence of bias.").

Instead, AWS's actual "evidence" for its bias allegations amounts to public statements,

most of which are wholly unrelated to the JEDI procurement and nearly all of which were made

well before the October 2019 award decision, by President Trump and his associates.  The only

information AWS learned after October 2019 is either wholly irrelevant to the JEDI

procurement, *see, e.g.*, Amended Compl. ¶¶ 357-73, or was contained in the DoD IG report that

was publicly released on April 15, 2020, s*ee, e.g.,* Amended Compl. ¶¶ 352-56.  Leaving aside

that the DoD IG report does not support AWS's allegations of bias, AWS, along with the public

at large, was aware of the content of the report months prior to AWS submitting three rounds of

proposal revisions during the remand proceedings, and nearly five months prior to DoD's

reaffirmation of its decision to award the JEDI contract to Microsoft.  If AWS believed that the

content of the DoD IG report evidenced bias by DoD source selection officials, it had an

obligation under *Blue & Gold Fleet* to raise an objection based thereon prior to submitting

proposal revisions.  DoD would then have had an opportunity to consider whether there were

steps it could take to try to resolve AWS's concerns.  The law does not permit the gambit AWS chose instead – to "roll the dice," wait and see whether it would be selected for award, and only if it was not selected argue to this Court that this information shows that DoD was biased against it, as evidenced by a list of technical judgments with which AWS disagrees.

AWS's technical challenges to DoD's evaluations and best value judgments, though incorrect, are properly before this Court for review, and will be addressed in future briefing. AWS's allegations of bias, bad faith, improper influence, and conflict of interest, on the other hand, are waived under *Blue & Gold Fleet* and should be dismissed.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court dismiss Count Four of the amended complaint, because AWS has waived the allegations contained therein.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:

| | |
|---|---|
| MICHAEL G. ANDERSON | s/ Anthony F. Schiavetti |
| BENJAMIN M. DILIBERTO | ANTHONY F. SCHIAVETTI |
| Assistant General Counsel | Senior Trial Counsel |
| Washington Headquarters Service & | RETA BEZAK |
| Pentagon Force Protection Agency | Trial Attorney |
| Office of General Counsel | U.S. Department of Justice |
| Department of Defense | Civil Division |
| | Commercial Litigation Branch |
| TYLER J. MULLEN | PO Box 480, Ben Franklin Station |
| CCPO Legal Advisor | Washington, D.C. 20044 |
| Assistant General Counsel | Tel: (202) 305-7572 |
| Defense Information Systems Agency | Fax: (202) 305-1571 |
| Office of the General Counsel | anthony.f.schiavetti@usdoj.gov |

November 6, 2020                 Attorneys for Defendant