# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| AMAZON WEB SERVICES, INC., | Case No. 19-cv-01796 |
| Plaintiff, | Judge Campbell-Smith |
| v. | |
| UNITED STATES OF AMERICA,<br>by and through the U.S. Department of Defense, | ███████████ |
| Defendant, | |
| and | **FINAL REDACTED VERSION** |
| MICROSOFT CORPORATION, | |
| Defendant-Intervenor. | |

### PLAINTIFF AMAZON WEB SERVICES, INC.'S ███████ RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTIONS TO DISMISS

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................................ iv

**INTRODUCTION** .............................................................................................................. 1

**QUESTION PRESENTED** ................................................................................................. 3

**I.    FACTUAL AND PROCEDURAL BACKGROUND** .................................................. 3

    A.  AWS's Original Bid Protest Challenges DoD's Flawed and Biased Evaluations
and Award Decision ................................................................................................. 3

    B.  The Court Preliminarily Enjoins Performance and the Government Moves for
Remand .................................................................................................................... 4

    C.  DoD Undertakes Corrective Action ......................................................................... 7

    D.  DoD Re-Awards to Microsoft and AWS Files An Amended Complaint ..................... 8

**II.   LEGAL STANDARD** .................................................................................................. 9

**III.  ARGUMENT** ........................................................................................................... 10

    A.  Count 4 Is Not Barred by *Blue & Gold* Because It Is a Challenge to the
Execution, Not the Terms, of the Corrective Action ................................................ 11

        1.  *The Amended Complaint is Clear That AWS's Claims Arise from DoD's
Improper Re-Evaluations and Award Decision* ................................................ 12

        2.  *Defendants Misconstrue the Scope of Blue & Gold* ........................................... 13

        3.  *The Government and Microsoft Rely on Inapposite Authorities That Do
Not Apply to AWS's Evaluation Challenges* ..................................................... 15

    B.  AWS's Challenges Were Not Ripe until It Learned of the Evaluation Results ........... 18

        1.  *AWS Had No Standing to Bring a Pre-Award Challenge to DoD's
Execution of the Corrective Action* .................................................................. 19

        2.  *Count 4 Was Not Ripe to Bring Pre-Award Because It Is Not a Challenge
to the Scope of DoD's Corrective Action* .......................................................... 24

    C.  *Blue & Gold* Does Not Apply Because Count 4 Challenges a Latent, Not
Patent, Error ........................................................................................................... 26

D.    The Policy Concerns Animating *Blue & Gold* Would Be Undermined if Waiver Were Found Here ........................................................................................................ 30

E.    Even if *Blue & Gold* Did Apply, AWS Had Good Cause Not to Challenge the Execution of Corrective Action Prior to Award ........................................................... 32

**CONCLUSION** ....................................................................................................................... **33**

## **TABLE OF AUTHORITIES**

**Cases**

*Ace-Fed. Reporters, Inc. v. United States*,
   No. 20-636, 2020 WL 5640598  (Fed. Cl. Sept. 22, 2020)....................................... 24

*Adams & Associates, Inc.*,
   Nos. B-417120, B-417125, 2019 WL 245909 (Comp. Gen. Jan. 16, 2019) ......................... 18

*Anham FZCO v. United States*,
   144 Fed. Cl. 697 (2019) ...................................................................................... 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................. 9

*ATSC Aviation, LLC v. United States*,
   141 Fed. Cl. 670 (2019) ................................................................................. 16, 17

*Blue & Gold Fleet, L.P. v. United States*,
   492 F.3d 1308 (Fed. Cir. 2007).............................................. 9, 10, 11, 27, 31, 32

*Boeing Co. v. United States*,
   968 F.3d 1371 (Fed. Cir. 2020).................................................................. 10, 14, 19

*Brocade Commc'ns Sys., Inc. v. United States*,
   120 Fed. Cl. 73 (2015) ..................................................................................... 19, 20

*Caddell Constr. Co. v. United States*,
   125 Fed. Cl. 264 (2016) .................................................................................... 12, 15

*Cambridge v. United States*,
   558 F.3d 1331 (Fed. Cir. 2009)............................................................................. 9, 13

*COMINT Sys. Corp. v. United States*,
   700 F.3d 1377 (Fed. Cir. 2012)...................................................... 11, 13, 15, 32

*Commc'n Constr. Servs. v. United States*,
   116 Fed. Cl. 233 (2014) .................................................................................... 16, 17

*Concourse Grp., LLC v. United States*,
   131 Fed. Cl. 26 (2017) ...................................................................................... 16, 17

*CRAssociates, Inc. v. United States*,
   102 Fed. Cl. 698 (2011) .................................................................................... 16, 17

*Draken Int'l, Inc. v. United States,*
   120 Fed. Cl. 383 (2015) ................................................................ 12, 14

*Duffy v. United States,*
   120 Fed. Cl. 55 (2015) ...................................................................... 9

*Eskridge Res. Corp. v. United States,*
   92 Fed. Cl. 88 (2010) ........................................................... 19, 20, 22

*FirstLine Transp. Sec., Inc. v. United States,*
   107 Fed. Cl. 189 (2012) ............................................................ 20, 27

*First Mortg. Corp. v. United States,*
   142 Fed. Cl. 164 (2019) ................................................................. 33

*Inserso Corp. v. United States,*
   961 F.3d 1343 (Fed. Cir. 2020)..................................................... 16

*Jacobs Technology Inc. v. United States,*
   131 Fed. Cl. 430 (2017) ........................................................ 24, 25, 26

*Linc Gov't Servs., LLC v. United States,*
   96 Fed. Cl. 672 (2010) .............................................................. 10, 33

*NetStar-1 Gov. Consulting, Inc. v. United States,*
   101 Fed. Cl. 511 (2011) ............................................................ 27, 30

*Oracle America, Inc. v. United States,*
   *144 Fed. Cl. 88 (2019)* ................................................................. 19

*Per Aarsleff A/S v. United States,*
   829 F.3d 1303 (Fed. Cir. 2016)................................. 10, 13, 27, 29, 31

*Peraton Inc. v. United States,*
   146 Fed. Cl. 94 (2019) .............................................................. 17, 31

*Sheridan Corp. v. United States,*
   95 Fed. Cl. 141 (2010) .................................................................. 19

*Sotera Defense Sols., Inc. v. United States,*
   118 Fed. Cl. 237 (2014) ................................................................. 15

*Square One Armoring Serv., Inc. v. United States,*
   123 Fed. Cl. 309 (2015) ......................... 15, 20, 21, 24, 29, 31

*Synergy Solutions, Inc. v. United States,*
    133 Fed. Cl. 716 (2017) ................................................................................. 10, 32

*Sys. Application & Tech., Inc. v. United States,*
    691 F.3d 1374 (Fed. Cir. 2012).............................................................................. 19

*Technatomy Corp. v. United States,*
    144 Fed. Cl. 388 (2019) ......................................................................................... 19

*Trustees in Bankruptcy of N. Am. v. United States,*
    593 F.3d 1346 (Fed. Cir. 2010).............................................................................. 33

*Turping v. United States,*
    913 F.3d 1060 (Fed. Cir. 2019)........................................................................... 9, 13

*Vanguard Recovery Assistance v. United States,*
    99 Fed. Cl. 81 (2011) ............................................................................................. 32

*Yakus v. United States,*
    321 U.S. 414 (1944) ............................................................................................... 19

**Statutes**

28 U.S.C. § 1491(b)(1) ................................................................................................ 10

**Regulations**

FAR 2.101 ..................................................................................................................... 29

FAR 3.104-3 .................................................................................................................. 29

## INTRODUCTION

The motions from the Government and Microsoft are a clear attempt to insulate the JEDI procurement from judicial scrutiny of the bias, bad faith, and improper influence that undermined DoD's re-award decision following its corrective action. Defendants argue that, contrary to the presumption of regularity afforded to government officials—and despite the Government's own insistence that it would proceed with the corrective action in good faith—AWS instead should have presumed that DoD was incapable of conducting an unbiased re-evaluation. Founded on this chain of illogic, Defendants claim AWS should have immediately protested, and requested that this Court halt the Government's re-evaluation purely based on the *assumption* that the good-faith corrective action the Government promised would be tainted by bias, bad faith, and improper influence. This argument, which calls for a plainly premature and speculative protest, turns on its head the well-established presumption that the Government operates in good faith and subverts the very *Blue & Gold* waiver rule that Defendants invoke.

