**REDACTED VERSION**

No. 19-1796C
(Judge Patricia E. Campbell-Smith)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

AMAZON WEB SERVICES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MICROSOFT CORPORATION,

Intervenor-Defendant.

DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION
TO DISMISS, IN PART, PLAINTIFF'S AMENDED COMPLAINT

OF COUNSEL:

MICHAEL G. ANDERSON
BENJAMIN M. DILIBERTO
Assistant General Counsel
Washington Headquarters Service &
Pentagon Force Protection Agency
Office of General Counsel
Department of Defense

TYLER J. MULLEN
CCPO Legal Advisor
Assistant General Counsel
Defense Information Systems Agency
Office of the General Counsel

JEFFREY BOSSERT CLARK
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

PATRICIA M. McCARTHY
Assistant Director

ANTHONY F. SCHIAVETTI
Senior Trial Counsel
RETA BEZAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044

December 1, 2020

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

I.  AWS's Attempts To Narrow The *Blue & Gold Fleet* Waiver Rule
    Are Unavailing...........................................................................................2

    A.  AWS Fails To Meaningfully Distinguish Numerous Applications
        Of The Wavier Rule To Alleged Procurement Defects Other
        Than Solicitation Terms..................................................................2

    B.  The Cases AWS Cites Do Not Support Its Narrow Construction Of
        The *Blue & Gold Fleet* Waiver Rule ......................................8

II. AWS Entirely Ignores Its 2019 Waiver, Which Has Not Been Cured ............................10

III. In Count Four, AWS Challenges Not The Evaluations, But Terms Of
     The Competition And The Scope Of Corrective Action ....................................12

IV. AWS Could Have Brought Its Bias Allegations Prior To Evaluation
    And Award..................................................................................................15

    A.  Standing Is Not At Issue Here ..................................................15

    B.  AWS's Bias Claims Were Ripe Prior To Award..................................16

    C.  AWS's Own Allegations Demonstrate That Any Supposed Defect
        Was Patent ..............................................................................17

V.  The Equitable And Policy Rationales Of *Blue & Gold Fleet* Support
    A Finding Of Waiver ...................................................................................19

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Adams and Associates, Inc.*,
    B-417120; B-417125 2019 CPD ¶ 21 (Comp. Gen. Jan. 16, 2019) ...................................... 5, 6

*Anham FZCO v. United States*,
    144 Fed. Cl. 697 (2019) ................................................................................................ 15, 17

*Blue & Gold Fleet v. United States*,
    492 F.3d 1308 (Fed. Cir. 2007) ....................................................................................... *passim*

*Boeing Co. v. United States*,
    968 F.3d 1371 (Fed. Cir. 2020) ............................................................................................. 8, 9

*Caddell Construction Co. v. United States*,
    125 Fed. Cl. 264 (2016) ......................................................................................................... 9, 10

*Ceres Env't Servs., Inc. v. United States*,
    97 Fed. Cl. 277 (2011) ................................................................................................................ 3

*COMINT Sys. Corp. v. United States*,
    700 F.3d 1377 (Fed. Cir. 2012) ....................................................................................... *passim*

*Communication Construction Services v. United States*,
    116 Fed. Cl. 233 (2014) ............................................................................................................. 4

*Concourse Group, LLC v. United States*,
    131 Fed. Cl. 26 (2017) ............................................................................................................... 4

*CRAssociates, Inc. v. United States*,
    102 Fed. Cl. 698 (2011) ............................................................................................................. 3

*Draken International, Inc. v. United States*,
    120 Fed. Cl. 383 (2015) ......................................................................................................... 9, 10

*Four Points by Sheraton v. United States*,
    63 Fed. Cl. 341 (2005) .............................................................................................................. 12

*Info. Tech. & Applications Corp. v. United States*,
    316 F.3d 1312 (Fed. Cir. 2003) ..................................................................................... 12, 18, 19

*Inserso Corp. v. United States*,
    961 F.3d 1343 (Fed. Cir. 2020) ..................................................................................... 2, 3, 9

*Jacobs Technology Inc. v. United States,*
　131 Fed. Cl. 430 (2017) ...................................................................................... *passim*

*Nat'l Am. Ins. Co. v. United States,*
　498 F.3d 1301 (Fed. Cir. 2007) ................................................................................. 2

*Per Aarsleff A/S v. United States,*
　829 F.3d 1303 (Fed. Cir. 2016) ............................................................................... 20

*Peraton Inc. v. United States,*
　146 Fed. Cl. 94 (2019) .............................................................................................. 6

*Square One Armoring Serv., Inc. v. United States,*
　123 Fed. Cl. 309 (2015) ........................................................................................... 16

*Sys. Appl. & Techs., Inc. v. United States,*
　691 F.3d 1374 (Fed. Cir. 2012) ............................................................................... 16

*Technatomy Corp. v. United States,*
　144 Fed. Cl. 388 (2019) ........................................................................................... 16

*Weeks Marine, Inc. v. United States,*
　575 F.3d 1352 (Fed. Cir. 2009) ............................................................................... 16

