# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## BID PROTEST

| | |
|---|---|
| AMAZON WEB SERVICES, INC., | **FINAL REDACTED VERSION** |
| Plaintiff, | Case No. 19-1796 |
| v. | Judge Patricia E. Campbell-Smith |
| UNITED STATES OF AMERICA, by and through the U.S. Department of Defense, | |
| Defendant, | |
| and | |
| MICROSOFT CORPORATION, | |
| Intervenor-Defendant. | |

**INTERVENOR-DEFENDANT MICROSOFT CORPORATION'S SUR-RESPONSE TO AWS'S SUR-REPLY TO MICROSOFT'S PARTIAL MOTION TO DISMISS**

## **TABLE OF CONTENTS**

|      |                                                                                                                                  | Page |
|------|----------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION                                                                                                                     | 1    |
| II.  | THE COURT SHOULD REJECT AWS'S IMPLAUSIBLE AND INCONSISTENT EXCUSES FOR FAILING TO TIMELY RAISE ITS BIAS CLAIM                    | 3    |
| III. | THE PRESUMPTION OF GOOD FAITH DOES NOT EXCUSE AWS'S UNTIMELY PROTEST                                                             | 9    |
| IV.  | CONCLUSION                                                                                                                       | 12   |


██████████████████████████████████████

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blue & Gold Fleet, L.P. v. United States*,
  492 F.3d 1308 (Fed. Cir. 2007) .................................................................................... *passim*

*Boston Harbor Development Partners, LLC v. United States*,
  103 Fed. Cl. 499 (2012) ..................................................................................................10, 11, 12

*Square One Armoring Service, Inc. v. United States*,
  123 Fed. Cl. 309 (2015) ..................................................................................................11, 12

*Ceres Envt'l Servs., Inc. v. United States*,
  97 Fed. Cl. 277 (2011) ....................................................................................................10

*Concourse Grp. LLC v. United States*,
  131 Fed. Cl. 26 (2017) ....................................................................................................9, 10

*CRAssociates, Inc. v. United States*,
  102 Fed. Cl. 698 (2011) ..................................................................................................10

*Eskridge Research Corp. v. United States*,
  92 Fed. Cl. 88 (2010) ......................................................................................................11, 12

*Henthorn v. Dep't of Navy*,
  29 F.3d 682 (D.C. Cir. 1994) ..........................................................................................8

*Inserso Corp. v. United States*,
  961 F.3d 1343 (Fed. Cir. 2020) ......................................................................................*passim*

*Jacobs Tech., Inc. v. United States*,
  100 Fed. Cl. 179 (2011) ..................................................................................................10

*Jacobs Tech. Inc. v. United States*,
  131 Fed. Cl. 430 (2017) ..................................................................................................4, 10, 11

*Peraton Inc. v. United States*,
  146 Fed. Cl. 94 (2019) ....................................................................................................10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ........................................................................................8

*Triax Pac., Inc. v. West*,
  130 F.3d 1469 (Fed. Cir. 1997) ......................................................................................7

*Unisys Corp. v. United States*,
    89 Fed. Cl. 126 (2009) ............................................................................................... 6, 9

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 1363 (3d ed. 2020) ........................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 8

Microsoft Corporation ("Microsoft") submits this Sur-Response to Amazon Web Services, Inc.'s ("AWS") Sur-Reply to Microsoft's Reply in Support of its Partial Motion to Dismiss, ECF No. 256 ("Sur-Reply").

## I. INTRODUCTION

AWS's Sur-Reply addresses (1) a blog post AWS published the same day the Department of Defense ("DoD") announced the re-award to Microsoft and before AWS received its post-award debriefing; and (2) the issue of whether the good faith presumption excused AWS's failure to raise its bias concerns prior to award. AWS has nothing persuasive to say on either subject.

*First*, AWS's Sur-Reply does not meaningfully respond to Microsoft's discussion of the blog post. Microsoft cited the post in its Reply to refute AWS's assertion, made for the first time in its Opposition, that it first learned of the factual basis for Count IV upon reviewing the debriefing materials. *See, e.g.*, ECF No. 239 ("Opp.") at 2-3, 8-9, 12. AWS's blog post makes clear that AWS did not need to—and in fact, did not—review any of the debriefing materials before claiming the corrective action was tainted by bias. *See* ECF No. 241 ("Reply") at 9. Indeed, the blog post expressly indicates that AWS had *earlier* opposed DoD's request for a remand because it believed "the corrective action was likely to result in another contract award based on politics and improper influence." ECF No. 241-1 at 2.

