# In the United States Court of Federal Claims

No. 19-1796C

(E-filed:  April 29, 2021)[1]

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| AMAZON WEB SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Bid-Protest; Motion to Dismiss; |
| v. | ) | RCFC 12(b)(6). |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICROSOFT CORP., | ) | |
| | ) | |
| Intervenor-defendant. | ) | |
| _____ | ) | |

Kevin P. Mullen, Washington, DC, for plaintiff.  J. Alex Ward, Sandeep N. Nandivada, Caitlin A. Crujido, Alissandra D. Young, Andrew S. Tulumello, Daniel P. Chung, Theodore J. Boutrous, Jr., Richard J. Doren, and Eric D. Vandevelde, of counsel.

Anthony F. Schiavetti, Senior Trial Counsel, with whom appeared Jeffrey Bossert Clark, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Patricia M. McCarthy, Assistant Director, and Reta Bezak, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Michael G. Anderson and Benjamin M. Diliberto, Washington Headquarters Service & Pentagon Force Protection Agency; and Tyler J. Mullen, Defense Information Systems Agency, of counsel.

---

[1]     This opinion was filed under seal on April 28, 2021, in order to allow the parties an opportunity to propose appropriate redactions.  See ECF No. 264.   On April 29, 2021, the parties filed a notice in which they report that no redactions are required.  See ECF No. 265. Accordingly, this public version of the opinion is identical to the sealed opinion with the exceptions of the filing date and the content of this footnote.

Robert S. Metzger, Washington, DC, for intervenor-defendant.  Jeffrey M. Chiow, Neil H. O'Donnell, Lucas T. Hanback, Stephen L. Bacon, Deborah N. Rodin, Cassidy Kim, Eleanor M. Ross,  Abid R. Qureshi, Roman Martinez, Anne W. Robinson, Dean W. Baxtresser, Genevieve Hoffman, Riley Keenan, and Margaret Upshaw, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge.

On November 6, 2020, defendant and intervenor-defendant filed motions to dismiss plaintiff's amended complaint, in part.  See ECF No. 237 (defendant's motion); ECF No. 238 (intervenor-defendant's motion).  On November 20, 2020, plaintiff filed its response to both motions, ECF No. 239, and on December 1, 2020, defendant and intervenor-defendant filed replies in support of their motions, see ECF No. 240 (defendant's reply), ECF No. 241 (intervenor-defendant's reply).  By leave of court, plaintiff filed a sur-reply to intervenor-defendant's reply on January 4, 2021, see ECF No. 256, and intervenor-defendant filed a sur-response on January 13, 2021, see ECF No. 258.  The motions are ripe for ruling, and the court deems oral argument unnecessary. The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, defendant's and intervenor-defendant's motions are **DENIED**.

I.      Background[2]

Plaintiff filed this case on November 22, 2019, to protest the United States Department of Defense's (DOD) decision to award the Joint Enterprise Defense Infrastructure (JEDI) contract to intervenor-defendant, under Solicitation No. HQ0034-18-R-0077 (solicitation).  See ECF No. 1 at 1.  On February 13, 2020, the court granted plaintiff's motion for a preliminary injunction, enjoining performance of the JEDI contract.  See ECF No. 164 (opinion).  On March 12, 2020, defendant filed a motion for voluntary remand to take corrective action, see ECF No. 177, which the court granted, see ECF No. 203.  The DOD confirmed its award to intervenor-defendant on September 2, 2020.  See ECF No. 221-1 at 15 (Source Selection Decision Document).

Following the conclusion of the remand proceedings and several updates to the administrative record, see ECF No. 227, ECF No. 235, plaintiff filed an amended complaint, see ECF No. 236.  The amended complaint is very lengthy, at 175 pages, see id., but the motions to dismiss now before the court address only one count in the amended complaint.  Both defendant and intervenor-defendant ask the court to dismiss

---

[2]      The case involves considerable detail, but for purposes of deciding these motions, the court will relate only those details that are necessary to the instant analysis.

the plaintiff's fourth count, which is titled "Bias, Bad Faith, Improper Influence, and/or Conflict of Interest." See id. at 169; see also ECF No. 237 at 9-10; ECF No. 238 at 5-7.

