**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| AMAZON WEB SERVICES, INC., | Case No. 19-cv-01796 |
| Plaintiff, | Judge Campbell-Smith |
| v. | ██████████ |
| UNITED STATES OF AMERICA, by and through the U.S. Department of Defense, | |
| Defendant, | |
| and | |
| MICROSOFT CORPORATION, | |
| Defendant-Intervenor. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF AMAZON WEB SERVICES, INC.'S
█████████ RENEWED MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... iv

INTRODUCTION................................................................................................................. 1

QUESTION PRESENTED ................................................................................................... 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................ 2

    A.   Initial Production of the Administrative Record............................................... 3

    B.   AWS's Prior Efforts to Ensure a Complete AR and the Government's Delay.............. 4

    C.   DoD Continues to Avoid Production of a Complete Administrative Record
        Following Remand ........................................................................................... 6

LEGAL STANDARDS ........................................................................................................ 11

    A.   Standards Governing Completeness of the Record........................................... 11

    B.   The Role of Privileges in an Administrative Record ....................................... 13

ARGUMENT........................................................................................................................ 15

    A.   Materials Related to the JEDI RFP Proposals and the Evaluations Thereof ............... 17

        1.   *Materials on Any Platform (e.g., Email, Slack, Google Drive, Google
            Docs, Google Groups, Google Hangouts) Related to the JEDI Source
            Selection or Proposal Evaluations, as Pertaining to AWS and/or
            Microsoft.* ................................................................................................ 17

        2.   *Documents Concerning the Source Selection Board and Factor 8
            Technical Evaluation Board Addenda* ..................................................... 21

        3.   *Drafts and Workpapers Relating to the Demonstration Evaluations,
            Factor Consensus Evaluations, Price Evaluations, SSEB Report, PEB
            Report, SSAC Report, and/or SSDD.* ...................................................... 22

        4.   *Notes, Transcripts, and/or Records of DoD's Meetings with AWS and/or
            Microsoft.* ................................................................................................ 25

        5.   *Unedited Video and Audio of the Factor 8 Demonstrations.*............................. 25

B.  Materials Related to the Involvement of the Office of the Secretary of Defense in the JEDI Procurement Process ...................................................................... 26

    1.  *Materials Related to Meetings and Briefings with DoD Chief Information Officer Dana Deasy* ................................................................................. 26

    2.  *"Read Ahead" Memoranda, Agendas, Notes, Transcripts, and Other Materials Relating to Informational Meetings with Secretary Esper and/or the Office of the Secretary of Defense.* .................................................. 30

    3.  *Materials Concerning the Role of Stacy Cummings, the Principal Deputy Assistant Secretary of Defense, Acquisition Enablers, Relating to the JEDI Contract.* .................................................................................................. 32

    4.  *Materials Relating to the Recusal of Secretary Esper.* ......................... 33

    5.  *Materials Relating to Meetings and a Presentation to DoD Leadership that Occurred After September 27, 2019.* ............................................. 34

C.  Materials Related to the Department of Defense Office of Inspector General Report .......................................................................................................... 35

CONCLUSION .................................................................................................... 37

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alpha I, L.P. ex rel. Sands v. United States*, 83 Fed. Cl. 279 (2008)............................................ 13

*ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127
   (Fed. Cl. June 26, 2014)............................................................................ 15, 19, 31

*AshBritt, Inc. v. United States*, 87 Fed. Cl. 344 (2009) ................................................. 15

*Bethlehem Steel Corp. v. U.S. E.P.A.*, 638 F.2d 994 (7th Cir. 1980)........................................... 11

*BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226 (2020) ........................................... 16

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ....................................... 13

*Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298 (2013)........................................... 12

*East West, Inc. v. United States*, 100 Fed. Cl. 53 (2011)............................................ 11

*EFW, Inc. v. United States*, No. 20-92C, 2020 WL 1164496 (Fed. Cl. Mar. 3, 2020)........... 14, 15

*Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26 (N.D. Tex. 1981) ................................................ 33

*Femme Comp Inc. v. United States*, 83 Fed. Cl. 704 (2008) ........................................... 22

*Hager Dev. Grp., LLC v. United States*, No. 20-819, 2020 WL 4529817 (Fed. Cl. Aug. 5, 2020)
  ................................................................................................................................ 11

*Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9 (D.C. Cir. 1977)........................................... 11

*Home Box Office, Inc. v. F.C.C.*, 434 U.S. 829 (1977).................................................. 11

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001)
  ................................................................................................................................ 12

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)................................................. 14, 24

*Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70 (2006)............................................ 22

*Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003
   (N.D. Cal. Jan. 10, 2017) ......................................................................... 19

*Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159 (2011)...................... passim

*Kerr Contractors, Inc. v. United States*, 89 Fed. Cl. 312 (2009)................................................... 11

*L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45 (2011) ............................... 22

*Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302 (1st Cir. 2006) ............................... 15

*Meyer Corp., U.S. v. United States*, 37 ITRD 2845 (Ct. Int'l Trade 2016) ................................... 14

*Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147 (1997)........................................................... 13

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1988).................................... 14

*Naval Sys., Inc. v. United States*, No. 20-1539C, 2021 WL 1202829
    (Fed. Cl. Mar. 26, 2021) .................................................................................................. 11, 12

*New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502
    (S.D.N.Y. Jan. 15, 2019).......................................................................................................... 12

*Oracle Am., Inc. v. United States*, 146 Fed. Cl. 606 (2019) ......................................................... 19

*Oracle Am., Inc. v. United States*, No. 18-1880C, 2019 WL 354705
    (Fed. Cl. Jan. 23, 2019).......................................................................................................... 28, 29

*Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489 (2019) .................................... 15, 32

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL
    4642324 (N.D. Cal. Oct. 17, 2017)......................................................................................... 12

*Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571 (2012) .............................................. 14

*Smith v. United States*, 114 Fed. Cl. 691 (2014)........................................................................... 13

*Sonoran Tech. & Prof. Servs., LLC v. United States*, 132 Fed. Cl. 644 (2017) .......................... 15

*Tauri Grp., LLC v. United States*, 99 Fed. Cl. 475 (2011) ......................................... 12, 19, 22, 23

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995).............................. 24

*Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317 (1990)......................................................... 14

**Rules**

Appendix C ¶ 22, Rules of the United States Court of Federal Claims.............................. 3, 12, 37

**Regulations**

48 C.F.R. § 15.305(a) ............................................................................................................. 22

48 C.F.R. § 15.308 ................................................................................................................. 22

**INTRODUCTION**

The Government refuses to produce all documents generated, developed, considered, or reviewed in connection with the Department of Defense's ("DoD") September 2020 re-award of the Joint Enterprise Defense Infrastructure ("JEDI") contract, Solicitation No. HQ0034-18-R-0077, to Microsoft Corporation ("Microsoft"). As a result, the current Administrative Record ("AR") is glaringly deficient and obstructs an effective and fair review of Plaintiff Amazon Web Services, Inc.'s ("AWS") bid protest allegations. Moreover, the Government's persistent failure to produce a complete AR unnecessarily delays the resolution of this protest. AWS therefore asks this Court to direct Defendant, the United States of America, acting by and through DoD (collectively "the Government"), to complete the AR submitted in connection with AWS's protest with all required documents.

The Government's AR is inexplicably missing entire categories of critical information that DoD considered in making both the original award decision and its post-corrective action award. These missing documents include email correspondence and communications on platforms such as Slack and Google Groups reflecting factors considered in the agency's decision-making process (and that this Court *twice* ordered the Government to produce); workpapers and other materials that evaluators created and relied upon when assessing the AWS and Microsoft proposals; draft memoranda and workpapers considered by and relied upon by the Source Selection Team; and unedited Factor 8 demonstration videos. In addition, the AR is missing whole categories of documents related to the involvement of the Office of the Secretary of Defense in the JEDI procurement. Moreover, the April 13, 2020 Report on the Joint Enterprise Defense Infrastructure (JEDI) Cloud Procurement DODIG-2020-079 ("DoDIG Report") revealed DoD also generated, developed, considered, and reviewed other documents in making the JEDI award decisions that

DoD has failed to identify or include in the AR. Among other things, the AR does not include the briefings provided to White House officials by former DoD Chief Information Officer Dana Deasy, a member of the Source Selection Team ("SST"), that were referenced in the DoDIG Report. *See* Ex. A (DoDIG Report) at 34, 36. All these materials must be included in the AR.