After this Court enjoined contract performance based on just the first of AWS's numerous bid protest allegations, ECF No. 164 at 18, the Government sought voluntary remand to pursue corrective action, ECF No. 177. In response to AWS's expressed concern that it appeared DoD would narrowly tailor the proposed corrective action to conform to Microsoft's proposal, the Government repeatedly assured the Court and AWS that DoD's corrective action and re-evaluations would, in good faith, consider the full breadth of AWS's allegations and should be entitled to the presumption of regularity. *See* ECF No. 177 at 3, ECF No. 185 at 14. The Government also acknowledged that AWS would "be free, following the remand, to allege that DoD has failed to address its concerns and to ask the Court for relief," including "in the future [to] challenge the result following from the remand." ECF No. 185 at 14; ECF No. 199 at 16. The

Court accepted the Government's representations and granted voluntary remand. ECF No. 203 at 4. DoD proceeded with the corrective action, which consisted of solicitation amendments, discussions, and clarifications. AWS was entitled, and in fact required, to presume that DoD would honor its commitment to reconsider all aspects of its prior evaluations in response to AWS's protest challenges. *See* ECF No. 185 at 14. Accordingly, AWS participated in each stage of the corrective action in anticipation of a fair re-evaluation.

Following the re-award, AWS learned for the first time that DoD had actually re-evaluated proposals on each evaluation factor. However, the debriefing materials and the administrative record underlying DoD's corrective action revealed that DoD's re-evaluations were designed to reach a pre-determined, politically expedient re-award to Microsoft. The record demonstrated that, following AWS's emergence as the lowest priced offeror, DoD purported to find "new" strengths for Microsoft and "new" weaknesses for AWS. These "new" evaluations, manufactured to justify a re-award to Microsoft despite its substantial price premium, are demonstrably pretextual. The re-evaluation record revealed for the first time—notwithstanding the Government's statements to this Court in its request for remand—that DoD's execution of its corrective action (and ultimately the re-award) were tainted by bias, bad faith, and improper influence.

It was therefore unknowable prior to the debriefing and release of the administrative record that bias, bad faith, and improper influence had in fact manifested itself in the execution of the corrective action. The Government and Microsoft try to dodge these allegations with a tortured interpretation of the *Blue & Gold* waiver doctrine that directly contradicts this Court's precedents. Defendants' arguments rely on the nonsensical premise that AWS should have known, despite DoD's commitment to a "good faith" re-evaluation, that the re-evaluation would nonetheless be tainted by bias, bad faith, and improper influence. This impractical construction of the waiver

2

doctrine flips on its head the presumption of regularity afforded to government officials and contradicts the representations the Government made to this Court about the propriety of its remand proposal. Far from arguing a coherent application of the doctrine, Defendants instead seek to create an untenable Catch-22 that would leave AWS's critical claims of bias, bad faith, and improper influence effectively unreviewable as either unripe (if raised during the corrective action) or untimely (if raised now). The Court should reject this attempt to shield DoD's conduct from scrutiny. AWS's claims are timely, and Defendants' motions should be denied.

**QUESTION PRESENTED**

Whether AWS timely alleged that DoD's re-evaluations and re-award decision were compromised due to bias, bad faith, improper influence, and conflicts of interest, where AWS could not know that such bias, bad faith, improper influence, and conflicts of interest had corrupted DoD's re-evaluations and re-award decision until after AWS received the debriefing materials and administrative record and where the Government committed to reconsider its prior evaluations and award decision in good faith.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**A.    AWS's Original Bid Protest Challenges DoD's Flawed and Biased Evaluations and Award Decision**

In October 2019, DoD announced that it had awarded the $10 billion, ten-year JEDI Contract to Microsoft. Upon reviewing the debriefing materials, AWS learned for the first time that DoD had committed inexplicable errors that affected nearly every evaluation factor. The pervasiveness and egregiousness of the errors revealed that the source selection was not just flawed on the technical merits. Rather, the erroneous evaluations and award decision could be explained only as the product of undue influence and political pressure from the White House. AWS learned for the first time that President Trump's anti-Amazon tweets and tirades during the initial source

selection process were not harmless bluster, but rather had a real and tangible impact on DoD's evaluations and award decision.

In light of AWS's serious concerns about the award, AWS promptly filed a bid protest Complaint on November 22, 2019. *See* ECF No. 1. The Complaint asserted multiple substantive and procedural errors in DoD's evaluation and award decision that required reversal of the award to Microsoft. On January 22, 2020, AWS moved to enjoin performance of the JEDI Contract. *See* ECF No. 130.

## B. The Court Preliminarily Enjoins Performance and the Government Moves for Remand

On February 13, 2020, this Court granted AWS's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO/PI") to enjoin performance of the JEDI Contract. *See* ECF No. 164. The Court found that AWS was likely to succeed on the merits based solely on the very first error that AWS detailed in its motion, namely, DoD's misevaluation of Microsoft's technical approach for Price Scenario 6. *Id.* at 7-11. This error, by itself, was "sufficient to justify [the] preliminary injunctive relief" AWS had sought, and the Court consequently did not need to evaluate the numerous other errors AWS identified in its Complaint and Motion for TRO/PI. *Id.* at 17 n.8.

In response to the TRO/PI, the Government filed a Motion for Voluntary Remand (the "Remand Motion") on March 12, 2020. *See* ECF No. 177. Although the Government's Remand Motion stated that DoD planned to "reconsider certain aspects of the challenged agency decision," and that "DoD wishe[d] to reconsider its award decision in response to the other technical challenges presented by AWS," the Remand Motion did not pledge that DoD would reconsider any particular error identified by AWS, let alone *all* of them. *See id.* Shortly thereafter, DoD announced that it intended to *limit* its reconsideration to "ensur[ing] that the Court of Federal

4

Claims' noted concerns are addressed." *See* ECF 181 at 6-7. AWS therefore understood that the Government offered to take only the following corrective actions in the original Remand Motion: (i) issuance of a solicitation amendment revising the technical requirements of Price Scenario 6, (ii) acceptance of "limited proposal revisions addressing the offerors' technical approach to that price scenario," (iii) re-evaluation of "any revised proposals for Price Scenario 6 under both Factor 5 and Factor 9," (iv) reconsideration of the "evaluation of the offerors' online marketplace offerings and conduct of clarifications with the offerors relating to the availability of marketplace offerings," and (v) "reconsideration of the award decision in response to the other technical challenges presented by AWS." ECF No. 197 at 5 (quoting ECF No. 177 at 2). Accordingly, AWS opposed the Government's Remand Motion on the basis that limited corrective action designed only to address the issues underlying the Court's TRO/PI Order would not address the myriad serious errors that AWS had identified in its Complaint and Motion for TRO/PI.[1] *See* ECF No. 181. AWS asked the Court to "require the Government to identify corrective action that would reasonably and impartially address *all* errors." ECF No. 181 at 7; *see also* ECF No. 197 at 14.

In response, the Government repeatedly asserted that it was acting in good faith, ECF No. 185 at 3 (citing cases), 4, 11, 12, that it had not yet finalized the scope of its proposed voluntary remand, and that any corrective action would be "well-tailored to address the issues AWS has chosen to raise in this litigation," *id.* at 6-7. The Government emphasized that it sought "leave to take a voluntary remand to DoD so that the agency may reconsider its decisions in light of the

---

[1] Notably, AWS did not object to the remand on the basis that the anticipated corrective action evidenced bias. *See generally* ECF No. 181; *cf.* ECF No. 238 (hereinafter "MS Br.") at 10-12. Even the Government contradicts Microsoft's position that AWS objected to the remand on bias grounds. *See* ECF No. 237 (hereinafter "Gov. Br.") at 12 ("AWS never objected to the remand on this basis – it never alleged that bias so tainted the procurement that it should not be remanded at all…").

protest allegations and this Court's opinion in issuing a preliminary injunction." *Id*. at 7. In doing so, the Government necessarily indicated to this Court, and to AWS, that it intended to address *all* of AWS's allegations in good faith when executing its re-evaluation.

The Government acknowledged AWS's concern that "DoD 'provides no meaningful commitment to evaluate the other serious errors identified by AWS's protest,'" *id*. at 13, but dismissed that concern because "'ensur[ing] that [the Court's] noted concerns are addressed . . . *does not preclude the consideration of AWS's other allegations*." *Id*. (emphasis added). The Government explicitly stated that it would "present [the source selection] officials with the substance of AWS's allegations to permit them to consider whether *any* (in addition to Price Scenario 6) merits revised evaluations or other appropriate action." *Id*. at 14. Moreover, the Government contemplated that AWS would be free to challenge both DoD's election or declination to "make any changes" with respect to its reconsideration "following the remand." *Id*.