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-1796C |
| | ) | (Judge Patricia E. Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| and | | |
| MICROSOFT CORPORATION, | ) | |
| Intervenor-defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED
## MOTION TO DISMISS, IN PART, PLAINTIFF'S COMPLAINT

Defendant, the United States, respectfully submits this reply in support of its request that

this Court dismiss Count Four of the amended complaint filed by plaintiff, Amazon Web

Services, Inc. (AWS), pursuant to Rule 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), because AWS has waived the allegations contained therein. AWS's

response to our motion misconstrues the law and contorts its pleadings in an attempt to escape

the consequences of its decision twice to withhold its allegations of bias affecting the

Department of Defense's (DoD) Joint Enterprise Defense Infrastructure (JEDI) contract until

after the award decision was made and, later, reaffirmed. But AWS's efforts cannot conceal the

fundamental flaw in its bias allegations. Because AWS was aware, well before award, of the

(scant) facts on which it bases these allegations, it cannot undo its waiver by instead alleging that

evaluation judgments with which it disagrees manifest this alleged bias. Although AWS may

continue to challenge these evaluations via Counts One, Two, and Three of its amended

complaint, AWS has waived the allegations of Count Four, which should be dismissed.

I.      AWS's Attempts To Narrow The *Blue & Gold Fleet* Waiver Rule Are Unavailing

   A.      AWS Fails To Meaningfully Distinguish Numerous Applications Of The Waiver
           Rule To Alleged Procurement Defects Other Than Solicitation Terms

   In its response to our renewed motion, AWS again attempts to narrow the scope of the

*Blue & Gold Fleet* waiver rule, despite recent binding Federal Circuit precedent clarifying the

broad application of the rule.  *See Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir.

2020) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007)).

AWS wrongly dismisses a large and growing body of precedent in which the Federal Circuit and

this Court have applied the *Blue & Gold Fleet* waiver rule to challenges to alleged procurement

defects other than solicitation terms, relying on a few older, inapposite cases.  As we explained

in our motion and detail further below, AWS's constrained view of the application of the waiver

rule is plainly inconsistent with controlling precedent.

   As AWS acknowledges, the Federal Circuit has made clear that the rationale underlying

the *Blue & Gold Fleet* waiver rule extends to "all situations in which the protesting party had the

opportunity to challenge a solicitation before the award and failed to do so."  *COMINT Sys.*

*Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012).  In *COMINT*, the Court was

explicit that the rationale for the waiver rule was broader still, stating that "[t]he same policy

underlying *Blue & Gold* supports its extension to *all pre-award situations*."  *Id*. at 1382

(emphasis added).  AWS seeks to dismiss this language as dicta, Pl. Resp. at 15, but the Federal

Circuit's analysis provides important insight into the fundamental rationale underpinning the

waiver rule.  *See Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1306 (Fed. Cir. 2007)

("Dicta . . . are . . . not precedential (although [they] may be considered persuasive).") (internal quotation marks and citation omitted).

Citing *COMINT*, the Federal Circuit expressly reaffirmed this rationale in its recent decision in *Inserso*.  961 F.3d at 1349.  AWS argues that *Inserso* is inapposite because Inserso failed to timely protest express solicitation terms.  Pl. Resp. at 16.  AWS is incorrect.  Inserso brought two main challenges, alleging that the agency failed to identify and mitigate an unequal access to information organizational conflict of interest (OCI) and that the agency failed to treat it fairly and equally.  961 F.3d at 1348.  Both challenges stemmed from Inserso's allegation that the agency improperly disclosed source selection information – chiefly total evaluated prices of offerors in a similar parallel competition – to some offerors but not others.  *Id.*  That the Court identified the terms of two different solicitations to establish that Inserso was on notice of the basis of its challenge well before award did not convert Inserso's protest into a challenge to express solicitation terms.  Rather, Inserso challenged the agency's conduct, not its solicitation. *Id.*  Moreover, although the dissent in *Inserso* expressed concern about extending the *Blue & Gold Fleet* waiver rule to non-solicitation challenges,  *id.* at 1358, the majority plainly disagreed, noting that "[t]he Court of Federal Claims has correctly applied this rule in organizational-conflict-of-interest cases."  *Id.* at 1349 (citing *Ceres Env't Servs., Inc. v. United States*, 97 Fed. Cl. 277, 310 (2011), which held that "[a]lthough the instant case does not involve a 'patent error' in a solicitation, it involves an obvious procurement procedure which Plaintiff knew was being applied and chose not to challenge prior to submitting its proposal in the recompetition.").