AWS does not dispute the contents of the blog, nor does it contest that the blog is properly subject to judicial notice. Instead, AWS argues that the Rule 12(b)(6) standard compels the Court to accept AWS's assertion that it supposedly trusted DoD's evaluators to act in good faith during the remand. Not so. In assessing waiver under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), a court must ask whether a protester "knew, or should have known" the factual predicate for its claim before proposal submission. *Inserso Corp. v. United States*, 961

1

F.3d 1343, 1350 (Fed. Cir. 2020). Here, the undisputed facts make clear that AWS knew—prior to award—all of the facts it needed to raise its allegation that DoD's evaluators were "consciously or unconsciously" biased as a result of the President's public tweets, statements, and conduct. ECF No. 236 ("Am. Compl.") ¶ 408. And AWS had no reasonable expectation that DoD would do anything to affirmatively address its meritless bias concerns during the corrective action.

The Court need not accept AWS's implausible assertion that it believed the remand would proceed in good faith. That assertion is inconsistent with AWS's theory throughout this case, which is that DoD's entire source selection team was infected by systemic bias and improper influence exerted by the President well before the initial award (and which only "intensified" during the remand). Am. Compl. ¶¶ 13-17. And it is likewise contradicted by AWS's own blog post explaining that AWS objected to DoD's remand because AWS believed the corrective action would lead to a renewed award to Microsoft "based on politics and improper influence." ECF No. 241-1 at 2. AWS has concocted an evolving series of excuses to justify its impermissible "wait and see" approach to litigating bias, but those excuses cannot change the fact that AWS knew the factual predicate for its bias claim prior to award.

*Second*, contrary to AWS's assertion, the presumption of good faith afforded to government officials does not excuse AWS's failure to challenge the integrity of the source selection team in a pre-award protest. AWS's allegations and undisputed facts establish that AWS did *not* believe DoD would act in good faith—and AWS certainly had no reason to believe that DoD would prohibit the allegedly tainted evaluators from participating in the reevaluation. If the presumption of good faith effectively nullifies an offeror's obligation to object to known defects in the procurement process, as AWS argues, *Blue & Gold* could never bar a post-award bias or conflict-of-interest claim, and any such claim brought prior to award would always be premature.

2

That is simply not the law. The Federal Circuit and this Court have routinely applied *Blue & Gold* to bias and organizational conflict of interest ("OCI") claims that the plaintiff "knew, or should have known" before award. *Inserso Corp.*, 961 F.3d at 1350. The Court should similarly apply *Blue & Gold* here and dismiss Count IV as waived.

## II. THE COURT SHOULD REJECT AWS'S IMPLAUSIBLE AND INCONSISTENT EXCUSES FOR FAILING TO TIMELY RAISE ITS BIAS CLAIM

AWS argues (at 6) that its "claims in both the Amended Complaint and in its response to the Motions to Dismiss have been straightforward and consistent," but just the opposite is true. In the Sur-Reply, AWS again changes its story as to why it has not waived its bias claim under *Blue & Gold*, offering *yet another* implausible explanation for when it first learned of the factual basis for Count IV.

In the Amended Complaint, AWS recycled its allegations of presidential interference based almost entirely on events that occurred before the initial award to Microsoft. *See, e.g.*, Am. Compl. ¶¶ 14, 80-92, 404. Yet, AWS alleged that Amendment 0009, issued during the remand, somehow cleansed the procurement of "any semblance of bias, bad faith, or improper influence," creating a "clean slate" for DoD to fairly and honestly reevaluate proposals. *Id.* ¶ 403. In its Motion to Dismiss, Microsoft showed that AWS's "clean slate" theory fails because Amendment 0009 merely clarified the Solicitation's technical requirements and did nothing to address AWS's systemic bias claim. *See* ECF No. 238 at 28-30.

In its Opposition, AWS abandoned the Amendment 0009 theory and argued that it had always expected DoD to conduct the corrective action in good faith and that its bias claim was "*unknowable* prior to the debriefing and release of the administrative record." Opp. at 8 (emphasis added). Yet again, Microsoft exposed AWS's new excuse as implausible and inconsistent with AWS's own statements. *See* Reply at 6-13. Among other things, Microsoft explained that AWS's

3

assertion is flatly contradicted by AWS's own blog post—published before "the debriefing and release of the administrative record"—which decried the award as "biased" and "politically corrupted," and indicated that AWS had opposed the remand because it believed DoD would simply re-award the contract to Microsoft "based on politics and improper influence." ECF No. 241-1 at 2.