> According to plaintiff,
>
> [p]rior to the original award, President Trump repeatedly made clear to the highest echelons of [the DOD], including those directly responsible for overseeing the JEDI award, his desire that [plaintiff] not receive the JEDI Contract. [The DOD's] reevaluations on remand reveal that [the DOD] continued to succumb to presidential pressure to steer the JEDI Contract away from [plaintiff], and that the re-award was the product of bias, bad faith, improper influence, and/or conflicts of interest.

ECF No. 236 at 170. The statements that plaintiff alleges improperly influenced the procurement are numerous and varied. See, e.g., id. at 33-39. The content of those statements, however, is not relevant to the issue now before the court, and thus, requires no further discussion at this time.

Defendant and intervenor-defendant move to dismiss the fourth count of plaintiff's complaint on the basis of waiver. Specifically, defendant argues that plaintiff waived its argument related to bias before the first award decision was issued by not challenging the procurement prior to award. See ECF No. 237 at 23-28. And both defendant and intervenor-defendant insist that, even assuming plaintiff did not waive the issue prior to the initial award, it waived the issue by failing to challenge the corrective action before the second award decision. See id. at 28-33; ECF No. 238 at 24-32.

II.   Legal Standards

When considering a motion to dismiss brought under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis

The parties make nuanced and wide-ranging arguments in the briefs now before the court.  The fundamental question presented by both defendant and intervenor-defendant, however, is a straightforward one:  does the waiver doctrine articulated by the United States Court of Appeals for the Federal Circuit in <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d 1308 (Fed. Cir. 2007), and its progeny bar plaintiff's bias claims as stated in its amended complaint.[3]  <u>See</u> ECF No. 237 at 8; ECF No. 238 at 7.  The court finds that it does not.

A.    The Court Declines to Extend the <u>Blue & Gold</u> Waiver Doctrine

In <u>Blue & Gold</u>, the Circuit held that:

[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

492 F.3d at 1313.  According to defendant, the Federal Circuit extended this waiver doctrine beyond the confines of patent errors in the terms of a solicitation in <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d 1377 (Fed. Cir. 2012) and <u>Inserso Corp. v. United States</u>, 961 F.3d 1343 (Fed. Cir. 2020).  <u>See</u> ECF No. 237 at 16.  In <u>COMINT</u>, the Circuit held that the plaintiff had waived its ability to challenge an amendment to the solicitation that was issued sufficiently in advance of the award decision to have given the plaintiff an opportunity to do so.  <u>See</u> <u>COMINT</u>, 700 F.3d at 1383.  The Circuit further held that "[t]he same policy underlying <u>Blue & Gold</u> supports its extension to all pre-award situations."  <u>Id.</u> at 1382.

Defendant acknowledges that "both <u>Blue & Gold Fleet</u> and <u>COMINT</u> involved challenges to solicitation terms," in contrast to the case at bar, but argues that the Circuit "has made clear . . . that when an interested party is aware of a basis to challenge the terms of a competition—even if that basis is not, strictly speaking, the terms of the solicitation—and has the opportunity to raise the challenge before award or the close of bidding, it must do so or waive its challenge."  ECF No. 237 at 16.  In support of this argument, defendant cites to <u>Inserso</u>, 961 F.3d at 1343.  <u>See</u> <u>id.</u>  The Circuit applied the <u>Blue & Gold</u> waiver doctrine in <u>Inserso</u> when it concluded that the plaintiff had waived

---

[3]     Intervenor-defendant's arguments track closely with defendant's arguments.  <u>See</u> ECF No. 238; ECF No. 241; ECF No. 258.  Accordingly, the court will not separately discuss intervenor-defendant's arguments unless they are both pertinent to this decision and different from the arguments made by defendant.

its right to challenge the "disclosure of certain information" in the course of two related procurements.  Inserso, 961 F.3d at 1348.

The procurement at issue in Inserso, which was for information technology services, had a unique structure.  Id. at 1345-46.  Specifically, after issuing one solicitation, the agency:

> divided the . . . competition into two competitions.  One competition would award a "suite" of contracts in a "full and open" competition; the other would award a suite of contracts to small businesses. . . .  Importantly, the solicitation expressly states that small businesses could compete in both competitions but could receive only one award.