The Government's persistent omission of this critical information from the AR leaves AWS unable to assess the full record underlying DoD's evaluation and award determination on remand, and this Court unable to conduct a full and effective review of DoD's re-award decision and AWS's bid protest allegations. Moreover, because the re-award decision failed to remedy the pre-existing errors underlying the original award, ECF No. 236 at 46, the missing record documents underlying the *initial* award that the Government refuses to produce remain just as relevant to AWS's protest as the record underlying the remand award. The Government's continuing failure to produce the complete AR underlying *both* award decisions not only inhibits this Court's full and fair review of the merits, but has contributed to the delay for which it publicly blames AWS.

Defendant, the United States, and Defendant-Intervenor, Microsoft, oppose this motion.

## QUESTION PRESENTED

Should the Government be required to produce in the AR all documents or other materials that agency decision makers and their advisors generated, developed, considered, or reviewed when reaching the decisions challenged by AWS's bid protest?

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Government has impeded this Court's review of the complete AR from the very beginning of this case. The lengthy record of the Government's failures to produce a complete AR,

despite having had over a year and a half to do so, underscores the need for prompt production of the outstanding materials to bring this protest to a just and expeditious resolution.

## A.    Initial Production of the Administrative Record

AWS filed its bid protest Complaint challenging DoD's original October 25, 2019 decision to award the JEDI Contract to Microsoft on November 22, 2019. ECF No. 1. Following the initial status conference with the Parties, the Court ordered on November 26, 2019 that the AR "must include all materials developed and considered by the government in making its award decision," including the "core documents identified in Appendix C" of the Rules of the United States Court of Federal Claims, as well as "*informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like.*" ECF No. 15 at 2 (emphasis added). The Government committed to file the AR by December 13, 2019. ECF No. 15 at 2; ECF No. 25 at 12:7–9.

The Court on December 13, 2019 amended the AR production deadline based on the Government's assertions that the file size and the volume of the record documents necessitated an extension to January 3, 2020. *See* ECF No. 54 at 2–3; ECF No. 55. In granting the extension, the Court reiterated that the AR "must include all materials developed and considered by the government in making its award decision," including "informal documents reflecting factors considered in the agency's decision-making process," such as electronic communications through email, Slack, and other platforms. ECF No. 55 at 2. The Government produced what it represented to be the complete AR on January 3, 2020, ECF No. 107, and made available to counsel possessing the requisite security clearance a small set of classified documents from the AR on January 14, 2020, ECF No. 114. However, as AWS quickly discovered, the documents produced by the Government did not reflect a complete AR.

**B.   AWS's Prior Efforts to Ensure a Complete Administrative Record and the Government's Delay**

AWS's review of the initial AR production revealed a number of missing documents. On January 9, 2020, AWS provided the Government a list of the missing materials and requested that the Government produce them in a complete AR. The list explained the basis for each request and provided a reference to the specific documents within the existing AR production that prompted each request. During a January 10, 2020 conference call among the parties, the Government represented that it would produce a limited portion of the documents requested by AWS to "complete" the record, including, *inter alia*, native Excel versions of PDF documents filed within the existing record that AWS had specifically requested. The Government did not identify which documents it did *not* intend to produce. The next day, in connection with the parties' ongoing discussions leading up to the submission of the Joint Status Report on January 13, 2020, *see* ECF No. 111, the Government proposed to give itself two weeks to "correct" the AR—without providing any further clarity regarding the specific documents it intended to produce or any reason why the unproduced documents required two weeks for production.

In further discussions among the parties, AWS requested that the Government provide a date certain for the production of the documents the Government agreed were necessary to complete the record. AWS also informed the Government that AWS was preparing a Motion to Complete the Record for the requested documents the Government refused to produce. The Government responded that the process to "identify, collect, and process additional documents that may properly be part of the administrative record" was "time consuming," and that the Government would "work as expeditiously on this matter as is practicable," but did not commit to a date by which it would complete the record; did not identify the requests for completion to which

it intended to respond (or not respond); and did not explain why it had not included these documents in the AR in the first instance. *See* Ex. B (email dated Jan. 16, 2019).

On January 16, 2020, AWS informed the Government that it intended to file its Motion to Complete the Record the following day if the Government refused to produce all requested documents as part of the AR, and *again* asked that the Government identify which documents it did not intend to produce. Only when AWS provided the Government and Microsoft a copy of its ready-to-file Motion to Complete the Record on January 17—more than a week after AWS's initial outreach concerning necessary completion of the record—did the Government finally "provide some information on items [the Government did] intend to file as properly part of the administrative record."[1]

Despite having had nearly eight weeks to compile the AR since AWS commenced its suit, and despite having stated to the Court it would produce a complete AR weeks earlier, the Government did not commit to a date certain by which it planned to produce these omitted materials, stating instead that it "intend[s] to collect and process all of these documents and file them with the Court together, with copies to the parties." It was not until January 30, 2020, nearly a month after the production of the original AR, and after AWS filed its initial Motion to Complete the Administrative Record, ECF No. 127, that the Government produced some, but not all, of the required materials underlying the original award decision.

After the parties fully briefed the Motion to Complete the Administrative Record, *see* ECF Nos. 127, 143, 156, this Court issued a Preliminary Injunction on February 13, 2020, halting

---

[1] The Government also revealed that some documents requested by AWS did not exist, and represented that two documents referenced in the existing AR materials were identified in error.

performance of the JEDI Contract because it determined Microsoft's proposal was likely deficient and AWS was likely to succeed on the merits of just the first of the many errors it identified in DoD's evaluations underlying the original award decision. ECF No. 164. On March 30, 2020, the Government moved to remand the case for DoD to "reconsider certain aspects of the challenged agency decision." ECF No. 185 at 1. The Court granted the Government's request for remand and stayed consideration of all pending motions and the case pending further order of the Court. ECF Nos. 178, 205.

## C.     DoD Continues to Avoid Production of a Complete Administrative Record Following Remand

DoD announced on September 4, 2020, that it had confirmed the award of the JEDI Contract to Microsoft notwithstanding AWS's technical superiority and nearly ____ lower price. AR Tabs 740, 741. Despite DoD's commitment to "reconsider" the award decision, the information DoD provided to AWS in connection with the re-award announcement and debriefing, *see, e.g.,* AR Tabs 740, 742, demonstrated that DoD's re-award decision suffered from many of the same defects that plagued the initial award and compounded those prior errors. ECF No. 236. DoD downplayed AWS's strengths and ignored deficiencies in Microsoft's technical approach in an effort to validate a flawed and politically corrupted decision. *Id.* at 3–8. Because DoD's corrective action re-evaluations resulted in yet another improper award decision, on September 15, 2020, the parties submitted a Joint Status Report to the Court that proposed a schedule for further proceedings, including the production of the updated AR. ECF No. 222 at 2. The Government committed to update the AR by September 21, 2020, and pledged to move for leave to add the

debriefing documents within three business days of the close of the debriefing. *Id.*[2] Although the Court declined to "set a more extensive schedule" for briefing because "the content of the AR is likely to affect all subsequent filings proposed by the parties, and because defendant has not provided the court with a date on which the AR will be complete in defendant's view," the Court set September 21, 2020 as the deadline for the Government to file the AR. ECF No. 223 at 2.

On September 21, 2020, the Government submitted two filings, both of which underscore the need for this Court's intervention in light of the Government's continued failures to meet its obligations under this Court's Rules and prior Orders to produce a complete AR. First, the Government submitted a "motion to amend" the AR with an additional 14 documents "that were inadvertently omitted from the administrative record previously filed in this case" that it "discovered" when "compiling the administrative record of the remand proceedings in this case . . ." ECF No. 224 at 1. The Government did not provide any explanation as to why its prior efforts to compile the AR failed to identify these documents, which were dated between June 22, 2018, and October 24, 2019. *See* AR Tabs 559–572. Even more noteworthy, however, is the direct relevance of these documents to AWS's claims in this protest. These "inadvertently omitted" documents included such critical materials as memoranda concerning (i) the competitive range determination, (ii) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with Microsoft's proposal, (iii) the decision to close discussions, and (iv) Source Selection Authority "Non-Voting Advisor Briefings" with

---

[2] The Government delayed in responding to AWS's initial debriefing questions until September 28, 2020. AWS responded to DoD's responses with enhanced debriefing follow-up questions on September 30, 2020, AR Tab 760, but the debriefing did not close until DoD responded to AWS on October 9, 2020, AR Tab 762.

former DoD Chief Information Officer Dana Deasy, as well as copies of the Price Evaluation Board presentations to the Source Selection Authority.