The Court ultimately accepted the Government's assurances and granted the Remand Motion on April 17, 2020. *See* ECF No. 203. The Court found that it was proper to "remand[] a bid protest matter to the appropriate agency when that agency wishes to reconsider its previous position in light of the protestor's challenges." *Id*. at 4 (internal quotation marks omitted). The Court found "no evidence of frivolity or bad faith on [the Government's] part" in requesting remand and that there was "strong evidence that the agency's concern about possible errors in the procurement process is substantial and legitimate." *Id*. (internal quotation and alteration marks omitted). Crucially, the Court held that AWS's concerns and arguments about a flawed remand process "depend on the particular details of any corrective action that are . . . not yet known," *id*., and noted that AWS would "have an opportunity to raise such issues should it elect to make a timely challenge to any corrective action [the Government] takes." *Id*.

6

## C.     DoD Undertakes Corrective Action

DoD proceeded with its corrective action through a series of solicitation amendments, clarifications, and discussions.  On April 21, 2020, four days after the Court granted voluntary remand, DoD issued RFP Amendment 0007 to revise the requirements for Price Scenario 6.  AR Tabs 591, 593-96.  The email transmittal of Amendment 0007 informed AWS that DoD had replaced the Contracting Officer for the JEDI Contract.  AR Tab 591.  In connection with Amendment 0007, AWS asked DoD if there had been any other changes to the composition of the evaluation or source selection teams, or if it planned to make any such changes, but DoD declined to answer, stating that it "does not comment on the composition of the source selection teams." AR Tab 609 at 181611.

Amendment 0007 allowed offerors to re-architect their technical solutions to Price Scenario 6.  As a result, it did not completely lock offerors into their prior pricing, and allowed AWS and Microsoft to compete on value, as AWS had requested in the remand briefing.  *See* AR Tabs 593-96.[2]  The following day, April 22, 2020, the new Contracting Officer also sent AWS a

---

[2] Whereas the original RFP had required that all price scenarios use "highly accessible" data storage (which DoD had defined as "online" storage) unless otherwise noted, AR Tab 420 at 174754; AR Tab 408 at 173315, Amendments 0007, 0008, 0009, and 0010 revised Pricing Scenario 6 to create an exception to the requirement of "highly accessible" data storage, which had the effect of ratifying Microsoft's previously noncompliant data storage option.  In light of this changed requirement, Amendment 0007 permitted the offerors to revise their proposed technical solutions for Price Scenario 6 and to modify any related portions of the price volume proposals that were directly impacted as a result of revisions to  technical solutions.  *See* AR Tab 593.  Amendments 0008 and 0009 resolved certain ambiguities that were introduced through the Amendment 0007 revisions to the RFP. As a result of one of these ambiguities, AWS filed an agency-level protest to obtain clarification regarding the precise parameters and requirements of Price Scenario 6 as amended, and DoD responded by providing through Amendment 0009 the clarification that AWS sought. *See* Am. Compl. at ¶ 104.  Amendment 0010 asked offerors to identify daily and monthly data volume for object storage using the dates and growth provided in each of the price scenarios based on an ambiguity it discovered

request for clarification regarding its marketplace offerings.  AR Tabs 598, 599.  Thus, less than a week after being granted remand, DoD appeared to be proceeding in good faith to address AWS's allegations and concerns from the original Complaint and Motion for TRO/PI, including by replacing the prior Contracting Officer.

Given these immediate actions, and DoD's repeated assertions of good faith, AWS believed that DoD would address its bias and improper influence concerns regarding the source selection evaluations during the remand.  Beyond DoD's solicitation amendments regarding Price Scenario 6 and its clarifications regarding marketplace offerings, AWS had no visibility into the other aspects of the evaluation and award decision DoD was reconsidering, or whether any further amendments, clarifications, or discussions would take place.  Nevertheless, AWS participated at each step in good faith, and with the understanding that DoD was doing the same.

**D.  DoD Re-Awards to Microsoft and AWS Files An Amended Complaint**

On September 4, 2020, the new JEDI Contracting Officer notified AWS and Microsoft that DoD had re-awarded the JEDI Contract to Microsoft.  AR Tabs 740, 741.  DoD provided AWS a post-award debriefing that consisted of a limited set of redacted source selection documents and an exchange of written questions.  *See* AR Tabs 742–63.

Although AWS had expected that DoD would execute the corrective action in good faith and free from bias and undue influence, the debriefing materials revealed that DoD reached the re-award decision through material and prejudicial errors even more grave than the errors that infected the original award.  Indeed, although AWS emerged as the lowest price offeror following DoD's solicitation amendments and discussions, DoD contorted its evaluations to justify a best

---

in the course of evaluating the proposal revisions in response to Amendments 0007–0009.  *See* AR Tab 607; AR Tab 642; AR Tab 663; AR Tab 664 at 193509–10.

8

value award in favor of Microsoft, inventing "new" differentiators and ignoring clear strengths in AWS's proposal. *See* ECF No. 236 ("Am. Compl.") ¶¶ 339–51. The re-award decision and debriefing materials pointed to the inexorable conclusion that DoD's re-evaluations and re-award decision were driven not by the technical merits of each offeror's proposal, or the best value to the Government, but instead by the improper motivations of bias and bad faith to re-award to Microsoft despite the merits of the two proposals. *See id.*

AWS filed an Amended Complaint on October 23, 2020. AWS alleged that DoD's re-evaluations and the resulting re-award decision—which, standing alone, require overturning the re-award decision—were arbitrary, capricious, and unlawful for the independent reason that they were motivated by bias, bad faith, improper influence, and/or conflicts of interest. *See* Am. Compl. ¶¶ 401–12.

## II.    LEGAL STANDARD

The Court must deny a motion to dismiss if the plaintiff has alleged facts sufficient "to 'state a claim to relief that is plausible on its face.'" *Duffy v. United States*, 120 Fed. Cl. 55, 61 (2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating a motion to dismiss, the court "accept[s] all facts pleaded in the complaint as true," *Turping v. United States*, 913 F.3d 1060, 1064 (Fed. Cir. 2019), and "construe[s] them in a light most favorable to the plaintiff," *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).

In *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), the Federal Circuit set forth a narrow exception to the general rule that an offeror may challenge a solicitation, award, or any alleged violation of a procurement statute "before or *after* the contract is awarded."

28 U.S.C. § 1491(b)(1) (emphasis added).  Under *Blue & Gold*, "a party who has the opportunity

to object to the terms of a government solicitation containing a patent error and fails to do so prior

to the close of the bidding process waives its ability to raise the same objection afterwards in a[n]

action in the Court of Federal Claims." *Id.* at 1315.  This waiver rule "dr[aws] on precedents

involving certain contract ambiguities," and the Federal Circuit has applied it in "circumstances

where contract terms contain a 'patent' ambiguity or defect, including an obvious omission,

inconsistency, or discrepancy of significance." *Boeing Co. v. United States*, 968 F.3d 1371, 1377

(Fed. Cir. 2020) (citing cases). *Blue & Gold* is intended to prevent bidders from "roll[ing] the

dice" to see if they will win an award despite a patent error in the solicitation, *Blue & Gold*, 492

F.3d at 1314, and to avoid "after-the-fact litigation" of issues related to the solicitation that "could

have been raised prior to the close of bidding," *Per Aarsleff A/S v. United States*, 829 F.3d 1303,

1313 (Fed. Cir. 2016). *Blue & Gold* is "an equitable, rather than jurisdictional bar," *Linc Gov't*

*Servs., LLC v. United States*, 96 Fed. Cl. 672, 698 (2010), based on the rationale of "fairness,"

*Synergy Solutions, Inc. v. United States*, 133 Fed. Cl. 716, 738 (2017), and with a purpose of

promoting efficiency, *see Blue & Gold*, 492 F.3d at 1313–14.

### III.    ARGUMENT

The Amended Complaint's allegations of bias, bad faith, improper influence, and conflict

of interest are timely, and there is no legitimate legal or policy basis to dismiss them under *Blue &*

*Gold*. Defendants' motions are premised on a distortion of AWS's claims and a misapplication of

*Blue & Gold*'s waiver rule—without support in the case law—that would undermine the equity

and litigation efficiency that *Blue & Gold* seeks to promote.