AWS seeks to distinguish this line of OCI cases by characterizing the challenges brought in those cases as challenges to solicitation terms.  Pl. Resp. at 16-17.  But a careful examination of these cases establishes that most of the OCI allegations at issue were no more related to the

solicitation terms than are AWS's allegations in this case.  It is true that in *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 712 (2011), *aff'd* 475 F. App'x 341 (Fed. Cir. 2012), the plaintiff had requested amendments to the solicitation to address an unequal access to information OCI that it alleged had arisen, and that the Court found that the plaintiff was required to file its protest when the agency refused to include such amendments.  *Id*.  But the Court also went further, explaining that the plaintiff could not "escape this waiver rule by asserting that, wholly apart from the terms of the RFP, the Army should have identified and mitigated an unequal information OCI," because "the rationale of *Blue and Gold* leads to the conclusion that a contractor should not be allowed to protest an agency's failure to identify and mitigate an OCI when the contractor knew about the alleged OCI from the start, but failed to assert it, via protest, prior to the award."  *Id*.  This description of the application of the *Blue & Gold Fleet* rationale squarely encompasses AWS's allegations here, which include both conflict of interest claims as well as bias and bad faith claims that are a close analog to OCI allegations.

AWS alleges that the Court's decision in *Concourse Group, LLC v. United States*, 131 Fed. Cl. 26, 29-30 (2017), was also "based on the Government's failure to amend the terms of the solicitation[] to address concerns about alleged conflicts of interest arising out of the close relationship between the agencies and the incumbents."  Pl. Resp. at 17.  The text of the opinion, however, reveals little link between the plaintiff's OCI allegations and solicitation terms.  131 Fed. Cl. 26, 29-30.  Instead, the Court held that "[l]ogically, the waiver rule also applies where a protester fails to raise OCI claims before the close of the bidding process," *id*. at 29, and that the plaintiff in that case was aware of the basis of its claims that the terms of the competition would unfairly favor the incumbent contractor prior to award.  *Id*. at 30.

Similarly, in *Communication Construction Services v. United States*, 116 Fed. Cl. 233, 263-64 (2014), the Court recognized that the Federal Circuit in *COMINT* had "expanded *Blue & Gold* by applying its reasoning 'to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so,'" and had "recognized that '[t]he same policy underlying *Blue & Gold* supports it[s] extension to all pre-award situations.'" *Id*. at 259 (quoting *COMINT,* 700 F.3d at 1382). The Court applied the waiver rule in holding that the plaintiff's OCI allegations, which claimed that a conflict of interest affected not only the development of the solicitation but also the *evaluation of proposals* through participation on the Source Selection Committee, was waived because the plaintiff was aware of the basis of its allegations prior to the deadline for receipt of proposals. *Id*. at 263-64. The Court pointed not only to language of the draft and final solicitations, but also to other communications and public statements at an Industry Day as putting the plaintiff on notice of the basis of its claims prior to the close of the bidding process. *Id*. at 262, 264. The Court's analysis there once again refutes AWS's improperly narrow framework limiting waiver to solicitation terms alone.

In the aspects relevant to the *Blue & Gold Fleet* waiver analysis, AWS's bias allegations track closely with the facts in the OCI cases discussed above, and bear even more striking similarity to the facts in the GAO protest of *Adams and Associates, Inc*., B-417120; B-417125, 2019 CPD ¶ 21 (Comp. Gen. Jan. 16, 2019). In a vain attempt to avoid the clear parallels with *Adams* that we described in our motion, AWS tries to recast its protest allegations. Recognizing that the protestor in *Adams* had alleged that the procurement was "irredeemably flawed in that any agency official . . . who reasonably could have been involved in this procurement is incapable of fairly evaluating the protester's proposals," *id.* at *2, AWS protests that this is "*not what AWS has alleged in Count 4.*" Pl. Resp. at 18. But AWS's amended complaint and other

filings in this case contradict this assertion – that the President's public comments allegedly exhibiting bias against Amazon rendered DoD evaluators unable to fairly evaluate AWS in this procurement – consciously or unconsciously – is *exactly* what AWS is alleging here.  *See, e.g.,* Amended Compl. ¶ 89 ("members of the SST must have understood that any recommendation they made would be both subject to scrutiny from the highest levels, and much more likely to meet with approval if it pleased their superiors"); Amended Compl. ¶ 408 ("President Trump made known . . . his fervent desire that AWS not be awarded the JEDI Contract . . . DoD officials . . . *consciously or unconsciously*[] adopted the President's bias as their own.") (emphasis added).  AWS argues that it did not know that the bias it alleges was exhibited through these public statements would harm it until it became aware that DoD had selected Microsoft for award, but this is the identical argument that the GAO rejected in *Adams*, and the very "roll the dice" approach that the Federal Circuit intended the waiver rule to preclude.

Finally, two additional cases refute AWS's continued insistence that the *Blue & Gold Fleet* waiver rule applies only to solicitation terms.  In *Peraton Inc. v. United States*, 146 Fed. Cl. 94, 102-03 (2019), this Court held that allegations of bad faith conduct were waived.  AWS attempts to distinguish this case based on its unusual facts, where a plaintiff sought simultaneously to preserve a challenge to corrective action and yet stay that challenge until the agency determined whether that corrective action would result in an award to the plaintiff.  Pl. Resp. at 17 n.4; 146 Fed. Cl. at 99.  But unlike the plaintiff in *Peraton*, which at least attempted, albeit clumsily, to preserve its challenge by raising it before the completion of corrective action, AWS neglected altogether to raise any complaint about DoD's corrective action until after it was complete and AWS learned it was again not selected for award.  In *Peraton*, the Court correctly found that, under *Blue & Gold Fleet*, the plaintiff could not hold its allegations of bad faith –

which did not involve solicitation terms – until after it learned whether it was selected for award pursuant to the agency's corrective action.  146 Fed. Cl. at 102-04.  So, too, AWS is precluded, under *Blue & Gold Fleet*, from pursuing its claims that DoD's corrective action was carried out in bad faith only after it learned it was not selected for award.