In its Sur-Reply, AWS attempts to explain away its blog post with yet another theory as to when it discovered bias in the corrective action. This time, AWS does not dispute that it objected to DoD's proposed remand on bias grounds. *See* Sur-Reply at 9. AWS continues to maintain that when the Government stated that it was requesting the remand in good faith, AWS "rel[ied] on DoD's professions of good faith" and chose not to protest for that reason. *Id.* at 10. What has changed is that, in its Sur-Reply, AWS abandons its previous assertion that bias was "unknowable prior to the debriefing." Opp. at 8. Instead, it argues—for the first time—that its bias claims actually were knowable the instant it received the award announcement and learned that it had submitted the lower price. *See* Sur-Reply at 9.

This latest version of AWS's story cannot withstand scrutiny. If AWS was able to cry bias immediately upon announcement of the award—without seeing any reevaluation documents or waiting to learn whether DoD had taken any steps to mitigate the alleged bias—it is implausible to believe AWS was convinced at *any* time that DoD would act in good faith. AWS maintains that it somehow knew the re-award decision was biased because it was "confident" its proposal "should have been found to be superior" if there had been a proper evaluation. Sur-Reply at 9. But the mere fact that Microsoft prevailed in a best-value tradeoff is not itself evidence of bias, and even if AWS thought there were errors in the corrective action, the law is well-settled that "errors in an evaluation process do not alone suffice to demonstrate bad faith." *Jacobs Tech. Inc. v. United*

4

*States*, 131 Fed. Cl. 430, 455 (2017). That AWS re-asserted its bias claim the moment DoD announced that Microsoft won proves that AWS harbored its bias concerns throughout the remand but chose not to raise them in a pre-award protest as the law required.

AWS's new theory also fails for additional reasons. Under *Blue & Gold*, the relevant inquiry is whether AWS "knew, or should have known" the basis for its claim before the close of the bidding process. *Inserso*, 961 F.3d at 1350. Here, there is no dispute that (1) AWS knew of President Trump's conduct even before the initial award, (2) AWS concluded—and alleged—that such conduct improperly influenced DoD's initial award to Microsoft and tainted all the evaluators, and (3) AWS initially believed that a remand would be pointless because DoD would simply re-award the contract to Microsoft "based on politics and improper influence." ECF No. 241-1 at 2. The only question, then, is whether DoD's "professions of good faith" in pursuing the remand over AWS's objections reasonably led AWS to believe that DoD would take affirmative steps to cure the alleged bias. *See* Sur-Reply at 9-10.

The answer to that question is no. DoD's statements of good faith in no way equated to some sort of commitment to change its conduct with respect to the asserted bias. On the contrary, AWS "knew, or should have known" that DoD had rejected its meritless bias allegations and would evaluate the parties' new proposals using the same standards, methods, and evaluators that it used the first time.

This is clear from facts pled in the Amended Complaint and undisputed facts in the record, all of which contradict AWS's new theory. AWS has asserted for more than a year that this procurement has been tainted by an "extraordinary environment of corruption, interference, and retribution—seemingly *without interruption* throughout this bid protest." Am. Compl. ¶ 368 (emphasis added); *see also id.* ¶¶ 13-17, 357 (alleging "an environment of corrupt pressure

5

President Trump fostered throughout his Administration" that "intensified" with DoD's "effort to satisfy the Commander in Chief and re-award JEDI to Microsoft"). Consistent with those allegations, AWS's judicially noticeable blog post plainly states that AWS "opposed the DoD's approach to corrective action" because AWS believed the evaluation process would again be "corrupted by the President's self-interest" and "based on politics and improper influence." ECF No. 241-1 at 2-3. AWS's far-reaching and repeated allegations of pervasive bias render it wholly implausible that AWS's concerns about bias were somehow fully resolved by DoD's general representations that it was requesting a remand in good faith.