Id. at 1346.  The two competitions proceeded on different timelines, and the agency made awards and debriefed offerors in the full and open competition while it continued communicating with, and receiving revisions from, offerors in the small business competition for approximately seven additional months before accepting final proposal revisions.  See id. at 1346-47.

After the agency made an award decision in the small business competition, the plaintiff, a disappointed bidder, filed a bid protest in this court challenging the small business award on the basis that the agency's debriefing after the award decision for the full and open competition "gave certain offerors in the small-business competition a competitive advantage by providing them, but not other bidders, the total evaluated price for all full-and-open awardees and previously undisclosed information regarding DISA's evaluation methodology."  Id. at 1347.  According to plaintiff, "this unequal provision of information created an organizational conflict of interest, . . . and, in addition, violated at least one regulation specifically addressed to disparate treatment of bidders."  Id.

The Federal Circuit concluded that plaintiff had waived its opportunity to challenge the alleged unequal provision of information.  See id. at 1350.  The Circuit explained that, due to the structure of the competitions, the plaintiff "knew, or should have known, that [the agency] would disclose information to the bidders in the full-and-open competition at the time of, and shortly after, the notification of awards."  Id.  The Circuit noted that both the applicable regulations and the express terms of the solicitations, "made patent that the solicitation allowed, and that there was likely to occur, the unequal disclosure regarding prices" challenged by the plaintiff.  Id.

Defendant admits that Inserso "was perhaps the first time that the Federal Circuit had occasion to apply the Blue & Gold Fleet rule to claims not expressly directed at solicitation terms," but argues that this court has done so in a number of cases.  ECF No. 237 at 17; see also id. at 17-20 (citing Peraton, Inc. v. United States, 146 Fed. Cl. 94, 101-103 (2019); Jacobs Tech. Inc. v. United States, 131 Fed. Cl. 430 (2017); Synergy

Sols., Inc. v. United States, 133 Fed. Cl. 716, 740 (2017); Jacobs Tech. Inc. v. United States, 100 Fed. Cl. 179, 182 n.4 (2011)).  Defendant also claims that this court has applied the Blue & Gold waiver rule in the context of challenges to organizational conflicts of interest (OCIs), which it asserts is relevant here.  See id. at 19-20 (citing CRAssociates, Inc. v United States, 102 Fed. Cl. 698, 712 (2011), aff'd, 475 F. App'x 341 (Fed. Cir. 2012); Concourse Grp., LLC v. United States, 131 Fed. Cl. 26, 29-30 (2017); Commc'n Constr. Servs. v. United States, 116 Fed. Cl. 233, 263-64 (2014)).

The court has carefully reviewed the Circuit's decisions and the persuasive authority presented by the parties, and concludes that none of the cited cases support the application of a requirement that a protestor challenge a biased award decision—based on allegations not directly related to the terms or structure of the solicitation itself—before that decision is rendered by the agency.  See, e.g., Peraton, 146 Fed. Cl. at 103 (finding that plaintiff's bad faith claim raised in its initial complaint was moot following corrective action and that the claim was waived due to plaintiff's attempted procedural maneuver of "simultaneously [seeking] to supplement the complaint and stay proceedings" so that it knew whether it was the awardee before prosecuting its claim); Jacob's Tech., 131 Fed. Cl. at 447 (finding that plaintiff's challenge to "the scope of the [agency's] corrective action" was properly brought before the final award decision following corrective action was rendered); Synergy Sols., 133 Fed. Cl. at 739-40 (finding that the protestor had waived its right to challenge the agency's failure to reopen discussions regarding a significant weakness in its proposal when it failed to challenge the scope of subsequent corrective action); Jacobs Tech., 100 Fed. Cl. at 182-83 (finding that the protestor's challenge to the re-solicitation, including a claim related to an alleged OCI arising from the participation of a certain offeror, was ripe even though the agency had not yet made an award); CRAssociates, 102 Fed. Cl. at 712 (finding that a protestor waived its challenge to an OCI arising from the participation of an offeror that had partially performed on a related contract that was later set aside when the protestor failed to raise the OCI issue prior to the close of the bidding process); Concourse Grp., 131 Fed. Cl. at 30 (finding that the protestor had waived its OCI challenge because the protestor was on notice of the alleged OCI prior to the award decision and had "easy access to the knowledge upon which it" relied); and Commc'n Constr. Servs., 116 Fed. Cl. at 262-63 (finding that the protestor waived its OCI claim when it knew the allegedly-conflicted party was participating in the procurement, and reiterating the rule that "if there is a patent ambiguity or error in the solicitation, a plaintiff must seek redress in court prior to award").