Second, the Government produced the Post-Remand Supplement to the AR.[3] The 170 documents added to the AR based on the remand evaluations revealed that there were *even more* documents that the Government has not, and steadfastly refuses, to produce. Two days later, on September 23, 2020, AWS requested that the Government produce native versions of the Excel spreadsheets contained in the record, as the Government previously had agreed to provide in response to AWS's earlier request in January 2020. Although the Government stated on September 24, 2020, that it was "exploring logistics" and "may be able to send those out tomorrow" or "as quickly as we can," the Government did not do so until October 6, 2020. On September 25, 2020, AWS requested that the Government produce critical categories of missing documents, including those previously requested as part of AWS's original Motion to Complete the Administrative Record (ECF No. 127) and those the Court had already *twice* ordered the Government to produce (ECF No. 15 at 2; ECF No. 55 at 2), which AWS believed should have been included in the Post-Remand AR.

The Government did not substantively respond to AWS's request until October 9, 2020, when it refused to produce the majority of the requested documents. Notably:

- The Government refused to produce any "drafts, emails, Google Drives, Slack messages, etc.," stating that it had "filed in the administrative record all such documents that are properly part

---

[3] Although the Government filed a motion to *amend* the administrative record to add the 14 "discovered" documents to the administrative record, ECF No. 226, the Court deemed the motion a motion to supplement and ordered the Government to file a consolidated supplement to the administrative record "that include[d] both the inadvertently omitted pages addressed in [the Government's] motion . . . along with documents related to the remand proceedings." *Id.* at 2. The Government did so on September 24, 2020. ECF No. 227.

of the administrative record. For more information, please see our opposition to your motion to complete the administrative record, ECF No. 143." Ex. C (Email dated Oct. 9, 2020).

- The Government claimed that "no written documentation exists" for requests concerning critical "consultation," "discussions," "requests" and meetings referenced in other AR materials. *Id.*

- The Government acknowledged that a "draft report was part of the SSEB's presentation to the SSAC on August 20, 2020," but referred AWS only to the "final report included in the AR as Tab 733." *Id.*

- The Government argued that the April 13, 2020 DoDIG Report "was not developed and considered by DoD in making its decision to award the JEDI contract to Microsoft and, therefore, is not part of the administrative record of this procurement," and that the "related materials you[] request, therefore, are likewise not part of the administrative record of this procurement." *Id.*; Ex. A (DoDIG Report) at 8, 93.[4]

Following the belated close of AWS's post-award debriefing, on October 12, 2020, the

Government filed a Motion to Complete the Administrative Record with the debriefing documents.

ECF No. 230 at 2 ("With the addition of these documents, the United States considers the

administrative record to be complete"). Although AWS did not oppose the Government's Motion,

it noted that the Motion included documents necessary, but not sufficient, to complete the AR. *See*

*id.* at 1–2.

Despite its serial delays and acknowledgments of production errors related to the AR at

multiple points throughout the litigation, the Government continues to obstruct the adjudication of

---

[4] The Government's position ignored that the Inspector General based the DoDIG Report on documents that existed prior to the original award decision, which DoD necessarily considered as part of its award deliberations. *See* AR Tab 461 at 176424 (email from DoDIG to Undersecretary of Defense David Norquist dated October 17, 2019, stating "[a]s you requested yesterday, attached is a statement concerning the status of the DoD OIG's Jedi review…."). Moreover, the Government failed to acknowledge that the DoDIG Report included several "recommendations" from the DoDIG to the officials responsible for the JEDI procurement that had not been resolved at the time the Report was published in April 2020, and therefore almost certainly were considered by DoD in connection with the proceedings on remand.

this protest upon a complete record by withholding critical materials that DoD generated, developed, considered, or reviewed in reaching its award decisions. And because the re-award decision compounded the existing errors from the original award decision, the Government's failures to produce the complete AR underlying the original award were not cured when the contract was re-awarded following remand.

Even more concerning than the Government's consistent avoidance of AWS's requests to complete the record are the categories of documents that the Government refuses to include in the AR. Aside from the Slack and Google drive messages the Court twice ordered the Government to produce, the withheld documents include documents related to two addenda to the Source Selection Evaluation Board ("SSEB") report requested and received by the Source Selection Advisory Council ("SSAC") during the remand source selection decision; drafts and workpapers, including a draft report that was part of the SSEB's presentation to the SSAC underlying the remand award decision; and evaluator notes, transcripts, and unedited videos, all of which are critical to AWS's claims that DoD erred in its technical evaluations on remand. The missing documents also include briefings and correspondence between members of the Source Selection Team and the White House, as well as additional documents concerning the involvement of the Office of the Secretary of Defense in the award decisions, which are directly relevant to AWS's allegations that the re-award decision was tainted by improper bias, bad faith, and undue influence. *See* ECF No. 236. These documents lie at the core of the materials considered and relied upon by DoD in its evaluations and award determinations, and must be produced to ensure a fair and full review of AWS's protest allegations.

## LEGAL STANDARDS

"Secrecy, whether intentional or otherwise, is inconsistent 'with fundamental notions of fairness implicit in due process and with the ideals of reasoned decision-making on the merits which undergirds all our administrative law.'" *Bethlehem Steel Corp. v. U.S. E.P.A.*, 638 F.2d 994, 1004 (7th Cir. 1980) (quoting *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 56 (D.C. Cir. 1977), *cert. denied*, 434 U.S. 829 (1977)). Thus, "[t]he interests of due process necessitate a complete record upon which the parties and Court can analyze the claims." *Hager Dev. Grp., LLC v. United States*, No. 20-819, 2020 WL 4529817, at \*4 (Fed. Cl. Aug. 5, 2020).

### A.  Standards Governing Completeness of the Record

"A complete administrative record is the predicate to meaningful and effective judicial review." *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 168 (2011). To be complete, a record must "contain[] the information relied upon by the agency as it made its decision, as well as documentation of the agency's decision-making process." *Kerr Contractors, Inc. v. United States*, 89 Fed. Cl. 312, 335 (2009), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010). This includes materials that were both "directly or indirectly considered by agency decision-makers." *Comint*, 100 Fed. Cl. at 168–69 (internal quotation marks omitted). "[A]n agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed." *Id.* at 168. As this Court has repeatedly recognized, "an agency does not possess the discretion to make these records whatever it says they are." *Naval Sys., Inc. v. United States*, No. 20-1539C, 2021 WL 1202829, at \*7 (Fed. Cl. Mar. 26, 2021) (quoting *East West, Inc. v. United States*, 100 Fed. Cl. 53, 56 (2011)).

This Court's rules identify a list of "core documents" that must be included in any complete administrative record. *See* Appendix C ¶ 22, Rules of the United States Court of Federal Claims ("RCFC"); *see also Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 303 (2013). This list, however, is "nonexhaustive" and "[t]he agency is expected to produce the core documents set forth in [this Court's rules] '*and the remainder of the administrative record as promptly as circumstances will permit*.'" *Comint*, 100 Fed. Cl. at 166 (emphasis added) (citation omitted). Although the AR "need not consist of every single document related in any way to the procurement in question," it must, at a minimum, include "materials relevant to the specific decisions being challenged," *Tauri Grp., LLC v. United States*, 99 Fed. Cl. 475, 481 (2011), and will "normally include the information relied upon by the relevant agency decision makers *and their advisers* in reaching the decisions being challenged, *and the contemporaneously articulated reasons for these decisions*." *Naval Sys., Inc.*, 2021 WL 1202829, at *7 (emphasis added) (internal citations omitted). Should an agency fail to meet its production obligations, this "court may order production of '[a]ny additional documents within the administrative record.'" *Comint*, 100 Fed. Cl. at 166 (citation omitted). Put differently, "'a reviewing court has power to require an explanation' for an agency's actions." *Id.* at 167 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001)).[5]