The Court should deny Defendants' motions for five independent reasons. *First*, *Blue &*

*Gold* does not apply because Count 4 is a challenge to DoD's re-award evaluation and decision,

and not to the "terms" of the corrective action. _Second_, there is no waiver because AWS's challenge to the execution of the corrective action—which DoD committed to implement in good faith—was not ripe until _after_ AWS learned of the manifestation of bias in the remand evaluations. _Third_, prior to the re-award, there was no patent error that AWS could have identified—it is not as if the proposed corrective action represented on its face that DoD would undermine the re-evaluation process to produce a biased and politically expedient result. _Fourth_, application of _Blue & Gold_ to AWS's claims would frustrate judicial review of bias claims and lead to needlessly inefficient and premature protests in the future. _Fifth_, AWS had good cause not to bring a pre-award challenge because it was entitled—indeed, required—to rely on the presumption of good faith afforded to DoD's actions on remand, and finding otherwise would lead to an inequitable result. For all these reasons, Count 4 of the Amended Complaint is timely and the Court should deny Defendants' motions.

**A.   Count 4 Is Not Barred by _Blue & Gold_ Because It Is a Challenge to the Execution, Not the Terms, of the Corrective Action**

The Court should deny Defendants' motion to dismiss because Count 4 is not a challenge to the terms of the corrective action. Rather, Count 4 challenges how bias, bad faith, improper influence, and conflict of interest affected DoD's _re-evaluations_ during the remand. Challenges to evaluation decisions are not waivable under _Blue & Gold_.

_Blue & Gold_'s waiver rule applies when a party had the "opportunity to object to the _terms_ of a government solicitation" and failed to do so prior to the award. _Blue & Gold_, 492 F.3d at 1315 (emphasis added). Although _Blue & Gold_ has been extended to include pre-award challenges to the "terms" of a solicitation amendment, _COMINT Sys. Corp. v. United States_, 700 F.3d 1377, 1383 (Fed. Cir. 2012), _Blue & Gold_ has _never_ been used to bar challenges to the _execution_ of an evaluation and award decision. Indeed, this Court has held that _Blue & Gold_ does not apply to

11

"challenges [to] the agency's *evaluation* … and its *application* of … source selection criteria" to an offeror's proposal. *Caddell Constr. Co. v. United States*, 125 Fed. Cl. 264, 272 (2016); *see also Draken Int'l, Inc. v. United States*, 120 Fed. Cl. 383, 393 (2015) ("While *Blue & Gold* prevents [p]laintiff[s] from challenging solicitation terms, it does not prevent [protestors] from protesting alleged pre-award deficiencies in the procurement process"). Defendants' reliance on *Blue & Gold* to dismiss Count 4 therefore fails as a matter of black-letter law because Count 4 is not a challenge to the "terms" of the corrective action.

      **1.**      ***The Amended Complaint is Clear That AWS's Claims Arise from DoD's Improper Re-Evaluations and Award Decision***

The Amended Complaint makes clear that Count 4 is based on allegations that "DoD's *reevaluations* on remand *reveal[ed]* that DoD continued to succumb to presidential pressure," and that DoD's "re-award was the product of bias, bad faith, improper influence, and/or conflicts of interest." Am. Compl. ¶ 404 (emphases added). These allegations arose based on new information that AWS learned following the re-award decision and through its review of the debriefing materials and supplements to the administrative record. These documents demonstrated that *after* AWS became the lowest price offeror, DoD proceeded to systematically erode key differentiators that had been identified in AWS's favor "on erroneous grounds to ensure the JEDI Contract remained with Microsoft." *Id.* ¶ 407. AWS alleges that despite DoD's commitment to execute the corrective action in good faith, and despite the opportunity afforded by this Court on remand to cleanse the procurement of the taint of bias, bad faith, and improper influence, the re-evaluations reveal that the source selection officials were motivated by bias, bad faith, and/or improper influence to favor Microsoft over AWS, and acted based on these motivations to preserve the award to Microsoft. *Id.* ¶ 408. On a motion to dismiss, the Court must accept these allegations as

true, and construe any ambiguity in AWS's favor. *See Turping*, 913 F.3d at 1064; *Cambridge*, 558 F.3d at 1335.

The Government argues that Count 4 "does not challenge any particular evaluations or decisions by DOD, but rather the circumstances under which those evaluations and these decisions were made." Gov. Br. at 25. This argument is misdirected. Count 4 identifies *specific* evaluations and decisions that DoD made during the remand period that were corrupted as a result of bias, bad faith, improper influence, and conflict of interest. *See* Am. Compl. ¶¶ 110-351, 401-412. Moreover, the Government's argument fails to distinguish between bias and organizational conflict of interest ("OCI") claims that manifest in the terms of a solicitation, versus those that manifest in the *evaluation process and award decision.* The flaws in the evaluation process and award decision can be known to the protestor only after the award, and are therefore not waivable under *Blue & Gold. See Per Aarsleff*, 829 F.3d at 1312 (holding defects not discoverable "by reasonable and customary care" are not waivable under *Blue & Gold*). As the Government admits, mere concerns about "an alleged atmosphere" are not actionable unless the "alleged atmosphere … *result[s]* in an *award decision* tainted by bias or a conflict of interest." Gov. Br. at 25 (emphases added). Because Count 4 is not a challenge to the terms of the corrective action, *Blue & Gold* does not apply.

### 2. *Defendants Misconstrue the Scope of Blue & Gold*

In their motions to dismiss, Defendants argue that *Blue & Gold* is not limited to challenges to the "terms" of a solicitation, and instead applies broadly to "all situations in which the protesting party had the opportunity to *challenge a solicitation* before the award and failed to do so." MS Br. at 21 (quoting *COMINT*, 700 F.3d at 1382) (emphasis added); *see also* Gov. Br. at 16. That argument is wrong as a matter of law.

The Federal Circuit has never endorsed the broad, open-ended interpretation of *Blue &
Gold* that the Government and Microsoft advance. As the Federal Circuit explained most recently
in *Boeing*, the *Blue & Gold* waiver doctrine "drew on precedents involving certain contract
ambiguities" and applies "where contract *terms* contain a 'patent' ambiguity or defect, including
an obvious omission, inconsistency, or discrepancy of significance, and the contractor or bidder
who later challenges those contract *terms* in court had not properly raised the problem to the agency
during the contract-formation process." *Boeing*, 968 F.3d at 1378 (emphases added). Neither the
Government nor Microsoft points to any "term" of which AWS knew or should have known and
failed to protest.[3]

Defendants conveniently ignore legal precedent with clear similarities to this case that
demonstrate AWS's claims are timely. In *Draken Int'l, Inc. v. United States*, 120 Fed. Cl. 383,
393 (2015), the protester challenged the terms of a solicitation and argued that the Navy's delay in
conducting the procurement, coupled with the solicitation's requirements, unduly restricted
competition. *Id.* at 383. The Court held that although Draken's post-proposal submission
challenge to the solicitation terms was waived under *Blue & Gold,* the delay rendering the
procurement process anti-competitive was not a solicitation term, and there was "no basis on the
face of the solicitation for Plaintiff to challenge what later became, in its view, an unduly lengthy
procurement process." *Id.* at 393.

---

[3] It defies logic that a commitment to re-evaluate the proposals and reconsider the award decision
would exclude removing bias or bad faith where found. To the extent Defendants argue that
the Government was required to state the obvious, and that AWS should have known from the
Government's failure to state explicitly it would address AWS's bias claims during the remand
briefing that the "terms" of the corrective action did not include addressing bias, such silence
on the part of the Government could at most be a latent, not patent, ambiguity. *See* Section C,
*infra*.

Likewise here, there was no basis on the face of the solicitation amendments, clarifications, or discussions for AWS to challenge bias in the corrective action. Rather, AWS challenges "what later became, in its view," a biased and bad faith re-evaluation designed to reach a politically desirable outcome. These allegations are timely and are not waived under *Blue & Gold*. *See id.*; *see also Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 329–30 (2015) (Campbell-Smith, J.) (noting that improper "administration," "carry[ing] out," "implementation or execution of . . . corrective action" should be brought as post-award "challenge[s] to the award decision"); *Caddell*, 125 Fed. Cl. at 272 (holding *Blue & Gold* does not apply to challenges to an agency's "evaluation" and "application" of source selection criteria).