Similarly, in *Jacobs Technology Inc. v. United States*, 131 Fed. Cl. 430 (2017), the Court examined allegations of bad faith conduct by the agency evidencing a preference for one offeror over another – allegations thematically similar to AWS's allegations in this case.  131 Fed. Cl. at 454-55.  The Court found that bias allegations raised after the award decision had been made – pursuant to corrective action – would have been waived and, thus, were appropriately considered (and, in that case, rejected) prior to award.  *Id.* at 447-48.

AWS attempts to shoehorn the diverse series of cases applying the waiver rule into a cramped framework that suits its own purposes but displays little fidelity to the actual facts or reasoning in those decisions.  Moreover, even under its strained reading of these decisions, AWS's argument fails, because AWS's allegations in this case mirror the allegations in many of those cases.  If those other allegations fit within AWS's interpretation of the *Blue & Gold Fleet* waiver rule, so too must AWS's allegations.  As we describe in our motion, AWS challenges the "terms of the competition" in the same way that the plaintiffs in the cases discussed above challenged the framework under which the competition would be held or, in the GAO's terminology, the "ground rules of the competition."

Put another way, to the extent that the allegations in these cases may be linked back to the solicitation, so too may AWS's allegations.  Despite its denials, the gravamen of AWS's bias claims is that President Trump's public statements about AWS rendered it unable to receive a fair evaluation from DoD source selection officials.

Although AWS now denies that this is the thrust of its allegations and attempts to recast them as solely evaluation challenges, this spin contradicts AWS's amended complaint and other briefing in this case, as we further demonstrate in Section III.  Indeed, the only evidence of this "bias" that AWS cites, aside from public statements and actions of the President and his associates, is evaluation judgments with which AWS disagrees.  But if any evaluation judgment critical of AWS's proposal or laudatory toward Microsoft's is evidence of bias stemming from public comments of the President in 2019 and previous years, then, just as in the OCI cases, AWS had an obligation to insist on solicitation terms, either in the original solicitation or in the amendments that comprised DoD's corrective action on remand, that would eliminate or mitigate any such bias.  Either way, the crucial fact remains that AWS was aware of the (scant) factual basis for its allegations of bias prior to award, and prior to the deadline for receipt of final proposals.  Just as the plaintiffs in these other cases were required to promptly bring challenges to an evaluation and award decision proceeding under circumstances that allegedly advantaged one offeror over another, rather than waiting to see if they would be selected for award, AWS was not permitted to hedge its bets by waiting to see how the procurement turned out and then cry foul only if it was not selected.

B.     The Cases AWS Cites Do Not Support Its Narrow Construction Of The *Blue & Gold Fleet* Waiver Rule

In addition to misreading the numerous instances in which this Court and now the Federal Circuit have applied the waiver rule to challenges not strictly tied to solicitation terms, AWS takes language from a few cases out of context in an attempt to support an impermissibly narrow framework.  None of these cases supports AWS's erroneous interpretation.

For example, AWS cites *Boeing Co. v. United States*, 968 F.3d 1371 (Fed. Cir. 2020), a case arising under the Contract Disputes Act rather than a bid protest.  In *Boeing*, the Federal

Circuit explained that, in applying *Blue & Gold Fleet*, it has generally ruled that "waiver exists in certain circumstances where contract terms contain a 'patent' ambiguity or defect, including an obvious omission, inconsistency, or discrepancy of significance, and the contractor or bidder who later challenges those contract terms in court had not properly raised the problem to the agency during the contract-formation process." *Id*. at 1378 (citing, *inter alia*, *Inserso*, 961 F.3d at 1349–52). But the Court in *Boeing* did not even reach a dispute as to whether the challenge involved patent contract terms, because it held that the agency would have lacked authority to address Boeing's challenge even had it raised it prior to contract formation. *Id*. at 1378. Here, by contrast, had AWS raised its bias allegations before evaluations and source selection were completed, DoD would have had at its disposal at least the same options to address these allegations as this Court does now. To the extent that addressing AWS's allegations is difficult, that owes to their breathtaking breadth, not to any legal impediments akin to those that precluded agency redress of the challenge in *Boeing*.