Moreover, although AWS now claims DoD should have switched out the source selection team, Opp. at 35-36, AWS has conceded that when it asked DoD whether there would be changes to the composition of the source selection team before the corrective action, DoD declined to answer the question. *Id.* at 35 (citing Tab 609 at AR181611). AWS's question indicates that it continued to hold bias concerns even after the remand was authorized. There was no reason for AWS to think that DoD's decision *not* to answer that question somehow resolved its bias concerns. *See Unisys Corp. v. United States*, 89 Fed. Cl. 126, 137 (2009) (granting motion to dismiss on *Blue & Gold* grounds because the protester's question to the agency "demonstrate[d] that it was aware of the alleged error in the solicitation" prior to close of bidding). In fact, the record plainly shows that AWS was *still* concerned about bias and improper influence *after* DoD declined to answer that question. *See* Tab 617 at AR181722 (AWS stating in a footnote to its Agency-level protest that it was "*especially concerned* by DOD's refusal to clarify [a] patent ambiguity [in the technical requirements] in light of the *improper influence AWS alleges impacted the JEDI procurement*") (emphasis added). Despite its apparent ongoing concerns about bias, AWS never sought to prohibit the allegedly tainted evaluators from participating in the corrective action nor did it take

6

any action to demand an investigation of those issues.

Microsoft's Reply also explained that the DoD Office of Inspector General Report ("OIG Report") is an additional reason to reject AWS's claim that it expected DoD would take affirmative steps to eliminate alleged bias during the remand. Reply at 10. AWS strayed beyond the issues that are properly the subject of its Sur-Reply by arguing that the OIG Report "did not provide a basis for AWS to assume . . . that DoD would [not] . . . act in good faith on remand." Sur-Reply at 8-9. But AWS's assertion cannot be squared with its allegation that members of the source selection team were tainted by "an actual or apparent conflict of interest" because they participated in "political meetings about the JEDI procurement with high-ranking White House officials"—a fact that AWS *admits* was revealed in the public OIG Report issued *prior* to the initiation of corrective action. Am. Compl. ¶¶ 355, 411. If AWS believed these meetings created a conflict of interest, it had an obligation under *Blue & Gold* to raise that objection prior to award when it knew, or should have known, the basis for its allegation. And DoD's embrace of the OIG Report as "vindicat[ing]" its award decision (Am. Compl. ¶ 354) should have alerted AWS that DoD would not be taking further steps to address its bias concerns.

In light of the above facts and AWS's own allegations, it is not plausible that AWS nevertheless expected DoD to replace the source selection team or otherwise address its bias concerns. Indeed, no reasonable offeror in AWS's position would have believed that DoD intended to address AWS's bias concerns. *See Inserso*, 961 F.3d at 1350-51 (holding that it was not "reasonable" for the protester to believe that the agency would delay a post-award debriefing that allegedly created an unequal advantage where "[t]he law and the facts made patent" that this defect was "likely to occur"); *see also Triax Pac., Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997) (explaining that whether a patent defect exists "is not determined by the contractor's actual

knowledge, but rather by what a reasonable contractor would have perceived" under the circumstances). AWS was well aware of the factual predicate for its bias claim and waived it by failing to raise it prior to the re-award.

AWS attempts to rescue its theory by invoking the Rule 12(b)(6) standard, which ordinarily requires a court to accept factual allegations in the complaint as true. Sur-Reply at 5, 7. But although AWS's Sur-Reply refers to "express allegations in the Amended Complaint" purportedly reflecting its theory that AWS "accepted DoD's representations of good faith before remand" and "presumed DoD would act in good faith as DoD pledged," the paragraphs AWS cites merely pertain to the Amendment 0009 theory AWS has abandoned. *See* Sur-Reply at 8 (quoting Am. Compl. ¶¶ 105, 403); *see also id.* at 6 (same). AWS's new theory that, even *before* DoD issued Amendment 0009, AWS expected DoD would act in good faith, was not alleged in the Amended Complaint but, rather, was advanced for the first time in its Opposition. Needless to say, the Rule 12(b)(6) standard does not extend to arguments articulated in a party's brief. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[W]e have found no case from this or any other circuit suggesting that a trial court must consider contradictory factual allegations made in a brief opposing a motion to dismiss when ruling on a 12(b)(6) motion.").