Even if the court were convinced that a further extension of the Blue & Gold waiver doctrine was warranted based on the facts in this case, it is not empowered to stray from the confines of binding precedent.

6

B.      The <u>Blue and Gold</u> Waiver Doctrine Does Not Apply Here

In its amended complaint, plaintiff alleges as follows:

> After [DOD] resolved the initial improprieties in the implementation of its corrective action through the issuance of Amendment 0009, the scope and form of [DOD]'s corrective action with respect to Pricing Scenario 6 appeared designed to facilitate a fair and impartial corrective action on remand. [DOD], in effect, had a clean slate from which it could reevaluate proposals in accordance with the RFP and remove any semblance of bias, bad faith, or improper influence from the evaluation process. And, [plaintiff] and [intervenor-defendant] could finally compete on a level playing field with a common understanding of the Price Scenario 6 requirements. The debriefing materials and administrative record, however, reveal that the execution of [DOD]'s corrective action was anything but fair and impartial.

ECF No. 236 at 169-70. Thus, plaintiff is explicitly challenging the "execution" of the corrective action, not its terms, its structure, or its scope. <u>Id.</u> at 170. The court is unconvinced that a challenge to the execution of the corrective action could be mounted before the corrective action was, in fact, executed.

Defendant and intervenor-defendant contest plaintiff's claim that it seeks to challenge the agency's <u>evaluation</u>, and instead argue that plaintiff's true intention is to challenge the procurement <u>process</u> because plaintiff was aware of the alleged facts supporting its bias claim in advance of any award decisions. <u>See, e.g.</u>, ECF No. 237 at 25; ECF No. 238 at 24-26. A fundamental disbelief that plaintiff expected the agency to conduct the corrective action in an unbiased, good faith manner underlies defendant's and intervenor-defendant's waiver arguments. <u>See</u> ECF No. 237 at 30 (questioning whether plaintiff was "truly concerned that [DOD] evaluators and source selection officials were biased"); ECF No. 238 at 31 (arguing that plaintiff "cannot salvage its untimely bias allegations by the self-serving contention that it only realized that bias had infected the procurement when [DOD] disclosed the outcome of the second evaluation"); ECF No. 240 at 16 (claiming that plaintiff "attempts to avoid the consequences of its waiver by painting its bias claims as challenges not to a competition tainted by bias, but rather to the manifestation of that bias in the remand evaluations and source selection decision"); ECF No. 241 at 14 (stating that plaintiff's "assertion that Count IV arises from the reevaluation is flatly contradicted by its own oft-repeated theory of the case—that [DOD]'s source selection team was 'consciously or unconsciously' biased due to the President's 'public statements and explicit and implicit directives to senior [DOD] officials' that 'made known his unapologetic bias against [plaintiff] and Mr. Bezos and his fervent desire that [plaintiff] not be awarded the JEDI Contract"); ECF No. 258 at 6 (insisting that the court "need not accept [plaintiff's] implausible assertion that it believed the remand would proceed in good faith," because it is inconsistent with plaintiff's claim

that the DOD's "entire source selection team was infected by systemic bias and improper influence"), 7 (characterizing plaintiff's stated belief that the corrective action would be conducted in good faith as "implausible and inconsistent with [plaintiff's] own statements").  In making these arguments, defendant and intervenor-defendant repeatedly rely on matters beyond the allegations in the amended complaint.  See generally id.

Because evaluating the credibility of plaintiff's claim requires the court to look beyond the factual allegations as presented in the amended complaint, such an analysis would contravene the standard the court is required to apply to the present motions to dismiss.  See Cary, 552 F.3d at 1376 (stating that the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff") (citing Gould, 935 F.2d at 1274).  Whether plaintiff can ultimately prevail on its bias claim is another matter entirely—the court makes no findings of fact or determination on the merits at this time.