---

[5] This is particularly true in light of the Trump Administration's pattern of shortchanging the record in administrative litigation. *See, e.g.*, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *8 (N.D. Cal. Oct. 17, 2017) (ordering completion of the record in litigation challenging Trump Administration's decision to end the Deferred Action for Childhood Arrivals program with "emails, letters, memoranda, notes, media items, opinions and other materials directly or indirectly considered in the final agency decision to rescind DACA"); *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 530 (S.D.N.Y. Jan. 15, 2019) (requiring completion of the record with emails and additional documents in litigation challenging the Trump Administration's decision to include

Although an agency may "exercise some judgment in furnishing the court with the relevant documents," *Comint*, 100 Fed. Cl. at 166 (citing *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997)) (internal quotation marks omitted), an agency may not omit from the AR materials that would "preclude the substantial inquiry and thorough, probing, in-depth review the court must perform" in bid protests, *Mike Hooks, Inc.*, 39 Fed. Cl. at 156 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)) (internal quotation marks omitted). Where the Government has already "acknowledged . . . that it had inadvertently excluded documents from the administrative record," the rebuttable "presumption of a complete record" typically afforded to the Government in bid protests does not apply. *See Smith v. United States*, 114 Fed. Cl. 691, 695 (2014) (Campbell-Smith, C.J.), *aff'd*, 611 F. App'x 1000 (Fed. Cir. 2015) (discussing whether document would complete or supplement record and granting motion to supplement with document that should have been included in the AR).

**B.     The Role of Privileges in an Administrative Record**

To the extent the Government intends to rely on the deliberative process privilege as a basis for withholding materials that are otherwise properly included in the AR,[6] the Government bears the burden of establishing that the strict substantive and procedural requirements for the privilege—which is construed narrowly—have been met. *See, e.g.*, *Alpha I, L.P. ex rel. Sands v.*

---

a citizenship question in the 2020 Census where the Government claimed the administrative record consisted solely of documents considered directly by the Secretary of Commerce). Although a new Administration is now in place, the Court should consider the Government's delays and failures to complete the record in the context in which they took place under the Trump Administration between November 2019 and October 2020.

[6]  The Government previously asserted the deliberative process privilege in response to AWS's now-mooted Motion to Complete the Administrative Record. ECF No. 143 at 8–9, 11–12, 14– 21.

*United States*, 83 Fed. Cl. 279, 288 (2008); *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 320 (1990). A document is "deliberative" and potentially exempt from disclosure under the deliberative process privilege if "it addresses a direct part of the deliberative process in that it makes recommendations or expresses opinions on *legal or policy matters*." *Sikorsky Aircraft Corp. v. United State*s, 106 Fed. Cl. 571, 576 (2012) (emphasis added) (internal quotation marks omitted). Where the documents properly included in the AR relate not to a legal or policy determination, but rather to the Government's decision-making processes as a business partner during a source selection, the deliberative process privilege does not apply. *See EFW, Inc. v. United States*, No. 20-92C, 2020 WL 1164496 (Fed. Cl. Mar. 3, 2020) (ordering production of documents over government claims of deliberative process privilege after *in camera* review); *Meyer Corp., U.S. v. United States*, 37 ITRD 2845, at *2 (Ct. Int'l Trade 2016) (". . . communications unrelated to the formulation of law or policy, and routine reports are not shielded by the privilege"); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988) (deliberative process privilege "shields from public disclosure confidential inter-agency memoranda *on matters of law or policy*") (emphasis added).

Even if properly invoked, the deliberative process privilege "can be overcome by an adequate showing of need." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). For example, where the documents "may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Id*. at 738 (internal quotation marks omitted).

When the Government asserts that a document is subject to a privilege, whether deliberative or otherwise, courts have required the Government to produce a log and provide the documents in question for *in camera* review so that the Court may determine whether the

documents are necessary to complete the AR. *See, e.g.*, *EFW, Inc.*, 2020 WL 1164496 (noting a log is appropriate when there is a showing of improper behavior); *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (1st Cir. 2006) ("[A] trial court may conduct in-camera review of documents under [the qualified deliberative process privilege]."); *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 493 (2019) (requiring Government to file privilege log and produce "deliberative" documents for *in camera* review); *Sonoran Tech. & Prof. Servs., LLC v. United States*, 132 Fed. Cl. 644, 648–49 (2017) (ordering privilege log and submissions of communications, emails, and documents for *in camera* review); *ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905127, at \*2, \*5 (Fed. Cl. June 26, 2014) (ordering Government "to provide the court with a copy of all documents requested in plaintiff's motion . . . to allow for in camera review").

"Allowing a protest to be decided upon an AR which does not reflect what actually transpired would perpetuate error and impede and frustrate effective judicial review." *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366 (2009). The Court should require the Government to produce the documents described below in order to facilitate meaningful review of AWS's protest grounds and to ensure a fair and expeditious resolution to this litigation.

## ARGUMENT

As cherry-picked by the Government, the AR is incomplete and lacks critical information that was, in fact, generated, considered, and reviewed by DoD during the procurement process. The AR is missing broad categories of materials, including materials relating to the JEDI Cloud proposals and their evaluations, and documents relating to the role of the Office of the Secretary of Defense and the White House in the procurement process. These materials—many of which are *specifically referenced* in documents the Government agrees are properly in the AR—should have

been included in the record over a year ago to ensure that it fully reflects the bases for the DoD's

award decisions and the scope of the decision-making processes, as a complete AR is essential to

"meaningful and effective judicial review." *Comint*, 100 Fed. Cl. at 168. Below, AWS identifies

specific documents or categories of "documents that should have been included in the record but

were not," and "offers evidence of information that the agency considered but failed to include in

the record." *Cf. BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226, 229 (2020) (Campbell-Smith,

J.) (denying motions to complete and supplement where protester failed to identify specific

documents or categories of documents missing from the record or the absence of which would

frustrate judicial review).

The materials requested relate to both the original October 2019 award decision and the

September 2020 re-award decision. As AWS alleged in its Amended Complaint:

> [p]rior to the original award, President Trump repeatedly made clear to the highest
> echelons of [the DoD], including those directly responsible for overseeing the JEDI
> award, his desire that [plaintiff] not receive the JEDI Contract. [The DoD's]
> reevaluations on remand reveal that [the DoD] continued to succumb to presidential
> pressure to steer the JEDI Contract away from [plaintiff], and that the re-award was
> the product of bias, bad faith, improper influence, and/or conflicts of interest.

ECF No. 236 at 170. Although "DoD, in effect, had a clean slate from which it could reevaluate

proposals in accordance with the RFP and remove any semblance of bias," DoD "distorted its

technical evaluations heavily in Microsoft's favor to *preserve the award to Microsoft*

notwithstanding its higher price," "to reach a pre-determined outcome of maintaining the award to

the President's preferred offeror, Microsoft." *Id.* at 169–70 (emphasis added). In addition, "the

reevaluations demonstrate that, on remand, DoD was biased in favor of *preserving the status quo—*

award to Microsoft." *Id.* (emphasis added). Moreover, the Source Selection Decision Document

underlying the remand award makes clear that the Source Selection Authority's award decision

was based upon the *entire* history of the procurement, and not merely new information considered or generated during the remand period. *See* AR Tab 738 (detailing procurement history). Therefore, documents underlying the original evaluations and award decision remain relevant to AWS's protest, and such documents missing from the AR must be produced.

## A. Materials Related to the JEDI RFP Proposals and the Evaluations Thereof

### 1. Materials on Any Platform (e.g., Email, Slack, Google Drive, Google Docs, Google Groups, Google Hangouts) Related to the JEDI Source Selection or Proposal Evaluations, as Pertaining to AWS and/or Microsoft

The Court's orders dated November 26, 2019, and December 13, 2019, expressly state that the AR should "include any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." ECF No. 15 at 2; ECF No. 55 at 2. The AR, however, does not include all these materials. To the contrary, it appears that the Government included in the AR only internal Slack messages from September to October 2017 that were previously included in the administrative record from the pre-award bid protest of the JEDI procurement in *Oracle America, Inc. v. United States*, No. 18-1880 (Fed. Cl. July 26, 2019). *See* AR Tab 47; ECF No. 107-1. These limited materials from the *Oracle* pre-award bid protest do not overlap in time frame and substance with *any* of the issues raised in AWS's bid protest, which challenges DoD's source selection following the issuance of the final JEDI RFP in July 2018. *See* AR Tab 1.

Similarly, the Government included internal email exchanges related only to the Contracting Officer's Procurement Integrity Act/Organizational Conflict of Interest investigations into DoD employees who later sought employment with AWS. *See, e.g.*, AR Tabs 242, 247. The Government produced none of the internal DoD emails related to the post-competitive range JEDI source selection evaluation process or award decisions, even when confronted with this glaring

omission from the AR. By including only those Slack messages and internal email communications reflected in the Oracle pre-award protest, the Government plainly ignores the Court's order that the "email communications and communications made through Slack channels and the like" that "reflect[] factors considered in the agency's decision-making process" also be included in the AR.

The existing AR is also clear that such internal communication vehicles exist, and continued to be used on remand. The AR references two Slack channels related to the JEDI procurement ███████████████████████████"). *See* AR Tab 47a at 2901, 2930, 2973; AR Tab 221 at 58699; AR Tab 242. However, the AR does not contain communications from these Slack channels during the relevant time period when DoD was evaluating the offerors' proposals, or indeed any time after October 2017. Similarly, the AR references a Google Group entitled "███████," which one would expect to contain emails, posts, and other communications among the Source Selection Team relating to the JEDI RFP. *See* AR Tab 343. But the AR does not include materials from this Google Group either.

The materials considered on remand provide further evidence that the Government continues to improperly withhold these materials. For example, the re-evaluation instructions and guidance provided by the Contracting Officer to the Technical Evaluation Board members referenced, for each factor and for each offeror, specific Google Drives—none of which have been included in the AR. *See, e.g.*, AR Tabs 584–90.

The omission of these materials is particularly troubling given the ubiquity with which the Source Selection Team used these platforms for substantive communications relating to the JEDI procurement. DoD's Defense Digital Service expressly "████████████████████████ ████████████████████████████████████████████████" such as Slack

████████████████████████████████████████████████
█████████████████████

and Google Drive. AR Tab 221 at 58699. The Government cannot simply re-produce the same set

of Slack and email communications that it provided in the *Oracle* litigation to satisfy its obligations

in *this* case, which addresses entirely different issues from an entirely different time period, and

the re-production of which does not comply with this Court's orders regarding the contents of the

AR. It is troubling that so few materials from these platforms have been included in the AR, and

AWS requests that the Court require the inclusion of materials on these platforms that reflect

DoD's decision-making process underlying both the October 2019 and September 2020 award

decisions and related proposal evaluations, including any indices or logs that track the contents

hosted on these platforms, into the AR.

These informal materials "should . . . be added to the administrative record to allow for

effective review of the [evaluation] [t]eam's determinations." *Tauri Grp., LLC*, 99 Fed. Cl. at 482.

As other courts have noted, "[i]t is obvious that in many cases internal comments, draft reports,

inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final

decision." *Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D.

Cal. Jan. 10, 2017). And it is neither uncommon nor unprecedented for the AR to include similar

electronic communications. *See, e.g.*, *Oracle Am., Inc. v. United States*, 146 Fed. Cl. 606, 607

(2019) (requiring completion of AR with documents in the JEDI Google Drive that the contracting

officer "reviewed" and the history of those documents); *ARKRAY*, 2014 WL 2905127, at *5

(adding emails "generated or considered by the agency during the procurement and

decisionmaking process" that were "relevant to the key issue in [the] case"); *Tauri Grp.*, 99 Fed.

Cl. at 482 (adding emails "concerning the various versions of" memo and briefing slides

considered by the source selection team).

The need for such electronic and informal communications is further underscored by DoD's apparent efforts to evade this Court's fulsome review of the remand evaluations and award decision. The deficient Post-Remand AR and AWS's correspondence with the Government concerning the AR's deficiencies reveal that DoD failed to document critical information considered and relied upon in reaching the remand award decision. For example, Government counsel stated that the following "communication . . . was conducted only verbally and, as such, no written documentation exists . . . for the following requests:

- Documentation of the "extensive consultation with the Factor 8 TEB" and the "discussions with the Factor 8 TEB" referenced in the SSEB Report, AR Tab 733 at 210399–40.

- Documentation regarding Peer Review Team meeting with JEDI team, dated September 2, 2020. AR Tab 736.

- A copy of the August 23, 2020 request from the SSAC related to Factor 2 referenced in the addendum. AR Tab 734 at 210408. *See also* AR Tab 737 at 210421.

- Documentation of the "discussions" held by the SSAC with the PEB, SSEB, and TEBs regarding their reports. AR Tab 737 at 210416.

- Documentation of the "discussion" with the SSEB, Factor 8 TEB, and SST advisors to "walk through the demonstration data in depth." AR Tab 737 at 210421.

- Documentation of the request for an addendum from Factor 8 TEB. *Id.*

- Documentation of the August 21, 2020 meeting with the SSAC, SSEB, and Factor 8 TEB to discuss Factor 8. *Id.*

Accordingly, AWS requests that the Court require the Government to comply with the Court's prior orders to include in the AR "any informal documents reflecting factors considered in the agency's decision-making process, such as email communications and communications made through Slack channels and the like." ECF Nos. 15, 55.

2.   **Documents Concerning the Source Selection Board and Factor 8 Technical Evaluation Board Addenda**

The AR materials developed on remand show that the SSAC requested and received two addenda to the Source Selection Evaluation Board ("SSEB") report: one for Factor 2, and one for Factor 8. *See* AR Tab 738 at 210444–45 ("the SSAC requested an addendum report from the SSEB on Factor 2, covering ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 210448 ("The SSAC requested additional information from the Factor 8 TEB, which was provided as an addendum, Reference (J), in response to the SSAC's request"). Yet, the AR is devoid of documents related to these addenda, including:

- Documentation of the "extensive consultation with the Factor 8 TEB" and the "discussions with the Factor 8 TEB" referenced in the SSEB Report, AR Tab 733 at 210399–40.

- A copy of the original report and briefing provided by the SSEB to the SSAC on August 20, 2020. AR Tab 734 at 210408. The SSEB Addendum report dated August 24 references these materials dated August 20, 2020, but the only SSEB report in the record is dated August 24. *See* AR Tab 733.

- A copy of the August 23, 2020 request from the SSAC related to Factor 2 referenced in the addendum. AR Tab 734 at 210408. *See also* AR Tab 737 at 210421.

- Documentation of the "discussions" held by the SSAC with the PEB, SSEB, and TEBs regarding their reports. AR Tab 737 at 210416.

- Documentation of the "discussion" with the SSEB, Factor 8 TEB, and SST advisors to "walk through the demonstration data in depth." AR Tab 737 at 210421.

- Documentation of the request for an addendum from Factor 8 TEB. *Id.*

- Documentation of the August 21, 2020 meeting with the SSAC, SSEB, and Factor 8 TEB to discuss Factor 8. *Id.*

These materials are critical to the parties' and the Court's ability to evaluate the impetus for the SSAC's requests for addenda, which served to undercut strengths previously assessed to AWS,

*see* ECF No. 236 at 143, and to manufacture strengths for Microsoft where none previously existed, *id.* at 143–44, to create false parity between the offerors on Factors 2 and 8. Accordingly, and although Government counsel has represented that these communications were "conducted only verbally and, as such, no written documentation exists," to the extent that *any* written documentation exists—regardless of whether it is "final" or "formal"—the Government must produce any such materials considered and relied upon by the SSEB, TEB, or SSAC in requesting and responding to the request for technical evaluation addenda.[7]

### 3. *Drafts and Workpapers Relating to the Demonstration Evaluations, Factor Consensus Evaluations, Price Evaluations, SSEB Report, PEB Report, SSAC Report, and/or SSDD*

The AR does not include any drafts or workpapers relating to the evaluations and reports by the Source Selection Team, even though such materials reflect the factors DoD evaluators considered in their decision-making. *See Tauri Grp.*, 99 Fed. Cl. at 481–82 (holding that evaluator worksheets "constitute the analysis underlying the determinations" and "should be added to the administrative record to facilitate effective review"). These materials are especially important in this case, which involves credible and well-grounded allegations of bias and bad faith, because the

---

[7] The Federal Acquisition Regulation requires that an agency document its evaluation of proposals as well as its final award decision. 48 C.F.R. §§ 15.305(a), 15.308. This Court has found agency source selection decisions unreasonable based on a failure to document the decision-making rationale. *See L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 50 (2011) (permitting supplementation of agency record upon lack of adequate documentation for agency evaluation and source selection decision); *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 758–64 (2008) (finding best value tradeoff was improper where "the Source Selection Authority did not adequately document her best value tradeoffs in the Source Selection Decision Document"); *Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70, 121 (2006) (finding source selection decision flawed where SSA did not adequately document independent rationale for adopting the reasoning of the Contracting Officer and the minority report of the Source Selection Evaluation Board).

drafts and workpapers will show how the views and conclusions of the evaluators changed in response to ongoing undue influence from the Trump administration throughout the procurement process. The evaluators' final reports will necessarily not reflect or overtly evidence the effect of the undue influence on the decision-making process. However, the drafts and workpapers that precede the final, sanitized versions of these evaluations and reports—and the changes they reflect over time—will show the actual factors that influenced their decision-making.

Moreover, "[i]nclusion of documents supporting the decisions of subordinate evaluators is particularly important when the [Source Selection Authority ("SSA")] bases the procurement award" on the assessments of those evaluators, "rather than the SSA's own review of the proposals." *Tauri Grp., LLC*, 99 Fed. Cl. at 481. The original Source Selection Decision Document ("SSDD") shows that, although the SSA was "provided . . . access to the proposals," AR Tab 738 at 210437–38, her "independent judgment" on the original award decision was supported by "careful consideration of the Source Selection Evaluation Board's (SSEB) Report of technical proposals, the Price Evaluation Board's (PEB) Report of price proposals, and the Source Selection Advisory Committee's (SSAC) Comparative Analysis Report and Recommendation"—not her personal review of the proposals, except "[i]n the case of a disagreement or disparity between SSEB and SSAC regarding strengths, or weaknesses," *id.* at 210437, 210443. Similarly, the SSA's remand award decision was not based upon her personal review of proposals, but again based upon "careful consideration of the Source Selection Evaluation Board's (SSEB) Report of technical proposals, the Price Evaluation Board's (PEB) Report of price proposals, and the Source Selection Advisory Committee's (SSAC) Comparative Analysis Report and Recommendation," as well as briefings "by the Contracting Officer (CO), SSEB, PEB, and SSAC to ensure [she] had a full understanding of both the analyses and recommendation." AR Tab 738 at 210437. The need for

production of drafts and workpapers is particularly acute here, where the Government has confirmed that "a draft report was part of the SSEB's presentation to the SSAC on August 20, 2020," but the draft has not been produced in the AR. Ex. C. The Source Selection Decision Document states that on "August 20, 2020, the SSEB and the PEB Chair presented their findings *to the SSAC and me*." AR Tab 738 at 210437 (emphasis added). Thus, the draft SSEB Report was something *considered and relied upon* by the SSA in reaching her award decision, but has not been produced in the AR.

The Government also cannot invoke the deliberative process privilege to exempt these materials from the AR. The deliberative process privilege does not apply automatically. Rather, it is a "qualified" privilege that depends on the weighing of competing interests. *In re Sealed Case*, 121 F.3d at 737. Thus, "where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Id.* at 738 (citing *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)) (internal quotation marks omitted). Here, AWS's bid protest raises credible, well-grounded allegations regarding bias and bad faith that compromised the integrity of DoD's award decisions. Because these allegations relate to government misconduct, the Government cannot use the deliberative process privilege to shield these highly relevant materials from the AR, and any interests in confidentiality to the public are amply protected by the Protective Order approved by this Court (*see* Dkt. 109).

### 4. Notes, Transcripts, and/or Records of DoD's Meetings with AWS and/or Microsoft

The Government included in the AR audio recordings from one-on-one question and answer sessions that DoD held with AWS, Microsoft, IBM, and Oracle on August 13 and 15, 2018, following the release of the final JEDI RFP. *See* AR Tabs 120–123. However, the AR references numerous other meetings with offerors (including with Microsoft and AWS on, for example, April 24–26, 29–30; May 2–3, 6–7, 10, 13; July 3, 5, 11–12; and August 6, 14, and 21, 2018). *See* AR Tab 343 at 151512–13. The meeting minutes contained in the AR do not reflect the substance of the discussions in detail (*e.g.*, noting only that " ████████████████████████ and not otherwise summarizing or listing the substance of the questions). The Government's January 17, 2020 correspondence did not indicate any intent to produce these materials for inclusion in the AR. Accordingly, AWS requests that the Court order the Government to include in the AR all notes, transcripts, and/or recordings from these meetings, so that the AR can properly reflect the information conveyed during these meetings with Microsoft and AWS.

### 5. Unedited Video and Audio of the Factor 8 Demonstrations

AR Tab 306 states that the AR's video and audio files (AR Tabs 291–98) have been edited to remove content from before the start of the demonstration session, break periods, scenario change-overs, and after the vendor representatives had vacated the demonstration space. *See* AR Tab 306. The Government did not address whether it would produce the unedited video and audio files in its January 17 correspondence. AWS requests that the full, unedited demonstration video and audio files be included in the AR, as the full video and audio records are necessary to understand the context of the demonstrations and the evaluators' immediate feedback and assessment of the offerors' performance during the demonstrations.

**B.** **Materials Related to the Involvement of the Office of the Secretary of Defense in the JEDI Procurement Process**

> *1.* *Materials Related to Meetings and Briefings with DoD Chief Information Officer Dana Deasy*

The Government's belated September 21, 2020 production of AR materials that were "inadvertently omitted" from previous AR productions underlying the original award included two documents discussing the involvement of then-DoD Chief Information Officer Dana Deasy in the JEDI source selection process. AR Tabs 565, 570. The newly produced AR documents reveal that, even though the Contracting Officer had previously "███████████████████████████

████████████████████████████████████████████████████████████████

███████" shortly after former President Trump asked Mr. Deasy at a White House event on February 11, 2019 whether Mr. Deasy was aware of "cloud noise," Ex. A. (DoDIG Report) at 111, 116, 123, on February 28, 2019, Mr. Deasy was authorized to "████████████████████████

████████████████████" for the JEDI RFP, and to "████████████████████████████

████████████████████████████████████████████████████████████████

████████," AR Tab 565 (emphasis added). Thus, the deficient record reveals that, after meeting with President Trump, DoD authorized former CIO Deasy not only to have access to information about the status of the JEDI procurement, but also to the ████████████████████████"

and "████████████████████████████████." *Id.* But the AR does not include any documentation of the impetus for the expansion of Mr. Deasy's access to source selection information, nor any documentation of briefings Mr. Deasy received between the February 2019

████████████████████████████████████████████████████████████████

authorizing memorandum and the meetings that occurred between Mr. Deasy and Secretary Esper on July 29, August 23 and 29, and September 10, 16, and 26, 2019. *See* AR Tab 462 at 176426.

In addition, the belatedly produced AR documents include an October 3, 2019 memorandum from the then-current SSAC Chair documenting "██████████████████████ ██████." AR Tab 570. According to the memorandum, the SSEB and PEB Chair briefed the SSAC on September 30, 2019. Although the September 21, 2020 production included the PEB briefing dated September 30, 2019, AR Tab 569, the AR does not include any SSEB briefing materials from the September 30 briefing. And while the SSA was present at the September 30 briefings, because Mr. Deasy "████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████." AR Tab 570. Those briefings are not included in the AR.[8]

████████████████████████████████████████████

██████████████████ who was at the time of the original award and remained at the time of re-award the individual "designated to make the best-value decision" and "make the final source selection decision," AR Tab 305 at 64342; AR Tab 714 at 210031, the briefings provided to him "to be able to provide assistance . . . to the SSA" are documents that DoD generated and relied upon in reaching the JEDI award decisions, and should be included in the AR. As this Court

---

[8] Government counsel has represented that "the slides used by the PEB to brief the SSAC and SSA (AR Tab 569) were the same as those used to brief the CIO a few days later." However, given the numerous deficiencies in the AR, if the Government maintains that no additional briefings exist, it should be required to explain how it determined the absence of such additional briefing materials.

████████████████████████████████████████████

recently stated, the AR "should 'include the information relied upon by the relevant agency decision makers *and their advisers* in reaching the decisions being challenged, and the contemporaneously articulated reasons for these decisions.'" *Oracle Am., Inc. v. United States*, No. 18-1880C, 2019 WL 354705, at *3 (Fed. Cl. Jan. 23, 2019) (quoting *E.W., Inc.*, 100 Fed. Cl. at 56 ) (emphasis added). Notably, although the revisions to the Source Selection Plan on remand ████████████████████████████████████████████████, *see* AR Tab 573 at 181331, the Contracting Officer maintained the prior authorization to provide Mr. Deasy "█████████████ ████████████████████████████████████████████████," AR Tab 574 at 181344.

Yet, the Government has not produced any record documents concerning the briefings provided to Mr. Deasy prior or subsequent to his authorization to receive source selection sensitive information and information regarding the proposal evaluations, both prior to the original award and on remand. These documents are particularly important for the Court's fair and fulsome review of AWS's protest grounds in light of Mr. Deasy's public statements about his contacts with the White House about the JEDI procurement. Although Mr. Deasy testified before Congress at his confirmation hearing that "'[t]o the best of [his] knowledge, nobody has contacted, from the White House, any members of the source-selection team,'" Carten Cordell, *Pentagon leader asserts there was no White House influence on JEDI*, Washington Business Journal (Oct. 29, 2019), *available at* https://www.bizjournals.com/washington/news/2019/10/29/pentagon-leader-asserts-there-was-no-white-house.html, as of June 2019, Mr. Deasy ████████████████████████████████ ████████ was in contact with the White House. AR Tab 305 at 64381 (████████████████ ████████████████████████████████████████████)), Ex. A (DoDIG Report) at 123. And these new documents reveal that Mr. Deasy was authorized to █████████ ████████████████████████████████████████████████████████████ ████████████████████

████████████████████████████████████████████████████████

███ .

Moreover, the DoDIG Report detailed Mr. Deasy's numerous contacts with the White House regarding JEDI, including two separate briefings he provided to the White House in July 2019—one to Acting White House Chief of Staff Mick Mulvaney on July 10, 2019, and a second to White House Deputy Security Advisor Charles Kupperman on July 18, 2019. Ex. A (DoDIG Report) at 34, 36, 111–14. Yet, neither of these briefings nor related materials are reflected in the AR. Nor are there any materials in the AR regarding briefings provided by the Source Selection Team to Mr. Deasy prior to his July meetings with the White House. Presumably Mr. Deasy received the "████████████████████████████████████████████████████████" authorized by the February 2019 memorandum from the Contracting Officer, but no such materials have been produced. *See* AR Tab 565 at 181252. Similarly, the AR is devoid of any materials developed, used, or presented during the August 21, 2019 meeting among Mr. Deasy and four White House officials where there was an "enterprise cloud discussion." Ex. A (DoDIG Report) at 36. Moreover, the record does not reflect any materials regarding Mr. Deasy's receipt of "████████████████████████████████████████████████████████" as authorized by the Contracting Officer during the remand period. AR Tab 574 at 181344. The Government has concealed these materials that are properly part of a complete AR. *See Oracle Am., Inc.*, 2019 WL 354705, at *3 (AR "should 'include the information relied upon by the relevant agency decision makers *and their advisers* in reaching the decisions being challenged'").Therefore, AWS requests that the Court require the Government to produce materials concerning these briefings provided to, or conducted by, DoD CIO Dana Deasy.

████████████████████████████████████████████████████████

2.    *"Read Ahead" Memoranda, Agendas, Notes, Transcripts, and Other Materials Relating to Informational Meetings with Secretary Esper and/or the Office of the Secretary of Defense*

The AR indicates that members of the Source Selection Team and representatives from the office of the DoD Chief Information Officer met with Secretary of Defense Mark T. Esper on multiple occasions during the procurement process, including on July 29, August 23 and 29, and September 10, 16, and 26, 2019. *See* AR Tab 462 at 176426. In addition, the Deputy Secretary of Defense met with the DoD Chief Information Officer on October 7, 2019, to discuss the JEDI Procurement. *Id.* Although the AR includes "Read Ahead" memoranda and/or presentations for these meetings (*see* AR Tabs 335, 439, 440, 453, 494, 548–50), the AR does not include any such materials for the October 7 meeting.[9] Additionally, several of the attachments from the "Read Ahead" memoranda were not initially produced in the AR. *See, e.g.*, AR Tab 335 (missing Attachments B and C); AR Tab 439 (missing Attachments A and B); AR Tab 453 (missing Attachment E). After AWS filed its initial Motion to Complete the Administrative Record, the Government did produce some of the additional documents related to these read-ahead memoranda. However, there remain two categories of documents that the Government refuses to provide, and which should be added to complete the AR.

*First*, the Government has singled out two documents that—unlike similar attachments to the other read-ahead memoranda (with which the Government ultimately supplemented the AR)— it refuses to produce: a paper entitled " █████████████ that was presented to Secretary of Defense Mark Esper on July 29, 2019, and a " █████████████████████████

---

[9] Notably, many of these documents were *not* included in the Government's original AR production. Rather, they were added to the AR in a supplement dated January 31, 2020.

██████████████████████████████████████████████

████████████████████████t" and that was presented to Deputy Secretary Norquist on October 7, 2019. ECF No. 143 at 11–12. The Government asserted that both documents should not be included in the AR because they are "deliberative" in nature, *id*. at 11, and made a conclusory claim of "attorney-client privilege and work-product protection," *id*. at 12. Yet, these documents were apparently provided to and reviewed by the Department of Defense Office of Inspector General in connection with its investigation without any mention of privilege grounds for withholding such materials. *See* Ex. A (DoDIG Report) at 95 (referencing "slide presentations and other documents from JEDI Cloud procurement briefings presented to Secretary Esper and to White House officials from June 10 through September 23"); 109 (referencing a "slide presentation, 'Options Brief,' [that] described 10 potential options" and a "second presentation [that] narrowed the choices to seven options. Mr. Deasy told us that he used the second presentation, which he called the 'Summary Briefing,' to brief Deputy Secretary Norquist about options").

*Second*, the Government has no basis for withholding "informal notes" from these meetings with senior DoD officials regarding JEDI. Although the Government suggested in prior briefing there is a bright-line rule allowing it to withhold "informal notes," ECF No. 143 at 12, that is incorrect. This Court has required completion of the AR with informal notes if they are "generated or considered by the agency during the procurement and decisionmaking process." *ARKRAY*, 2014 WL 2905127, at *5.

AWS requests that the Court order the Government to include *all* such memoranda, agendas, notes, transcripts, and other documents relating to these meetings between the Source Selection Team, the DoD Chief Information Officer, the Deputy Secretary of Defense, and/or

Secretary Esper, as well as any such meetings that may have occurred during the remand period.[10] These materials will facilitate effective judicial review by ensuring the AR captures the nature of involvement of the Office of the Secretary of Defense and its impact on DoD's decision-making process. At a minimum, the Court should require the Government to provide a privilege log and *in camera* submission to enable the Court to assess whether these documents are necessary for a complete AR. *See, e.g.*, *Poplar Point*, 145 Fed. Cl. at 491 (ordering *in camera* submission and privilege log to enable court to adjudicate plaintiff's motion to complete).

### 3. Materials Concerning the Role of Stacy Cummings, the Principal Deputy Assistant Secretary of Defense, Acquisition Enablers, Relating to the JEDI Contract

The AR is also missing documents regarding the role of Ms. Stacy Cummings, Principal Deputy Assistant Secretary of Defense, Acquisition Enablers, in the JEDI Contract procurement process prior to her recusal on September 27, 2019. *See* AR Tab 454.

In particular, the AR does not contain any emails or other communications reflecting Ms. Cummings's role in the procurement. The Contracting Officer's "No Impact" assessment memorandum indicates that the Contracting Officer reviewed communications between Ms. Cummings and the Source Selection Team relating to the JEDI Cloud procurement. *See, e.g.*, AR Tab 460 at 176420–23. Many of these communications—such as a September 13, 2019, email from the SSEB Chairperson, ███████████████, to Ms. Cummings "███████████████

███████████████," an "███████████ meeting held on September

---

[10] AWS notes that the Post-Remand AR the Government has produced to date does not reference any specific further briefings that occurred between or among the DoD CIO or the Office of the Secretary of Defense, notwithstanding the ongoing authorization for the DoD CIO to receive such briefings. *See* AR Tab 547. To the extent any such briefings occurred, the Government should be required to produce these materials in the AR as well.

18, and meetings held on September 23 and 26, 2019 with multiple members of the Source Selection Team "to discuss the options to be presented to Secretary Esper"—took place during the course of the procurement, reflect DoD's decision-making process, and were relied upon by the Contracting Officer in her memorandum, yet were not included in the AR. *See id.* at 176421.

The Government refused to provide any additional documentation related to Ms. Cummings' involvement in the JEDI procurement, despite the fact that by including Ms. Cummings' recusal letter and the Contracting Officer's no-impact assessment memorandum in the AR, the Contracting Officer certified that Ms. Cummings' recusal is a relevant issue that was "considered in the decision to award the contract to Microsoft." ECF No. 224-2, Certification of AR (Sept. 21, 2020); *see* AR Tabs 454, 460. The Government cannot now pick and choose to include only those documents that "it deems relevant"—rather, it must produce the "'*whole*' administrative record," which "consists of *all* documents and materials directly or indirectly considered . . . includ[ing] evidence contrary to the agency's position.'" *Comint*, 100 Fed. Cl. at 168–69 (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)) (first two emphases added). Accordingly, AWS requests that the Court order that these communications involving Ms. Cummings and her recusal, including any documents reflecting these communications (such as agendas, "Read Ahead" memoranda, notes, transcripts, meeting minutes, and presentations), be added to the AR to ensure a complete record that reflects the participation of Ms. Cummings, her recusal, and the bases for the Contracting Officer's "No Impact" assessment.

### 4. *Materials Relating to the Recusal of Secretary Esper.*

Although the AR contains a recusal letter from Secretary Esper (*see* AR Tab 458), it does *not* reflect any other documents concerning the development, transmittal, or receipt of that letter

beyond the reference to the recusal in the Deputy Secretary of Defense's October 18, 2019 Memorandum for the Record, AR Tab 462. Moreover, AWS's request for documents relating to the *grounds* for the recusal is relevant to the nature and propriety of Secretary Esper's involvement in the JEDI source selection. By including the recusal letter and memorandum in the AR, the Contracting Officer has certified that they were "developed and considered in the decision to award the contract to Microsoft." ECF No. 224-2, Certification of AR (Sept. 21, 2020), and that the recusal of Secretary Esper is relevant to DoD's considerations and decision-making for JEDI Contract. The Government cannot limit the AR to what it "deems relevant," for withholding the rest of the documents upon which the recusal was based would "undermine[]" this Court's "review function" by "insulat[ing] portions of its decision from scrutiny." *Comint*, 100 Fed. Cl. at 168. Absent a full record regarding the circumstances leading to and following the recusal, the AR will not fully capture circumstances surrounding the recusal and its effects on DoD's decision-making. AWS therefore requests that the Court order the Government to add all materials concerning Secretary Esper's recusal to the AR.

### 5. Materials Relating to Meetings and a Presentation to DoD Leadership that Occurred After September 27, 2019

The AR indicates that "[r]epresentatives" from the DoD Chief Information Officer, the Office of the Under Secretary of Defense for Acquisition & Sustainment, the Cloud Computing Program Office, the Office of General Counsel, "and others" "continued to have meetings to discuss the options and PowerPoint to present to Department leadership after September 27, 2019." AR Tab 460 at 176422. The AR does not contain any materials relating to these meetings or the PowerPoint presentation that was presented to senior DoD leadership, even though these meetings and presentations are direct communications relating to the JEDI procurement decision involving

DoD leadership and the Source Selection Team. Indeed, the Government has already included in the AR materials relating to pre-September 27, 2019 meetings involving DoD leadership, and offers no reason why the materials for post-September 27, 2019 meetings should be treated any differently. Therefore, AWS requests that the Court require the Government to produce materials concerning these post-September 27, 2019, meetings in the AR.

**C.    Materials Related to the Department of Defense Office of Inspector General Report**

The Government has refused to complete the AR with documents related to the JEDI procurement that were referenced in the DoDIG Report. Specifically, AWS requested that the Government produce the following documents generated, considered, or relied upon by DoD in evaluating proposals and awarding the JEDI contract, as referenced in the DoDIG Report:

- A copy of the briefing presented by the DoD CIO, a member of the SST, to Acting White House Chief of Staff Mick Mulvaney on July 10, 2019. Ex. A (DoDIG Report) at 34.

- A copy of the briefing presented by the DoD CIO, a member of the SST, to White House Deputy Security Advisor Charles Kupperman. *Id.*

- A copy of any materials developed, used, presented, etc. at the August 21, 2019 meeting with the DoD CIO and four White House officials where there was an "enterprise cloud discussion." *Id.* at 36.

- A copy of the unredacted DoDIG report.

- A copy of any "slide presentations and other documents from JEDI Cloud procurement briefings presented to Secretary Esper and to White House officials from June 10 through September 23" not otherwise in the AR. *Id.* at 95.

- Materials related to the October 7, 2019 "Options briefing" and "Summary Briefing" documents. *Id.* at 109.

- Materials related to the reported White House contacts between the Cloud Computing Program Manager and former Defense Digital Service GC ███████████ *See id.* at 111–12. ██████ ███████████████████████████████████████ *See, e.g.*, AR Tabs 305, 714

In correspondence with counsel, the Government claimed that the "report from the DoD IG was not developed and considered by DoD in making its decision to award the JEDI contract to Microsoft and, therefore, is not part of the administrative record of this procurement. The related materials your [*sic*] request, therefore, are likewise not part of the administrative record of this procurement." Ex. C.

This position both misconstrues the relevance of the documents requested, and directly contradicts this Court's rules on the "core documents relevant to a protest case." First, the DoDIG Report made clear that there exist additional documents properly part of the AR in this protest that DoD had produced to the Inspector General in connection with the investigation underlying the DoDIG Report, but has refused to produce as part of the record subject to review by this Court. It simply strains credulity that briefings provided by the DoD CIO, ▮▮▮▮▮▮▮▮ to the Secretary of Defense are properly considered part of the AR (as DoD has conceded by including these materials in the existing AR), but that briefings provided by the Source Selection Team to the White House are *not* properly part of the AR. Similarly, while DoD has produced the October 7, 2019 Secretary of Defense (SECDEF) Recusal Memo, AR Tab 458, and Deputy Secretary Norquist's October 18, 2019 Decision Memo, AR Tab 462, it refuses to produce the October 7 "Options Brief" and "Summary Briefing" that DoD CIO Deasy, a ▮▮▮▮▮▮▮ provided to Deputy Secretary Norquist following Secretary Esper's recusal and that underlie Deputy Secretary Norquist's "October 7, 2019 decision to proceed with a contract award," as well as the October 18 memorandum. *See* AR Tab 462, Ex. A (DoDIG Report) at 113.

Second, the Court's rules make clear that the "core documents relevant to a protest case" include "justifications, approvals, determinations, and findings, if any, prepared for the procurement by the agency pursuant to statute or regulation," and "the record of any previous

administrative or judicial proceedings relating to the procurement." RCFC Appendix C, ¶ 22(t)-(u). The DoDIG Report is clearly such a document. Indeed, the existing AR materials show that both the substance and the process of the DoDIG's Report were considered in determining how to proceed with the JEDI award. *See* AR Tab 461 at 176425 ("The DoD has consulted the DoD OIG, and we have shared our views on the JEDI acquisition and provided information on the status of our review."). The DoDIG Report itself, and the documents referenced in the DoDIG Report above but not yet produced, are properly part of the AR in this protest, and the Court should compel the Government to complete the AR with these materials.

## CONCLUSION

This bid protest must be adjudicated on a level playing field. The Government cannot comply with its duties by compiling and making available an incomplete and selective set of materials. It must produce a complete AR. And it must do so promptly. AWS respectfully requests that the Court direct Defendant to complete the AR with the documents described above, all of which are necessary for the Court to fully and fairly adjudicate this case on a complete record.

Dated: June 18, 2021

Respectfully submitted,

By:

Kevin P. Mullen
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888
Telephone: 202.887.1500
Facsimile: 202.887.0763

*Attorney of Record for Plaintiff*
*Amazon Web Services, Inc.*

*Of Counsel:*

J. Alex Ward
Sandeep N. Nandivada
Caitlin A. Crujido
Alissandra D. Young
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006-1888

Daniel P. Chung
Lindsay M. Paulin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, D.C. 20036-5306

Theodore J. Boutrous, Jr.
Richard J. Doren
Eric D. Vandevelde
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Ave.
Los Angeles, CA 90071-3197