### 3. *The Government and Microsoft Rely on Inapposite Authorities That Do Not Apply to AWS's Evaluation Challenges*

Despite the well-settled scope of *Blue & Gold*, Defendants cite several cases that they claim have extended *Blue & Gold* to bar other types of pre-award challenges. But the cases on which they rely only confirm that the waiver rule is indeed limited to challenges related to the terms of a solicitation.

For example, Defendants rely on dicta from *COMINT* suggesting that *Blue & Gold* may apply to "all situations in which the protesting party had the opportunity to challenge *a solicitation* before the award." MS Br. at 21; Gov. Br. at 16 (emphasis added). The Federal Circuit in that case addressed only the narrow question of whether *Blue & Gold* barred a post-award "challenge to [an] [a]mendment … of the solicitation" that was issued after the close of bidding, but before the award. *COMINT*, 700 F.3d at 1381. As many courts have since recognized, *COMINT* did not endorse expanding the waiver rule to cover all types of challenges unrelated to the terms of a solicitation—and it certainly does not support expanding it as never before to include challenges to evaluations. *See, e.g.*, *Sotera Defense Sols., Inc. v. United States*, 118 Fed. Cl. 237, 253–54

15

(2014) (explaining *COMINT* only expanded *Blue & Gold* to cover protests to "the terms of an amendment to a solicitation"); *ATSC Aviation, LLC v. United States*, 141 Fed. Cl. 670, 695 (2019) ("While *COMINT* does state that the 'same policy underlying *Blue & Gold* supports its extension to all pre-award situations,' … the extensive surrounding discussion implicates only solicitation challenges.").

Nor is the Federal Circuit's decision in *Inserso Corp. v. United States*, 961 F.3d 1343 (Fed. Cir. 2020), of any help to Defendants, for that case also involved an application of *Blue & Gold* to bar a challenge to the "express terms" of a solicitation. *Id.* at 1350; *see* Gov. Br. at 16; MS Br. at 21. The Federal Circuit in *Inserso* held that an offeror waived its challenges to a solicitation's "express terms" that authorized the agency to disclose detailed pricing information and agency evaluation methodology to certain offerors in the debriefing for a parallel small business competition. *Inserso*, 961 F.3d at 1350. In finding waiver, the Court was troubled that the protestor did not bring a pre-award challenge when it was on notice that the "express terms of the solicitation"—combined with general knowledge about the contents of the debriefing materials—would likely result in the unequal disclosure of competitive pricing information to other bidders. *Id.* at 1351–52. *Inserso* therefore does not support Defendants' argument for dismissal of Count 4, because AWS does not challenge any "express term" of DoD's corrective action.

Defendants also invoke a line of cases applying *Blue & Gold* to post-award challenges relating to OCIs, but again, these cases do not support expanding the waiver rule to evaluations. *See* MS Br. at 22; Gov. Br. at 19–20 (citing *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698 (2011); *Concourse Grp., LLC v. United States*, 131 Fed. Cl. 26 (2017); *Commc'n Constr. Servs. v. United States*, 116 Fed. Cl. 233 (2014)). "[N]o extension of the waiver rule occurred" in these

cases because the OCI claims involved "challeng[es] to the terms of the solicitation, rather than the agency's evaluation of proposals." *ATSC*, 141 Fed. Cl. at 695. In *CRAssociates* and *Concourse Group*, the protestors waived challenges based on the Government's failure to amend the terms of the solicitations to address concerns about alleged conflicts of interest arising out of the close relationship between the agencies and the incumbents. *See ATSC*, 141 Fed. Cl. at 695 (citing *CRAssociates*, 102 Fed. Cl. at 712–13; *Concourse Grp.*, 131 Fed. Cl. at 29–30). Similarly, in *Communication Construction Services*, the protestor waived its claim by failing to timely challenge the agency's alleged violation of a statutory prohibition where the "language in the draft and final solicitations" "clearly informed offerors" of the potential statutory violation. *Commc'n Constr. Servs.*, 116 Fed. Cl. at 261–62.

Here, in contrast, Count 4 does not allege any defect in the terms of DoD's corrective action.[4] And indeed, AWS could not have so alleged, for nothing in those terms, or the amendments issued on remand, indicated that DoD was intent on steering the re-award to Microsoft regardless of technical merit and price. To the contrary, the Government represented to AWS and this Court that it would conduct the remand process with the utmost integrity and good faith. *See supra*, Section I.B.

Finally, Defendants rely on cases where protestors were required to bring pre-award challenges alleging that the agency was incapable of carrying out the source selection in an

---

[4] Defendants also rely on *Peraton Inc. v. United States*, 146 Fed. Cl. 94 (2019) (Campbell-Smith, J.), but that case has nothing to do with waiver. *See* MS Br. at 22–23; Gov. Br. at 17-18. In *Peraton*, this Court considered whether a protestor could simultaneously lodge a protest to a corrective action while also moving to stay the proceedings pending the outcome of the corrective action, and this Court rejected this "wait and see" tactic as foreclosed by the policy rationales underlying *Blue & Gold*. *Peraton*, 146 Fed. Cl. at 102. AWS never moved to stay this bid protest litigation to see if it would receive the re-award before it challenged the corrective action.

unbiased manner. *See* Gov. Br. at 20-22; MS Br. at 23, 25 (citing *Adams & Associates, Inc.*, Nos. B-417120, B-417125, 2019 WL 245909 (Comp. Gen. Jan. 16, 2019)). But Defendants' reliance on *Adams* fundamentally misconstrues the nature of AWS's allegations. In *Adams*, the protestor argued that the agency was "incapable" of acting without bias because the procurement was "irredeemably flawed." *Id.* at \*2. That is *not* what AWS has alleged in Count 4. *Cf.* MS Br. at 5, 24; Gov. Br. at 22, 24. As explained above, DoD's voluntary decision to take corrective action, the installation of a new Contracting Officer, DoD's request for reasonable clarifications, and DoD's engagement on the solicitation amendments all pointed to the contrary—particularly *after* this Court had already enjoined the original award and DoD was already on notice of the concerns AWS had raised. Instead, the crux of Count 4 is that DoD failed to *implement* the corrective action, including the reconsideration of its evaluations and award decision, in a manner that was appropriately devoid of bias, bad faith, undue improper influence, and conflicts of interest.

\*      \*      \*      \*      \*

At bottom, Defendants cannot avoid the fact that Count 4 is a challenge to DoD's reconsideration of its evaluation and award decision. *Blue & Gold* is limited to challenges to the terms of a solicitation, it has never been applied to bar claims beyond this context, and it does not apply here.

**B.      AWS's Challenges Were Not Ripe until It Learned of the Evaluation Results**

Defendants' overbroad assertion of *Blue & Gold* waiver is also unpersuasive because AWS's challenges in Count 4 were not ripe until after DoD completed its corrective action and AWS learned of the evaluations. The ripeness doctrine prevents a plaintiff from bringing "[a] claim [that] is contingent upon future events that may or may not occur." *Sys. Application & Tech., Inc. v. United States*, 691 F.3d 1374, 1383 (Fed. Cir. 2012). For a claim to be ripe, "the challenged

18

conduct [must] constitute[] a final agency action." *Id.* at 1384. By contrast, absent final agency action, the mere "anticipation of a future violation is not sufficient to make a claim ripe." *Brocade Commc'ns Sys., Inc. v. United States*, 120 Fed. Cl. 73, 79 (2015). Without standing to bring a pre-award challenge to a corrective action, a protestor's "failure to pursue a judicial remedy … will not create … a new basis for waiver." *Boeing*, 968 F.3d at 1380 (citing *Yakus v. United States*, 321 U.S. 414, 444 (1944)). These ripeness principles demonstrate that AWS's claims are timely because there was no biased, bad faith, or improperly influenced final agency action that AWS could have challenged before DoD completed its re-evaluations and notified AWS of its re-award decision.

**1.** ***AWS Had No Standing to Bring a Pre-Award Challenge to DoD's Execution of the Corrective Action***

AWS did not have standing, prior to the re-award, to challenge DoD's execution of the corrective action. A corrective action is "interlocutory in nature," and a "plaintiff ha[s] neither standing nor a ripe claim" to challenge the execution of the corrective action until "the technical determinations are applied in a best-value analysis and an award . . . decision." *Technatomy Corp. v. United States*, 144 Fed. Cl. 388, 391-392 (2019); *see also Eskridge Res. Corp. v. United States*, 92 Fed. Cl. 88, 95 (2010) ("[C]laims related to the outcome of [an] ongoing corrective action must be dismissed as not ripe for judicial review."); *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 150 (2010) (distinguishing between challenges to "the results of the corrective action" and challenges to the "decision to take corrective action in the first place," and finding only the latter is ripe in a pre-award context).[5]

---

[5] Microsoft relies on *Oracle America, Inc. v. United States*, 144 Fed. Cl. 88 (2019), to argue that "*pre-award* protests alleging bias and conflicts of interest … are justiciable before the agency

Any concerns AWS might have had about potential bias, bad faith, or improper influence in DoD's execution of the corrective action did not make such claims ripe before DoD completed the corrective action. As this Court has recognized time and again, claims alleging that agency officials "will not act in good faith in executing the corrective action" are not ripe when the corrective action is ongoing, for they "raise[] purely hypothetical arguments about future events that might or might not occur." *Square One*, 123 Fed. Cl. at 329 (internal alteration marks omitted) (finding that pre-award challenge to corrective action as biased pretext for affording awardee an additional opportunity to correct its proposal was not ripe); *see also Brocade*, 120 Fed. Cl. at 80 ("When an action depends on contingent events that may not occur as anticipated, … the claim is unfit for judicial review."); *Eskridge*, 92 Fed. Cl. at 94–95 (dismissing challenge to agency's corrective action as unripe, but holding that "[i]f at the end of that process the record shows that [the agency] did not properly carry out the corrective action by conducting a proper re-evaluation of the proposals, [the protestor] will have an opportunity to challenge the decision after it is made"); *FirstLine Transp. Sec., Inc. v. United States*, 107 Fed. Cl. 189, 207 (2012) (challenges to evaluation process are "premature" because courts "must presume that [agency] officials will act in good faith").

Yet again, Defendants conveniently ignore these directly applicable precedents, which confirm AWS's claims are timely. In *Square One,* the plaintiff brought a post-award protest to the

---

makes a new award decision" (MS Br. at 31), but this argument is based on a misreading of *Oracle*. In that case, DoD's elimination of Oracle from competition based on its failure to meet certain gate criteria was a final agency action. *Oracle*, 144 Fed. Cl. at 111-12. Oracle's challenges regarding the alleged conflict of interest were ripe because Oracle argued the gate criteria "would have been drafted differently if the agency had not employed a single award strategy," which "in turn, depend[ed] … on whether the single award determination was tainted" by a conflict of interest. *Id.* at 112.

General Services Administration's evaluation of proposals for the procurement of armored vehicles. 123 Fed. Cl. at 310. Prior to Square One filing its protest at the Court, GSA had agreed to take corrective action in response to Square One's earlier GAO protest by cancelling the award, revising the solicitation, and inviting offerors to resubmit proposals. *Id.* at 318-19. Square One's complaint before the Court challenged GSA's original evaluations and award, as well as GSA's proposed corrective action. *Id.* at 319. The Court found that Square One's challenge to the original evaluations was moot in light of GSA's decision to take corrective action, *id.* at 325-26, and held that its challenge to GSA's corrective action was not ripe, *id.* at 325-330.

In finding Square One's challenge to the corrective action premature, the Court noted that Square One would be able to "raise any concerns regarding its ability to comply with the amended solicitation in a pre-award bid protest." *Id.* at 329. It further held that Square One's bias allegation that the "decision to reprocure the Solicitation is merely a pretext for affording [the awardee] an additional opportunity to correct its proposal" was unripe in light of the strong presumption that "government officials act correctly, honestly, and in good faith when considering bids," and because "[a]ny allegation that GSA's officials will not act in good faith in *executing the corrective action*, which includes re-procuring the requirement, raises purely hypothetical arguments about future events that [might] or [might] not occur." *Id.* (internal quotations omitted) (emphasis added).

AWS's claims fall squarely within the ambit of this Court's holding in *Square One*. Here, DoD has voluntarily taken corrective action. It amended the solicitation and invited offerors to submit proposal revisions. Had AWS filed a pre-award protest that DoD *might* not act in good faith in conducting the proposal evaluations, its claims would have been unripe. Instead, as it must, AWS presumed that DoD would act in good faith, and timely protested when the post-award

debriefing and administrative record revealed DoD allowed bias, bad faith, and improper influence to sway the evaluations and re-award decision.

The Court's decision in *Square One* logically follows prior precedent. In *Eskridge*, the plaintiff filed a post-award GAO protest to a contract awarded by the U.S. Army Corps of Engineers ("USACE") to provide force protection operational support services. 92 Fed. Cl. at 88. USACE took corrective action by agreeing to re-evaluate the technical proposals, and Eskridge filed a new complaint alleging violations in USACE's original evaluations of its proposal and a violation of the Competition in Contracting Act based on USACE potentially allowing the awardee to submit a modified proposal that included former Eskridge personnel during the re-evaluation of proposals. *Id.* at 93.

USACE argued that the claims regarding the original award and evaluations should be dismissed as moot, and that the claims regarding the pending corrective action and re-evaluation process must be dismissed as unripe. *Id.* The Court agreed, finding the claims related to the original award moot and the claims regarding "speculative and potential improprieties in the re-evaluation process" of USACE's corrective action to be premature. *Id.* at 94. In so holding, the Court noted that it was "required to assume that the Government [would] carry out the corrective action in good faith," *id.* at 95 (internal quotation omitted), and that Eskridge would "have an opportunity to challenge the decision after it is made" if "at the end of the process the record shows that USACE did not properly carry out the corrective action by conducting a proper re-evaluation of proposals," *id.*

That is precisely what AWS has alleged here. The fact that AWS brought its initial protest before this Court and the Government sought remand, as opposed to AWS filing a GAO protest that was mooted by the Government filing a Notice of Corrective Action that resulted in dismissal,

makes no difference.  Here, as in *Eskridge*, the time to challenge the *execution* of the corrective action *process* is "at the end of that process" when the "record shows" DoD "did not properly carry out the corrective action."  *See id.*

These ripeness principles illustrate exactly why AWS did not waive Count 4:  AWS had no standing to bring any challenge to DoD's execution of its corrective action until after DoD completed the corrective action and affirmed its award to Microsoft.  Up to that point, DoD had conceded there was "substantial and legitimate" concern about the propriety of its original award to Microsoft (ECF No. 177 at 3), and the effect of its corrective action was to withdraw DoD's erroneous original award decision to Microsoft and give itself an opportunity to re-conduct its evaluation anew and in light of the concerns that AWS raised in its Amended Complaint.

Moreover, Defendants have not identified exactly what they believe AWS *should* have done to challenge the corrective action in a pre-award context to preserve its claims.  At most, the Government argues AWS should have objected to the fact that the corrective action "did not include measures designed to address [its bias] concerns."  Gov. Br. at 30.  This argument directly contradicts the positions the Government took when it urged this Court to grant voluntary remand. *Cf.* ECF No. 185 at 4, 15 (stating DoD would use the corrective action to—"in good faith"— "reconsider its evaluation and source selection decision" and DoD was "commit[ed] to fairly reconsider[ing] its decisions in light of AWS's allegations").  The Government even invoked its "entitle[ment] to a presumption of good faith and regularity," which the Government declared was "at its zenith."  *Id.* at 14.  In essence, the Government argued AWS's concerns were premature because they assumed DoD would act in bad faith in undertaking corrective action.  Yet now, post-award, the Government argues the exact opposite—that AWS *should have assumed* DoD would act in bad faith.

Defendants cannot have it both ways. AWS had every right—and, indeed, was required as a matter of law—to rely on the presumption that DoD officials would "carry out the corrective action in good faith." *Square One*, 123 Fed. Cl. at 329. Defendants' position that AWS had an affirmative duty to protest based on an *assumption* of bad faith would render the precedential presumption of good faith a nullity, and wields *Blue & Gold* as a shield from judicial scrutiny in a way never intended by the Federal Circuit or this Court.

### 2. *Count 4 Was Not Ripe to Bring Pre-Award Because It Is Not a Challenge to the Scope of DoD's Corrective Action*

Count 4 alleges that bias, bad faith, and improper influence compromised DoD's re-evaluations and re-award decision—it does not, as Defendants claim, challenge the "scope" of DoD's corrective action. Although the Federal Circuit has not applied its *Blue & Gold* waiver rule to corrective action, the Court of Federal Claims has extended the waiver rule to certain situations in which a protestor did not protest the announced scope of an agency's corrective action. *Ace-Fed. Reporters, Inc. v. United States*, No. 20-636, 2020 WL 5640598, at *20 (Fed. Cl. Sept. 22, 2020) (citing cases); *Jacobs Technology Inc. v. United States,* 131 Fed. Cl. 430, 448 (2017) (distinguishing protest to "announced scope" of corrective action from challenge to execution of corrective action raised in *Square One*).

Defendants attempt to downplay the critical distinction between a timely challenge to the *scope* of corrective action and a timely challenge to the *execution* of corrective action. *See* Gov. Br. at 25 ("[t]his claimed distinction is, in fact, no distinction at all"); MS Br. at 30, 31 ("AWS attempts to cloak its latest bias allegations in the re-evaluation results. . . AWS cannot rely on

24

purported errors in the remand evaluation to maneuver around *Blue & Gold* . . .").[6]  But Defendants' failure to appreciate a distinction does not mean it does not exist.  Because DoD did not articulate any limits on the scope or "terms" of its corrective action, and in fact touted its "Clearly Stated . . . Intent To Reconsider Its Decision In Light Of *Each* Of AWS's Protest Allegations,"  ECF No. 185 at 13 (emphases added), AWS had no basis to complain about the scope of corrective action.

Thus, the cases Defendants have cited about the ripeness of certain pre-award protests are inapposite.  Those cases involve challenges based on bias that manifests in the *scope* of the corrective action, whereas Count 4 alleges bias that manifests in the *execution* of the corrective action through the evaluation of proposals and final re-award decision.  In *Jacobs* (*see* Gov. Br. at 18–19, 29–30; MS Br. at 31–32), the court determined the protestor's challenge that the "scope of the corrective action" was "not broad enough to resolve the alleged bias on the part of the procurement officials" was a justiciable issue ripe for judicial review.  *Jacobs*, 131 Fed. Cl. at 449.  However, the *Jacobs* court was careful also to state that arguments about the *execution* of the corrective action were "not ripe" because the "corrective action only contemplates reevaluation at this time," and the agency's "later execution of the corrective action … is a future event that is not ripe for review."  *Id.* at 448.

---

[6]  Microsoft's reliance on *Jacobs* only serves to underscore why AWS's claims of bias, bad faith, and improper influence in the re-evaluations are timely asserted.  While *Jacobs* stated that "errors in an evaluation process *do not alone suffice* to demonstrate bad faith or permit discovery," 131 Fed. Cl. at 455, (emphasis added), that is not what AWS alleges in the Amended Complaint.  Nor, as the Government argued, Gov. Br. at 30, would President Trump's tweets or the corrupt environment in which the re-evaluations were carried out suffice alone to demonstrate bad faith or bias on the part of the source selection team.  Rather, it is the *combination* of an environment designed to facilitate improper motives and the *manifestation* of those improper motives in the evaluation errors that give rise to AWS's timely claims.  *See* Am. Compl. at ¶¶ 12, 357, 404-12.

Similarly, in *Anham FZCO v. United States*, 144 Fed. Cl. 697 (2019) (Campbell-Smith, J.) (*see* Gov. Br. at 30; MS Br. at 23-24 26-28), this Court held the protestor had waived challenges to the scope of the agency's corrective action by failing to bring a pre-award protest. This Court noted the agency "announc[ed] the scope of the intended corrective action" by identifying the specific factor that would be re-evaluated—which did not include the factor that the plaintiff believed the agency had failed to properly evaluate in its original award decision. *Anham*, 144 Fed. Cl. at 719. Because the plaintiff affirmatively knew the agency's corrective action would not include re-evaluation of its concerns, "plaintiff was on notice that it should have raised the issue" in response to the notice of the corrective action. *Id.*

Here, Count 4 challenges the execution of DoD's corrective action, not its scope. *See* Am. Compl. at ¶¶ 401-12. Unlike in *Anham* (where the agency expressly limited the scope of its corrective action), the Government repeatedly stated that its corrective action would address *each* of the challenges raised in AWS's original protest, "without limitation" and in "good faith." *See, e.g.*, ECF No. 185 at 13. The terms of the solicitation, as amended on remand, and scope of the corrective action, as articulated by DoD, never suggested that DoD would implement a remand infected with bias. It was not until the evaluations were known to AWS upon completion of the corrective action that AWS had a ripe claim. *Jacobs* expressly holds that such challenges to a "future event" are not ripe for review. 131 Fed. Cl. at 448.

**C.**     ***Blue & Gold* Does Not Apply Because Count 4 Challenges a Latent, Not Patent, Error**

AWS has not waived Count 4 for the additional reason that it clearly challenges a latent— not patent—error. As acknowledged by Defendants and universally recognized by the cases interpreting *Blue & Gold*, only *patent* errors can be waived. *See Blue & Gold*, 492 F.3d at 1313; Gov. Br. at 14; MS Br. 20. An error is patent if it is "an obvious omission, inconsistency, or

discrepancy of significance." *Per Aarsleff*, 829 F.3d at 1312 (internal quotation marks omitted). By contrast, a latent error is one that is "hidden or concealed" and "not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification." *Id.* (internal quotation marks omitted). "No doctrine or case requires a potential protestor to be clairvoyant or to police an agency's general noncompliance with the FAR on the possibility that such misfeasance might become relevant in a protest." *NetStar-1 Gov. Consulting, Inc. v. United States*, 101 Fed. Cl. 511, 523 n.17 (2011).

DoD's corrective action did not involve any "obvious omission, inconsistency, or discrepancy of significance" on its face. To the contrary, the Government went to considerable lengths to reassure the Court and AWS that DoD's reconsideration of its award decision would be "without limitation" and conducted in "good faith." *See, e.g.*, ECF No. 177 at 3; ECF No. 185 at 13, 15. It further added that DoD would "treat[] both offerors equally and fairly" and "reconsider its procurement decisions under [a] fair and impartial paradigm." ECF No. 185 at 4. Finally, the Government invoked its "entitle[ment] to a presumption of regularity and good faith." *See* ECF No. 185 at 6, 14; ECF No. 199 at 6. There was nothing patently biased about the proposed corrective action that imposed any affirmative duty on AWS to challenge it, and AWS was able to, and required to, rely on the presumption of good faith afforded to Government decisionmakers. *FirstLine Transp.*, 107 Fed. Cl. at 207.

Defendants' motions to dismiss do not identify any patent error in the corrective action that would have charged AWS with a duty to act. *First*, Defendants' suggestion that it should have been patently obvious to AWS that the corrective action would not remediate AWS's concerns about bias and bad faith—because DoD "never made any representation that DoD would take

action to address AWS's bias allegations"—is specious.  Gov. Br. at 29; *see also* MS Br. at 27.
DoD agreed to reconsider all of its technical evaluations, without limitation, in good faith.  *See
supra*, Section I.B.  It goes without saying that acting in good faith *requires* a lack of bias, bad
faith, improper influence, and conflict of interest.  Moreover, AWS alleged in its original
Complaint and prior briefing that the technical evaluations were inexplicable absent the bias and
bad faith that poisoned the original award to Microsoft.  ECF No. 1 ¶¶ 13, 27, 83.  To the extent
DoD committed to AWS and this Court that it would reconsider the technical evaluations in
response to AWS's concerns, ECF No. 185 at 13, such re-evaluation necessarily required DoD to
address the bias and bad faith that had infected the original source selection.

*Second*, Defendants contend that publicly available information—like President Trump's
public statements and tweets—revealed a "patent" error that charged AWS with a duty to protest
even before AWS filed its original bid protest in October 2019.  *See* MS Br. at 25–26, 30-31; Gov.
Br. at 27–28.  This argument fails on so many levels.  The President's bias against AWS is not by
itself damning from a procurement integrity perspective.  Those tweets did not modify the terms
of the solicitation, and nothing in the solicitation nor the Government's announced corrective
actions indicated that DoD would treat AWS unfairly.  Instead, as the Government has previously
acknowledged in this litigation, bias only becomes actionable when that bias is wielded in a way
that violates procurement rules and regulations.  *See* ECF No. 140 at 15 ("[T]he relevant question
in this protest is not whether the President dislikes Amazon, but rather whether the source selection
officials . . . exhibited bias against AWS in this procurement.").

Thus, unless the DoD evaluators actually allowed bias to compromise the integrity of their
evaluations, AWS had nothing to protest.  Moreover—and more fundamentally—whatever may
be Defendants' views about the timeliness of the bias-related allegations in AWS's original

Complaint, "those issues were rendered moot" when DoD "undert[ook] corrective action that w[ould] supersede and potentially alter its prior source selection decision." *Square One*, 123 Fed. Cl. at 325 (internal quotation marks omitted). The remand and corrective action gave DoD every opportunity to remove the bias that motivated the original evaluations from the process. *See* Am. Compl. ¶ 403. This is particularly true when DoD was aware of AWS's specific allegations of bias when DoD represented it would undertake a corrective action in "good faith." *See, e.g.*, ECF No. 177 at 3, ECF No. 185 at 14-15.

*Third*, contrary to Microsoft's suggestion, the fact that DoD did not commit to removing the conflicted evaluators from the source selection team is not evidence of a patent error. *See* MS Br. at 27. Any concerns relating to the composition of the source selection team (and whether DoD would change any of the members of the source selection team for the re-evaluations) are not patent errors that AWS could have discovered with "reasonable and customary care." *Per Aarsleff A/S v. United States*, 829 F.3d at 1312. The identity of the members of the source selection team is source selection information that cannot be revealed to an offeror. *See* FAR 3.104-3 (prohibiting disclosure of source selection information); FAR 2.101 (defining "source selection information" to include "source selection plans,"), AR Tab 114 at 6761, AR Tab 126 at 8537, AR Tab 205 at 57898, AR Tab 305 at 64381, AR Tab 573 at 181337 (including the composition of the source selection team in the source selection plan).

Moreover, AWS endeavored to take reasonable care by asking about the composition of the source selection team on remand in response to Amendment 0007. *See* AR Tab 609 at 181611 (AWS asking DoD to whether there "[h]ave … been any changes to the composition of the evaluation or source selection teams" following the remand). DoD refused to divulge information about personnel, *see id.*, and AWS was entitled to the presumption that the agency would staff the

29

source selection team in a manner that would ensure the evaluations were conducted free from bias and in compliance with the FAR. *Blue & Gold* does not impose upon AWS a duty to protest issues it did not know, and could not have known—*i.e.*, latent errors. *See NetStar-1*, 101 Fed. Cl. at 523 n.17.

AWS learned that improper influence, bias, and bad faith during the *execution* of the corrective action affected the re-evaluations only after the award, through its receipt of the debriefing materials. The manifestation of bias and bad faith in the remand process could not have been discovered by reasonable and customary care. Accordingly, Count 4 is necessarily a challenge to a latent, and not patent, error, and cannot have been waived under *Blue & Gold*.

**D.     The Policy Concerns Animating *Blue & Gold* Would Be Undermined if Waiver Were Found Here**

The Government and Microsoft assert that the policy concerns underpinning *Blue & Gold* would be best served by extending the doctrine to waive AWS's claims. The exact opposite is true: the policy concerns animating *Blue & Gold* were served by AWS's actions in this protest. *Blue & Gold* aims to encourage offerors to surface solicitation defects so that the government has the opportunity to fix them. Here, AWS put the Government on notice of potential bias through its initial protest, and the Government did, in fact, take the opportunity to remedy its evaluation through corrective action. The Government failed to remedy the defect in its corrective action, but that failure was not revealed until after the corrective action was completed. The Government effectively argues that *Blue & Gold* required AWS to ignore longstanding precedent, presume that Government officials would act in bad faith, and protest based on an *assumption* that bias would once again infect the procurement. *Blue & Gold* was not designed to foster such unnecessary and premature litigation.

30

*Blue & Gold*'s waiver rule was designed to prevent litigants who knew or should have known about patent defects in the terms of a solicitation from raising post-award challenges to those defects. The doctrine is premised on the theory that because the litigants should have been able to identify the defects with "reasonable and customary care" and, because the defects were patent, they could have been corrected before the contract was awarded. *See Per Aarsleff*, 829 F.3d at 1312-13. As this Court correctly recognized in *Peraton* (which Defendants misconstrue and seek to expand beyond the unique facts of that case), *Blue & Gold* "forecloses the 'wait and see approach'" where offerors seek to "'sit on their rights to challenge what they believe is an unfair *solicitation*…'" 146 Fed. Cl. at 102 (emphasis added) (internal citations omitted). By contrast, for an *evaluation* tainted by bias and bad faith, the proof is in the pudding. Absent some concrete indication of bias from the source solicitation team, the effect is not discoverable with "reasonable and customary care" until it *manifests* in a skewed evaluation. *See Square One*, 123 Fed. Cl. at 329–30 (a claim based on an "appearance of impropriety and a concerted effort to award to one offeror over the others" is not ripe prior to award). Under the Government's proposed expansion of the *Blue & Gold* waiver doctrine, the mere suspicion of bias, without any proof of its manifestation in the procurement process, would *require* contractors to protest—on pain of waiver.

This is precisely why extending the waiver doctrine to claims of bias would result in a flood of litigation after every tweet or negative news cycle as protestors seek to preserve their claims (only to be told that the claims are not ripe). Such litigation would be premature, time-consuming, and fruitless, which would defeat *Blue & Gold*'s goal of promoting efficiency. *See* 492 F.3d at 1313–14; *see also Peraton*, 146 Fed. Cl. at 102 (noting "[b]id protests consume valuable court resources"). Furthermore, this "heads-I-win, tails-you-lose" manner in which Defendants try to apply the waiver rule here "has no merit" because it is "tantamount to denying

judicial review," *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 91–92 (2011), of serious, well-founded bias allegations, and undermines the Federal Circuit's goal of "fairness" in creating this equitable waiver doctrine, *see Synergy*, 133 Fed. Cl. at 738.

Finally, adjudication of AWS's timely claims regarding the bias, bad faith, and/or improper influence that motivated the otherwise inexplicable technical evaluation errors is necessary to ensure the integrity of the procurement process and transparency in government decision-making. *See generally* ECF Nos. 152-1, 157-1. The technical evaluation errors, which independently require the JEDI re-award to Microsoft to be set aside, are a symptom of the disease that motivated those errors in the first place. The policy implications of Defendants' expansive interpretation of *Blue & Gold* require the Court to reject it.

**E.     Even if *Blue & Gold* Did Apply, AWS Had Good Cause Not to Challenge the Execution of Corrective Action Prior to Award**

Even if the Court were to find that *Blue & Gold* applies to Count 4 (though it should not), and that AWS was untimely in filing its bias claims (though it was not), *Blue & Gold* recognizes an exception to its waiver rule where the plaintiff has good cause for not earlier raising its otherwise waived challenge. *See Blue & Gold*, 492 F.3d at 1315; *see also COMINT*, 700 F.3d at 1382 ("[W]here bringing the challenge prior to the award is not practicable, it may be brought thereafter."). To the extent AWS's bias or bad faith claims are found untimely, AWS had good cause to not protest the corrective action prior to award because it was impracticable to do so given the lack of visibility into DoD's evaluation prior to receipt of the debriefing materials, and the presumption of good faith afforded to government decisionmakers in conducting corrective actions.

Moreover, application of *Blue & Gold* to the facts of this case would lead to an inequitable result. *Cf. Linc Gov't Servs., LLC*, 96 Fed. Cl. at 698 (noting *Blue & Gold* is "an equitable, rather

than jurisdictional bar"). The Government's and Microsoft's contentions that AWS should have known that on remand DoD would engage in bias, bad faith, improper influence, or conflict of interest are completely contrary to the Government's representations in the remand proceedings. *Blue & Gold* should not be applied to penalize AWS for its reliance on the Government's representations of good faith and the law's presumption of regularity. *See Trustees in Bankruptcy of N. Am. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010); *First Mortg. Corp. v. United States*, 142 Fed. Cl. 164, 171-72 (2019).

Finally, Defendants' position would forever insulate the Government from any review of the bias, bad faith, and improper influence claims AWS has alleged here. The ultimate aim of bid protest litigation is to protect the integrity of the procurement process and foster transparency and public trust in government decision-making. Defendants' attempt to use an equitable remedy to shut down any inquiry into AWS's allegations is anathema to those goals.

## CONCLUSION

For the foregoing reasons, Defendants' motions should be denied.

Dated: November 20, 2020

Respectfully submitted,

By: _____

Kevin P. Mullen
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC  20006-1888
Telephone: 202.887.1500
Facsimile: 202.887.0763

*Attorney of Record for Plaintiff*
*Amazon Web Services, Inc.*

*Of Counsel:*

J. Alex Ward
Sandeep N. Nandivada
Caitlin A. Crujido
Alissandra D. Young
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC  20006-1888

Andrew S. Tulumello
Daniel P. Chung
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, D.C.  20036-5306

Theodore J. Boutrous, Jr.
Richard J. Doren
Eric D. Vandevelde
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA  90071-3197

34