AWS also cites *Draken International, Inc. v. United States*, 120 Fed. Cl. 383, 393 (2015), alleging "clear similarities" between that case and its allegations. Pl. Resp. at 14-15. But any similarity between the delay allegations in *Draken* and AWS's bias allegations is difficult to detect. In *Draken*, the Court merely concluded that the challenged delay in the procurement process was not apparent from the terms of the solicitation, and was timely under *Blue & Gold Fleet*. 120 Fed. Cl. at 393. The Court's focus was appropriately on when the plaintiff was placed on notice of the basis of its allegations. *Id*. Here, AWS's own allegations make clear that it was aware of the basis of its bias allegations well prior to both the original and reaffirmed decisions to award the JEDI contract to Microsoft. The facts of *Draken* bear little resemblance

to those presented here, and the Court in *Draken* engaged in no lengthy analysis of the limits of the waiver rule that might prove persuasive in this case.

Similarly, AWS's reliance on *Caddell Construction Co. v. United States*, 125 Fed. Cl. 264 (2016), is misplaced.  The Court in that case, again in a brief analysis of little relevance to the present case, found that the waiver rule was inapplicable because the plaintiff had raised a "straightforward challenge to [the agency's] evaluation."  *Id*. at 272.  As with *Draken* and unlike the cases on which we rely, the allegation at issue in *Caddell* bears no resemblance to the allegations at issue in our motion to dismiss.

II.     AWS Entirely Ignores Its 2019 Waiver, Which Has Not Been Cured

In its response, AWS fails to meaningfully respond to our assertion that it waived its bias allegations by failing to bring them prior to the original, October 2019 decision by DoD to award the JEDI contract to Microsoft.  Def. Mot., ECF No. 237, at 17-18.  AWS's own pleadings confirm that it was aware of the basis of its claims of bias, bad faith, improper influence, and conflict of interest well prior to October 2019, yet failed to raise these claims at that time. Indeed, we moved the Court to dismiss these allegations from AWS's original complaint on that basis.  Def. Mot. to Dismiss, ECF No. 132; *see also* ECF No. 133 (Microsoft Mot. to Dismiss); ECF No. 168 (AWS Response); ECF No. 174 (Government Reply); ECF No. 175 (Microsoft Reply).

AWS ignores this issue, presumably relying on its allegation that Amendment 0009 to the JEDI Solicitation – a minor amendment that merely clarified a potential ambiguity in a single aspect of highly technical requirements – somehow created a "clean slate" with regard to its bias allegations.  Amended Compl. ¶ 403; *see also* AR Tab 643.  But AWS cites no authority for the notion that a remand expressly limited to technical issues, or corrective action pursuant thereto

that addressed only technical issues, could somehow cure AWS's waiver of its bias allegations within this same pending litigation by failing to raise these claims prior to the original award.

AWS attempts unconvincingly to challenge our description of the terms of the remand, taking words and phrases out of context to paint a misleading picture.  AWS miscasts our assertions that the Government sought remand "in good faith" as somehow agreeing to address AWS's allegations that public statements by the President and others prior to the October 2019 award had biased that award decision.  Pl. Resp. at 23.  This argument conflates distinct concepts.  Certainly in our briefing in support of our motion for voluntary remand, we accurately asserted that our request for that remand was made in good faith, as that assertion was both true and part of the binding standard by which this Court would assess our remand request.  And the remand did proceed in good faith.  But our assertion of good faith in that context cannot be read as a commitment to take any action to address AWS's false and unsupported allegations of bias in this procurement.  Throughout this litigation we have consistently repeated our view that these allegations are baseless.  And we were clear in briefing our remand request that the remand would address only AWS's technical challenges.  *See, e.g*., ECF No. 177, at 3 ("DoD, on remand, will be reconsidering the *technical* evaluations that AWS has challenged and will be reconsidering its award decision."), ECF No. 185, at 10 ("DoD intends, on remand, to reconsider its award decision in response to all of the *technical* challenges presented by AWS, without limitation.") (emphases added).  Indeed, AWS quotes in full our five item list of actions that DoD would take on remand, which describe actions to address technical concerns only, and makes no mention of any action to address AWS's baseless bias allegations.  Pl. Resp. at 5.

Any fair reading of our extensive briefing on the remand reveals that, in accordance with our consistently expressed view that bias did not affect DoD's decision-making in this

11

procurement, we never suggested that DoD would take any action on remand to address these erroneous accusations.  Nor did DoD in any way commit to address them during the remand.  AWS reveals that it was concerned about the identity of the source selection team, which it has alleged throughout this litigation was biased against it, and inquired during the remand as to its composition.  Pl. Resp. at 7.  But after DoD declined to give a substantive response, AWS did not press its concerns, either formally or informally.  AWS has, for over a year, claimed that expert DoD source selection officials were biased against it.  To preserve that challenge, AWS was required to advance that argument at a time when DoD could actually address it.  It failed to do so and, thus, waived these claims.

III.    In Count Four, AWS Challenges Not The Evaluations, But Terms Of The Competition And The Scope Of Corrective Action

AWS attempts to avoid the consequences of its waiver by painting its bias claims as challenges not to a competition tainted by bias, but rather to the manifestation of that bias in the remand evaluations and source selection decision.  But AWS cites only two categories of "evidence" for this bias: 1) public statements by the President and his associates, chiefly made before the October 2019 award, and other information made public just before or during the remand period; and 2) evaluation judgments of DoD's expert evaluators and source selection officials with which AWS disagrees.  But it is well-settled that the latter does not itself constitute evidence of bias.  *See, e.g.*, *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) (finding that plaintiff's "contentions that the [agency] erred in evaluating the proposals" are "not evidence of bias."); *Jacobs Tech. Inc. v. United States*, 131 Fed. Cl. 430, 455 (2017) ("[E]rrors in an evaluation process do not alone suffice to demonstrate bad faith or permit discovery."); *Four Points by Sheraton v. United States*, 63 Fed. Cl. 341, 344–

45 (2005) (plaintiff's allegations of bias reflected in evaluations "are part and parcel of the evaluation itself and capable of challenge in a bid protest in and of themselves.").

AWS's insistence otherwise is an example of one of the most famous logical fallacies, *post hoc ergo propter hoc*. AWS alleges that, because the President allegedly expressed a preference that AWS not be awarded the JEDI contract (*e.g.* Amended Compl. ¶¶ 404, 408), later evaluation judgments that criticize AWS's proposal or laud Microsoft's must be evidence of this alleged bias. But correlation does not imply causation; that expert DoD evaluators with a sworn duty to act impartially made judgments about the proposals with which AWS disagrees does not imply that these judgments were influenced by any feelings that the President may have expressed about Amazon. Further, that the *effect* of any bias, OCI, or other defect would necessarily *manifest* in evaluations and the award decision does not mean that these allegations are "evaluation challenges" that can only be raised post-award.

AWS argues that our position would force it to assume that DoD would act in bad faith on remand. Quite the contrary. The purpose of requiring timely disclosure of alleged defects in the procurement process is to permit the agency to evaluate and, if appropriate, address those allegations at a point in the process where it can do so most efficiently. If AWS believed that bias could impact the outcome of the procurement, it had a duty to raise that issue before all offerors expended resources submitting, and DoD spent resources evaluating, final proposals. It is AWS that failed to act in good faith, therefore, when it decided not to timely raise its concerns that the process was tainted but instead to wait to see if it would win the award. It cannot now rescue its failure to do so by arguing that it did not realize that these statements would have an impact until after the evaluations, as this gambit was expressly prohibited by the Federal Circuit in *Blue & Gold Fleet*. 492 F.3d at 1313 ("While Blue & Gold characterizes this as a challenge to

the evaluation of Hornblower's proposal, we agree with the Court of Federal Claims that this argument is properly characterized as a challenge to the terms of the solicitation.").  This is even more apparent in the context of the corrective action, given that AWS had raised the same allegations after the original award, and neither we nor DoD ever suggested that source selection officials would be replaced or other action taken to address AWS's bias claims.

AWS further alleges that "new" strengths in Microsoft's proposal assessed by the expert DoD personnel in their re-evaluations, or "new" weaknesses in AWS's proposal, are evidence of a bias against AWS on remand.  As we describe above, this is not, as a matter of law, evidence of bias – that expert agency evaluators, in undertaking a comprehensive re-evaluation, arrived at slightly different conclusions on a small number of points in an enormous procurement is not evidence of bias against AWS.  Moreover, DoD was free on remand to take a fresh look at the proposals as a whole and assess strengths or weaknesses as appropriate, irrespective of the contents of the initial evaluations.  And AWS ignores that, on remand, its proposal was assessed a "new" strength, AR Tab 702 at 209,971, and Microsoft's proposal was assessed several "new" weaknesses, AR Tab 612 at 181,696, 181,699, 181,701, 181,705.  Finally, AWS's allegations that these "changes" evidence bias because they followed DoD's identification of AWS as the lowest-price offeror do not comport with the record – the price evaluation board report was completed *after* the technical evaluation boards had completed their work, and technical evaluators did not have access to price evaluations.  AR Tabs 727, 702, 723; Tab 604 at 181,540.

Lastly, AWS states that, contrary to our demonstration, AWS does challenge specific evaluations in Count Four of its complaint.  Pl. Resp. at 13.  But beyond incorporating by reference the entirety of the rest of its complaint, Count Four generally attributes evaluation judgments that it challenged elsewhere in its complaint, particularly those that differ from initial

2019 assessments, to bias, bad faith, improper influence, and/or conflicts of interest, stemming from DoD officials "consciously or unconsciously . . .adopt[ing] the President's bias as their own." Amended Compl. ¶¶ 408, 401-12.

In truth, these allegations challenge not the evaluations themselves, but the decision by DoD to use source selection officials that AWS had already, in numerous filings with this Court in this case, alleged were biased against it by the President's public statements. But AWS never demanded, either before or during the remand, that these officials be replaced. Instead, AWS chose to participate fully in the remand proceedings, even after we made clear that the scope of any corrective action would be limited to re-consideration of AWS's technical challenges alone, and even after DoD declined to answer AWS's questions about the identities of the source selection team. Much like in the plaintiff in *Anham FZCO v. United States*, 144 Fed. Cl. 697 (2019), AWS was on notice of the scope of DoD's corrective action on remand, yet "impermissibly 's[a]t on its rights' by failing to object to [the agency's] prior treatment [of those issues] before the second contract award, and has now waived its right to do so." *Id*. at 722.

IV.    AWS Could Have Brought Its Bias Allegations Prior To Evaluation And Award

AWS further attempts to avoid the consequences of its waiver by arguing that it could not have brought its allegations of bias earlier because it lacked standing to do so pre-award, because these challenges were not ripe until Microsoft was awarded the contract, and because any defects in the procurement were latent, not patent. Pl. Resp. at 18-30. These allegations do not accord with the law, with the facts, or even with AWS's own allegations.

A.    Standing Is Not At Issue Here

AWS's argument that it lacked standing to raise its bias claims prior to the completion of DoD's corrective action entirely misses the mark. AWS relies on cases where this Court has

found that an offeror that was not originally the awardee lacked standing to challenge a decision

to take corrective action, because that offeror suffered no injury from the corrective action

proposed by the agency.  Pl. Resp. at 19-24.  The plaintiffs in these cases lacked standing to

challenge an agency's decision to take corrective action because they could not show that they

were harmed by that decision, as they were not, for example, an apparent awardee made to

compete again for an award it had already won.  *See Square One Armoring Serv., Inc. v. United*

*States*, 123 Fed. Cl. 309, 327-28 (2015); *Technatomy Corp. v. United States*, 144 Fed. Cl. 388,

391-92 (2019).  AWS, on the other hand, failed to timely raise its bias allegations, which in this

case amount to a challenge to the *scope* of the corrective action.

In a pre-award protest, which include protests to the scope of corrective action, "a

protestor can demonstrate prejudice by establishing a non-trivial competitive injury which can be

addressed by judicial relief."  *Square One*, 123 Fed. Cl. at 320 (citing *Sys. Appl. & Techs., Inc. v.*

*United States,* 691 F.3d 1374, 1382 (Fed. Cir. 2012); *Weeks Marine, Inc. v. United States*, 575

F.3d 1352, 1362 (Fed. Cir. 2009) (internal quotation marks omitted)).  There is no question that

AWS was an actual offeror, and that it alleges a non-trivial competitive injury – that public

statements by the President and his associates had, consciously or unconsciously, biased DoD

evaluators against it.  As such, AWS would have had standing to bring its bias claims pre-award.

*See Jacobs Tech.*, 131 Fed. Cl. at 446.

B.     AWS's Bias Claims Were Ripe Prior To Award

 AWS spends a great many pages of its response repackaging its argument that it

challenges evaluations, not the terms of the competition or scope of corrective action, as a

ripeness argument.  Pl. Resp. at 19-25.  At bottom, it appears that the parties agree on the law in

this arena – a plaintiff must bring challenges to the scope of corrective action before that

corrective action is completed, but challenges to the result of the corrective action are not ripe until after the corrective action is complete.  *Jacobs Tech.*, 131 Fed. Cl. at 446.  Where the parties disagree is as to the nature of AWS's bias claims.  AWS misunderstands our statement in our motion that it has created an illusory distinction between its bias allegations, which it frames as evaluation challenges, and challenges to the procurement process or the scope of corrective action.  *See* Pl. Resp. at 20.  Although there is a legal distinction between a challenge to the scope of corrective action and its execution, that distinction is not operative here, because AWS plainly challenges the former.  AWS continues to try to reframe its bias claims as challenges to DoD's evaluation judgments, but as demonstrated in Section III above, AWS's bias claims in fact challenge the terms of the JEDI competition and the scope of the corrective action undertaken by DoD.

Like the plaintiffs in *Jacobs* and *Anham*, therefore, AWS has waived its bias allegations by failing to object to plain statements we made in this case, and DoD made in undertaking its corrective action, that its scope would not include any action to address AWS's bias allegations. This waiver, of course, follows from AWS's original waiver of its bias allegations by failing to raise them prior to the original award in 2019, a waiver which was not cured by a remand and corrective action undertaken to address unrelated technical challenges.

C.      AWS's Own Allegations Demonstrate That Any Supposed Defect Was Patent

This same dynamic can be seen again with respect to AWS's argument that any defect in the corrective action scope was latent rather than patent.  Pl. Resp. at 26-30.  First, AWS cherry picks a few statements from our remand briefing to suggest that we promised that DoD would address AWS's bias allegations on remand.  *Id*. at 26-28.  As we have demonstrated in Section II above, this argument mischaracterizes our clear and consistent statements that the remand would

17

address AWS's technical allegations alone, as well as our consistent statements throughout this litigation that AWS's bias claims are baseless and, thus, do not require any further action on remand.

Second, AWS alleges that it is not the public statements of the President and his associates alone that establish bias, but their alleged manifestation in DoD's evaluations.  Pl. Resp. at 28.  Certainly, we agree with AWS's admission that it is absurd to suggest that these public statements are anywhere near sufficient to establish bias against AWS in the JEDI procurement.  Unfortunately for AWS, that is all the evidence of bias it alleges.  As we explain above, its allegation that this bias manifested every time an evaluator gave AWS less – or Microsoft more – credit than AWS believes it deserved is legally insufficient.  Although AWS may challenge these judgments on their merit and has done so, that AWS disagrees with them, even strenuously, is no evidence that they stem from bias.  *Info. Tech.*, 316 F.3d at 1323 n.2.

Third, AWS argues that it could not have discovered that DoD did not commit to removing evaluators it had alleged were conflicted from the corrective action process through reasonable and customary care.  Pl. Resp. at 29-30.  But as we have explained, our briefing on the remand motion was quite clear that DoD had no such intention, and that remand would be limited to addressing technical issues only.  Moreover, DoD never in any way suggested that it would remove evaluators that AWS had alleged were biased.  In an email transmitting Amendment 0007 to the solicitation, AWS was put on notice that the contracting officer for the procurement had been replaced.  AR Tab 591.  AWS then asked about the identity of the source selection team but, as AWS acknowledges, DoD was not permitted to divulge the specific identities of these individuals.  Pl. Resp. at 29.  But this limitation did not prevent AWS from filing a pre-award protest demanding the removal of individuals involved in the previous

18

evaluations and source selection decision, which AWS had already in this litigation previously alleged were biased against it.  AWS filed no such protest, and has now waived the right to pursue these allegations.

V.    The Equitable And Policy Rationales Of *Blue & Gold Fleet* Support A Finding Of Waiver

Finally, AWS appeals to equitable and policy concerns, speculating that a "flood of litigation" would result from a finding that it has waived its bias claims.  Pl. Resp. at 30-32.  In the main, AWS bases this argument on its mischaracterization, repeatedly refuted above, of its own claims as evaluation challenges.  This argument fails for multiple reasons.  First, to the extent that AWS believes that DoD improperly evaluated its proposal, AWS can challenge the technical adequacy of DoD's decisions, as it has already done in Counts One through Three of its amended complaint.  Second, AWS fails to acknowledge just how unusual its own bias claims are.  Although unsuccessful offerors occasionally allege, based on little more than the fact that their proposal was not selected for award, that the agency was biased against them, this Court has had little trouble swiftly disposing of such flimsy claims.  *See, e.g.*, *Info. Tech.*, 316 F.3d at 1323 n.2.  Here, AWS has alleged that public statements by the President of the United States, made over several years including before he took office, essentially render suspect any award of a Federal contract for which Amazon or its affiliates unsuccessfully compete.  Similar allegations are not likely to flood this Court.

Finally, AWS's argument that it should be permitted to advance its bias claims even if waived is not well-founded in law or equity.  *See* Pl. Resp. at 32-33.  When the Federal Circuit has stated the a claim can be raised after award when raising it prior would be impracticable, it was referring to a situation in which there was insufficient time to raise the issue prior to award.  That is not the situation here.  *See COMINT*, 700 F.3d at 1382.  We have refuted above AWS's

allegation that raising its bias claims was impracticable because it did not know they would matter until it learned it was not selected for award, and the Federal Circuit and this Court have repeatedly rejected this notion, which is the principle that lies at the heart of the *Blue & Gold Fleet* waiver rule.

Moreover, the Federal Circuit has stated that when waiver is found, dismissal is mandatory, not discretionary. *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1317 (Fed. Cir. 2016) (Reyna, J., concurring).  And even were a finding of waiver discretionary, AWS's argument that it had no way of knowing that it would again have cause for concern about bias stemming from alleged political interference is belied by nearly every document that AWS has filed in this case, in which AWS has consistently alleged that these statements tainted the entire JEDI procurement.  AWS had every opportunity to timely raise its concerns about the President's statements and conduct when it became aware of them, yet it has consistently elected not to do so until after finding out that it was not selected for award.  Under these circumstances, equity does not require that this Court permit AWS to advance its waived bias claims.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court dismiss Count Four of the amended complaint, because AWS has waived the allegations contained therein.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

OF COUNSEL:

| | |
|---|---|
| MICHAEL G. ANDERSON | s/ Anthony F. Schiavetti |
| BENJAMIN M. DILIBERTO | ANTHONY F. SCHIAVETTI |
| Assistant General Counsel | Senior Trial Counsel |
| Washington Headquarters Service & | RETA BEZAK |
| Pentagon Force Protection Agency | Trial Attorney |
| Office of General Counsel | U.S. Department of Justice |
| Department of Defense | Civil Division |
| | Commercial Litigation Branch |
| TYLER J. MULLEN | PO Box 480, Ben Franklin Station |
| CCPO Legal Advisor | Washington, D.C. 20044 |
| Assistant General Counsel | Tel: (202) 305-7572 |
| Defense Information Systems Agency | Fax: (202) 305-1571 |
| Office of the General Counsel | anthony.f.schiavetti@usdoj.gov |
| | |
| December 1, 2020 | Attorneys for Defendant |