But even if AWS had adequately pled its theory, "it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters on which the court may take judicial notice." Reply at 10 n.2 (quoting *Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 158, 160 n.3 (2000)); s*ee also Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Nor must it accept as true "pleading allegations that are contradicted . . . by other allegations." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2020). For all of the reasons explained above, AWS's claim

that it believed DoD would cure its bias concerns is contradicted by its own allegations and its blog post. And courts regularly consider the entirety of the complaint, documents incorporated by reference, the administrative record, and other surrounding facts in adjudicating motions to dismiss under *Blue & Gold*. *See, e.g., Concourse Grp. LLC v. United States*, 131 Fed. Cl. 26, 30 (2017) (dismissing OCI claim under *Blue & Gold* because plaintiff's assertion that it was "unaware" of facts giving rise to its OCI claim prior to award was "unconvincing" given other allegations and public documents referenced in complaint); *Unisys Corp.*, 89 Fed. Cl. at 137 (considering, *inter alia*, protester's question to agency in granting motion to dismiss on *Blue & Gold* grounds). This Court should do the same, and should reject AWS's inconsistent explanations and implausible excuses for its failure to timely raise its bias claim.

### III. THE PRESUMPTION OF GOOD FAITH DOES NOT EXCUSE AWS'S UNTIMELY PROTEST

In its Sur-Reply, AWS clings to the presumption that government officials act in good faith as another excuse for why it did not timely raise its bias claims prior to the second award. Contrary to AWS's assertion, the presumption of good faith does not authorize an offeror to deliberately disregard facts it knew prior to award, only to later spring forward with those same facts to make untimely allegations in a post-award bid protest. That "wait-and-see" approach is precisely what *Blue & Gold* prohibits.

Nevertheless, AWS attempts to wield the presumption of good faith as a shield against the binding precedent of *Blue & Gold*. According to AWS, "in a pre-award context, offerors are *required* to assume that procurement officials will act in good faith." Sur-Reply at 5 (emphasis in original). AWS is clearly wrong because the good faith presumption does not categorically defeat all pre-award allegations of bias and OCI. If AWS's application of the presumption were correct, bias and OCI claims could never be waived if brought after award, and they would always be

9

unripe if brought prior to award. The case law proves that AWS is simply mistaken. *See, e.g., Inserso*, 961 F.3d at 1349 (citing *Ceres Envt'l Servs., Inc. v. United States*, 97 Fed. Cl. 277, 310 (2011) and confirming that this Court "has correctly applied [the *Blue & Gold* waiver] rule in [OCI] cases"); *Jacobs*, 131 Fed. Cl. at 430 (finding a pre-award bias claim ripe after the agency "announced its decision to take corrective action," even though it had not yet made an award); *Peraton Inc. v. United States*, 146 Fed. Cl. 94, 103 (2019) (finding waiver of bad faith claim where the protester failed to actively prosecute it before allowing the agency to proceed with its corrective action).[1] The presumption of good faith cannot be used as a get-out-of-jail-free card to excuse the failure to raise a timely claim of bias, bad faith, or conflict of interest.

AWS cites *Boston Harbor Development Partners, LLC v. United States*, 103 Fed. Cl. 499 (2012), to demonstrate that pre-award protests alleging bias in corrective action evaluations have been dismissed while noting the presumption of good faith. *See* Sur-Reply at 11-12. But *Boston Harbor* involved a highly speculative claim of bias, and its outcome cannot be extrapolated to every set of facts. The situation here is easily distinguishable. In *Boston Harbor*, the plaintiff filed a pre-award bias claim premised on the notion that, unless the agency's corrective action included cancelling the leasing contract at issue, the "lurking obligation" of the lease would cause the agency evaluators to act in bad faith and select the current lessee. 103 Fed. Cl. at 503. The court

---

[1] *See also Jacobs Tech., Inc. v. United States*, 100 Fed. Cl. 179, 182 (2011) (protester's pre-award OCI claim was ripe for review because it was a challenge to the "solicitation process" that would have been untimely if brought after award because there was "no indication that the flaws [the protester] complain[ed] of [would] be recognized and remedied by the agency"); *Concourse*, 131 Fed. Cl. at 29-30 (waiving OCI claims where protester challenged the incumbent contractor's allegedly close relationship with the agency based on public documents and information available "well before the contract award"); *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 712 (2011) (barring OCI claim alleging that a competitor obtained inside information from its prior contract performance); *Ceres Envt'l Servs., Inc*, 97 Fed. Cl. at 310 (barring a post-award claim that a price disclosure gave some offerors an unfair advantage where that disclosure was known to protester prior to submission of proposals).

10

found that bias claim to be "purely conjectural" and distinguished the speculative injury alleged there from cases where, as here, the plaintiff knew of other facts that allegedly gave rise to an OCI or bias among the evaluators. *Id.* at 503-04 (citing *CRAssociates, Inc.*, 102 Fed. Cl. at 711-13).

As Microsoft explained in its Reply, the Court has recognized that speculative claims such as those in *Boston Harbor*, *Square One Armoring Service, Inc. v. United States*, 123 Fed. Cl. 309 (2015), and *Eskridge Research Corp. v. United States*, 92 Fed. Cl. 88 (2010) "are 'quite different' from cases like this one, where the protester is demonstrably aware of a factual basis to challenge 'announced corrective action that does not include an action that the protestor argues is necessary for a proper procurement.'" Reply at 21 (quoting *Jacobs*, 100 Fed. Cl. at 183) (distinguishing *Eskridge*); *see also Jacobs*, 131 Fed. Cl. at 448 (distinguishing the claim in *Square One* from the plaintiff's claim that the agency's corrective action was "not broad enough to address [the agency's] alleged bias"). As discussed above, AWS knew the facts underlying its challenge to the impartiality of DoD's evaluators and also knew that DoD did not intend to address its claim that the evaluators were tainted by bias on remand.[2]

Repeatedly throughout this litigation, AWS has alleged that the "President's interference in DoD's procurement decisions has been pervasive" and "destroyed the requisite impartial discharge of the procurement process," making it impossible for DoD to conduct a "fair and equal" evaluation. Am. Compl. ¶¶ 13, 395; *see also id.* ¶ 368 (asserting that President Trump's public

---

[2] AWS's assertion that "the Government *expressly* invoked the presumption of good faith" during the remand briefing to assuage "AWS's concern about the corrective action" is disingenuous. Sur-Reply at 13. The Government requested a voluntary remand in good faith, but nothing in the Government's briefs indicated that DoD intended to address AWS's bias claims as part of the corrective action. To the contrary, the Government was clear that it intended to permit limited proposal revisions and would "reconsider its award decision in response to the other *technical* challenges presented by AWS." ECF No. 177 at 2 (emphasis added).

11

conduct before the corrective action "confronted [DoD evaluators] with the inescapable understanding that their jobs and reputations would be jeopardized by failing to acquiesce to the President's stated desires"). Such far-reaching claims of bias and improper influence, based on facts well-known to the public before the second award decision, are not comparable to the projected bias anticipated by the plaintiffs in *Boston Harbor*, *Eskridge* and *Square One*.

AWS wants to have its cake and eat it too. AWS argues that "the President's tweets and other conduct did not trigger AWS to protest based on an assumption that procurement officials would not act in good faith." Sur-Reply at 7, n.1. Yet, AWS has claimed from the inception of this litigation that the President's alleged "intervention destroyed the requisite impartial discharge of the government procurement process" and that his "tweets and other conduct" were "sufficient to rebut the presumption" of good faith afforded to the evaluators. ECF No. 1 ("Compl."), ¶¶ 12, 221; *see also* Am. Compl. ¶¶ 13, 373. AWS cannot suddenly and selectively hide behind the presumption of good faith to excuse its impermissible "wait and see" litigation strategy where it knew about the President's "tweets and other conduct" and repeatedly told the Court that they "put[] the very integrity of the government procurement process in question." Compl. ¶¶ 12, 220; *see also* Am. Compl. ¶ 20. The Court should reject AWS's misguided attempt to use the presumption of good faith to exempt itself from the legal obligations that apply to its bias claim under *Blue & Gold*.

## IV. CONCLUSION

For the reasons discussed above and in Microsoft's opening Motion and its Reply, the Court should dismiss Count IV as waived under *Blue & Gold*.

Dated: January 13, 2021

*Of Counsel:*

**LATHAM & WATKINS LLP**

Abid R. Qureshi
Roman Martinez
Anne W. Robinson
Dean W. Baxtresser
Genevieve Hoffman
Riley Keenan
Margaret Upshaw

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
(202) 637-2200 (Telephone)
(202) 637-2201 (Facsimile)

Respectfully submitted,

ROGERS JOSEPH O'DONNELL, P.C.

By: /s/*Robert S. Metzger*
Robert S. Metzger (Attorney of Record)

Jeffery M. Chiow
Neil H. O'Donnell
Lucas T. Hanback
Stephen L. Bacon
Deborah N. Rodin
Cassidy Kim
Eleanor M. Ross

875 15th Street N.W., Suite 725
Washington, D.C. 20005
(202) 777-8952 (Telephone)
(202) 347-8429 (Facsimile)

*Attorneys for Intervenor-Defendant,
Microsoft Corporation*