Intervenor-defendant urges the court to consider two exceptions to the court's duty to accept the facts as alleged in the complaint as true.  It first argues that "'it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters on which the court may take judicial notice.'" ECF No. 258 at 12 (quoting Commonwealth Edison Co. v. United States, 46 Fed. Cl. 158, 160 n.3 (2000)).  It also argues that the court is not required to "accept as true 'pleading allegations that are contradicted . . . by other allegations.'"  Id. (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2020)).  According to intervenor-defendant, plaintiff's "claim that it believed [DOD] would cure its bias concerns is contradicted by its own allegations and its blog post."  Id. at 13.

With regard to intervenor-defendant's argument that the court should take judicial notice of plaintiff's blog post, the court finds that, even assuming it may do so, the post does little to support intervenor-defendant's position.  Plaintiff published the post to which intervenor-defendant refers, titled "JEDI: Why we will continue to protest this politically corrupted contract award," on September 4, 2020, two days after the agency announced the second award to Microsoft.  See ECF No. 241-1 (blog post); ECF No. 221-1 at 15 (agency's second award to Microsoft, dated September 2, 2020).  Intervenor-defendant insists that the post is evidence that plaintiff never believed the agency would conduct an unbiased corrective action.  See ECF No. 241 at 7-8.  Specifically, intervenor-defendant highlights plaintiff's statement in the post that it objected to the corrective action on the basis that it "was likely to result in another contract award based on politics and improper influence and not based on the relative strengths of the two offerings." ECF No. 241-1 at 2; see also ECF No. 241 at 7.  This statement, however, was preceded by plaintiff's statement that "[t]aking corrective action should have provided the [DOD] an opportunity to address the numerous material evaluation errors outlined in our protest, ensure a fair and level playing field, and ultimately, expedite the conclusion of litigation," ECF No. 241-1 at 2, and was followed by a statement that plaintiff "strongly disagree[s]

with the [DOD's] flawed <u>evaluation</u>," <u>id.</u> at 3 (emphasis added).  Thus, considered in context, plaintiff's statements: (1) indicate that its disagreement is with the agency's evaluation, and (2) do not preclude plaintiff's belief that the agency would act in good faith, despite its initial, and admittedly serious, reservations.

Intervenor-defendant's second argument, that the court is not required to "accept as true 'pleading allegations that are contradicted . . . by other allegations,'" is equally unavailing.  ECF No. 258 at 12 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (3d ed. 2020)).  Intervenor-defendant argues that plaintiff's theory of the case has evolved over time in contradictory ways.  <u>See</u> ECF No. 258 at 7-13.  As a result, intervenor-defendant contends, the court is not obligated to credit the facts underlying those contradictions.  <u>See id.</u> at 12.  To support this argument, intervenor-defendant refers generally to "all of the reasons explained above" in its sur-response.  <u>Id.</u>  This imprecise style of argument makes it difficult for the court to identify exactly which of plaintiff's allegations intervenor-defendant believes are subject to this exception to the standard the court generally applies to a motion brought pursuant to RCFC 12(b)(6).  Nevertheless, the court reviewed the section of intervenor-defendant's argument that preceded this statement and concludes that the contradictions to which intervenor-defendant refers are not between allegations, but rather are between allegations and argument.  <u>See id.</u> at 7-13.  As such, the court declines to apply the exception urged by intervenor-defendant.

For the foregoing reasons, the court concludes that the <u>Blue & Gold</u> waiver doctrine does not bar the fourth count in plaintiff's complaint.  This ruling is restricted to the contours of plaintiff's challenge to the execution of the corrective action, as alleged in the amended complaint.  Should plaintiff's case diverge from the confines of the allegations in its amended complaint, defendant and intervenor-defendant may assert waiver arguments if they deem such arguments to be appropriate.  Because both defendant's and intervenor-defendant's motions to dismiss rely entirely on the premise that plaintiff has waived its bias claim under <u>Blue & Gold</u> and its progeny, the motions are both denied.

IV.    Conclusion

Accordingly, for the foregoing reasons:

(1)    Defendant's motion to dismiss plaintiff's complaint, in part, ECF No. 237, is **DENIED**;

(2)    Intervenor-defendant's motion to dismiss plaintiff's complaint, in part, ECF No. 238, is **DENIED**;

(3)     On or before **May 28, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report** proposing a plan for further proceedings in this case; and

(4)     On or before **May 28, 2021,** the parties are directed to **CONFER** and **FILE** a **notice of filing** attaching a proposed redacted version of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge